UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEITH JOHNSON, COLBY GOROG, JOSHUSA FLINT, LOUIS ROBINSON and MICHAEL LERRO,<br><br>                                   Plaintiffs,<br><br>                     - versus -<br><br>ELON MUSK, TESLA, INC. and THE DOGECOIN FOUNDATION, INC.<br><br>                                   Defendants. | Case No.: 1:22-cv-05037-AKH<br><br><br>**BRIEF IN SUPPORT OF MOTION TO APPOINT LEAD PLAINTIFFS AND APPROVE LEAD COUNSEL** |

**TABLE OF CONTENTS**

I.      INTRODUCTION…………………………………………………………….. 4

II.     SUMMARY OF THE ACTION…………………………………………… 5

III.    ARGUMENT………………………………………………………….. 7

   A.  The 60-Day Limit to File This Motion Does Not Apply
        to Plaintiffs Because They Filed the Complaint………………………………… 7

   B.  Plaintiffs Gorog, Flint, Robinson and Lerro Should Be Appointed Lead Plaintiffs…..… 9

        1.  Procedural Requirements of PSLRA…………………………………………... 9

        2.  Plaintiffs Filed the First-Filed Complaint, Have Satisfied the PSLRA
             Notice Requirement, and Are Willing to Serve as Class Representatives………….. 10

        3.  Plaintiffs Have the Largest Financial Interest in the Relief Sought by the
             Classes………...................................................................................................11

        4.  Plaintiffs Satisfy the Typicality and Adequacy Requirements of Rule 23(a)……….. 12

             a.   Plaintiffs' Claims Are Typical of the Classes……………………………….. 14

             b.   Plaintiffs Will Fairly and Adequately Represent the Classes……………….. 15

   C.  Evan Spencer Law, PLLC Should Be Appointed as Lead Counsel……………………... 17

IV.    CONCLUSION…………………………………………………………………… 18

## TABLE OF AUTHORITIES

*Balestra v. ATBCOIN*,
    380 F.Supp.3d 340 (S.D.N.Y. 2019)………………………………………………… 12

*Coopersmith v. Lehman Bhd., Inc.*,
    344 F. Supp. 2d 783 (D. Mass. 2004),………………………………………..... 8

*Freeman ex rel. Tesla, Inc. v. Musk*,
    324 F.R.D. 73 (D. Del. 2018)………………………………………………… 11, 16

*Gutman v. Sillerman*,
    2015 WL 13791788 (S.D.N.Y. Dec. 8, 2015)……………………………….…..... 8

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002)………………………………………………… 13

*In re Deutsche Bank AG Sec. Litig.*,
    328 F.R.D. 71 (S.D.N.Y. 2018)………………………………………………… 15

*In re Mersho*,
    6 F.4th 891 (9th Cir. 2021)………………..………………………………….. 9-10

*In re Olsen*,
    3 F.Supp.2d 286 (E.D.N.Y. 1998)………………………………………………… 11

*Karvaly v. eBay, Inc.*,
    245 F.R.D. 71 (E.D.N.Y. 2007)………………………………………………… 14

*Kuebler v. Vectren Corp.*,
    2018 WL 8370052 (S.D. Ind. Aug. 10, 2018)……………………………… 10, 16

*Lavin v. Virgin Galactic Holdings, Inc.*,
    2021 WL 5409798 (E.D.N.Y. Sept. 17, 2021)………………………………… 12

*Lax v. First Merchants Acceptance Corp.*,
    1997 WL 461036 (N.D.Ill. Aug. 11, 1997)……………………………………….. 11

*Nayani v. LifeStance Health Grp., Inc.*,
    2022 WL 16985717 (S.D.N.Y. Nov. 17, 2022)………………………………… 14

*Rasella v. Musk*,
    342 F.R.D. 74 (S.D.N.Y. 2022)………………………………………………..... 14

Skwortz v. Crayfish Co., Ltd.
    2001 WL 1160745, at *5 (S.D.N.Y. 2001)………………………………………… 7

2

*Topping v. Deloitte Touche Tohmatsu CPA*,
    95 F. Supp. 3d 607 (S.D.N.Y. 2015)………………………………… 7, 9, 11-13, 15, 17

