## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| KEITH JOHNSON, COLBY GOROG, JOSHUA FLINT, LOUIS ROBINSON, and MICHAEL LERRO, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>ELON MUSK, TESLA, INC., and DOGECOIN FOUNDATION, INC.<br><br>    Defendants. | Civil Action No.: 1:22-cv-05037-AKH |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DOGECOIN FOUNDATION, INC.'S MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT

**LEVINE LEE LLP**

Seth L. Levine
Chad P. Albert
Steven W. Kessler
1500 Broadway, Suite 2501
New York, New York 10036
Telephone: (212) 223-4400
slevine@levinelee.com
calbert@levinelee.com
skessler@levinelee.com

*Counsel for Defendant Dogecoin Foundation, Inc.*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .................................................................................................................... 3

    A.    The Parties and Claims ................................................................................... 3

    B.    Plaintiffs' Allegations .................................................................................... 4

PLEADING STANDARD ........................................................................................................ 5

ARGUMENT ........................................................................................................................ 7

I.    *MORRISON* BARS PLAINTIFFS' SECURITIES CLAIMS ............................................. 7

    A.    Plaintiffs Have Not Pled a Transaction in a Security Listed on a Domestic Exchange ........................................................................................................ 8

    B.    Plaintiffs Have Not Pled a Domestic Transaction in Other Securities .................. 8

II.    PLAINTIFFS' SECTION 17(a) CLAIMS FAIL BECAUSE SECTION 17(a) PROVIDES NO PRIVATE RIGHT OF ACTION ............................................................. 9

III.    PLAINTIFFS' SECTION 10(b) CLAIMS ARE UNTIMELY AND DEFICIENT ......... 10

    A.    Mr. Musk's Tweets Are Not Attributable to the Foundation ............................... 10

    B.    Claims Based on the Two Statements That Plaintiffs Attribute to the Foundation Are Untimely .............................................................................. 11

    C.    Plaintiffs' 10b-5(b) Claim Against the Foundation Is Deficiently Pled ............. 12

    D.    Plaintiffs' 10b-5(a) and (c) Claims Are Likewise Deficiently Pled .................... 16

IV.    PLAINTIFFS' CIVIL RICO CLAIM IS PREEMPTED BY THE PSLRA AND FAILS BECAUSE IT IS OTHERWISE DEFICIENTLY PLED .................................... 19

    A.    The PSLRA Preempts Plaintiffs' Civil RICO Claim ......................................... 19

    B.    Plaintiffs' Civil RICO Claim Is Otherwise Insufficiently Pled ........................... 20

V.    PLAINTIFFS' STATE LAW CLAIMS FAIL .................................................................. 21

    A.    Plaintiffs' Common Law Fraud Claim Fails for the Same Reasons That Their Securities Fraud Claims Fail ...................................................................... 21

    B.    Plaintiffs' Unjust Enrichment Claim Fails Because It Is Duplicative of Plaintiffs' Other Claims ................................................................................ 22

C.      If the Court Does Not Dismiss Plaintiffs' State Law Claims with Prejudice,
        It Should Decline to Exercise Supplemental Jurisdiction Over Them ................. 23

CONCLUSION ........................................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abramson v. Newlink Genetics Corp.*,
  965 F.3d 165 (2d Cir. 2020) ................................................................................. 15

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
  677 F.3d 60 (2d Cir. 2012) ............................................................................ 2, 8, 9

*Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*,
  651 F. Supp. 2d 155 (S.D.N.Y. 2009) ................................................................. 21

*AIG Glob. Sec. Lending Corp. v. Banc of Am. Sec., LLC*,
  2005 WL 2385854 (S.D.N.Y. Sept. 26, 2005) ............................................... 21, 22

*Am. Med. Distribs. v. Macdonald Tuskey*,
  2018 WL 1478301 (S.D.N.Y. Mar. 23, 2018) ..................................................... 25

*Anderson v. Binance*,
  2022 WL 976824 (S.D.N.Y. Mar. 31, 2022) ..................................................... 8, 9

*Anderson v. Unilever United States, Inc.*,
  607 F. Supp. 3d 441 (S.D.N.Y. 2022) ................................................................. 23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................. 5

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) ..................................................................... 5, 6, 12, 13

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
  373 F.3d 296 (2d Cir. 2004) ............................................................................... 22

*Carnegie-Mellon Univ. v. Cohill*,
  484 U.S. 343 (1988) ........................................................................................... 24

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014) ............................................................................... 14

*Colbert v. Rio Tinto PLC*,
  392 F. Supp. 3d 329 (S.D.N.Y. 2019) ................................................................. 12

*Corsello v. Verizon N.Y., Inc.*,
  967 N.E.2d 1177 (N.Y. 2012) ............................................................................. 22

*DNV Inv. P'ship v. SGM Holdings L.L.C.*,
   670 F. App'x 732 (2d Cir. 2016) ................................................................. 19

*Dragonetti Bros. Landscaping Nursery & Florist, Inc. v. Verizon N.Y., Inc.*,
   176 N.Y.S.3d 223 (N.Y. App. Div. 2022) ................................................... 23

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009) ...................................................... 6, 13, 14

*Finkel v. Stratton Corp.*,
   962 F.2d 169 (2d Cir. 1992) ........................................................... 2, 10

*Georgia Malone & Co., Inc. v. Rieder*,
   926 N.Y.S.2d 494 (N.Y. App. Div. 2011) ................................................... 23

*In re Aegean Marine Petrol. Network, Inc. Sec. Litig.*,
   529 F. Supp. 3d 111 (S.D.N.Y. 2021) ...................................................*Passim*

*In re AT&T/DirectV Now Sec. Litig.*,
   480 F. Supp. 3d 507 (S.D.N.Y. 2020) ................................................ 17, 19

*In re Axis Cap. Holdings Ltd. Sec. Litig.*,
   456 F. Supp. 2d 576 (S.D.N.Y. 2006) ....................................................... 13

*In re Fyre Festival Litig.*,
   399 F. Supp. 3d 203 (S.D.N.Y. 2019) ....................................................... 21

*In re iAnthus Cap. Holdings, Inc. Sec. Litig.*,
   2022 WL 4539119 (S.D.N.Y. Sept. 28, 2022) ................................................ 9

*In re Mindbody, Inc. Sec. Litig.*,
   489 F. Supp. 3d 188 (S.D.N.Y. 2020) ....................................................... 16

*In re Parmalat Sec. Litig.*,
   383 F. Supp. 2d 616 (S.D.N.Y. 2005) ................................................... 16, 18

*In re Pfizer Inc. Sec. Litig.*,
   819 F.3d 642 (2d Cir. 2016) ................................................................ 10

*In re Platinum & Palladium Antitrust Litig.*,
   2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017) ................................................. 9

*In re Platinum-Beechwood Litig.*,
   427 F. Supp. 3d 395 (S.D.N.Y. 2019) ....................................................... 20

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
   2022 WL 4085677 (S.D.N.Y. Sept. 2, 2022) ...................................... 2, 17, 18, 19

*In re Vivendi, S.A. Sec. Litig.*,
  838 F.3d 223 (2d Cir. 2016) ..................................................................................... 15

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011) ..................................................................................... 2, 10, 13

*Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y.*,
  464 F.3d 255 (2d Cir. 2006) ..................................................................................... 24

*Kolari v. New York-Presbyterian Hosp.*,
  455 F.3d 118 (2d Cir. 2006) ..................................................................................... 24

