UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COLBY GOROG, JOSHUA FLINT, LOUIS ROBINSON, and MICHAEL LERRO, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br>     v.<br><br>ELON MUSK and TESLA, INC.,<br><br>                              Defendants. | Civil Action No.: 1:22-cv-05037-AKH<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY AND SANCTION DEFENSE COUNSEL** |

*Submitted By:*

EVAN SPENCER LAW, PLLC
Evan Spencer, Esq.
305 Broadway, 7th Floor
New York, NY 10007
(917) 547-4665
Evan@EvanSpencerLaw.com
EvanSpencerLaw.com

*Attorney for Plaintiffs and the Class*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................3-4

INTRODUCTION.....................................................................................................................5

FACTUAL AND PROCEDURAL BACKGROUND...................................................................6

ARGUMENT............................................................................................................................8

    I.  CONCURRENT REPRESENTATION OF DEFENDANTS GIVES
       RISE TO CONFLICTS OF INTEREST THAT REQUIRE
       DISQUALIFICATION..................................................................................................9

        A.  Musk's Conflict of Interest with Tesla is Non-Consentable........................................10

        B.  Defense Counsels are Privy to Tesla's Confidential Information...............................11

    II.  DEFENSE COUNSELS' GROSS ETHICS VIOLATIONS
        POSE SIGNIFICANT RISK OF TRIAL TAINT............................................................12

    III. ADDITIONAL SANCTIONS AND CENSURE ARE WARRANTED..........................14

CONCLUSION........................................................................................................................15

# **TABLE OF AUTHORITIES**

**CASES**                                                          **Page(s)**

*Akagi v. Turin Hous. Dev. Fund Co.*,
2017 WL 1076345 (S.D.N.Y. Mar. 22, 2017)..................................................................9

*Bedoya v. Aventura Limousine & Transp. Service, Inc.*
861 F.Supp.2d 1346 S.D.Fla. ........................................................................................13

*Canfield v. SS&C Techs. Holdings, Inc.*,
2020 WL 3960929 (S.D.N.Y. July 10, 2020) ...........................................................10-11

*Glueck v. Jonathan Logan, Inc.*,
653 F.2d 746 (2d Cir.1981).............................................................................................8

*GSA Commerce Solutions v. BabyCenter LLC*,
618 F.3d 204 (2d Cir.2010) .............................................................................................9

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*,
409 F.3d 127 (2d Cir.2005).....................................................................................8, 9, 11

*Hull v. Celanese Corp.*,
513 F.2d 568 (2d Cir.1975) .............................................................................................9

*In re Bank*,
20-90010-am, at *5 (2d Cir. May 3, 2021)………………………………………………..9

*Oliveri v. Thompson*,
803 F.2d 1265 (2d Cir. 1986) .......................................................................................14

*Papanicolaou v. Chase Manhattan Bank, N.A.*,
720 F. Supp. 1080 (S.D.N.Y. 1989) .........................................................................11, 13

*Pergament v. Ladak*,
2013 WL 3810188 (E.D.N.Y. July 23, 2013) .................................................................9

*Trimper v. Terminix Intern. Co., Ltd. Partnership*,
82 F.Supp.2d 1 (N.D.N.Y. 2000) ..................................................................................13

*U.S. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*,
948 F.2d 1338 (2d Cir. 1991) .......................................................................................14

## OTHER AUTHORITIES

28 U.S.C. § 1927 ..................................................................................................................... 14

Fed. R. Civ. P. 11 ............................................................................................................... passim

NYRPC 1.13 ............................................................................................................................ 10

NYRPC 1.7 .............................................................................................................................. 10

NYRPC 3.2 .............................................................................................................................. 13

NYRPC 3.3 .............................................................................................................................. 13

NYRPC 3.4 .............................................................................................................................. 13

NYRPC 3.6 .............................................................................................................................. 13

NYRPC 4.1 .............................................................................................................................. 13

