UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COLBY GOROG, JOSHUA FLINT, LOUIS ROBINSON, and MICHAEL LERRO, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>ELON MUSK and TESLA, INC.,<br><br>       Defendants. | Civil Action No.: 1:22-cv-05037-AKH |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
<u>MOTION TO DISQUALIFY AND FOR SANCTIONS</u>**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................................. 1

BACKGROUND ............................................................................................................................... 4

ARGUMENT .................................................................................................................................... 5

I. SPENCER'S DISQUALIFICATION CLAIMS ARE UNSUBSTANTIATED AND FRIVOLOUS ........................................................................................................ 5

II. SPENCER'S CLAIMS OF ETHICS VIOLATIONS ARE UNSUBSTANTIATED AND FRIVOLOUS ...................................................................... 8

III. SPENCER'S "ADDITIONAL SANCTIONS" ARGUMENTS ARE UNSUBSTANTIATED AND FRIVOLOUS ............................................................... 10

CONCLUSION ............................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Almodovar v. NYC Candy Store Shop Corp.*,
   No. 16 CIV. 3795 (KPF), 2017 WL 2874467 (S.D.N.Y. July 5, 2017) ................................... 5

*Avalos v. IAC/Interactivecorp.*,
   2014 WL 5493242 (S.D.N.Y. Oct. 30, 2014) ......................................................................... 1

*Bank v. GoHealth, LLC*,
   2021 WL 2323282 (E.D.N.Y. Mar. 8, 2021) ........................................................................ 10

*Bedoya v. Aventura Limousine & Transp. Serv., Inc.*,
   861 F. Supp. 2d 1346 (S.D. Fla. 2012) ................................................................................... 9

*Chang v. US Glob. Sys.*,
   No. LACV1803724JAKSSX, 2020 WL 11272315 (C.D. Cal. June 23, 2020) ....................... 8

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*,
   409 F.3d 127 (2d Cir. 2005) ................................................................................................ 5, 7

*Intelli-Check, Inc. v. TriCom Card Techs., Inc.*,
   No. CV03-3706(DLI)(ETB), 2005 WL 3533153 (E.D.N.Y. Dec. 22, 2005) .......................... 5

*Kennedy v. City of N.Y.*,
   2016 WL 3460417 (S.D.N.Y. June 20, 2016) ......................................................................... 5

*McCune v. Rugged Ent., LLC*,
   No. 08-CV-2677 (KAM), 2010 WL 1189390 (E.D.N.Y. Mar. 29, 2010) ......................... 8, 10

*Papanciolaou v. Chase Manhattan Bank, N.A.*,
   720 F. Supp. 1080 (S.D.N.Y. 1989) ........................................................................................ 9

*Trimper v. Terminix Inter. Co., Ltd. Partnership*,
   82 F. Supp. 2d 1 (N.D.N.Y. 2000) .......................................................................................... 9

**Rules / Statutes**

15 U.S. Code § 78u–4 .................................................................................................................. 10

28 U.S.C. § 1927 .................................................................................................................. 1, 3, 5

Fed R. Civ. P. 8 ............................................................................................................................. 9

Fed R. Civ. P. 9(b) ...................................................................................................................... 10

Fed R. Civ. P. 11 ............................................................................................1, 2, 3, 4, 8, 9, 10, 11

NY ST RPC 1.7 ................................................................................................................2, 6

NY ST RPC 1.13 ...........................................................................................................2, 5, 6

## **Other Authorities**

*Tesla, Musk Slam Dogecoin Buyers' 'Fanciful' Fraud Suit* ............................................................11

Black's Law Dictionary ..................................................................................................6

Defendants Elon Musk and Tesla, Inc. ("Defendants") respectfully submit this memorandum of law in opposition to Plaintiffs' Motion to Disqualify and Sanction Defense Counsel, ECF No. 82 ("Motion" or "Mot.").

## INTRODUCTION

In dismissing a separate proceeding brought by Plaintiffs' counsel, Evan Spencer of Evan Spencer Law PLLC ("Spencer"), a court in this District observed that counsel's arguments did "*not pass the laugh test.*" *Avalos v. IAC/Interactivecorp.*, No. 13-CV-8351 (JMF), 2014 WL 5493242, at *6 (S.D.N.Y. Oct. 30, 2014) (emphasis added). The Motion before this Court likewise does not pass the laugh test—but there is absolutely nothing funny about it. Indeed, Spencer's unfounded and audacious allegations of purported conflicts of interest and ethical improprieties by undersigned counsel are so improper that Spencer's Motion *itself* is sanctionable.

