UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COLBY GOROG, JOSHUA FLINT, LOUIS ROBINSON, and MICHAEL LERRO, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>ELON MUSK and TESLA, INC.,<br><br>    Defendants. | Civil Action No.: 1:22-cv-05037-AKH |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR RULE 11 SANCTIONS**

# TABLE OF CONTENTS

Page

INTRODUCTION ...........................................................................................................................1
ARGUMENT ...................................................................................................................................3
I.    The Court Should Dismiss The Third Amended Complaint And Sanction Spencer ...........3
    A.    The Opposition Concedes That Plaintiffs' Wallet Ownership Allegations Have No Evidentiary Support ...................................................................................4
    B.    Spencer Failed To Conduct The Inquiry Required By Rule 11 ...............................7
    C.    Spencer's Motive And Opportunity Arguments Are Misplaced And Meritless ...................................................................................................................8
II.    Spencer's Procedural Arguments Are Meritless .................................................................9
CONCLUSION ..............................................................................................................................12

# TABLE OF AUTHORITIES

Page

**Cases**

*AF Trucking Inc. v. Bus. Fin. Servs.*,
 2020 WL 2765678 (S.D.N.Y. May 28, 2020) ..................................................................5

*ATSI Comms., Inc. v. Shaar Fund, Ltd.*,
 579 F.3d 143 (2d Cir. 2009).............................................................................................11

*In re Austl. & N.Z Banking Grp. LTD. Sec. Litig.*,
 712 F. Supp. 2d 255 (S.D.N.Y. 2010)..........................................................................3, 11

*Charles Equip. Energy Sys., LLC v. INNIO Waukesha Gas Engines, Inc.*,
 2023 WL 2346337 (S.D.N.Y. Mar. 3, 2023) ....................................................................7

*Galin v. Hamada*,
 283 F. Supp. 3d 189 (S.D.N.Y. 2017) ..............................................................................8

*Gurvey v. Cowan Liebowitz & Latman, P.C.*,
 2015 WL 5472893 (S.D.N.Y. Sep. 17, 2015) ..................................................................6

*Klein v. Aicher*,
 2020 WL 4194823 (S.D.N.Y. July 21, 2020) ..................................................................8

*O'Malley v. N.Y.C. Transit Auth.*,
 896 F.2d 704 (2d Cir. 1990)...........................................................................................7, 8

*Safe-Strap Co. v. Koala Corp.*,
 270 F. Supp. 2d 407 (S.D.N.Y. 2003) ............................................................................11

*Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*,
 682 F.3d 170 (2d Cir. 2012).............................................................................................9

*In re Sun Prop Consultants, Inc.*,
 2021 WL 3375831 (E.D.N.Y. Aug. 2, 2021) .................................................................10

*Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*,
 976 F. Supp. 2d 254 (N.D.N.Y. 2013)..............................................................................5

**Statutes**

15 U.S.C. 78u-4(c)(1) ...............................................................................................................11

PSLRA ................................................................................................................................2, 5, 11

**<u>Other Authorities</u>**

Fed. R. Civ. P. 9(b) ..........................................................................................................2, 5

Fed. R. Civ. P. 11 ........................................................................................................ *passim*

Defendants Elon Musk and Tesla, Inc. respectfully submit this reply memorandum of law in support of their motion for Rule 11 sanctions (Dkt. 86, 87) against Spencer.[1]

**<u>INTRODUCTION</u>**

There are at least five frivolous arguments in just the first page of the Opposition: (i) Defendants "gave Plaintiffs only 3 days to comply" with the Rule 11 safe harbor (wrong); (ii) Plaintiffs were "never given proper notice of any Rule 11 violation" (inscrutable and wrong); (iii) the declarations provided with Defendants' motion are from "non-party" witnesses (wrong); (iv) Defendants' sanctions motion "is unripe" under § 78u-4(c)(1) (wrong and never again mentioned in Plaintiffs' brief); and (v) Defendants' motion was not "made separately from any other motion" (puzzling and wrong).

But this is all that Spencer has—frivolous contentions, handwaving, and liberal use of a thesaurus—and it is not enough. Allegations of fraud are serious, and they must be founded on something more than a lawyer's desire for media attention. Yet nothing in the Opposition refutes the simple fact that Spencer failed to conduct a reasonable investigation (or disregarded the results of that investigation), repeatedly presented false claims to this Court that lack any foundation in fact, and brazenly disregarded evidence that disproves the core of the Third Amended Complaint.