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008)………………………….………………….. 9

**Statutes**

15 U.S.C. § 77z-1……………………………………………………………… 4-5, 7-10, 13

15 U.S.C. § 78u-4………………………………………………..…………………... 9, 16

Fed R. Civ. P. 8…………………………………………………………………………6

Fed R. Civ. P 23……………………………………………..………………… 5, 9-10, 11, 13, 16

## I. <u>INTRODUCTION</u>

Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 77z-1(a)(3)(B)(i), Plaintiffs Colby Gorog ("Gorog"), Joshua Flint ("Flint"), Louis Robinson ("Robinson"), and Michael Lerro ("Lerro") (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of their motion for appointment as lead plaintiffs, and for approval of their selection of Evan Spencer Law, PLLC as lead counsel.

This is a securities class-action arising from investor losses in the Dogecoin cryptocurrency, a textbook pump-and-dump scam perpetrated by the world's richest man, Elon Musk, along with Tesla, Inc., and the Dogecoin Foundation, Inc. (DCFI). Dogecoin has no intrinsic value, and generates no revenue other than volatile capital gains—and (mostly) losses. Dogecoin co-founder Billy Markus, an advisor to Defendant DCFI, has even described the cryptocurrency on Twitter as a pyramid scheme.

Defendant Musk began working with DCFI in 2018, and is believed to have opened a number of large Dogecoin wallets since that time. In 2019, he began using Twitter to promote Dogecoin to his millions of followers. Numerous scientific studies link Mr. Musk's Twitter activity to anomalies in cryptocurrency markets. With virtually every tweet, Dogecoin's price, market cap and trading volume spike. Defendants made false statements to drive up share prices and make profits for themselves at the expense of Plaintiffs and the Classes, and Mr. Musk has admitted that he is manipulating the price of Dogecoin in order to help his associates profit. Finally, in late 2021, after posting a series of tweets that caused Dogecoin's price to increase by 33%, Mr. Musk sold the majority of his Dogecoin at a massive profit without telling anyone. From his perch at Twitter, Mr. Musk now continues to manipulate markets and encourage investors to buy and hold this worthless asset.

The PSLRA directs the Court to appoint as lead plaintiff(s) the class member or members the Court, "determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 77z-1(a)(3)(B)(i). Under the applicable standards, Plaintiffs are the "most adequate plaintiff[s]" to represent the Classes. *See id.* at § 77z-1(a)(3)(B)(iii). Plaintiffs have substantial financial interest in this action, and satisfy the typicality and adequacy factors under Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs will fairly and adequately represent the Classes and protect the Classes' interests by vigorously pursuing this litigation and seeking the fullest recovery for the Classes. Their claims are typical of those of the Classes and they are not subject to unique defenses that would render them incapable lead plaintiffs. Plaintiffs have also chosen experienced and well-qualified counsel—Evan Spencer Law, PLLC—who will provide the Classes with vigorous and committed representation. For these reasons, Plaintiffs respectfully request the Court appoint Colby Gorog, Joshua Flint, Louis Robinson, and Michael Lerro as lead plaintiffs, and approve their selection of Evan Spencer Law, PLLC as lead counsel.

## II. <u>SUMMARY OF ACTION</u>

On April 1, 2019, in a survey posted to Dogecoin's official Twitter account, Twitter users chose Elon Musk as "CEO" of Dogecoin. The following day, April 2, 2019, Mr. Musk posted his first tweet promoting the cryptocurrency to his millions of followers. Within three days, its price doubled. In subsequent tweets Mr. Musk dubbed himself "the Dogefather" and since then he has tweeted more than a hundred times promoting Dogecoin. Prior to Mr. Musk's promotion of the cryptocurrency, its trading volume never exceeded $20 million per day, and market cap was under $250 million. With virtually every tweet, Mr. Musk caused Dogecoin's price, trading volume and market cap to increase, until it reached a peak market cap of $95 billion in mid-2021. Shortly thereafter, Mr. Musk made an awkward and poorly received appearance on NBC's

*Saturday Night Live*, where he continued to promote Dogecoin. Coupled with the unsustainable trading volume of Dogecoin, this unfavorable performance precipitated the cryptocurrency's inevitable collapse. Within days, market cap dropped by 50%, and within less than a year, Dogecoin had lost nearly 90% of its value, causing Plaintiffs and the Classes to lose tens of billions of dollars.