*Lentell v. Merrill Lynch & Co., Inc.*,
  396 F.3d 161 (2d Cir. 2005) ..................................................................................... 15, 18

*Maersk, Inc. v. Neewra, Inc.*,
  687 F. Supp. 2d 300 (S.D.N.Y. 2009) ..................................................................................... 3, 21

*Meridian Horizon Fund, LP v. Tremont Grp. Holdings, Inc.*,
  747 F. Supp. 2d 406 (S.D.N.Y. 2010) ..................................................................................... 22

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
  651 F.3d 268 (2d Cir. 2011) ..................................................................................... 19, 20

*Morrison v. National Australia Bank Ltd.*,
  561 U.S. 247 (2010) ..................................................................................... *Passim*

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*,
  537 F.3d 168 (2d Cir. 2008) ..................................................................................... 22

*Pac. Inv. Mgmt. Co. LLC v. Mayer Brown LLP*,
  603 F.3d 144 (2d Cir. 2010) ..................................................................................... 12

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
  11 F.4th 90 (2d Cir. 2021) ..................................................................................... 16, 18

*Ramzan v. GDS Holdings Ltd.*,
  2020 WL 1689772 (S.D.N.Y. Apr. 7, 2020) ..................................................................................... 15

*SEC v. Glob. Inv. Strategy UK Ltd.*,
  2021 WL 4896127 (S.D.N.Y. Oct. 19, 2021) ..................................................................................... 8

*SEC v. Rio Tinto plc*,
  41 F.4th 47 (2d Cir. 2022) ..................................................................................... 17

*SEC v. Stoker*,
  865 F. Supp. 2d 457 (S.D.N.Y. 2012) ..................................................................................... 10

*SEC v. W.J. Howey Co.*,
  328 U.S. 293 (1946) ........................................................................................... 7

*Sitar v. Sitar*,
  854 N.Y.S.2d 536 (N.Y. App. Div. 2008) ......................................................... 22

*SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos. L.L.C.*,
  829 F.3d 173 (2d Cir. 2016) .............................................................................. 12

*Stratte-McClure v. Morgan Stanley*,
  776 F.3d 94 (2d Cir. 2015) ................................................................................ 16

*Stratte-McClure v. Morgan Stanley*,
  784 F. Supp. 2d 373 (S.D.N.Y 2011) ............................................................... 13

*Taleshpour v. Apple Inc.*,
  549 F. Supp. 3d 1033 (N.D. Cal. 2021) ............................................................ 13

*Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*,
  531 F.3d 190 (2d Cir. 2008) ................................................................................ 6

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007) ...................................................................................... 6, 15

*United Mine Workers of Am. v. Gibbs*,
  383 U.S. 715 (1966) .......................................................................................... 24

*Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*,
  2021 WL 4460547 (S.D.N.Y. Sept. 29, 2021) ................................................. 14

*Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*,
  286 F. Supp. 3d 634 (S.D.N.Y. 2017) ........................................................... 3, 20

## **Statutes**

15 U.S.C. § 78f ...................................................................................................... 8

15 U.S.C. § 78u-4 .................................................................................................. 6

18 U.S.C. § 1964 .................................................................................................. 19

**<u>Regulations</u>**

17 C.F.R. § 240.10b-5................................................................................................................ 16

**<u>Rules</u>**

Federal Rule of Civil Procedure 9 ......................................................................*Passim*

Federal Rule of Civil Procedure 12 ...................................................................... 1, 10

Defendant Dogecoin Foundation, Inc. (the "Foundation") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiffs' Second Amended Class Action Complaint (ECF No. 39 (the "SAC")) pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act (the "PSLRA").

## PRELIMINARY STATEMENT

Plaintiffs' sparse claims against the Foundation should be dismissed with prejudice because Plaintiffs fail to sufficiently plead—and, in some cases, even to plead at all—several elements of their core securities claims against the Foundation, and Plaintiffs' remaining claims fail for the same reasons as, or because they are duplicative of, Plaintiffs' deficient securities claims.

Plaintiffs have brought claims for securities fraud, Civil RICO, common law fraud, and unjust enrichment primarily relating to Elon Musk's references to the Dogecoin cryptocurrency in various Twitter posts, which allegedly deceived class members and caused them to purchase Dogecoin at artificially inflated prices.  Plaintiffs allege that Mr. Musk "deceived" purchasers by, for example, stating that "Dogecoin would be sent to the 'moon,'" when, in fact, "Dogecoin cannot be 'sent' anywhere, as it is a virtual currency."  (SAC ¶¶ 141–42.)

The Foundation, a non-profit corporation allegedly "responsible for the maintenance of Dogecoin" (SAC at 3), has been added to this action based on statements from a 2014 YouTube video that describe Dogecoin as a "groundbreaking way for people to receive cash payments" while avoiding a "middle-man."  (*Id*. ¶¶ 81–89.)  While the SAC is meritless with respect to all defendants, Plaintiffs do not even attempt to make an individual fraud case against the Foundation, neglecting to plead any facts concerning the Foundation with respect to several elements of Plaintiffs' claims.  The SAC should be dismissed with prejudice for several independent reasons.

*First*, Plaintiffs have not pled, as they must, that they have engaged in (1) "transactions in securities listed on domestic exchanges" or (2) "domestic transactions in other securities,"

*Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 267 (2010), warranting dismissal of each of their securities claims.  Plaintiffs have pled only that they purchased Dogecoin and reside in the United States; but a "purchaser's citizenship or residency does not affect where a transaction occurs." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012).

*Second*, even were Plaintiffs' securities claims to survive *Morrison*, Plaintiffs' Section 17(a) claims should independently be dismissed because "there is no private right of action under § 17(a)." *Finkel v. Stratton Corp.*, 962 F.2d 169, 175 (2d Cir. 1992).

*Third*, with respect to Plaintiffs' misrepresentation claims under Section 10(b), the only alleged misrepresentations attributed to the Foundation—a 2014 YouTube video's statements that Dogecoin is "groundbreaking" and avoids "middle-men" (SAC ¶¶ 81–89)—are untimely, not pled with particularity, and at most amount to nonactionable puffery.  Moreover, Plaintiffs fail to make distinct scienter or loss causation allegations with respect to the Foundation, and simply group the Foundation with Mr. Musk.  But "[a] complaint may not simply clump defendants together in vague allegations to meet the pleading requirements" for securities fraud, *In re Aegean Marine Petrol. Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 147 (S.D.N.Y. 2021) (citation and internal quotation marks omitted), and the Foundation bears no liability for the alleged misrepresentations of others, *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011).

*Fourth*, to the extent Plaintiffs attempt to separately plead "scheme liability" under Section 10(b), these claims are impermissibly duplicative of their purported misrepresentation claims and in any event are inadequate, among other reasons, because Plaintiffs do not plead any "inherently deceptive" act of the Foundation.  *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2022 WL 4085677, at *56, *58 (S.D.N.Y. Sept. 2, 2022).

*Fifth*, having brought a securities fraud action pursuant to the PSLRA, and having simultaneously attempted to bring a Civil RICO claim predicated on the purchase or sale of securities, Plaintiffs' "entire [RICO] claim is foreclosed by the securities fraud bar codified in the RICO statute." *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 286 F. Supp. 3d 634, 638 (S.D.N.Y. 2017).  And even were their claim not preempted, Plaintiffs fail to allege a cause of action for Civil RICO, including failing to allege that the Foundation had any role in "directing" the purported enterprise. *Maersk, Inc. v. Neewra, Inc.*, 687 F. Supp. 2d 300, 335 (S.D.N.Y. 2009).