NYRPC 4.4 .............................................................................................................................. 13

**INTRODUCTION**

Trials should be litigated and defended by attorneys, not by yes-men. Defendant Tesla, Inc. has an obvious, non-consentable conflict of interest with Defendant Elon Musk. Tesla is a publicly traded corporation whose CEO cannot unilaterally yoke its legal defense to his own purposes. Yet the law firm of Quinn Emanual Urquhart & Sullivan LLP ("Quinn Emanuel") apparently does not have a woodshed large enough to accommodate its whale client, so defense counsel is acting in this case as concurrent representatives of both Defendants, while their real loyalty is to Elon Musk alone. Tesla and Musk are also concurrently represented by Tesla attorney Allison Huebert.

Defense counsel's misconduct is not limited to their conflict of interest, it extends to their tactics in this case. Like all attorneys, defense practitioners are entitled to—and should—fight hard for their clients. But they are not permitted to fight dirty. On June 9, 2023, just three days after Defendants withdrew their opposition to the filing of Plaintiffs' Third Amended Complaint ("TAC"), Quinn Emanuel partner Alex Spiro served an extraordinary letter (**Exhibit "A"**) upon Plaintiffs' counsel Evan Spencer, alleging with zero factual support that the TAC is frivolous per Rule 11, and demanding that Plaintiffs withdraw it entirely—within three days, in outright defiance of the 21-day safe harbor provision under Rule 11(c)(2). Mr. Spiro then denigrated Mr. Spencer's competence and integrity in a superfluous and patently uncollegial manner, and after serving the letter upon Plaintiffs' counsel, defense counsel leaked it to the *New York Post*, which dutifully reported the letter on June 15, 2023, directly quoting the portion that attacked Mr. Spencer's reputation **(Exhibit "B")**. Mr. Spencer was alerted to the article by one of his clients in this case, and needed to perform considerable damage control.

5

For the reasons outlined below, defense counsel's pattern of unethical conduct now warrants disqualification and monetary sanctions before defense counsel can do further damage to the integrity of these proceedings by their flagrant efforts to undermine the Court's authority and turn this case into another one of Elon Musk's habitual tabloid sideshows.

## FACTUAL AND PROCEDURAL BACKGROUND

This is a securities fraud class action arising from a shameless course of cryptocurrency market manipulation by celebrity tycoon Elon Musk, from which Musk and Tesla, Inc., cynically profited to the tune of billions of dollars on the backs of millions of struggling Americans, including war veterans, blue collar workers, and the elderly. Plaintiffs filed their first Complaint with the Court on June 16, 2022. On September 6, 2022, Plaintiffs filed their First Amended Complaint ("FAC"), containing ten causes of action including Securities Exchange Act violations, common law fraud, and unjust enrichment. With Defendants having yet to enter an appearance, Plaintiffs filed their Second Amended Complaint ("SAC") with leave of the Court on December 13, 2022. Plaintiffs subsequently moved for lead plaintiff certification, which this Court granted on January 3, 2023.

On March 31, 2023, after nearly a year, Defendants filed their initial responses to Plaintiffs' allegations—a pair of motions to dismiss, one from then-Defendant Dogecoin Foundation, Inc. ("DCFI"), and one from Defendants Musk and Tesla, Inc. In light of these motions, Plaintiffs then voluntarily dismissed DCFI on May 31, 2023, and moved the Court that same day for leave to file their Third Amended Complaint ("TAC"). Having announced their intent to oppose that motion, Defendants withdrew their opposition after the Court mooted the briefing schedule on Defendants' motion to dismiss. Defendants then entered a stipulated

6

briefing schedule on a subsequent motion to dismiss the TAC, which the Court adopted on June 6, 2023.