Within days of Defendants serving Spencer with a memorandum of law and supporting declarations—which identified critical errors in Spencer's *fourth* complaint in this action—under Federal Rule of Civil Procedure 11 (which made Spencer aware that, unless defects identified in that motion are cured, Defendants intend to file the motion with this Court at the conclusion of the 21-day safe harbor period on July 14, 2023), Spencer filed his Motion with this Court, seeking to disqualify undersigned counsel from representing Defendants for purported "conflicting interests" and "leaking" correspondence to the press. Spencer's Motion (filed without first meeting and conferring with undersigned counsel) is an egregious abuse of process, yet another fanciful work of fiction by Spencer in a long chain of such pleadings, a waste of this Court's time, and an insult to undersigned counsel, well-regarded members of the Bar of this Court and recently admitted by the Court *pro hac vice*. Spencer not only utterly fails to make *any* "particularized showing of bad faith" supported by the "clear evidence" required for the Court to impose sanctions under 28 U.S.C. § 1927 or this Court's inherent authority, he fails to make *any* showing of bad faith or provide *any*

evidence to support his assertions. Moreover, Spencer inexplicably attaches to his Motion as an exhibit the very same correspondence from undersigned counsel that he claims is "fight[ing] dirty" and harmed his personal and professional interests. Mot. at 5.

Spencer first argues that Defendants have conflicting interests and should thus be disqualified because "Tesla is a publicly traded corporation whose CEO cannot unilaterally yoke its legal defense to his own purposes," *id.*, even though New York expressly allows lawyers to represent companies and their officers concurrently. NY ST RPC Rule 1.13(d) ("A lawyer representing an organization may also represent any of its directors, officers, employees . . . ."). Spencer speculates, without basis, that "it is clear that no [] consent [under NY ST RPC Rule 1.7] has been obtained from Tesla by Quinn Emanuel or Allison Huebert" for the representation of both clients, *id.* at 11, but consent is only necessary where a lawyer represents *adverse* parties. There is no adversity here. Further, last undersigned counsel checked, Spencer does not have access to counsel's files or a copy of the engagement letter setting forth counsel's terms of representation. Nor is it undersigned counsel's obligation to prove to Spencer the wholly unsubstantiated and frivolous nature of his claim of "conflict."

Spencer's second argument is equally defective. Spencer characterizes undersigned counsel's Rule 11 letter—which Spencer attaches to his Motion and speaks for itself, ECF No. 83-1—as "uncollegial and legally defective," Mot. at 12, and accuses undersigned counsel of "leaking" the letter to the *New York Post*, purportedly "pollut[ing] the jury pool, and ma[king] it impossible to maintain a collegial working relationship," *id.* at 8. But Spencer's sole substantiation for this accusation is the statement in the article itself that the author "reviewed" the letter. ECF No. 83-2. Thus, not only does Spencer wholly fail to provide any substantiation for his allegation that the *Post* article had anything to do with undersigned counsel, it is Spencer—not undersigned

2

counsel—who prematurely published counsel's Rule 11 allegations with this Court by publicly docketing the letter and detailing its contents in the Motion. *Id.* at 5, 7-8. Further, even if Spencer had provided this Court with the "clear evidence" required to support a motion under 28 U.S.C. § 1927, Spencer fails to cite any authority in his Motion that doing so was improper, and the law is precisely to the contrary. Rule 11 makes clear that during the safe harbor period, the Rule 11 motion and memorandum are not to be presented to the *Court*. Spencer does not allege that undersigned counsel prematurely filed their Rule 11 allegations with the Court, and it is Spencer who docketed the letter.

*Finally*, Spencer asserts that undersigned counsel should be sanctioned for engaging in the "wanton" conduct of "refus[ing] consent to a motion for leave to amend" and "delay[ing] service" of the "confidential" and "libelous" Rule 11 letter. Mot. at 15. Even if these bizarre allegations were true, the alleged conduct is not sanctionable under any standard. To be clear: It is Spencer who is causing delay and acting wantonly and libelously, not undersigned counsel. Spencer has now made *four* ineffective attempts at pleading claims against one of the largest corporations—and one of the most high-profile executives—in the world. Despite the obviously frivolous nature of each complaint, Spencer has continued to broadcast his case to the media, just as he has chosen to broadcast undersigned counsel's private communication regarding the fundamental defects in the Third Amended Complaint, ECF No. 77 ("TAC") to the public, in hopes of distracting the Court, his clients, and the public from the deficiencies of his claims.