*First*, the crux of the Third Amended Complaint is that some Dogecoin "wallets" transacted in Dogecoin around the time that Mr. Musk made statements about Dogecoin, and thus the wallets must "belong" to Defendants. These allegations are false, and relying on the purported temporal connection between transactions and statements to establish ownership is insufficient to satisfy the investigation required by Rule 11(b) (let alone meet the heightened pleading requirement of the

---

[1] Defined terms have the meanings provided in Defendants' memorandum of law in support of their motion for Rule 11 sanctions (Dkt. 87, "Opening Brief", "Motion", or "Mot.").

1

PSLRA and Rule 9(b)). And although Spencer refers to Defendants' ownership argument as somehow being "semantic legerdemain of the lowest sort," in reality, Spencer simply restates Defendants' argument and *confirms* the inadequacy of his investigation, writing that Plaintiffs' "*inference* of ownership is, rather, based on the fact that these six wallets were making massive trades and asset transfers in tandem with price fluctuations resulting directly from Musk's market manipulative activities."

This would be insufficient standing alone. It is particularly so here where Plaintiffs: (i) cited a source in the First Amended Complaint that makes clear that one of these wallets is owned by *Robinhood*—not Defendants—and have continued to rely on that source (*e.g.*, TAC ¶¶ 23, 194), and (ii) Defendants presented Spencer with sworn declarations refuting the Third Amended Complaint's false claims of ownership. Perhaps recognizing that he has failed to defend these false claims, Spencer points to the length of the Third Amended Complaint (263 paragraphs) as a remedy for the falsity of the Complaint's core allegations. But Spencer sets forth no authority (nor could he) for the proposition that it is acceptable to have eight demonstrably false allegations in a complaint—particularly where those allegations are the foundational premise of Plaintiffs' theory of wrongdoing—because eight false allegations is eight more than any complaint should have.

*Second*, Spencer asserts that even if his allegations of Defendants' purported *conduct* are false, he has pleaded *motive and opportunity*. This argument, which seeks to transform a Rule 11 opposition into a merits brief, is both misplaced and wrong. As an initial matter, Defendants' Rule 11 motion does not seek sanctions concerning Plaintiffs' allegations of motive and opportunity—Defendants challenge those allegations as patently insufficient in their separate motion to dismiss. In any event, without alleging *conduct*, Plaintiffs' claims fail, and thus whatever purported motive and opportunity Defendants are alleged to have had is of no moment.

Spencer also asserts that Defendants' focus on *conduct allegations* in their Rule 11 motion "strongly implies that if Plaintiffs' allegations as to the ownership of even one of the eight explicitly named Dogecoin wallets has evidentiary support sufficient to meet Rule 11's requirements, then according to Defendants the element of scienter is adequately pleaded." This argument is specious and demonstrates Spencer's misunderstanding of the basic logical principles of necessity and sufficiency.

*Finally*, Spencer throws as chaff a number of misplaced legal arguments concerning the procedural requirements of filing a Rule 11 motion. Chief among these arguments is that because Defendants sent a courtesy Rule 11 letter, waited three days, then served a Rule 11 motion, waited another 22 days, then filed their Rule 11 motion, Defendants' "safe harbor notice is defective as it gave Plaintiffs only 3 days to comply." Whether Spencer's misstatement of black-letter law is intentional or not, it is—like the Third Amended Complaint—frivolous. Defendants respectfully request that the Court impose Rule 11 sanctions on Spencer.

## ARGUMENT

### I. The Court Should Dismiss The Third Amended Complaint And Sanction Spencer

As explained in Defendants' Opening Brief, each of the claims in the Third Amended Complaint relies on a false foundational premise—false allegations that Mr. Musk or Tesla sold Dogecoin—that Plaintiffs do not and cannot establish. Plaintiffs' claims are thus "utterly lacking in support" and subject to Rule 11 sanctions. *See* Mot. at 7-8; *In re Austl. & N.Z Banking Grp. LTD. Sec. Litig.*, 712 F. Supp. 2d 255, 263-64 (S.D.N.Y. 2010). Specifically, Plaintiffs allege that eight Dogecoin wallets "belong" to Mr. Musk or Tesla, and that purported purchases and sales associated with those eight wallets give rise to claims of securities fraud, insider trading, common law fraud, and unjust enrichment. ¶¶ 210-63. As set forth in the Opening Brief, and as unrefuted

3

in Spencer's Opposition, the allegations that these wallets belong to Mr. Musk or Tesla are false and demonstrate Spencer's failure to conduct the inquiry required by Rule 11(b).