Plaintiffs filed their first Complaint with the Court on June 16, 2022, an eight-count cause of action alleging civil RICO violations along with common law theories including fraud and false advertising.  No securities claims were alleged in the original Complaint. On September 6, 2022, Plaintiffs filed their First Amended Complaint ("FAC"), a ten-count cause of action alleging seven Securities Act violations, civil RICO violations, fraud, and unjust enrichment. On September 8, 2022, two days after the FAC was filed, SEC Chair Gary Gensler announced that the SEC considers most cryptocurrencies to be investment contracts subject to federal securities laws. On September 23, 2022, Plaintiffs—through chosen counsel Mr. Spencer—published the requisite PSLRA notice of pendency via national wire service Accesswire **(Exhibit "A")**. During late October and into early November of 2022, Mr. Musk continued his market-manipulative activities in relation to Dogecoin, again via Twitter. In order to account for these developments, as well as SEC Chair Gensler's announcement, and to better conform the pleadings to the requirements of Rule 8 of the Federal Rules of Civil Procedure, on December 13, 2022, with the Court's leave, Plaintiffs filed their Second Amended Complaint ("SAC"), alleging ten causes of action including seven Securities Act violations, civil RICO violations, fraud, and unjust enrichment. No other Dogecoin lawsuits are pending, so there is no issue of consolidation; and no other party or Class member has moved for lead plaintiff status or contested sufficiency of the notice of pendency Plaintiffs published on September 23rd.  The Dogecoin Foundation, Inc. has

agreed to waive service and Plaintiffs are in the process of serving Defendants Elon Musk and

Tesla, Inc. because their attorney declined to execute a 60-day waiver of service.  None of the

three Defendants have filed notices of appearance but the two law firms who represent them

have received actual notice of this case in September 2022.

On December 22, 2022, Plaintiffs filed their Motion seeking appointment as lead

plaintiffs, and approval of Evan Spencer Law, PLLC as lead counsel.  See declaration of Evan

Spencer attached hereto as **Exhibit "B."**

### III. <u>ARGUMENT</u>

**A. The 60-Day Limit to File This Motion Does Not Apply to Plaintiffs Because They Filed the Complaint**

The PSLRA requires plaintiffs filing a class action complaint to publish notice of the

pendency of the suit in a widely circulated business publication or wire service no later than

twenty days after the complaint is filed. 15 U.S.C. § 77z-1(a)(3)(A)(i). No later than sixty days

after the publication of notice, any member of the purported class may file a motion to serve as

lead plaintiff. § 77z-1(a)(3)(A)(i)(II). The Court is charged with considering all such motions

within ninety days after the notice is published. § 77z-1 (a)(3)(B)(i).

Plaintiffs timely published their pendency notice on September 23, 2022, and are thus

filing this Motion within a ninety-day timeframe, but are past the sixty-day limit. This District

has said that  "[w]here there is not a timely motion before the Court, the PSLRA directs [the]

Court's attention to the plaintiffs that have `filed [a] complaint.'" Id. at 791 (quoting Skwortz v.

Crayfish Co., Ltd., 2001 WL 1160745, at *5 (S.D.N.Y. 2001)).

 "The PSLRA does not limit lead plaintiffs to those who have filed motions within 60

days of the publication of the notice. Rather, those presumed most adequate to serve as lead

plaintiffs include either those who have filed a complaint *or* those who made a motion for

<div align="center">7</div>

appointment within the 60 day period. The use of the disjunctive 'or' indicates that the filing of a motion within the 60 day period is not mandatory, but rather is one of two procedural options that can be invoked in order to be presumed the most adequate plaintiff." *Coopersmith v. Lehman Bhd., Inc.*, 344 F. Supp. 2d 783, 790–91 (D. Mass. 2004) (internal citation omitted). Thus, because they filed a complaint, the sixty-day statutory requirement to file a motion seeking lead plaintiff status does not apply to Plaintiffs.