*Finally*, with respect to Plaintiffs' remaining state law claims, Plaintiffs' unjust enrichment claim fails because it is impermissibly duplicative of Plaintiffs' (deficient) primary claims, and Plaintiffs' common law fraud claim fails for the same reasons as their securities fraud claim. Moreover, even if the Court declines to dismiss these claims with prejudice, it should decline to exercise supplemental jurisdiction over them following dismissal of Plaintiffs' federal claims.

## **BACKGROUND**[1]

### A.     The Parties and Claims

Dogecoin is a "completely digital and internet-based" cryptocurrency, "resid[ing] in a distributed database called the 'blockchain,'" which launched in 2013.  (*See* SAC ¶¶ 1, 141, 194.)[2] Dogecoin "is a 'coin' in name only as it is not a physical object," and "[o]ne can't eat, grow, or wear Dogecoin," or "live in it or on it like a house or property."  (*Id.* ¶ 74.)

The Foundation is a Colorado nonprofit corporation that the SAC characterizes as "the

---

[1] The facts are drawn from the SAC.  For purposes of this motion, the Foundation accepts as true, as it must, the SAC's well-pleaded allegations.  But it does not concede their truth and reserves the right to contest the accuracy of any facts alleged in the SAC.

[2] The Foundation cites to paragraph numbers where the SAC has numbered paragraphs and page numbers where it does not.

entity that operates Dogecoin, with an office in Colorado" (SAC at 5), and as having "been responsible for the maintenance of Dogecoin since it was founded in late 2013" (*id.* at 3).  Plaintiffs allege in the SAC that members of the Foundation's Board include Gary Lachance, Jens Wiechers, Michi Lumin, and Timothy Stebbing, and that its "Advisors" include Jared Birchall, Shibetoshi Makamoto (also known as Billy Markus), Max Keller, Vitalik Buterin, and Ross Nicoll.  (*Id.* at 5.)

As alleged in the SAC, Mr. Musk is "CEO of Twitter, SpaceX, Tesla, Inc. and the Boring Company."  (SAC at 5.)  Defendant Tesla, Inc. (with Mr. Musk and the Foundation, "Defendants") is a public corporation headquartered in Austin, Texas.  (*Id.*)

The nine-count SAC asserts the following claims: (1) a claim under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") premised on a violation of Rule 10b-5(a) (Count I); (2) a Section 10(b) Exchange Act claim premised on a violation of Rule 10b-5(b) (Count II); (3) a Section 10(b) Exchange Act claim premised on a violation of Rule 10b-5(c) (Count III); (4) a Securities Act claim under Section 17(a)(1) of the Securities Act of 1933 (the "Securities Act") (Count IV); (5) a Securities Act claim under Section 17(a)(2) (Count V); (6) a Securities Act claim under Section 17(a)(3) (Count VI); (7) a civil RICO claim (Count VII); (8) a common law fraud claim (Count VIII); and (9) an unjust enrichment claim (Count IX).  (*See* SAC ¶¶ 166–97 (Count I), 198–204 (Count II), 205–09 (Count III), 210–13 (Count IV), 214–18 (Count V), 219–21 (Count VI), 222–62 (Count VII), 263–70 (Count VIII), 271–75 (Count IX).)

### B.    Plaintiffs' Allegations

Gathering various mentions of Dogecoin from Mr. Musk's Twitter account,[3] Plaintiffs' theory of liability is that such tweets artificially inflated the price of Dogecoin, which resulted in

---

[3] (*See, e.g.*, SAC ¶¶ 17, 20, 22, 23, 26, 27, 30, 31, 36, 46, 47, 49, 50, 51, 53, 54, 55, 60, 62, 66, 67, 68, 150, 151, 153, 155, 156, 157, 160, 186, 187, 188.)

profits for Defendants and losses for class members.  Plaintiffs allege that Mr. Musk "promoted Dogecoin knowing that unlike real estate, precious metals, or traditional stocks, Dogecoin lacks any intrinsic value and absent market manipulation is unprofitable" (SAC at 3), conduct that the SAC characterizes variously as a "pyramid scheme," "Ponzi scheme," or "market manipulation."

In their 278-paragraph SAC, Plaintiffs allege only two misrepresentations by the Foundation, both of which are found in an eight-year-old YouTube video, entitled "What is Dogecoin?"  The SAC alleges that the video's statement that "there's no middle-man to take a cut" in Dogecoin transactions is "deceptive[]" because "there are in fact several fees," and that the video's statement that "Dogecoin is a groundbreaking way for people to receive cash payments" is "deceptive[]" because "Paypal, Venmo, and others" already existed.  (SAC ¶¶ 81–89.)

## PLEADING STANDARD

To survive a motion to dismiss, a complaint must contain sufficient facts to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).  Although the Court must accept as true all factual allegations in the SAC, that "tenet" is "inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

Additionally, a securities fraud plaintiff faces two layers of heightened pleading requirements.  First, "a complaint alleging securities fraud must satisfy" the particularity pleading requirements of Federal Rule of Civil Procedure 9(b), which require a plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

Second, "private securities fraud actions must also meet the PSLRA's pleading requirements."  *ATSI*, 493 F.3d at 99.  The PSLRA demands that a complaint (1) "specify each

statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . state with particularity all facts on which that belief is formed,'" *id.* (quoting 15 U.S.C. § 78u-4(b)(1)), and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009) (quoting 15 U.S.C. § 78u-4(b)(1), (2)).

With respect to scienter, "'[w]hile [the Court would] normally draw reasonable inferences in the non-movant's favor on a motion to dismiss,' the PSLRA 'establishes a more stringent rule for inferences involving scienter' because the PSLRA requires particular allegations giving rise to a strong inference of scienter." *ECA*, 553 F.3d at 196 (first alteration in original) (quoting *Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 194 (2d Cir. 2008)). "For an inference of scienter to be strong, 'a reasonable person [must] deem [it] cogent and *at least as compelling* as any opposing inference one could draw from the facts alleged.'" *ATSI*, 493 F.3d at 99 (alterations in original) (emphasis added by *ATSI* court) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007)).

Where, as here, "fraud is alleged against multiple defendants, a plaintiff must set forth separately the acts complained of by each defendant," and "[a] complaint may not simply clump defendants together in vague allegations" to meet these heightened pleading requirements. *Aegean Marine*, 529 F. Supp. 3d at 147 (citation and internal quotation marks omitted). "The failure to isolate the key allegations against each defendant supports dismissal." *Id.* (citation and internal quotation marks omitted).

**ARGUMENT**

Seemingly bringing a class action securities litigation against the Foundation as an afterthought, Plaintiffs make no serious attempt to provide individualized allegations pleading securities fraud or any other cause of action against the Foundation.  As threshold matters, all of Plaintiffs' securities claims should be dismissed because Plaintiffs have failed to allege any domestic transactions under *Morrison*, and Plaintiffs' Section 17(a) claims should be dismissed because there is no private right of action thereunder.  With respect to the merits of Plaintiffs' Section 10(b) claims, Plaintiffs allege only two misrepresentations by the Foundation—which are both untimely and nonactionable—and fail even to include allegations regarding the Foundation's scienter or loss causation.  Plaintiffs' Civil RICO claim should also be dismissed, both because it is preempted by the PSLRA and because Plaintiffs have failed to adequately plead a cause of action.  And Plaintiffs' state law claims should be dismissed on their merits for the same reasons as, or as duplicative of, Plaintiffs' deficient federal claims.