Then, on June 9, 2023, defense counsel Spiro served his 3-page purported Rule 11 letter (**Exhibit "A"**) on Plaintiffs' counsel, having given Plaintiffs no indication of any defect in the TAC prior to stipulating to it being filed despite having it for over two weeks. The letter essentially demands that the TAC be withdrawn simply because Defendants denies some of its allegations and it is dishonest in many ways. First, it demands that the TAC be withdrawn in its entirety, but only addresses Plaintiffs' insider trading claims, and fails to even reference Plaintiffs' other claims, much less indicate why they violate Rule 11. It contains no affidavits or evidence in support and consists entirely of hearsay and arguments.

Second, the letter (at the middle of p. 2) lists eight Dogecoin wallets which Plaintiffs allege belonged to Musk. Spiro's letter fails to address any of the numerous allegations contained in the TAC that support Plaintiffs' focus on those particular wallets; and rather than provide any factual support showing that these allegations violate Rule 11, Mr. Spiro simply denies the wallets belonged to Musk, and then states that, "no competent attorney could form a reasonable belief that the [TAC] is well-grounded in fact." He then states (on p. 3) that, "all of the allegations of the Third Amended Complaint - are pure fabrications," which goes beyond denial of the allegations to attack opposing counsel's integrity. This extraordinary attack on the competence and integrity of a fellow member of the bar, written under the imprimatur of a prestigious white shoe firm, was then leaked by Mr. Spiro to a major circulation tabloid, the *New York Post*.

Third, the letter states that, "you were aware based on Defendants' March 31, 2023 memorandum in support of the motion to dismiss that the [Dogecoin] wallet beginning in

7

'DH5ya' does not belong to Mr. Musk, but rather belongs to Robinhood…" Putting aside the fact that of course Plaintiffs are under no obligation to take Defendants' claims about Dh5ya as gospel, Mr. Spiro's claim is untrue: the TAC makes numerous allegations showing that DH5ya does indeed belong to Musk, and specifically addresses why DH5ya cannot belong to Robinhood. *See* TAC, ¶¶ 186-191.

The letter also contains the outright false statement that, "the Third Amended Complaint contains no plausible factual allegations whatsoever establishing that [any Dogecoin wallet] belongs to Defendants." Plaintiffs are confident the Court will agree that the TAC, at ¶¶ 179-209, contains numerous plausible fact allegations establishing Defendants' ownership of Dogecoin wallets, and that Mr. Spiro knew or reasonably should have known this.

By leaking his brazenly false and bizarre letter to the press, Mr. Spiro has damaged Plaintiffs' case and Mr. Spencer's law practice. He has undermined public confidence in the integrity of the bar, disrupted Plaintiffs' attorney-client relationship, polluted the jury pool, and made it impossible to maintain a collegial working relationship, thus threatening to taint the trial of this case significantly, and irreparably. As a result of this and of defense counsels' obvious conflict of interest in jointly representing both Musk and Tesla, Plaintiffs now respectfully bring this motion to disqualify and monetarily sanction defense counsel in this case.

## ARGUMENT

A federal court's power to disqualify an attorney derives from its, "inherent power to preserve the integrity of the adversary process," *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream,* 409 F.3d 127, 132 (2d Cir.2005) (internal citation and quotation marks omitted) and is appropriate where allowing the representation to continue would pose a, "significant risk of trial taint." *Glueck v. Jonathan Logan, Inc.,* 653 F.2d 746, 748 (2d Cir.1981) (internal quotation

8

marks omitted). In exercising this power, courts look for general guidance to the American Bar Association ("ABA") and state disciplinary rules. Although the Second Circuit has emphasized that, "not every violation of a disciplinary rule will necessarily lead to disqualification," *Hempstead Video,* 409 F.3d at 132, "any doubt is to be resolved in favor of disqualification." *Hull v. Celanese Corp.,* 513 F.2d 568, 571 (2d Cir.1975) and an, "attorney's 'many years of experience is an aggravating factor'; ABA Standards for Imposing Lawyer Sanctions ("ABA Standards") § 9.22(i) (1986, amended 1992) (listing "substantial experience in the practice of law" as an aggravating factor)," *In re Bank*, 20-90010-am, at *5 (2d Cir. May 3, 2021)