In sum, this Court should not countenance Spencer's clear (and desperate) retaliatory act and should deny Spencer's motion. At the appropriate time—*after* the expiration of the safe harbor period—Defendants will present their own, meritorious, Rule 11 motion to the Court.

**BACKGROUND**

On June 7, 2023, Spencer filed Plaintiffs' TAC, in which Plaintiffs purport to assert claims for securities fraud, insider trading, common law fraud, and unjust enrichment. TAC ¶¶ 210-63. The TAC is Plaintiffs' *fourth* attempt to plead a claim, filed after Defendants' motions to dismiss had been pending for nearly 60 days. ECF Nos. 59-62. On June 9, in an effort to avoid Rule 11 motion practice, undersigned counsel sent a letter to Spencer pointing out fatal deficiencies in the TAC and asking Plaintiffs to voluntarily withdraw it. ECF No. 83-1 (the "June Letter").[1] Spencer did not respond.

The June Letter was not intended to trigger the running of the Rule 11(c)(2) safe harbor, but rather to provide Spencer with an opportunity to voluntarily withdraw Plaintiffs' demonstrably false TAC *before* service of a formal Rule 11 motion. On June 15, the *New York Post*—which has independently reported on this litigation since its inception—published an article, entitled "Elon Musk denies owning Dogecoin wallets amid lawsuit alleging insider trading," citing "a letter reviewed by The Post." ECF No. 83-2. On June 22, undersigned counsel served Spencer with a memorandum of law and two declarations detailing the bases of Defendants' Rule 11 motion, triggering the beginning of the safe harbor period. Three days later, on June 25, Spencer filed the instant Motion, asserting—without substantiation—that undersigned counsel "leak[ed] his brazenly false and bizarre letter to the press," and that counsel has an "obvious conflict of interest in jointly representing both [Mr.] Musk and Tesla." Mot. at 8.

---

[1] Spencer prematurely published the contents of this letter to this Court as an exhibit to his Motion. ECF No. 83-1. Conscious of their obligations under Rule 11, Defendants do not describe the letter's contents further herein and instead apprise the Court of their intent to file a Rule 11 motion, memorandum, and supporting declarations at the end of the safe harbor period on July 14, 2023.

4

## ARGUMENT

A cursory read of Spencer's Motion reveals that it is even more baseless than it is bizarre. Spencer purports to raise two arguments in support of disqualification and a third in support of "additional sanctions." *Id.* at 14-15. But "[c]ourts may impose sanctions pursuant to their inherent authority only upon a particularized showing of bad faith, which requires clear evidence that the challenged actions are entirely without color and are taken for reasons of harassment or delay or for other improper purposes." *Kennedy v. City of N.Y.*, 12 Civ. 4166 (KPF), 2016 WL 3460417, at *2 (S.D.N.Y. June 20, 2016) (citations and quotation marks omitted). Likewise, "[t]he imposition of sanctions under § 1927 is appropriate only when there is a finding of conduct constituting or akin to bad faith. Before reaching such a conclusion, a court must find clear evidence that (i) the offending party's claims were entirely meritless and (ii) the party acted for improper purposes." *Almodovar v. NYC Candy Store Shop Corp.*, No. 16 CIV. 3795 (KPF), 2017 WL 2874467, at *2 (S.D.N.Y. July 5, 2017) (citations and quotation marks omitted); *see also Intelli-Check, Inc. v. TriCom Card Techs., Inc.*, No. CV03-3706(DLI)(ETB), 2005 WL 3533153, at *11 (E.D.N.Y. Dec. 22, 2005). Here, Spencer's motion is bereft of any evidence, much less clear evidence, and should be denied.

### I. SPENCER'S DISQUALIFICATION CLAIMS ARE UNSUBSTANTIATED AND FRIVOLOUS

Spencer—in seeming indifference to well-established principles of joint representation—argues that the "conflict of interest in this case" between Mr. Musk and Tesla "is fairly obvious" and requires disqualification. Mot. at 9. Spencer's disqualification argument is contrary to black letter New York law and hinges on a misreading and misapplication of *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005). *Id.* at 10-12.