### A. The Opposition Concedes That Plaintiffs' Wallet Ownership Allegations Have No Evidentiary Support

Spencer is aware that his allegations that eight wallets purportedly "belong" to Mr. Musk or Tesla, and bought or sold Dogecoin, are utterly lacking in factual support. *See* Mot. at 10. In a letter dated June 9, 2023, Defendants explained to Spencer that "neither Mr. Musk nor Tesla owns the wallets alleged to have sold Dogecoin, and further [] neither Mr. Musk nor Tesla have *ever* sold Dogecoin." Dkt. 83-1.[2] Having received no response, on June 22, 2023, Defendants served (but did not file, consistent with the safe harbor rule) a Rule 11 motion with two signed supporting declarations. These declarations, from Jared Birchall, President of Mr. Musk's family office, and Suk Patel, Director of IT Risk and Compliance for Tesla, state under penalty of perjury (a fact Spencer conveniently and repeatedly ignores) that neither Mr. Musk nor Tesla owned the eight wallets referenced in the TAC, nor have they sold Dogecoin from *any* wallet. Dkt. 85-8, 85-9.

Spencer fails to refute that Plaintiffs' allegations regarding these wallets are false. *First*, as to the wallet "DF5ya," a source Spencer relied on in the First Amended Complaint[3] confirmed that Robinhood—not Mr. Musk or Tesla—owned the wallet. Dkt. 9 ¶ 135 & n.38. This fact was made clear to Spencer by Defendants in their motion to dismiss on March 31, 2023. Dkt. 62 at 4-5 ("[T]hat wallet does not belong to Mr. Musk, and indeed the website that Plaintiffs relied upon in their First Amended Complaint . . . states that the wallet in question belongs to Robinhood, a large consumer-facing exchange that permits retail buyers to buy and sell cryptocurrencies,

---

[2] These communications were presented to the Court by Spencer, not Defendants.
[3] Spencer continues to rely on this source in the TAC, ¶¶ 23, 194, despite his current suggestion that it is unreliable.

4

including Dogecoin."). In the Opposition, Spencer asserts that his own source was incorrect because of a quote by Robinhood's CEO that Spencer inaccurately characterizes as "an *effective[] deni[al]*" of ownership.[4] Opp. at 13 (emphasis added). Even putting aside that "[a] party that relies upon and attaches a document to its complaint cannot dispute its accuracy," what matters is that there is *no source* supporting Plaintiffs' argument that the wallet belongs to Mr. Musk or Tesla. *Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, 976 F. Supp. 2d 254, 260 (N.D.N.Y. 2013); *see also AF Trucking Inc. v. Bus. Fin. Servs.*, 2020 WL 2765678, at *1 n.2 (S.D.N.Y. May 28, 2020) ("In any event, where a plaintiff relies on a document attached to the Complaint and that document contradicts an alleged fact, the document controls.").

Spencer also refers vaguely to "numerous allegations" that purportedly support the inference of ownership. Opp. at 13. But the opaque and often bizarre allegations to which Spencer refers plainly do not give rise to an inference of ownership. For example, the TAC alleges that a transaction was placed for 28.061971 Dogecoins (about $22), the numeric equivalent of Mr. Musk's birthday (June 28, 1971), ¶ 186, that the wallet was opened two months before Mr. Musk began tweeting about Dogecoin, ¶ 191, that this wallet sold Dogecoin when the market was up, ¶¶ 194, 195, and an unexplained connection between Mr. Musk's tweets that "had the tone of a wistful (and self-serving) denouement signifying the closing of a chapter in Musk's relationship with Dogecoin" and an increase in the price of Dogecoin four days later, ¶ 200. These non-existent connections do not establish that Mr. Musk or Tesla "own" the wallet under any standard, let alone the heightened pleading required by both Rule 9(b) and the PSLRA. To the contrary, these

---

[4] In any case, the quote Spencer relies on from Robinhood's CEO that "[w]e don't have significant positions in any of the coins that we keep on a proprietary basis[,]" ¶ 190, indicates only that Robinhood does not hold Dogecoin on its own behalf. It does not suggest that Robinhood does not maintain institutional wallets holding Dogecoin on behalf of its investors.

5

"frivolous allegations violate Rule 11." *Gurvey v. Cowan Liebowitz & Latman, P.C.*, 2015 WL 5472893, at *5 (S.D.N.Y. Sep. 17, 2015).