Furthermore, this District has read the PSLRA to mean that the person who files "the complaint" is not required to file a motion for lead plaintiff status, but is automatically considered for that status by the court. *Gutman v. Sillerman*, No. 15 CIV. 7192 (CM), 2015 WL 13791788, at *1 (S.D.N.Y. Dec. 8, 2015). "As used in the PSLRA, 'the complaint' is the first complaint filed in a federal court—the one that starts the clock running on the 20-day period for filing notice to the putative class members." *Id.*, at *2 (referring to 15 U.S.C. § 7z-1(a)(3)(B)(iii)(I)).

Here, three of the four Plaintiffs seeking lead plaintiff status filed the First Amended Complaint, as part of a larger group of named plaintiffs, several of whom have subsequently withdrawn. These three Plaintiffs are also named in the Second Amended Complaint. No other plaintiffs have come forward to sue separately, and no one else has moved the Court for lead plaintiff status, other than Plaintiff Michael Lerro.  There were dozens of Dogecoin traders who responded to the Accesswire Notice, but none wanted to be a lead Plaintiff or class representative. Because the First Amended Complaint "start[ed] the clock running on the 20-day period for filing notice," the FAC is "*the* complaint" for purposes of lead plaintiff appointment, and Plaintiffs are therefore entitled to automatic consideration for lead plaintiff status, without need to move the Court subject to the sixty-day statutory deadline.

**B.  Plaintiffs Gorog, Flint, Robinson, and Lerro Should Be Appointed Lead Plaintiffs**

The PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that:

(aa) has either filed the complaint or made a motion in response to notice;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. ¶ 77z-1(a)(3)(B)(iii)(I); *see also Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 391 (S.D.N.Y. 2008).

Only by a showing of proof that a presumptive lead plaintiff will not fairly and adequately represent the class or is subject to unique defenses that will render such plaintiff incapable of adequately representing the class will the presumption be overcome. *Topping v. Deloitte Touche Tohmatsu CPA*, supra, 95 F. Supp. 3d, at 615 (S.D.N.Y. 2015); 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

As demonstrated below, Plaintiffs satisfy each requirement. They filed the complaint and have timely moved to be appointed lead plaintiffs, have the largest financial interest, and satisfy the applicable Rule 23 factors.

1.  Procedural Requirements of the PSLRA

There is a three-step process for the selection of a lead plaintiff under the PSLRA. *In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021). In step one, notice of the action must be published so that class members can move for lead plaintiff appointment. 15 U.S.C. § 77z-1(a)(3)(A)(i)(I)-

(II). The statute expressly allows a "group of persons" to move for appointment. 15 U.S.C.  77z-1(a)(3)(B)(iii)(I). In step two, the district court must determine which movant is the "most adequate plaintiff," which is defined as the plaintiff "most capable of adequately representing the interests of class members." *Mersho*, 6 F.4th at 899; 15 U.S.C. § 77z-1(a)(3)(B)(i). To do so, the district court must "adopt a presumption that the most adequate plaintiff" is the movant with the largest financial interest who otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Id*. This means the district court must identify which movant has the largest losses and then determine whether that movant has made a prima facie showing of adequacy and typicality. Once the district court has determined that the movant with the largest stake has made a prima facie showing of adequacy and typicality, that movant becomes the "presumptively most adequate plaintiff." *Mersho*, 6 F.4th at 899. In step three, members of the putative class may seek to rebut that presumption by offering evidence that the presumptive lead plaintiff is not adequate or typical. *Id*.; 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II). If the presumption if not rebutted, the presumptively most adequate plaintiff must be selected as lead plaintiff. *Mersho*, 6 F.4th at 899.

2. <u>Plaintiffs Filed the Amended and Second Amended Complaints, Have Satisfied the PSLRA Notice Requirement, and Are Willing to Serve as Class Representatives</u>

Plaintiffs Gorog, Flint, and Robinson (together with five other Plaintiffs with lesser damages) filed the First Amended Complaint through their undersigned counsel, Evan Spencer Law, PLLC, on September 6, 2022.  Since the Complaint filed June 16, 2022, contained no SEC causes of action, the First Amended Complaint was the original complaint for notice purposes. Plaintiffs published the required PSLRA notice via Accesswire, a global newswire and press release distribution service on September 23, 2022. The notice informed putative class members about the case as well as the right to and timeline for filing a motion for appointment as lead plaintiff. This satisfies 15 U.S.C. ¶ 77z-1(a)(3)(B)(iii)(I)(aa).