**I.      *MORRISON* BARS PLAINTIFFS' SECURITIES CLAIMS[4]**

Counts I through VI of the SAC should be dismissed pursuant to *Morrison*.  In *Morrison*, the Supreme Court held that Section 10(b) of the Exchange Act does not apply extraterritorially and reaches only (1) "transactions in securities listed on domestic exchanges" and (2) "domestic transactions in other securities."  561 U.S. at 267.  And "[c]ourts have held that the reasoning of

---

[4] Because the SAC is deficient on its face for several independent reasons, and given the potential factual issues implicated in such an analysis, on this motion, the Court need not reach the issue of whether Dogecoin qualifies as a "security" under the Exchange Act.  The Foundation, however, maintains that Dogecoin is not a security because, among other reasons, it does not "involve[] an investment of money in a common enterprise with profits to come solely from the efforts of others," *SEC v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946), a fact Plaintiffs apparently concede in alleging that trading Dogecoin is "gambling" and not "investing" (*see* SAC ¶¶ 248–62).

*Morrison* applies to other provisions of the federal securities laws." *SEC v. Glob. Inv. Strategy UK Ltd.*, 2021 WL 4896127, at *6 (S.D.N.Y. Oct. 19, 2021). Plaintiffs' securities claims should be dismissed because Plaintiffs have failed to adequately allege that they engaged in transactions satisfying either prong of *Morrison*.

### A.   Plaintiffs Have Not Pled a Transaction in a Security Listed on a Domestic Exchange

The SAC fails *Morrison's* first prong because Plaintiffs fail to plead that they transacted in a "security listed on an American stock exchange." *Morrison*, 561 U.S. at 273. Although Plaintiffs broadly allege that "Dogecoin was listed on exchanges Moolah, Cryptsy, Coins-E and Coined Up" (SAC ¶ 2), and that it is "presently traded on 50 crypto exchanges" (*id.* ¶ 173), Plaintiffs allege neither that they purchased Dogecoin through any of these "crypto exchanges" nor that any of these exchanges meet the narrow criteria for constituting a "domestic exchange" under *Morrison*. *See, e.g., Anderson v. Binance*, 2022 WL 976824, at *4 (S.D.N.Y. Mar. 31, 2022) (explaining that "[a]n exchange is considered 'domestic' if it registers as a 'national securities exchange," and finding that Binance, a digital exchange, was not a "national securities exchange" under *Morrison*); *see also* 15 U.S.C. § 78f(b) (requiring that exchanges register with the SEC and comply with various requirements to constitute a "national securities exchange").

### B.   Plaintiffs Have Not Pled a Domestic Transaction in Other Securities

The SAC fails *Morrison's* second prong because it contains no allegation that Plaintiffs engaged in "domestic transactions in other securities." *Morrison*, 561 U.S. at 267. To sufficiently allege "a domestic securities transaction in securities not listed on a domestic exchange, . . . a plaintiff must allege facts suggesting that irrevocable liability was incurred or title was transferred within the United States," including by alleging "facts concerning the formation of the contracts, the placement of purchase orders, the passing of title, or the exchange of money." *Absolute*

*Activist*, 677 F.3d at 68, 70.  Here, the SAC is devoid of any allegations concerning the indicia of domesticity of Plaintiffs' purported transactions.

Plaintiffs' allegation that they reside in the United States (*see* SAC at 4–5) has no impact on this analysis, as a "purchaser's citizenship or residency does not affect where a transaction occurs; a foreign resident can make a purchase within the United States, and a United States resident can make a purchase outside the United States."  *Absolute Activist*, 677 F.3d at 69 (citation and internal quotation marks omitted); *see also In re Platinum & Palladium Antitrust Litig.*, 2017 WL 1169626, at *27 (S.D.N.Y. Mar. 28, 2017) ("The Second Circuit's conclusion in *Absolute Activist* could not have been clearer: for the purpose of determining whether a transaction is 'domestic' within the meaning of *Morrison*, a party's residency or citizenship is irrelevant." (citations and internal quotation marks omitted)); *Anderson*, 2022 WL 976824, at *4 (finding that, under *Morrison*, "Plaintiffs must allege more than stating that Plaintiffs bought tokens" from Binance's website "while located in the U.S.").

Because Plaintiffs have not even attempted to "allege facts indicating that irrevocable liability was incurred or that title was transferred within the United States," *Absolute Activist*, 677 F.3d at 62, they have not pled a "domestic transaction" and their securities claims should be dismissed.  *See In re iAnthus Cap. Holdings, Inc. Sec. Litig.*, 2022 WL 4539119, at *5 (S.D.N.Y. Sept. 28, 2022) ("Whether plaintiffs' claims are sufficiently domestic under *Morrison* is a merits question that properly is considered on a motion to dismiss under Rule 12(b)(6)." (citation and internal quotation marks omitted)).

## II.   PLAINTIFFS' SECTION 17(a) CLAIMS FAIL BECAUSE SECTION 17(a) PROVIDES NO PRIVATE RIGHT OF ACTION

Even were the Court to find that Plaintiffs have adequately alleged domestic transactions within the meaning of *Morrison*, Counts IV through VI of the SAC should be dismissed because

the statute that Plaintiffs invoke—Sections 17(a)(1), (a)(2), and (a)(3) of the Securities Act—plainly provides no private right of action.  *See, e.g.*, *Finkel*, 962 F.2d at 175 ("[T]here is no private right of action under § 17(a)."); *SEC v. Stoker*, 865 F. Supp. 2d 457, 465 (S.D.N.Y. 2012) ("[T]here is no private right of action—implied or explicit—under Section 17(a).").

### III.    PLAINTIFFS' SECTION 10(b) CLAIMS ARE UNTIMELY AND DEFICIENT

To the extent that Plaintiffs' remaining securities claims survive *Morrison*, they should be dismissed as untimely and deficiently pled.  Plaintiffs bring three separate counts under Section 10(b) of the Exchange Act and Rules 10b-5(a), 10b-5(b), and 10b-5(c) thereunder (s*ee* SAC ¶¶ 166–97 (10b-5(a) (Count I)), 198–204 (10b-5(b) (Count II)), 205–09 (10b-5(c) (Count III))), and they fail to state a claim under any of them.

#### A.    Mr. Musk's Tweets Are Not Attributable to the Foundation

For the reasons set forth in the memorandum of law of Mr. Musk and Tesla, Inc. (*see* Mem. of Law in Supp. of Defs. Elon Musk's and Tesla, Inc.'s Mot. to Dismiss Pls.' Second Am. Compl. § II.A), which are incorporated herein by reference, Plaintiffs have failed to plead an actionable misrepresentation or omission related to any of the statements in the SAC allegedly attributed to Mr. Musk, or to otherwise support any cause of action with respect to those statements.