### I.   CONCURRENT REPRESENTATION OF DEFENDANTS GIVES RISE TO A CONFLICT OF INTEREST THAT REQUIRES DISQUALIFICATION

The conflict of interest in this case between Tesla, Inc. (which is accused of insider trading at Musk's behest) and Musk himself (who is accused not only of insider trading but of a myriad of separate acts of fraud and market manipulation outside his capacity as Tesla CEO) is fairly obvious. Tesla investors, who own 87% of this $800 billion electric vehicle company in Texas, have no interest in helping defend Musk individually over Dogecoin in New York City, and the company's defense may be compromised by concurrent representation with Musk. "Because resolution of potential conflicts of interest is essential to maintaining the integrity of court proceedings," Plaintiffs' counsel has standing to bring a motion to disqualify based on defense counsel's conflict of interest, regardless of his position in the litigation. *Pergament v. Ladak*, 2013 WL 3810188, at *2 (E.D.N.Y. July 23, 2013).

The Second Circuit has long recognized that it is "prima facie improper" for an attorney to represent one existing client in a matter adverse to another existing client. *Hempstead Video,* 409 F.3d at 133. In such cases, the burden is on the challenged attorney, "to show, at the very least, that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of his

9

representation." *Id.* (emphasis in original). This burden is, "so heavy that it will rarely be met." *GSA Commerce Solutions v. BabyCenter LLC,* 618 F.3d 204, 209–210 (2d Cir.2010).

### A. Musk's Conflict of Interest with Tesla is Non-Consentable

"Clients may waive the conflicts of interest that arise from concurrent representation by giving informed consent to the ongoing representation, if a disinterested lawyer would perceive no impairment of professional judgment stemming from the joint representation." *Akagi v. Turin Hous. Dev. Fund Co.*, 2017 WL 1076345, at *15 (S.D.N.Y. Mar. 22, 2017) (internal citation and quotation marks omitted). Here, a disinterested lawyer would certainly perceive an impairment of professional judgment stemming from the joint representation, because if Tesla, Inc., was represented separately, its first course of action would be to file a crossclaim against Elon Musk alleging that Musk violated his duties to Tesla when he involved the company in lawbreaking.

Indeed, the divergence of interests between these co-Defendants is so obvious that no reasonable, disinterested lawyer could possibly fail to perceive, "an impairment of professional judgment stemming from joint representation." Tesla is a publicly traded vehicle manufacturer that is 87% owned by institutional investors and individuals other than Musk, and while it traded Dogecoin with insider information furnished by Musk, it is Musk in his individual capacity who manipulated the Dogecoin market over the past 4 years. Almost every one of the hundreds of tweets and other public statements alleged in the TAC were made by Musk in his individual capacity, not by Tesla. Musk's attorneys may be faced with requests for discovery that proves damaging to one client and exculpatory to the other. And Tesla may also have an interest in settling Plaintiffs' claims separately but cannot do so while jointly represented with Musk by Quinn Emanuel and Tesla's counsel Allison Huebert.

While NYRPC 1.13(d) allows a lawyer (subject to the provisions of Rule 1.7) to jointly represent a corporation together with its officers, Rule 1.7 requires that the corporation's consent be given by an appropriate official of the company other than the individual who is represented, and that consent must be given in writing. Here, it is clear that no such consent has been obtained from Tesla by Quinn Emanuel or Allison Huebert. Furthermore, even if defense counsel were to obtain such consent, at this stage of the litigation it would be insufficient to preclude disqualification, because they needed to obtain it, "prior to undertaking representation of adverse interests, not in response to a motion to disqualify." *Canfield v. SS&C Techs. Holdings, Inc.*, 2020 WL 3960929, at *5 (S.D.N.Y. July 10, 2020) (internal citations and quotation marks omitted).