*First*, as even Spencer acknowledges, Mot. at 11, Rule 1.13(d) of the New York Rules of Professional Conduct provides that "[a] lawyer representing an organization may also represent any of its directors [or] officers[.]"  NY ST RPC Rule 1.13(d).  Undersigned counsel's joint representation of Mr. Musk and Tesla is expressly permitted, and such co-representations are standard in putative class actions for alleged securities fraud, like this one.  In an attempt to circumvent this well-established principle, Spencer argues that there is a "non-consentable" conflict of interest between Mr. Musk and Tesla because (Mr. Spencer speculates), "if Tesla, Inc.[] was represented separately, it's first course of action would be to file a crossclaim against Elon Musk" for "involv[ing] the company in lawbreaking."  Mot. at 10.  Spencer's theory, as usual, is entirely fictious.  As detailed in Defendants' first motion to dismiss, neither Mr. Musk nor Tesla engaged in any wrongdoing—much less "lawbreaking"—and Spencer has yet to state a claim for any violation of federal securities or common law.  *See* ECF No. 62.  Any purported "conflict" is nothing more than an imaginative manufacturing of Spencer's own mind.

*Second*, Spencer also ignores Rule 1.7 of the New York Rules of Professional Conduct, which expressly provides that, where appropriate, consents may be obtained in writing, and that "notwithstanding the existent of a concurrent conflict of interest," a lawyer may represent two clients if "the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation[.]"  NY ST RPC Rule  1.7(b)(3).  Contrary to Spencer's assertions, there is *no adversity* here.  As Black's Law Dictionary explains, "adverse" means:  "Against; opposed (to)."  ADVERSE, Black's Law Dictionary (11th ed. 2019).  Tesla and Mr. Musk are both defendants in this action on the same side of the "v."  And, even if consent were necessary in this case, Spencer provides this Court with no basis to credit his statement that "it is clear that no such consent has been obtained from Tesla" by undersigned counsel.  Mot. at

6

11. Spencer has no way of knowing what consents have, or have not, been obtained, as those are matters of attorney-client privilege between undersigned counsel and their clients.

*Finally*, *Hempstead Video, Inc. v. Vill. of Valley Stream*, 409 F.3d 127 (2d Cir. 2005), on which Spencer heavily relies, is inapposite. Mot. at 11. There, the Second Circuit held that it was "'prima facie improper' for an attorney to represent one existing client in a matter adverse to another existing client," and that "[i]n such cases, the burden is on the challenged attorney, 'to show, at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation." *Hempstead Video*, 409 F.3d at 133. But, again, Defendants are not adverse to one another in this litigation—they share the concrete and common goal of getting Plaintiffs' unfounded TAC dismissed as quickly as possible. By contrast, *Hempstead Video* concerns situations in which "an attorney places himself in a position where he could use a client's privileged information *against* that client." *Id.* at 133 (emphasis added). There, the plaintiff argued that defense counsel should be disqualified because one of the plaintiff's former in-house counsel had become "of counsel" at defense counsel's firm. *Id.* at 130. The concern was whether the former in-house counsel could use confidential information from his former employer in litigation where the two parties are "directly adverse" to each other. *Id.* at 133. This case is not remotely similar. Here, there is no concern that any counsel has switched sides. Undersigned counsel cannot use Mr. Musk's confidential information against Tesla, or vice versa, because Defendants are aligned. Further, even in *Hempstead Video*, the Second Circuit *affirmed* the trial court's dismissal of plaintiff's motion for disqualification. *Id.* at 139.

At bottom, Spencer's desperate attempts at manufacturing conflicts where there plainly are none raise far more questions about his competence to represent a class of investors than they do undersigned counsel's ethics.

## II. SPENCER'S CLAIMS OF ETHICS VIOLATIONS ARE UNSUBSTANTIATED AND FRIVOLOUS

Spencer further argues that undersigned counsel should be disqualified for "gross ethics violations" that "pose significant risk of trial taint," because counsel purportedly "leaked" the June Letter to the *New York Post*. Mot. at 12-14. Not only does Spencer again fail to provide this Court with any basis to credit his claim, but the conduct alleged—even if true—is in no way improper, does not breach any ethical rule, and is not a basis for disqualification.