*Second*, the Opposition does not dispute that the wallet "DJ6KC," is "not even alleged to have sold Dogecoin at all." Mot. at 9. Instead, the Opposition cites to ¶ 183 of the TAC which, again, sets forth the conclusory allegation that "Elon Musk's wallet DJ6Kc was opened in 2017, and since that time has *sent and received* billions of dollars' worth of Dogecoin in at least 737,920 separate transactions." And, although Spencer now asserts that the Third Amended Complaint contains "smoking gun allegations, pleaded with pinpoint particularity" that purportedly establish that this wallet sold Dogecoin, Opp. at 13 (emphasis added), the allegations to which he refers are that a nonprofit solicited donations via Dogecoin, Mr. Musk tweeted that he made a donation, and the transaction history shows DJ6Kc made a donation close in time to these tweets. ¶¶ 179-182. Even crediting the wild speculation that DJ6Kc belongs to Mr. Musk (it does not),[5] the only alleged fact that would be established by these allegations is that he *donated* (not *sold*) Dogecoin.

*Finally*, for the remaining six wallets that the TAC alleges sold Dogecoin, ¶¶ 201, 204, 206, 208, Defendants have *repeatedly* explained to Spencer—*including with the support of sworn declarations*—that the wallets were not owned by Mr. Musk or Tesla. *See* Mot. at 8; Dkt. 85-8, 85-9. Spencer's claim is based on the logical fallacy that these wallets contained a large volume of Dogecoin and sold Dogecoin at a time when, according to the Third Amended Complaint, prices of Dogecoin went up. These two facts could apply to "wallets" belonging to nearly *any* person. And Spencer's attempt to rebut Defendants' argument in his Opposition merely restates it—he contends that "the *inference* of ownership is . . . based on the fact that these six wallets were making massive trades and asset transfers in tandem with price fluctuations resulting directly from Musk's

---

[5] *See* Decl. of Suk Patel in Supp. of Defs.' Mot. for Rule 11 Sanctions ¶¶ 5-7, Dkt. 90.

market manipulative activities—of which he obviously had foreknowledge." Opp. at 12 (emphasis added). The phrasing is different, but argument is the same—when the prices went up, the wallets traded. Spencer can point to *no* allegations—particularized or otherwise—that even *suggest* these wallets belong to Mr. Musk or Tesla. The basis for Spencer's allegations of securities fraud is nothing more than utterly unsupported leaps of inference, rendering his pleading sanctionable under Rule 11. *See Charles Equip. Energy Sys., LLC v. INNIO Waukesha Gas Engines, Inc.*, 2023 WL 2346337, at *9 (S.D.N.Y. Mar. 3, 2023) ("But in this case, the claims asserted were so obviously lacking in factual or legal support that the motion for sanctions should be granted.").

**B.  Spencer Failed To Conduct The Inquiry Required By Rule 11**

Spencer agrees that Rule 11 imposes an "affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading" before filing. Opp. at 21 (quoting *O'Malley v. N.Y.C. Transit Auth.*, 896 F.2d 704, 706 (2d Cir. 1990)). The only inquiry that Spencer contends he made with respect to the pivotal allegations that the wallets were "owned" by Mr. Musk or Tesla is exactly the insufficient correlation-based "analysis" debunked above and refuted by sworn declarations. *See* Opp. at 22 (asserting that Plaintiffs adduced purported ownership by "cross-referenc[ing] [] data with the timing of Musk's tweets (which are timestamped and publicly available on Twitter) and with the publicly available Dogecoin Price Index on CoinBase.com, a reputable source of real-time crypto market data.").

In so arguing, the Opposition falls back on the same fallacious analysis common in the TAC—that wallets that sold Dogecoin when the prices were up necessarily belong to Mr. Musk or Tesla. ¶¶ 202, 195-197. Many investors sell Dogecoin at any given time, and many investors aim to "buy low and sell high," so Spencer's purported inquiry is woefully insufficient to support an allegation that Mr. Musk or Tesla own these wallets. The insufficiency of Spencer's inquiry was confirmed through declarations, signed by those with direct knowledge of Mr. Musk and

7

Tesla's financial holdings, that neither Mr. Musk nor Tesla own these wallets, nor have they sold Dogecoin from any wallet. Dkt. 85-8, 85-9. Spencer apparently takes issue with these declarations, even throwing out an offhand and baseless accusation of perjury, claiming that "Defendants dare[d] not perjure themselves by making [the declarations] in their own names." Opp. at 21-22. Spencer does not, however, meaningfully address that these are sworn statements from individuals with the requisite knowledge (and fails to explain how Tesla, a corporation, could possibly file a declaration in its "own name[]" as opposed to by an employee with personal knowledge). "Sanctions [] are appropriate in light of the tenuous factual basis on which the complaint was filed." *Klein v. Aicher*, 2020 WL 4194823, at *9 (S.D.N.Y. July 21, 2020).