Plaintiffs timely filed this Motion pursuant to the PSLRA, 15 U.S.C. § 77z-1(a)(3)(B)(i). They are committed and willing to serve as class representatives. *See* Spencer Decl., ¶ 12.

Although not dispositive, Plaintiffs' first-to-file complaint status should be accorded weight where no other complaint has been filed. *See Kuebler v. Vectren Corp.*, 2018 WL 8370052, at *2 (S.D. Ind. Aug. 10, 2018) (proposed lead plaintiff group "vigorously prosecuted the interests of the class: it was the first to file a complaint [and] publish the necessary notice" which "show[ed] that the [plaintiff group] has satisfied the threshold requirements of Rule 23"); *and Freeman ex rel. Tesla, Inc. v. Musk*, 324 F.R.D. 73, 84-85 (D. Del. 2018) (where proposed lead plaintiffs "were the first to 'identify, draft, and file [the] federal claims," court observed that such "efforts to identify and bring these federal claims says something about the work that they are willing to put in to seek legal redress on behalf of the corporation and its shareholders.") Here, Plaintiffs' counsel, Evan Spencer Law, with Plaintiffs' constant consultation, invested substantial time in investigating, developing, and drafting the allegations and causes of action set forth in the first-filed complaint, the FAC, and the SAC. (*See* Spencer Decl., ¶¶ 2, 4, 5, 14. )

   3.   <u>Plaintiffs Have the Largest Financial Interest in the Relief Sought by the Classes</u>

"The second element of the rebuttable presumption—the question of which plaintiff has the greatest financial stake—is the pivotal factor under the PSLRA." *Topping v. Deloitte Touche Tohmatsu CPA*, supra, 95 F. Supp. 3d at 616 (S.D.N.Y. 2015) (internal quotation marks and citation omitted). While the PSLRA does not specify a formula for calculating which plaintiff has the greatest financial stake, courts within the Second Circuit have adopted the four-factor Lax/Olson test first promulgated in *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D.Ill. Aug. 11, 1997) and adopted in *In re Olsen*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998). The four Lax/Olson factors are:

(1) The total number of shares purchased during the class period;

(2) The net shares purchased during the class period (i.e., the difference between the number of shares purchased and the number of shares sold during the class period);

(3) The net funds expended during the class period, which represent the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period; and

(4) The approximate losses suffered. This factor is viewed as the most important.

*Topping*, supra. *See also Lavin v. Virgin Galactic Holdings, Inc.*, No. 21CV3070ARRTAM, 2021 WL 5409798, at *5 (E.D.N.Y. Sept. 17, 2021).

Based on the facts in the present action, analyzing Plaintiffs' financial interest according to approximate financial loss is the most appropriate and yields the best comparative metric. Given the quick and dramatic fluctuations in Dogecoin's price from the time Musk began to promote it in April 2019, until today, analyzing financial interest based on metrics such as total number of shares purchased or net shares purchased would not accurately reflect the financial harm incurred as a result of Defendants' misconduct. For example, on May 12, 2021, two plaintiffs may have each invested $1,000 just hours apart, with one acquiring 2,591 tokens, and the other acquiring 1,926 tokens. Since a focus on "shares purchased" is subject to such skew, analysis of Plaintiffs' respective financial losses best demonstrates their true financial interest. *See Balestra v. ATBCOIN*, 380 F.Supp.3d 340, 261 (S.D.N.Y. 2019) (in appointing lead plaintiff in PSLRA case involving cryptocurrency, the court assessed comparative financial loss incurred in connection with plaintiffs' purchases of the subject cryptocurrency).