But the Foundation in any event bears no liability for the statements of others.  "'To be liable . . . [a defendant] must have "made" the material misstatement[]' at issue."  *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 655 (2d Cir. 2016) (alterations in original) (quoting *Janus*, 564 U.S. at 141).  "As the Supreme Court explained in *Janus*, 'the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it.'"  *Id.* at 656 (quoting *Janus*, 564 U.S. at 142).  Here, Plaintiffs have failed to plausibly allege that the Foundation held any influence over the content and/or methods of

Mr. Musk's statements, much less "ultimate authority."[5]

Nor can Plaintiffs plead fraud by association. Although Plaintiffs attempt to group the defendants together (*see, e.g.,* SAC ¶ 199 ("Defendants made untrue statements of a material fact and omitted to state material facts.")), Plaintiffs "must set forth separately the acts complained of by each defendant," and "may not simply clump defendants together in vague allegations," *Aegean Marine*, 529 F. Supp. 3d at 147 (citation and internal quotation marks omitted).

Accordingly, although none of Mr. Musk's statements or omissions (*see, e.g.*, ECF Nos. 39-9–39-29 (Mr. Musk's tweets)) are actionable, they in any event cannot independently support any misrepresentation claim against the Foundation.

## B.   Claims Based on the Two Statements That Plaintiffs Attribute to the Foundation Are Untimely

The *only* representations that Plaintiffs attempt to attribute to the Foundation are two statements in a "What is Dogecoin?" YouTube video posted on Dogecoin.com. (SAC ¶¶ 81–89.) These include (1) a statement that "Dogecoin is a groundbreaking way for people to receive cash payments," which is allegedly "deceptive[]" in light of the previous advent of "Paypal, Venmo, and others," and (2) a statement that "there's no middle-man to take a cut" in Dogecoin transactions," which is allegedly deceptive because "there are in fact several fees." (*Id.*)

As explained below, these alleged misrepresentations plainly are not actionable, but as a threshold issue they are time barred. The relevant YouTube video embedded in the Dogecoin.com website was published on YouTube on April 26, 2014, over eight years before Plaintiffs filed this

---

[5] Plaintiffs allege, in a conclusory manner, that Mr. Musk was elected "Dogecoin CEO." (SAC ¶ 16.) But Plaintiffs are referring to an "online survey" conducted on Twitter regarding a position that does not exist (*id.*); they do not plausibly allege that Mr. Musk had any role at the Foundation pursuant to which the Foundation could control Mr. Musk.

action.[6]  Plaintiffs' Exchange Act claims with respect to the statements in this video are therefore barred by the Exchange Act's five-year statute of repose.  *See SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos. L.L.C.*, 829 F.3d 173, 177 (2d Cir. 2016) ("Because the complaint fails to allege that the defendants made any misrepresentations within five years of the filing of [the] complaint, [plaintiff's] Section 10(b) and Rule 10b–5 claims are time-barred under § 1658(b)(2)'s five-year statute of repose."); *Colbert v. Rio Tinto PLC*, 392 F. Supp. 3d 329, 337 (S.D.N.Y. 2019) (dismissing "all claims predicated on misrepresentations or omissions that occurred before [five years from the date that the complaint was filed]").

### C.    Plaintiffs' 10b-5(b) Claim Against the Foundation Is Deficiently Pled

Even were Plaintiffs' 10b-5(b) claim timely, it is deficiently pled.  To maintain a claim "under § 10(b) and Rule 10b–5(b), a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Pac. Inv. Mgmt. Co. LLC v. Mayer Brown LLP*, 603 F.3d 144, 151 (2d Cir. 2010) (citation and internal quotation marks omitted).  Plaintiffs fail to allege facts demonstrating several of these independent elements.

#### 1.    Plaintiffs Fail to Plead a Material Misrepresentation or Omission

Plaintiffs fail to satisfy the basic requirements of Rule 9(b) and the PSLRA with respect to the Foundation's alleged misstatements—that Dogecoin is "groundbreaking" and avoids "middle-men" (SAC ¶¶ 81–89).  Plaintiffs fail, for example, to "identify the speaker" of the statements.  *ATSI*, 493 F.3d at 99.  Although Plaintiffs allege that the Foundation's website

---

[6] Dogecoin.com (last visited Mar. 31, 2023) (containing embedded link to Noah Harrison, *What is Dogecoin?*, YouTube (Apr. 26, 2014), https://www.youtube.com/embed/_KVZmS_UO5I).

"includes" the relevant video, there is no allegation of the maker of the statements within that video (SAC ¶¶ 82–83 ("This video deceptively claims . . . [T]he video states . . . .")), and thus no allegation that the Foundation "made" such statements, *Janus*, 564 U.S. at 141.

Plaintiffs likewise fail to allege "when the statements were made," *ATSI*, 493 F.3d at 99, and to explain "with specificity why and how" the misstatements were "false when made," *Stratte-McClure v. Morgan Stanley*, 784 F. Supp. 2d 373, 384 (S.D.N.Y 2011) (citation and internal quotation marks omitted).  Plaintiffs omit these required facts for good reason—as explained above, these statements "were made" in 2014, rendering them time barred.

Plaintiffs further fail to allege facts concerning the materiality of these purported misrepresentations.  A plaintiff's "materiality allegations" must "comply with the particularity requirements of Fed. R. Civ. P. 9(b) and the PSLRA," and while "the materiality of the alleged misstatements or omissions cannot be pled in a conclusory or general fashion," *In re Axis Cap. Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 585 (S.D.N.Y. 2006) (citations and internal quotation marks omitted), Plaintiffs fail to provide even conclusory allegations of materiality.

Moreover, even were these alleged misrepresentations timely and pled with particularity, they are not actionable.  The representation that Dogecoin is "groundbreaking" is "too general to cause a reasonable investor to rely upon" it, rendering it "no more than 'puffery' which does not give rise to securities violations."  *ECA*, 553 F.3d at 206; *see also Taleshpour v. Apple Inc.*, 549 F. Supp. 3d 1033, 1040 (N.D. Cal. 2021) (defendant's "statements that the laptops are . . . '***groundbreaking***' . . . are subjective and immeasurable assertions and thus constitute nonactionable puffery" (emphasis added)).

Similarly, the vague, standalone statement that there is no "middle-man" for Dogecoin is not "sufficiently specific for an investor to reasonably rely on that statement as a guarantee of some

concrete fact or outcome." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 185 (2d Cir. 2014).  And to the extent this statement does have ascertainable meaning, Plaintiffs' allegations, "in context," do not plausibly suggest its falsity.  *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 2021 WL 4460547, at *8 (S.D.N.Y. Sept. 29, 2021).  The video's statement that "there's no middle-man" overlays an image labeled "Bank,"[7] representing at most that no intermediary financial institution is necessary for Dogecoin transactions.  This statement simply makes no representation regarding the types of transactional fees—"miners' fees" and "spread fee[s]"—that Plaintiffs allege users incur.  (*See* SAC ¶ 85–86.)  And although Plaintiffs allege that exchange purchasers of Dogecoin "pay a fee" to that exchange (*id.* ¶ 84), there is no allegation that users must—and, in fact, users need not—use an exchange for their purchases.

### 2.   Plaintiffs Fail to Plead Scienter

Even had Plaintiffs pled an actionable, timely misrepresentation, Plaintiffs fail to allege facts concerning, much less facts "giving rise to a strong inference of," the Foundation's scienter. *ECA*, 553 F.3d at 196.  Plaintiffs fail even to *include* the Foundation in the SAC's "Scienter" section, which focuses entirely on Mr. Musk, and which concludes with the conclusory allegation that, "[f]or the foregoing reasons, ***Musk acted with the scienter*** of intentionally misleading for the purpose of manipulating the Dogecoin market for profit . . . ."  (SAC ¶ 165 (emphasis added).)