### B. Defense Counsels are Privy to Tesla's Confidential Information

"One recognized form of taint arises when an attorney places himself in a position where he could use a client's privileged information against that client." *Hempstead Video, Inc.*, 409 F.3d 127, 133 (2d Cir. 2005) Furthermore, "[a]n attorney's conflicts are ordinarily imputed to his firm based on the presumption that 'associated' attorneys share client confidences." *Id*. Thus, Quinn Emanuel's joint representation both of Tesla and its CEO Musk in his individual capacity makes Quinn Emanuel privy to Tesla's confidential information in a way that precludes the firm from further representation of Musk or Tesla in this case.

Defense Counsel Spiro, in his defective letter (**Exhibit "A"**) to Plaintiffs' counsel, purports to know exactly which Dogecoin wallets do and do not belong to Tesla, Inc. Whatever the truth of Spiro's averments, it is clear that he is privy to privileged information belonging to Tesla that goes to the heart of the matters alleged in this case, but that his first loyalty is not to Tesla, but to Musk. That privileged information could easily be used by Spiro against Tesla in an

effort to keep out exculpatory testimony or other discovery that may be harmful to Musk. Because the conflict of interest between Quinn Emanuel's clients is "prima facie improper," it is now non-consentable, and because Quinn Emanuel is privy to Tesla's privileged information, the firm must be disqualified from representing either Defendant.

## II.    DEFENSE COUNSELS' GROSS ETHICS VIOLATIONS POSE SIGNIFICANT RISK OF TRIAL TAINT

By their uncollegial and legally defective Rule 11 letter of June 9, 2023, which they leaked to the *New York Post*, defense counsel has violated a myriad of ethics rules and demonstrated that their continued defense of this case poses a serious risk of trial taint. "Although courts should pause before depriving a party of the counsel of its choice, disqualification is appropriate when a lawyer's conduct might taint the case. In general, then, a district judge should disqualify the offending counsel when the integrity of the adversarial process is at stake." *Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F. Supp. 1080, 1082-83 (S.D.N.Y. 1989).

In *Papanicolaou*, the court disqualified the defendant's law firm after the attorney in charge of defending the case met with the plaintiff for ninety minutes outside the presence of plaintiff's counsel. The court noted that,

> The responsible Milbank partner disparaged Kreindler's competence. His comments are alleged to have upset the equilibrium of the relationship between Kreindler and its client, the plaintiff. In the conduct of litigation it is essential that the attorney have the full confidence of his client. Attorney-client relationships are delicate and may never fully recover from such attacks. According to Kreindler, the partner has also made it difficult for the firm to maintain a normal, professional adversarial relationship with Milbank. If the relationship between the attorneys in this case has deteriorated to the extent that plaintiff's counsel cannot feel secure, the course of the trial may well be affected, with resulting adverse consequences for the plaintiff. Accordingly, the Court concludes that Milbank should be disqualified.

720 F. Supp. 1080, 1087 (S.D.N.Y. 1989)

Here, the pre-planned publication of Mr. Spiro's malicious, false attack on Mr. Spencer's competence and integrity "upset the equilibrium of the relationship" between Mr. Spencer and his clients, one of whom read the *New York Post* article and brought it to Mr. Spencer's attention. Considerable damage control became necessary, largely because of the client's faith in the integrity of the bar and his consequent disbelief that Mr. Spiro, who is a partner in Quinn Emanuel and a lawyer for celebrity A-list clients, would lower himself to lying in the press.

Mr. Spiro's misconduct, "has also made it difficult for [Mr. Spencer] to maintain a normal, professional adversarial relationship" with Quinn Emanuel, "to the extent that plaintiff's counsel cannot feel secure." This is because the extraordinary act of leaking a purported Rule 11 letter (containing flagrant mischaracterizations of the pleadings and a false attack on opposing counsel's character) to a major circulation tabloid violates numerous provisions of the New York Rules of Professional Conduct, including the following:

> RULE 3.2 In representing a client, a lawyer shall not use means that have no substantial purpose other than to delay or prolong the proceeding or to cause needless expense.
>
> RULE 3.3(f)(2) In appearing as a lawyer before a tribunal, a lawyer shall not engage in discourteous conduct.
>
> RULE 3.4(a)(6) A lawyer shall not knowingly engage in conduct contrary to these Rules.
>
> RULE 3.6(a) A lawyer who is participating in a civil matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.
>
> RULE 4.1 In the course of representing a client, a lawyer shall not knowingly make a false statement of fact or law to a third person.