*First*, Spencer provides this Court with no evidence—much less clear evidence—that undersigned counsel had anything to do with the publication in the *New York Post*. The *Post* article merely states that the *Post* "reviewed" the June Letter. ECF No. 83-2. Spencer's finger-pointing does not provide this Court with the requisite evidence. "[B]ald, conclusory allegations of bad faith" do not suffice to show clear evidence of bad faith "with the required high degree of factual specificity." *McCune v. Rugged Ent., LLC*, No. 08-CV-2677 (KAM), 2010 WL 1189390, at *5 (E.D.N.Y. Mar. 29, 2010). That is all Spencer advances.[2]

*Second*, even assuming, *arguendo*, that the *Post* article constitutes "clear evidence" that undersigned counsel shared the June Letter with the *Post*, Spencer's argument that this is a "gross ethics violation[]" fails as a matter of law. *See* Mot. at 12. Courts that have considered this issue have held that "Rule 11(c)(2) does *not* preclude the moving party from disclosing information regarding an alleged Rule 11 violation outside of a motion for sanctions during the safe harbor." *Chang v. US Glob. Sys.*, No. LACV1803724JAKSSX, 2020 WL 11272315, at *10 (C.D. Cal. June 23, 2020) (emphasis added). And, the cases on which Spencer relies—*Papanciolaou v. Chase*

---

[2] Indeed, given that Spencer, not undersigned counsel, ensured that the June Letter would receive wide spread public attention by *docketing the letter as an exhibit to his Motion*, ECF No. 83-1, it is at least equally plausible that *Spencer* leaked the June Letter to the press for the purpose of teeing up this Motion.

8

*Manhattan Bank, N.A.*, 720 F. Supp. 1080 (S.D.N.Y. 1989) and its progeny—are not to the contrary, as they address entirely different factual scenarios. As Spencer's own Motion makes clear, *Papanicolaou* concerned communications between *counsel* and an *adverse party's client*. Mot. at 12. There, defendant's counsel "met with the plaintiff for ninety minutes outside the presence of plaintiff's counsel." *Id.* Likewise, the other cases on which Spencer relies involve direct contact by counsel with a represented adverse party. *Id.* at 14 (citing *Trimper v. Terminix Inter. Co., Ltd. Partnership*, 82 F. Supp. 2d 1, 6-7 (N.D.N.Y. 2000) ("plaintiff submitted an affidavit stating that [defendants' attorney] attempted to engage him in substantive conversation"); *Bedoya v. Aventura Limousine & Transp. Serv., Inc.*, 861 F. Supp. 2d 1346, 1371-72 (S.D. Fla. 2012) (disqualifying plaintiff's counsel where plaintiff counsel's "*ex parte* contact cut to the core of the opposing party's attorney-client relationship" including because plaintiff counsel obtained confidential information from such *ex parte* contact, and finding that "the relationship between Celler, Defendants, and Defendants' counsel has been so impaired that the only proper remedy is Celler's disqualification.")). Spencer does not contend that undersigned counsel has had any contact with any member of the putative class, nor could he. *Papanciolaou* and the other cases cited by Spencer provide no basis for the relief sought.

*Third*, Spencer's accusation that undersigned counsel "l[ied] in the press" and "made it difficult ... to maintain a normal, professional adversarial relationship" ring hollow. Mot. at 13. Undersigned counsel stands by the statements in the June Letter, and intends to raise those issues with the Court at the appropriate time in a Rule 11 motion. Spencer, not undersigned counsel, prematurely published the letter with this Court. Spencer, not undersigned counsel, has now served *four* baseless complaints that cannot withstand Rule 8 scrutiny, much less the heightened pleading standards of Rule 9(b) and the Private Securities Litigation Reform Act, 15 U.S. Code § 78u–4.

9

And it is Spencer, not undersigned counsel, who elected to file the Motion, chock-full of fabrication, without first conferring to attempt to resolve any purported issues without the need for Court intervention.