Indeed, given the *evidence* Defendants have provided, Spencer's conjecture does not fulfill his obligations to this Court "to conduct a reasonable inquiry into the viability of a pleading" before filing. *O'Malley*, 896 F.2d at 706. Courts impose sanctions under precisely these circumstances, where a plaintiff "refus[es] to withdraw" the pleading "after it was shown to be inaccurate." *Galin v. Hamada*, 283 F. Supp. 3d 189, 202 (S.D.N.Y. 2017), *aff'd*, 753 F. App'x 3 (2d Cir. 2018). Although Spencer asserts that he is not aware of any "securities fraud complaint in any federal court that has ever been dismissed pursuant to a Rule 11 motion," Opp. at 12, that is not an argument that dismissal is inappropriate here; indeed, Spencer's argument raises only the question of the *remedy* to which Defendants' are entitled.

### C. Spencer's Motive And Opportunity Arguments Are Misplaced And Meritless

Spencer's decision to use the Opposition to inappropriately argue the sufficiency of the Third Amended Complaint's scienter allegations misses the mark. Despite Spencer's curious assertion that he was somehow "compelled . . . to reveal many of [his] arguments in opposition to [the motion to dismiss]," his pages of unconvincing and misplaced scienter arguments are nothing more than a distraction. Opp. at 6. This sanctions motion turns on a far narrower question—

whether Spencer's allegations in the Third Amended Complaint concerning ownership satisfy the requirements of Rule 11(b). As explained above, the specific deficiencies identified in Defendants' Rule 11 motion—the lack of any viable wallet ownership allegations—are more than sufficient for this Court to grant Defendants' Rule 11 motion. Defendants will address the insufficiency of the Third Amended Complaint's scienter allegations in their forthcoming motion to dismiss, where those arguments belong.

## II. Spencer's Procedural Arguments Are Meritless

Spencer's cursory references to purported procedural deficiencies in Defendants' Rule 11 motion are meritless and misapprehend settled law.

*First*, Spencer asserts that "Defendants [sic] FRCP Rule 11 safe harbor notice is defective as it gave Plaintiffs only 3 days to comply[.]" Opp. at 5. Spencer is wrong. Defendants served their Rule 11 motion on Spencer on June 22, 2023. Defendants filed their Rule 11 motion on July 14, 2023, Dkt. 86-90—22 days later—after the 21-day safe harbor had run, without Spencer "withdraw[ing] or appropriately correct[ing]" his false claims. Fed. R. Civ. P. 11(c)(2). Spencer's reference to having "3 days to comply" refers to the time between the service of Defendants' Rule 11 letter and the service of Defendants' Rule 11 motion (which began the clock for the 21-day safe harbor). But the letter was provided to Spencer as a courtesy and as informal notice days *before* Defendants served their Rule 11 motion. *See, e.g.*, *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170 (2d Cir. 2012) ("In most cases . . . counsel should be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion.") (citation omitted)). Setting aside that the Rule 11(c)(2) safe harbor is measured from the service of the

9

*motion*, not the letter, it is unclear what Spencer's grievance is, given that Defendants did not file their motion until 25 days after service of the letter.[6]

*Second*, Spencer asserts that the Rule 11 motion filed "is different than the [motion served] on Plaintiffs last month." Opp. at 5. Unsurprisingly, Spencer does not attempt to explain *how* the motion is different—because he cannot. To be clear, the *only* difference is the addition, in the "Background" section, of factual events that occurred after the service of the Rule 11 notice (that is, within the 21 day "safe harbor"). Dkt. 87 at 5-6; *see also* Ex. B (redline comparison). These "Background" additions did not alter Defendants' arguments, and Spencer does not argue otherwise.[7] In any event, Rule 11 requires only that "the motion filed with the court rests on substantially the same grounds set forth in the earlier notice of the motion given to the opposing party[.]" *In re Sun Prop Consultants, Inc.*, 2021 WL 3375831, at *6 (E.D.N.Y. Aug. 2, 2021). The safe-harbor requirement is not "hypertechnical" and does not "require the filed motion to be identical in all respects to the motion served during the safe harbor period." *Id.*