The following chart summarizes the approximate financial losses Plaintiffs incurred in connection with their purchases of Dogecoin.

| Plaintiff | Total Financial Losses |
|-----------|------------------------|
| Gorog | $30,000.00 |
| Flint | $30,000.00 |
| Robinson | $17,000.00 |
| Lerro | $150,000.00 |
| TOTAL | $227,000 |

Upon information and belief, no other qualified Class members have sought, or are seeking, appointment as lead plaintiffs with a larger financial interest and also satisfy Rule 23. *See* Spencer Decl. ¶¶ 4-10.

4. <u>Plaintiffs Satisfy the Typicality and Adequacy Requirements of Rule 23(a)</u>

In addition to having the largest financial interest in the outcome of the litigation, the lead plaintiff must also "satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §77z-1(a)(3)(B)(iii)(I)(cc). Under Rule 23(a), a party may serve as a class representative if the following four requirements are met: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). For purposes of appointing a lead plaintiff, however, only the typicality and adequacy requirements are to be considered and only a preliminary showing must be made. *Topping*, 95 F. Supp. 3d at 623. Examination of the remaining requirements is deferred until the lead plaintiff moves for class certification. *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002). As shown below, Plaintiffs satisfy the typicality and adequacy requirements of Rule 23.

*a. Plaintiffs' Claims Are Typical of the Classes*

The typicality requirement set forth in Rule 23(a)(3) is satisfied where plaintiffs' "claims and injuries arise from the same conduct from which the other class members' claims and injuries arise…" *Rasella v. Musk*, 342 F.R.D. 74, 81 (S.D.N.Y. 2022). "Under Rule 23(a)(3)'s permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 82 (E.D.N.Y. 2007). "Courts in this Circuit have held that the typicality requirement is not demanding." *Nayani v. LifeStance Health Grp., Inc*., No. 22-CV-6833 (JSR), 2022 WL 16985717, at *3 (S.D.N.Y. Nov. 17, 2022).

Plaintiffs' claims are typical of both Classes. The first Class is defined in the SAC as all individuals or entities who hold Dogecoin at a loss or who have lost money trading Dogecoin since February 4, 2021, when the price first breached $0.05 per coin. The second Class is defined as all Dogecoin traders since June 16, 2016, who paid spread fees, miners fees, and exchange fees. Like all other members of the first Class, Plaintiffs hold Dogecoin at a loss or have lost money trading Dogecoin since February 4, 2021; and like all other members of the second Class, Plaintiffs have paid spread fees, miners fees, and exchange fees to trade Dogecoin since June 16, 2016. Like all other members of the Classes, Plaintiffs allege that their losses result from Defendants' manipulation of crypto markets, Defendants' outlandish misrepresentations as to the value, fungibility and potential return on Dogecoin, and Defendants' unlawful offer and sale of unregistered securities.

Plaintiffs, like every member of the Classes, are entitled to damages for the losses they sustained trading Dogecoin. Plaintiffs' claims are similar to those of other investors and therefore representative of the Classes. While Plaintiffs and Class members may allege varying degrees of

injury, each claims harm based on the same course of misconduct from the same Defendants. *See In re Deutsche Bank AG Sec. Litig.*, 328 F.R.D. 71, 81 (S.D.N.Y. 2018) (finding typicality where "all class members' claims arise from a single, common course of conduct committed against all members of the class").

Because Plaintiffs' claims arise from the same course of misconduct by the same Defendants, Rule 23(a)(3) is satisfied by their appointment as lead plaintiffs.

> *b.   Plaintiffs Will Fairly and Adequately Represent the Classes*

The adequacy requirement is satisfied where plaintiffs "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Topping v. Deloitte Touche Tohmatsu CPA*, supra, 95 F. Supp. 3d at 623 (S.D.N.Y. 2015). Plaintiffs have retained competent and experienced counsel. Their claims are co-extensive with those of the Classes and their interests are therefore directly aligned with, and not antagonistic to, those of the Classes. Moreover, Plaintiffs have demonstrated substantial losses that suggest they have a strong interest in advocating on behalf of the Classes.

Plaintiffs' Counsel, Mr. Spencer, is a civil plaintiffs' attorney with over 25 years' experience, including ample experience in class actions. (*See* Spencer Decl., ¶ 15*)* He has recovered millions of dollars for hundreds of clients and litigated cases through all phases from pleading to appeals, and leads a team of attorneys dedicated to this case.