The lone scienter allegation relating to the Foundation, found in the "Facts and Allegations" section of the SAC—that the Foundation's "scienter is evident" from the "What is Dogecoin?" video (SAC ¶ 81)—is conclusory and plainly insufficient to create an inference of

---

[7]  Dogecoin.com (last visited Mar. 31, 2023) (containing embedded link to Noah Harrison, *What is Dogecoin?*, YouTube (Apr. 26, 2014), https://www.youtube.com/embed/_KVZmS_UO5I, at 0:44).

scienter that is "cogent and compelling." *Tellabs*, 551 U.S. at 324.  The most generous reading of that allegation is that the Foundation's scienter can be inferred from the purportedly false statements alone—but "*[s]cienter* and falsity are two distinct elements of a Section 10(b) claim," and "[a]ccepting plaintiffs' 'buy one get one free' approach to the law would obviate Section 10(b)'s requirement to allege scienter and Rule 9 and the PSLRA's requirement to plead allegations of fraud with particularity." *Ramzan v. GDS Holdings Ltd.*, 2020 WL 1689772, at *5 (S.D.N.Y. Apr. 7, 2020); *see also id.* ("That is, according to plaintiffs, if they allege falsity, no more is required to demonstrate *scienter*.  This is a fundamental misstatement of the law.").

3.   Plaintiffs Fail to Plead Loss Causation

Plaintiffs also fail to adequately plead loss causation, which "is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 260 (2d Cir. 2016) (quoting *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172 (2d Cir. 2005)).  "To establish loss causation, Plaintiffs must demonstrat[e] that the subject of the fraudulent statement or omission was the cause of the actual loss suffered." *Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 179 (2d Cir. 2020) (alteration in original) (citations and internal quotation marks omitted).

Plaintiffs' loss causation allegations are deficient as to all defendants, but here, again, Plaintiffs simply make no allegations with respect to the Foundation itself.  Plaintiffs make no allegations regarding the price impact of the statements allegedly attributable to the Foundation. Nor do Plaintiffs allege any materialization of the risk or corrective disclosure specific to those statements. *See Vivendi*, 838 F.3d at 261–62 (to satisfy loss causation, a plaintiff must "prove losses resulting from the revelation of the truth" by showing "a corrective disclosure describing the precise fraud inherent in the alleged misstatements, or through events constructively disclosing the fraud").  Thus, as with falsity and scienter, Plaintiffs do not even attempt to satisfy the causation

15

element of their securities fraud claim with respect to the Foundation.  (*See, e.g.*, SAC ¶¶ 276–78 (failing to mention the Foundation in the SAC's loss causation section).)

*    *    *

Thus, Plaintiffs' 10b-5(b) claim is deficient for multiple reasons and should be dismissed.[8]

### D.    Plaintiffs' 10b-5(a) and (c) Claims Are Likewise Deficiently Pled

"[S]ubsections (a) and (c) of Rule 10b-5 . . . prohibit (respectively) 'employ[ing] any device, scheme, or artifice to defraud,' and 'engag[ing] in any act, practice, or course of business which operates or would operate as a fraud or deceit.'"  *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 105 (2d Cir. 2021) (first alteration added) (quoting 17 C.F.R. § 240.10b-5).  "To state a scheme liability claim [under 10b-5(a) or (c)], a plaintiff must show: '(1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance.'"  *Id.* (quoting *In re Mindbody, Inc. Sec. Litig.*, 489 F. Supp. 3d 188, 216 (S.D.N.Y. 2020)).

Further, "[b]ecause scheme claims sound in fraud, they are subject to the heightened pleading requirements of [Rule 9(b)]," and, to "maintain a 10b–5(a) or (c) claim, a plaintiff must [therefore] specify 'what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and the effect the scheme had on investors in the securities at issue.'"  *Plumber & Steamfitters*, 11 F.4th at 105 (quoting *In re Parmalat Sec. Litig.*,

---

[8] Plaintiffs do not appear to allege any material omission theory with respect to the Foundation. But to the extent that Plaintiffs' general allegations regarding "Defendants' omissions" (*see, e.g.*, SAC ¶ 201) could be construed to include the Foundation, Plaintiffs fail both "to isolate the key allegations against" the Foundation, *Aegean Marine*, 529 F. Supp. 3d at 147 (citation and internal quotation marks omitted), and to allege why any representation by the Foundation was rendered "inaccurate, incomplete, or misleading" by the purported material omissions, *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 101 (2d Cir. 2015) (citation and internal quotation marks omitted). Further, Plaintiffs' failure to allege scienter and loss causation likewise bars any omission theory.

383 F. Supp. 2d 616, 622 (S.D.N.Y. 2005)).  Notably, misstatements and omissions cannot, alone, form the basis for scheme liability.  *SEC v. Rio Tinto plc*, 41 F.4th 47, 53–56 (2d Cir. 2022); *see id.* at 54 ("Were misstatements and omissions alone sufficient to constitute a scheme, the scheme subsections would swallow the misstatement subsections.").

Plaintiffs have failed to state Rule 10b-5(a) and (c) claims against the Foundation for several independent reasons.

### 1.   Plaintiffs' Scheme Claims Are Duplicative of Their 10b-5(b) Claims

As an initial matter, Plaintiffs' scheme liability claims should be dismissed because they are premised on alleged misstatements and omissions.  In pleading Counts I (10b-5(a)) and III (10b-5(c)), Plaintiffs point to a series of alleged misstatements and omissions.  (*See* SAC ¶¶ 169 ("Defendants made ***false statements*** to drive up share prices and make profits for themselves, their families, employees, and friends at the expense of Plaintiffs and the classes." (emphasis added)), 170 ("Defendants knew but ***failed to inform*** Plaintiffs and the classes that Dogecoin would fail as soon as new people stopped buying Dogecoin at higher prices." (emphasis added)), 176 ("Musk . . . ***admitted*** . . . " (emphasis added)), 177 ("Musk ***explicitly stated*** . . ." (emphasis added)).)

Plaintiffs even ground their market manipulation theory in purportedly false statements and omissions.  (*See id.* ¶¶ 183 ("Defendant Musk ***manipulated the market*** in violation of securities laws ***by knowingly and/or recklessly tweeting*** over one hundred Dogecoin-specific tweets from 2019 to 2022 . . . ." (emphasis added)), 186 ("***Musk manipulated the market*** in violation of securities laws ***by tweeting regularly*** to his followers . . ." (emphasis added)).)

In short, Plaintiffs fail to allege any "inherently deceptive act[s]"—separate and apart from the alleged misstatements and omissions—such as "sham agreements, sham transactions, sham companies, or undisclosed payments."  *Turquoise Hill*, 2022 WL 4085677, at *58; *see also In re AT&T/DirectTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 534 (S.D.N.Y. 2020) ("[A] scheme liability

claim is aimed at inherently deceptive conduct . . ." (citation and internal quotation marks

omitted)).  Accordingly, Plaintiffs' 10b-5(a) and (c) claims should be dismissed.  *See Lentell*, 396

F.3d at 177 ("[W]here the sole basis for such claims is alleged misrepresentations or omissions,

plaintiffs have not made out a market manipulation claim under Rule 10b–5(a) and (c) . . . .").