> RULE 4.4(a) In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass a third person.

Other courts have wisely cited *Papanicolaou* to support disqualification of attorneys for disparaging acts adversely affecting opposing counsel's relationship with clients. See, e.g., *Trimper v. Terminix Intern. Co., Ltd. Partnership*, 82 F.Supp.2d 1, 6+ (N.D.N.Y. 2000) and *Bedoya v. Aventura Limousine & Transp. Service, Inc*. 861 F.Supp.2d 1346, 1371+, S.D.Fla. In this case, Mr. Spiro's disparaging acts created needless expense by compelling Plaintiffs' counsel to prepare to respond, including by this motion. It was discourteous. It involved a public communication that was intended to materially prejudice the proceedings. It involved false statements of fact and law to third persons, namely the entire city of New York. And it had no substantial purpose other than to embarrass Mr. Spencer. By these ethics violations, Alex Spiro, his co-counsel Sarah Concannon and Brenna Nelinson, and Quinn Emanual have demonstrated a willingness to fight dirty that threatens to significantly taint the trial of this case. For this reason, Quinn Emanuel must be immediately disqualified from further representation of Defendants.

### III.  ADDITIONAL SANCTIONS ARE WARRANTED

The Court's inherent authority to impose sanctions includes, "the power to assess costs and attorneys' fees against either the client or his attorney where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991). Moreover, Title 28 U.S.C. § 1927 provides that any attorney appearing before a federal court, "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Sanctions imposed pursuant to § 1927 or the Court's inherent

authority are, "proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose…" *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986).

Here, the vexatious, oppressive and improper nature of Mr. Spiro's conduct is readily apparent. Defense counsel sent a confidential and libelous 3-page letter to the news media. They baselessly refused consent to a motion for leave to amend, then delayed service of their purported Rule 11 letter in bad faith until after the TAC was filed, when they had weeks to do so before the TAC was filed. Their conduct was wanton, and not only should the resulting costs incurred by Plaintiffs be reimbursed, but monetary sanctions should be imposed to deter future misconduct, to protect the public, and to uphold public trust in the integrity, authority and dignity of the judicial system and of the legal profession.

## **CONCLUSION**

As a result of their knowing and non-consentable conflicts of interest, and their deprecating and oppressive misconduct, Plaintiffs respectfully request that defense counsel be disqualified and monetarily sanctioned.

WHEREFORE, Plaintiffs respectfully request the following relief:

A) That the firm of Quinn Emanual Urquhart & Sullivan and its lawyers Alex Spiro, Sarah Concannon, and Brenna Nelinson be disqualified from representing either Defendant in this case and that they be sanctioned monetarily;

B) That Tesla attorney Allison Huebert be disqualified from this case for concurrent representation of clients with conflicting interests;

C) That Defendants be granted a reasonable period of time to obtain separate counsel;

D) That a gag order be issued against Defendants and their attorneys prohibiting them from future publications to the media regarding this case until after it is resolved;

E) And that this Court grant such other and further relief as it deems just and proper.

DATED: June 25, 2023

By: */s/ Evan Spencer*
Evan Spencer Law, PLLC
305 Broadway, 7th Floor
New York, NY 10007
Tel. 917.547.4665
Evan@EvanSpencerLaw.com

*Attorney for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 25th of June 2023, a true and correct copy of the above and foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, giving notice to all parties in this action.

*/s/Evan Spencer*
Evan Spencer