*Finally*, Spencer's laundry list of the Rules of Professional Conduct that undersigned counsel has allegedly violated is baseless. Mot. at 13. Not only does Spencer fail to provide this Court with any facts substantiating these purported violations, but even if he did, disqualification and sanctions are not the remedy. *See, e.g.*, *Bank v. GoHealth, LLC*, No. 19CV5459MKBCLP, 2021 WL 2323282, at *14 (E.D.N.Y. Mar. 8, 2021), *report and recommendation adopted*, 2021 WL 1884671 (E.D.N.Y. May 11, 2021), *aff'd*, 2022 WL 1132503 (2d Cir. Apr. 18, 2022). Even more perplexing is Spencer's allegation that the June Letter contains "false statements of fact and law," Mot. at 14, when Defendants and undersigned counsel assuredly have more accurate knowledge about the facts set forth in the Letter than Spencer does. More importantly, this Court will have the opportunity to test the veracity of the allegations in the June Letter in Defendants' forthcoming Rule 11 motion.

### III. SPENCER'S "ADDITIONAL SANCTIONS" ARGUMENTS ARE UNSUBSTANTIATED AND FRIVOLOUS

Spencer's final argument that "additional sanctions are warranted" fails for the same reasons set forth above. *Id.* at 14-15. Spencer does not come close to establishing that undersigned counsel has engaged in any unethical, much less sanctionable, behavior. *McCune*, 2010 WL 1189390, at *4 ("[I]n this Circuit, the bad faith standard is not easily satisfied and sanctions are warranted only in extreme cases.").

*First*, Spencer's tacked on allegation—in the final paragraph of his memorandum—that undersigned counsel somehow acted improperly by initially objecting to Plaintiffs' request for leave to amend is nonsensical. Mot. at 15. It goes without saying that refusing to consent to a

10

motion for leave is *not* sanctionable behavior.  But this is especially true where, as here, Spencer *already served* three separate complaints, each more meritless than the last, and only sought leave to file a *fourth* complaint after reviewing Defendants' motions to dismiss for nearly two months and announcing to the press his intent to timely oppose—and win—the motion.[3]

*Second*, Spencer's argument that undersigned counsel "delayed service" of the June Letter until after the TAC was filed is equally unavailing. *Id.*  The June Letter was not "delayed."  There is no time limit on when a party can raise a Rule 11 issue, and Spencer cites no authority to the contrary.  Regardless, had Plaintiffs not secured leave of Court to file the TAC, the letter would not have been necessary.  And, Spencer's grievance is illusory, in any case, since his Motion makes clear that he has no intention of either withdrawing the TAC or engaging in good faith discussions regarding its fundamental errors.  In other words, serving the June Letter and Rule 11 motion before Spencer docketed the TAC would have had no effect.

## CONCLUSION

For the foregoing reasons, this Court should deny Spencer's Motion in its entirety.

---

[3] *Tesla, Musk Slam Dogecoin Buyers' 'Fanciful' Fraud Suit*, April 3, 2023, *available at* https://www.law360.com/articles/1592808/tesla-musk-slam-dogecoin-buyers-fanciful-fraud-suit.  This proclamation was one of many that Spencer has made to the press since this case's inception, rendering his complaints about undersigned counsel's behavior even more illusory.

11

DATED: July 6, 2023                                     Respectfully submitted,


                   */s/ Alex Spiro*
                   Alex Spiro
                   Sarah Heaton Concannon
                   Brenna Nelinson
                   QUINN EMANUEL URQUHART & SULLIVAN, LLP
                   51 Madison Avenue, 22nd Floor
                   New York, New York 10038
                   Tel: 202-538-8122
                   Fax: 202-538-8100
                   Email: alexspiro@quinnemanuel.com
                      sarahconcannon@quinnemanuel.com
                      brennanelinson@quinnemanuel.com

                   Allison Huebert (*pro hac vice*)
                   TESLA, INC.
                   1 Tesla Road
                   Austin, TX 78725
                   Tel: 512-557-8797
                   Email: ahuebert@tesla.com

                   *Attorneys for Defendants Elon Musk and Tesla, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 6th of July 2023, a true and correct copy of the above and foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, giving notice to all parties in this action.

/s/ Alex Spiro
Alex Spiro
Sarah Heaton Concannon
Brenna Nelinson
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10038
Tel: 202-538-8122
Fax: 202-538-8100
Email: alexspiro@quinnemanuel.com
sarahconcannon@quinnemanuel.com
brennanelinson@quinnemanuel.com

Allison Huebert (*pro hac vice*)
TESLA, INC.
1 Tesla Road
Austin, TX 78725
Tel: 512-557-8797
Email: ahuebert@tesla.com

*Attorneys for Defendants Elon Musk and Tesla, Inc.*