---

[6] Spencer's own behavior underscores the baseless nature of his procedural complaints. In his Opposition, Spencer references a "letter" he sent to undersigned counsel on July 14, 2023, demanding that Mr. Musk and Tesla identify any wallets that they own that contain Dogecoin. Opp. at 9-10. Setting aside the fact that Defendants' ownership of *other* wallets not addressed in the Complaint is entirely irrelevant (again, Mr. Musk and Tesla did not sell Dogecoin from *any* wallet), Spencer misrepresents the purpose of his "letter." According to Spencer, the July 14 letter was a "21-day safe harbor letter regarding your frivolous motion filed today," Ex. A, sent only hours after Defendants filed their Rule 11 Motion. But the letter—which reads more like an *ad hominem* attack on undersigned counsel than it does Spencer's basis for seeking Rule 11 sanctions—does not satisfy the safe harbor, which plainly requires service of the actual motion. Spencer's retaliatory "Rule 11 letter" is yet another example of his cavalier disregard for the baseless nature of his case. Spencer has made clear that without prompt court intervention, he will continue this pattern of prejudicial, time consuming, and harassing motion practice while he enjoys the press attention that accompanies it.

[7] The only other changes in the Rule 11 motion filed were typographical.

*Third*, Spencer asserts—in a single sentence—that Defendants' Rule 11 motion is purportedly "unripe" "[u]nder 15 U.S.C. 78u-4(c)(1)." Opp. at 5.[8] Spencer's argument is, again, contrary to black-letter law; parties are encouraged "to file a Rule 11 motion promptly after the complaint is filed." *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 414 n.3 (S.D.N.Y. 2003). This is true in the securities context; "[n]othing in the PSLRA prevents an adversary from filing a Rule 11 motion at an earlier point in the litigation, before heavy costs have accrued. Even in the context of the PSLRA, a Rule 11 letter from an opposing counsel may bring new facts to light or prompt a challenged attorney to reconsider." *ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 155 (2d Cir. 2009). Because "the cornerstone of plaintiff[s'] theory of the case [was false] and thereby infected the entire pleading," *In re Austl. & N.Z.*, 712 F. Supp. 2d at 269, Defendants served their motion upon Spencer's filing of the false Third Amended Complaint in an attempt to reduce the burden on Defendants and the Court arising from a defective pleading and with the goal of conserving judicial resources.

*Finally*, Spencer suggests, again in a single sentence, that Defendants purportedly "violat[ed] Rule 11(c)(2), which requires that a motion for sanctions be made separately from any other motion." Opp. at 5. This argument is puzzling; Spencer seems to hypothesize that Defendants *could* have moved to strike, and that *if* they did and also filed this motion, then that would violate Rule 11(c)(2)'s separate motion requirement. But Defendants did not move to strike, or file or otherwise make their motion to sanctions with any other motion. This argument is likewise frivolous.[9]

---

[8] The Opposition begins on page 5.

[9] Spencer also asserts that "Defense Counsels [sic] and their clients should be sanctioned pursuant to the Court's discretionary powers under Rule 11(c), for interposing the groundless and improper motion." Opp. at 11. This assertion does not merit addressing.

11

## **CONCLUSION**

For the reasons stated above and in Defendants' Opening Brief, the Third Amended Complaint should be dismissed with prejudice and Spencer should be sanctioned for his violations of Rule 11. Mr. Musk and Tesla respectfully request that the Court direct the parties to confer regarding a briefing schedule for the determination of Defendants' reasonable attorney's fees and costs.

| | |
|---|---|
| Dated: August 3, 2023 | Respectfully submitted,<br><br>/s/ *Alex Spiro*<br><br>Alex Spiro<br>Sarah Heaton Concannon<br>Brenna Nelinson<br>QUINN EMANUEL URQUHART & SULLIVAN LLP<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10038<br>Tel: 202-538-8122<br>Fax: 202-538-8100<br>alexspiro@quinnemanuel.com<br>sarahconcannon@quinnemanuel.com<br>brennanelinson@quinnemanuel.com<br><br>Allison Huebert (*pro hac vice*)<br>TESLA, INC.<br>1 Tesla Road<br>Austin, TX 78725<br>Tel: 512-557-8797<br>ahuebert@tesla.com<br><br>*Attorneys for Defendants Tesla, Inc. and Elon Musk* |

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2023, I electronically served a copy of the foregoing to all counsel of record.

*/s/ Alex Spiro*
Alex Spiro