Plaintiffs' will fairly and adequately represent and protect the interests of the Classes. As discussed above under typicality, Plaintiffs have demonstrated substantial interest in the case's outcome, having realized approximately $227,000 in collective losses. Their claims are co-

extensive with those of the Classes and their interests therefore directly align with, and are not antagonistic to, those of the Classes. Furthermore, no other movant has argued that Plaintiffs' claims will be subject to unique defenses or has otherwise rebutted their presumptive status as lead plaintiffs.

Plaintiffs will vigorously prosecute this action on behalf of the Classes. They have already demonstrated their commitment, diligence, and ability to work together by way of their active participation in the litigation thus far. *See Kuebler v. Vectren Corp.*, supra, 2018 WL 8370052, at *2 (S.D. Ind. Aug. 10, 2018) (proposed lead plaintiff group "vigorously prosecuted the interests of the class: it was the first to file a complaint [and] publish the necessary notice" which "show[ed] that the [plaintiff group] has satisfied the threshold requirements of Rule 23"); *and Freeman ex rel. Tesla, Inc. v. Musk*, supra, 324 F.R.D. 73, 84-85 (D. Del. 2018) (where proposed lead plaintiffs "were the first to 'identify, draft, and file [the] federal claims," the court observed that such "efforts to identify and bring these federal claims says something about the work that they are willing to put in to seek legal redress on behalf of the corporation and its shareholders").

This is not a case against a bank or a brokerage. It is a case against the world's richest man, a celebrity with a rabid fan base who outright controls the world's most influential social media platform. By volunteering to publicly commit their names to hold Mr. Musk accountable, Plaintiffs have substantially risked their safety and reputations, and have demonstrated a level of commitment far beyond that of typical lead plaintiffs in a securities class action. In light of the above, Plaintiffs have made a prima facie showing that they will adequately represent and protect the interests of the Classes.

### C.  Evan Spencer Law, PLLC Should Be Appointed as Lead Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). "There is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel." *Topping v. Deloitte Touche Tohmatsu CPA*, supra, 95 F. Supp. 3d at 623 (S.D.N.Y. 2015). "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *Cohen v. U.S. Dist. Ct.*, 586 F.3d 703, 711 (9th Cir. 2009).

Plaintiffs have selected Evan Spencer Law, PLLC as the proposed lead counsel for the Classes. As stated above, Mr. Spencer has over 25 years' experience, including extensive experience in class actions. (*See* Spencer Declaration). He leads a team of attorneys dedicated to this case, whose diligent work thus far speaks to their idealism and commitment to vigorously represent the class and hold the powerful to account. No other law firm has shown an interest in prosecuting claims based on the operative facts or in representing the Classes at all, including over the course of the sixty-day motion period that began with publication of the pendency notice. Mr. Spencer and associates, on the other hand, have devoted over 1,000 hours to this case over the past eight months, consulting with colleagues, filing the first and subsequent amended complaints and all other filings in the record, publishing the pendency notification, and communicating with over 100 class members in order to ensure all interested parties the opportunity to join the case as plaintiffs. Moreover, as Evan Spencer Law is a boutique civil plaintiffs' firm, approving the firm as lead counsel will ensure efficient, lean, determined and idealistic leadership and representation of the Classes, and represents a reasonable choice of counsel by Plaintiffs.

## IV. **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court appoint Colby Gorog, Joshua Flint, Louis Robinson, and Michael Lerro as lead plaintiffs, and approve their selection of Evan Spencer Law, PLLC as lead counsel.

<div style="margin-left:50%">

Respectfully Submitted,

</div>

Dated: December 22, 2022

<div style="margin-left:50%">

By: */s/ Evan Spencer*
Evan Spencer
Evan Spencer Law, PLLC
305 Broadway, 7th Floor
New York, NY 10007
Tel. 917.547.4665
Evan@EvanSpencerLaw.com

ATTORNEY FOR PLAINTIFFS
AND THE CLASSES

</div>

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 22nd day of December 2022, a true and correct copy of the above and foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system giving notice to all parties in this action.

<div style="margin-left:50%">

*s/Evan Spencer*
Evan Spencer

</div>