        2.     <u>Plaintiffs Fail to Plead Any Inherently Deceptive Acts by the Foundation</u>

Even if Plaintiffs' 10b-5(a) and (c) claims are not dismissed as duplicative of Plaintiffs'

10b-5(b) claims, they should be dismissed because Plaintiffs fail to allege with particularity that

the Foundation did anything "inherently deceptive."  *Turquoise Hill*, 2022 WL 4085677, at *58.

 Insofar as Plaintiffs refer to "Defendants" without differentiating among and between

them,[9] those allegations are insufficient to plead the Foundation's liability.  *See Plumber &*

*Steamfitters*, 11 F.4th at 105 ("To maintain a 10b–5(a) or (c) claim, a plaintiff must specify 'what

deceptive or manipulative acts were performed, ***which defendants performed them***, when the acts

were performed, and the effect the scheme had on investors in the securities at issue.'" (emphasis

added) (quoting *Parmalat*, 383 F. Supp. 2d at 622)); *see also Aegean Marine*, 529 F. Supp. 3d at

147 ("A complaint may not simply clump defendants together in vague allegations to meet the

pleading requirements of Rule 9(b)." (citations and internal quotation marks omitted)).

And as for the handful of acts that Plaintiffs allege that the Foundation performed (*see,*

*e.g.*, SAC ¶¶ 3 (setting up a twitter account), 14 ("promot[ing] Dogecoin"), 33 ("bought and sold

---

[9] (*See, e.g.*, SAC ¶¶ 69 ("As a result of Defendants' illicit activities, false tweets, and publicity
stunts all used for market manipulation . . ."), 167 ("Defendants individually and collectively, by
the use of mail or instruments of transportation or communication in interstate commerce, or by
use of the mails, directly or indirectly, knowingly and/or recklessly did employ devices, schemes
and artifices to defraud Plaintiffs and the classes . . ."), 206 ("Defendants engaged in acts, practices,
and a course of business which operated and operates as a fraud or deceit upon Plaintiffs and the
classes . . .", 208 ("Defendants defrauded Plaintiffs . . .")).

Dogecoin for profit"), 100 ("recruit[ing] investors")), none are "inherently deceptive." *Turquoise Hill*, 2022 WL 4085677, at *58; *see also AT&T/DirectV Now*, 480 F. Supp. 3d at 534.

3. <u>Plaintiffs Fail to Plead Scienter and Loss Causation</u>

Further, had Plaintiffs sufficiently alleged an "inherently deceptive act" that was distinct from the alleged misrepresentations, Plaintiffs fail to adequately plead scienter and loss causation for the same reasons discussed above in connection with Rule 10b-5(b).

*      *      *

Accordingly, Plaintiffs' 10b-5(a) and (c) claims are deficient and should be dismissed.

## IV. PLAINTIFFS' CIVIL RICO CLAIM IS PREEMPTED BY THE PSLRA AND FAILS BECAUSE IT IS OTHERWISE DEFICIENTLY PLED

Plaintiffs' Civil RICO claim (SAC ¶¶ 222–62 (Count VII)), is preempted by the PSLRA and, even if it were not, fails because Plaintiffs' allegations are insufficient.

### A. The PSLRA Preempts Plaintiffs' Civil RICO Claim

The PSLRA's RICO Amendment provides that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish" a predicate violation, 18 U.S.C. § 1964(c), and therefore establishes an absolute bar on RICO claims predicated on acts of securities fraud, including mail or wire fraud. *See MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 280 (2d Cir. 2011) ("For the foregoing reasons, we conclude that the PSLRA's RICO Amendment, 18 U.S.C. § 1964(c), bars a plaintiff from asserting a civil RICO claim premised upon predicate acts of securities fraud, including mail or wire fraud, even where the plaintiff could not bring a private securities law claim against the same defendant."); *DNV Inv. P'ship v. SGM Holdings L.L.C.*, 670 F. App'x 732, 733 (2d Cir. 2016) ("This Circuit has held that 'the [Private Securities Litigation Reform Act of 1995's] RICO Amendment, 18 U.S.C. § 1964(c), bars a plaintiff from asserting a civil RICO claim premised upon predicate acts

19

of securities fraud, including mail or wire fraud[.]'" (alterations in original)).  Where "any one of the predicate acts involves the purchase or sale of securities, the entire claim is foreclosed by the securities fraud bar codified in the RICO statute." *Zohar*, 286 F. Supp. 3d at 638.

Here, many of the alleged predicate acts involve the purchase or sale of securities.  (*See, e.g.*, SAC ¶¶ 238 ("Defendants have encouraged Plaintiffs and the classes to **buy and sell Dogecoin**." (emphasis added)), 240 ("Defendants and their servants, agents, and employees have deceived Plaintiffs and the classes into believing that Dogecoin is a valuable asset worth **purchasing, holding and trading**." (emphasis added)), 241 ("Plaintiffs and the classes would not have **purchased** Dogecoin if not for Defendants' fraudulent claims regarding the perpetual rising price of Dogecoin." (emphasis added)).)[10]  Accordingly, Plaintiffs' "entire claim" is barred by the PSLRA's RICO Amendment. *Zohar*, 286 F. Supp. 3d at 638.

## B.    Plaintiffs' Civil RICO Claim Is Otherwise Insufficiently Pled

Count VII is thus clearly barred, but even were it not, Plaintiffs have failed on the merits to plead a cause of action for Civil RICO.  As an initial matter, for the reasons set forth in Mr. Musk's and Tesla, Inc.'s brief, which are incorporated herein by reference, Plaintiffs fail to adequately allege a RICO enterprise.  (*See* Mem. of Law in Supp. of Defs. Elon Musk's and Tesla, Inc.'s Mot. to Dismiss Pls.' Second Am. Compl. § IV.B.1.)  Plaintiffs likewise fail to plead facts supporting their three purported predicate acts: wire fraud, conspiracy to commit wire fraud, and

---

[10] Plaintiffs characterize Dogecoin as a "Pyramid/Ponzi Scheme" (*see* SAC at 15) and assert that "pyramid/ponzi schemes are considered per se mail fraud, and establish a predicate act under [RICO]" (*id.* ¶ 105).  But "conduct undertaken to keep a securities fraud Ponzi scheme alive is conduct undertaken in connection with the purchase and sale of securities," *In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 448 (S.D.N.Y. 2019) (quoting *MLSMK Inv.*, 651 F.3d at 277 n.11), and therefore subject to the PSLRA's RICO Amendment.

gambling.[11]  (*See id.* § IV.B.2.)  And Plaintiffs have further failed to adequately plead proximate causation (i.e., a link between the predicate offense and their alleged injury).  (*See id.* § IV.B.3.)

Moreover, Plaintiffs' RICO claim against the Foundation additionally fails because, even if the Court finds that Plaintiffs have cleared these hurdles, Plaintiffs fail to allege that the Foundation directed the purported RICO enterprise's affairs.  *See, e.g.*, *Maersk*, 687 F. Supp. 2d at 335 ("Section 1962(c) also requires that **each defendant** conduct or participate, directly or indirectly, in the conduct of [the] enterprise's affairs. This means that **the defendant** must have had some part in **directing [the enterprise's] affairs**." (alteration in original) (emphasis added) (citation and internal quotation marks omitted)).  Simply stated, the SAC is bereft of allegations that the Foundation directed anyone to do anything, precluding RICO liability.

## V.       PLAINTIFFS' STATE LAW CLAIMS FAIL

### A.       Plaintiffs' Common Law Fraud Claim Fails for the Same Reasons That Their Securities Fraud Claims Fail

Because "the elements of common law fraud under New York law are 'substantially identical to those governing Section 10(b),' an 'identical analysis applies.'"[12] *Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 171 (S.D.N.Y. 2009) (quoting *AIG Glob.*

---

[11] As explained above, given their failure to allege material misrepresentations or omissions and scienter (among other deficiencies), Plaintiffs have not adequately alleged that the Foundation engaged in any fraud—securities, wire, or otherwise.  And with respect to gambling, Plaintiffs' allegations, which consist of a series of quotes from third parties (*see* SAC ¶¶ 250–55), are plainly insufficient to plausibly indicate that Defendants engaged in any illegal gambling.

[12] If anything, Plaintiffs have an even higher burden in pleading common law fraud because they are unable to invoke a presumption of reliance.  *See In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 217 (S.D.N.Y. 2019) ("[C]ourts in this Circuit have consistently held that a rebuttable presumption of reliance is still not available to those alleging common law fraud." (citation and internal quotation marks omitted)).  Here, Plaintiffs have failed to allege reasonable reliance on any purportedly false or misleading statements regarding Dogecoin's value or viability as an investment where, in another section of the SAC, they allege, in essence, that it is common knowledge that trading in Dogecoin is gambling, not investing.  (*See* SAC ¶¶ 248–62.)

*Sec. Lending Corp. v. Banc of Am. Sec., LLC*, 2005 WL 2385854, at *16 (S.D.N.Y. Sept. 26, 2005)).   For the reasons discussed *supra*, Plaintiffs' Section 10(b) claims are deficient. Accordingly, Plaintiffs' common law fraud claim (Count VIII) should likewise be dismissed.  *See Meridian Horizon Fund, LP v. Tremont Grp. Holdings, Inc.*, 747 F. Supp. 2d 406, 414 (S.D.N.Y. 2010) ("Since plaintiffs' Section 10(b) claims do not survive, plaintiffs' common law fraud claims, based on the same allegations of fact, must be dismissed as well.").

### B.     Plaintiffs' Unjust Enrichment Claim Fails Because It Is Duplicative of Plaintiffs' Other Claims

Plaintiffs' unjust enrichment claim should be dismissed because it is duplicative of Plaintiffs' other (inadequate) claims.

An "unjust enrichment claim in New York require[s] proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004).  While, "[i]n a broad sense, this may be true in many cases . . . unjust enrichment is not a catchall cause of action to be used when others fail," and it is "available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012).

Importantly, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Id.*  And "[t]wo claims are duplicative of one another if they 'arise from the same facts . . . and do not allege distinct damages.'"  *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (ellipsis in original) (quoting *Sitar v. Sitar*, 854 N.Y.S.2d 536, 538 (N.Y. App. Div. 2008)).

Here, Plaintiffs' unjust enrichment claim "arise[s] from the same facts" as, and is just a

repackaged version of, their other (deficient) claims.  Notably, the five paragraphs that Plaintiffs

devote to this claim contain no new allegations or theories of liability; they simply consist of a

rehashing of previous allegations and a rote recitation of the elements of unjust enrichment.  (*See*

SAC ¶¶ 271–75.)  Indeed, Plaintiffs allege that Defendants engaged in "unethical, ***tortious*** and

criminal conduct" (*id.* ¶ 272 (emphasis added)), attribute Defendants' purportedly unjust

enrichment to, among other things, Defendants' "securities violations" (*id.* ¶ 273), and provide no

distinct category or quantum of damages.  As such, the Court should dismiss Count IX as

duplicative.[13]  *See Anderson v. Unilever United States, Inc.*, 607 F. Supp. 3d 441, 463 (S.D.N.Y.

2022) ("[Because] the unjust enrichment claim is premised on the same factual allegations as those

supporting Plaintiff's other claims, and Plaintiff has not alleged distinct damages with respect to

this claim . . . the Court must dismiss Plaintiff's unjust enrichment claim as duplicative.").

### C.     If the Court Does Not Dismiss Plaintiffs' State Law Claims with Prejudice, It Should Decline to Exercise Supplemental Jurisdiction Over Them

Further, even if the Court finds that Plaintiffs' state law claims are viable (they are not), to

the extent the Court dismisses Plaintiffs' federal claims, it should decline to exercise supplemental

jurisdiction over Plaintiffs' state law claims.[14]

The Second Circuit has described supplemental jurisdiction in the following way:

> Federal district courts have supplemental jurisdiction over state-law claims that are
> so related to claims in the action within such original jurisdiction that they form
> part of the same case or controversy under Article III of the United States

---

[13] This claim in any event should be dismissed because Plaintiffs allege no relationship between the putative class members and the Foundation.  *See Dragonetti Bros. Landscaping Nursery & Florist, Inc. v. Verizon N.Y., Inc.*, 176 N.Y.S.3d 223, 225 (N.Y. App. Div. 2022) ("The unjust enrichment claim fails because . . . there is no alleged 'connection or relationship between the parties that could have caused reliance or inducement on the plaintiff's part.'" (quoting *Georgia Malone & Co., Inc. v. Rieder*, 926 N.Y.S.2d 494, 497 (N.Y. App. Div. 2011))).

[14] Plaintiffs assert that the Court has federal question jurisdiction over their federal claims and "supplemental jurisdiction over [their] New York State claims."  (SAC at 4.)

> Constitution.  As the Supreme Court stated in discussing § 1367's predecessor judicial doctrine of pendent jurisdiction, however, this is traditionally a doctrine of discretion, not of plaintiff's right.  Subsection (c) of § 1367 confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.  Of particular relevance here, a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.

*Kolari v. New York-Presbyterian Hospital*, 455 F.3d 118, 121–22 (2d Cir. 2006) (citations and internal quotation marks omitted).  In considering whether, in its discretion, a court should decline to exercise supplemental jurisdiction, it should balance the "values of judicial economy, convenience, fairness, and comity."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Notably, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain," "the balance of these factors indicates that a case properly belongs in state court," and the court "should decline the exercise of jurisdiction by dismissing the case without prejudice."  *Id.*; *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." (footnote omitted)); *Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006) ("It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims.").

Here, these factors cut in favor of the Court declining to exercise supplemental jurisdiction.

## <u>CONCLUSION</u>

For the foregoing reasons, the SAC should be dismissed.  Because Plaintiffs have already had "multiple opportunities to amend [their] complaint," and further amendment in any event "would be futile," such dismissal should be with prejudice.  *Am. Med. Distribs. v. Macdonald Tuskey*, 2018 WL 1478301, at *1 (S.D.N.Y. Mar. 23, 2018).

Dated: New York, NY
        March 31, 2023

Respectfully Submitted,

By:   */s/ Seth L. Levine*
Seth L. Levine
Chad P. Albert
Steven W. Kessler

**LEVINE LEE LLP**

Seth L. Levine
Chad P. Albert
Steven W. Kessler
1500 Broadway, Suite 2501
New York, New York 10036
Telephone: (212) 223-4400
slevine@levinelee.com
calbert@levinelee.com
skessler@levinelee.com

*Counsel for Defendant Dogecoin*
*Foundation, Inc.*