**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

COLBY GOROG, JOSHUA FLINT,
LOUIS ROBINSON, and MICHAEL
LERRO, individually and on behalf of all
others similarly situated,

                Plaintiffs,

      v.

ELON MUSK and TESLA, INC.,

                Defendants.

Civil Action No.: 1:22-cv-05037-AKH

ECF CASE

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT .................................................................................................. 1

BACKGROUND ....................................................................................................................... 5

    A.    Plaintiffs Allege That Dogecoin Is A Widely Used Cryptocurrency ..................... 5

    B.    Plaintiffs' Allegations Concerning Mr. Musk's and Tesla's Connection to Dogecoin ........................................................................................................... 6

            1.    Plaintiffs Allege That Mr. Musk Made Limited, General Public Statements Relating to Dogecoin ................................................................ 6

            2.    Plaintiffs Fail to Plead That Mr. Musk or Tesla Own or Sold Dogecoin ................................................................................................. 6

    C.    Plaintiffs Make Repeated, Sweeping Amendments After Filing This Action ................................................................................................................ 8

ARGUMENT ............................................................................................................................ 9

I.      PLAINTIFFS FAIL TO PLEAD DOMESTIC TRANSACTIONS .................................. 9

II.    PLAINTIFFS' CLAIMS AGAINST TESLA ARE INADEQUATELY PLEADED AND SHOULD BE DISMISSED ............................................................... 11

II.    PLAINTIFFS' SECTION 10(b) CLAIMS SHOULD BE DISMISSED ........................ 13

    A.    Plaintiffs Do Not Plead Material Misstatements or Omissions .......................... 14

            1.    Plaintiffs Fail to Plead Any False or Misleading Statement with the Requisite Particularity ............................................................................ 14

            2.    Plaintiffs' Cause of Action for False Statements Also Fails Because the Statements Are Opinions, Puffery, or Otherwise Immaterial .............................................................................................. 16

                    (a)    Many alleged misstatements are protected opinions ................... 16

                    (b)    The same statements are puffery or otherwise immaterial ........... 17

            3.    Plaintiffs Do Not Allege A Duty to Disclose .......................................... 19

    B.    Plaintiffs Fail to Plead Market Manipulation ..................................................... 21

    C.    Plaintiffs Fail to Plead Scienter ........................................................................ 22

            1.    Plaintiffs' Allegations Do Not Support A Plausible Inference of Motive or Opportunity ........................................................................... 23

            2.    Plaintiffs Fail to Allege Conscious Misbehavior or Recklessness ............ 24

    D.    Plaintiffs Fail to Plead Loss Causation .............................................................. 25

III.   PLAINTIFFS FAIL TO ALLEGE INSIDER TRADING UNDER SECTION 20A ........ 28

IV.   PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED ................................. 30

A.      Plaintiffs' Common Law Fraud Claim Must Be Dismissed.................................30

B.      Plaintiffs' Unjust Enrichment Claim Should Be Dismissed ...............................31

V.     THE COURT SHOULD DENY PLAINTIFFS LEAVE TO AMEND ..........................32

CONCLUSION....................................................................................................................33

## TABLE OF AUTHORITIES

Page

### Cases

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
    677 F.3d 60 (2d Cir. 2012) ...................................................................... 10, 11

*Abuhamdan v. Blyth, Inc.*,
    9 F. Supp. 3d 175 (D. Conn. 2014) .................................................................27

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
    529 F. Supp. 3d 111 (S.D.N.Y. 2021) .............................................................28

*Aetna Cas. and Sur. Co. v. Aniero Concrete Co.*,
    404 F.3d 566 (2d Cir. 2005) .............................................................................20

*In re Alcatel Sec. Litig.*,
    382 F. Supp. 2d 513 (S.D.N.Y. 2005) .............................................................13

*Alki Partners, L.P. v. Vatas Holding GmbH*,
    769 F. Supp. 2d 478 (S.D.N.Y. 2011) .............................................................21

*In re Alstom SA*,
    406 F. Supp. 2d 433 (S.D.N.Y. 2005) .............................................................22

*Anderson v. Binance*,
    2022 WL 976824 (S.D.N.Y. Mar. 31, 2022) ...................................................11

*Appalachian Enters., Inc. v. ePayment Sols., Ltd.*,
    2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) ...................................................12

*In re Aratana Therapeutics Inc. Sec. Litig.*,
    315 F. Supp. 3d 737 (S.D.N.Y. 2018) .............................................................16

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) ..................................................... 14, 21, 23, 27

*AUSA Life Ins. Co. v. Ernst & Young*,
    206 F.3d 202 (2d Cir. 2000) .............................................................................31

*Avalos v. IAC/Interactivecorp.*,
    2014 WL 5493242 (S.D.N.Y. Oct. 30, 2014) ...................................................9

*In re Banco Bradesco S.A. Sec. Litig.*,
    277 F. Supp. 3d 600 (S.D.N.Y. 2017) .............................................................13

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
    980 F. Supp. 2d 564 (S.D.N.Y. 2013), *aff'd*, 566 F. App'x 93 (2d Cir. 2014).......................19

*Baxter v. A.R. Baron & Co.*,
   1995 WL 600720 (S.D.N.Y. Oct. 12, 1995) ........................................................ 12

*In re Bear Stearns Cos., Sec., Derivative, and ERISA Litig.*,
   763 F. Supp. 2d 423 (S.D.N.Y. 2011) .............................................................. 28

*Boca Raton Firefighters & Police Pension Fund v. Bahash*,
   506 F. App'x 32 (2d Cir. 2012) ...................................................................... 17

*Boluka Garment Co. v. Canaan, Inc.*,
   547 F. Supp. 3d 439 (S.D.N.Y. 2021) ............................................................ 26

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
   752 F.3d 173 (2d Cir. 2013) ............................................................................ 17

*City of Taylor Gen. Emps. Ret. Sys. v. Magna Int'l Inc.*,
   967 F. Supp. 2d 771 (S.D.N.Y. 2013) ............................................................ 28

*Cohen v. Stevanovich*,
   722 F. Supp. 2d 416 (S.D.N.Y. 2010) ............................................................ 26

*In re Commodity Exch., Inc.*,
   213 F. Supp. 3d 631 (S.D.N.Y. 2016) ............................................................ 32

*Debora v. WPP Grp. PLC*,
   1994 WL 177291 (S.D.N.Y. May 5, 1994) ..................................................... 18

*Digilytic Int'l FZE v. Alchemy Finance, Inc.*,
   2022 WL 912965 (S.D.N.Y. Mar. 29, 2022) .................................................. 31

*Dimond v. Darden Restaurants, Inc.*,
   2014 WL 3377105 (S.D.N.Y. July 9, 2014) ................................................. 9, 32

*Dulsky v. Worthy*,
   2013 WL 4038604 (S.D.N.Y. July 30, 2013) ................................................. 12

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005) ................................................................................. 26, 27

*Dwyer v. Allbirds, Inc.*,
   598 F. Supp. 3d 137 (S.D.N.Y. 2022) ......................................................... 31, 32

*In re Dynagas LNG Partners LP Sec. Litig.*,
   504 F. Supp. 3d 289 (S.D.N.Y. 2020) ............................................................ 25

*ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009) ............................................................................ 24

*Gamm v. Sanderson Farms, Inc.*,
    944 F.3d 455 (2d Cir. 2019) ....................................................................14

*Gluck v. Hecla Mining Co.*,
    2023 WL 2161958 (S.D.N.Y. Feb. 22, 2023) ..............................................1

*Gross v. Waywell*,
    628 F. Supp. 2d 475 .................................................................................12

*Hudson Bay Master Fund Ltd. v. Patriot Nat'l*,
    309 F. Supp. 3d 100 (S.D.N.Y. 2018) .......................................................13

*Hurckes v. JPMorgan Chase Bank*,
    2023 WL 2664080 (S.D.N.Y. Mar. 27, 2023) .............................................15

*In re IAC/InterActiveCorp*,
    695 F. Supp. 2d at 118 .............................................................................18

*IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of
    Scotland Grp., PLC*,
    783 F.3d 383 (2d Cir. 2015) ....................................................................17

*In re Inv. Tech. Grp., Inc.*,
    251 F. Supp. 3d 596 (S.D.N.Y. 2017) .......................................................17

*Jackson v. Abernathy*,
    960 F.3d 94 (2d Cir. 2020) ......................................................................23

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001) ....................................................................23

*In re Keyspan Corp. Sec. Litig.*,
    383 F. Supp. 2d 358 (E.D.N.Y. 2003) ......................................................18

*Lau v. Opera Ltd.*,
    527 F. Supp. 3d 537 (S.D.N.Y. Mar. 13, 2021) ...................................19, 26

*Lentell v. Merrill Lynch & Co. Inc.*,
    396 F.3d 161 (2d Cir. 2005) ..........................................................21, 26, 27

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    27 F. Supp. 3d 447 (S.D.N.Y. 2014) .........................................................32

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
    26 F. Supp. 3d 278 (S.D.N.Y. 2014) .........................................................27

*In re Manulife Fin. Corp. Sec. Litig.*,
    276 F.R.D. 87 (S.D.N.Y. 2011) ................................................................26

*Marcus v. AT&T Corp.*,
  138 F.3d 46 (2d Cir. 1998) .................................................................................30

*Meyer v. Greene*,
  710 F.3d 1189 (11th Cir. 2013)...........................................................................27

*In re Micro Focus Int'l PLC Sec. Litig.*,
  2020 WL 5817275 (S.D.N.Y. Sep. 29, 2020).......................................................15

*In re Morgan Stanley Tech. Fund Sec. Litig.*,
  643 F. Supp. 2d 366 (S.D.N.Y. 2009) ..................................................................20

*Morrison v. National Australia Bank Ltd.*,
  561 U.S. 247 (2010) ................................................................................ 2, 9, 10, 11

*Newman v. Fam. Mgmt. Corp.*,
  530 F. App'x 21 (2d Cir. 2013) ...........................................................................31

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015) .............................................................................................16

*Parnes v. Gateway 2000, Inc.*,
  122 F.3d 539 (8th Cir. 1997) .......................................................................... 18, 19

*Pierce v. Fordham Univ., Inc.*,
  2016 WL 3093994 (S.D.N.Y. June 1, 2016), *aff'd*, 692 F. App'x 644 (2d Cir.
  2017)....................................................................................................................15

*Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of
  Comm.*,
  694 F. Supp. 2d 297 (S.D.N.Y. 2010) ..................................................................25

*Prime Mover Cap. Partners, L.P. v. Elixir Gaming Techs., Inc.*,
  793 F. Supp. 2d 651 (S.D.N.Y. 2011) ..................................................................31

*Rotunno v. Wood*,
  2022 WL 14997930 (2d Cir. Oct. 27, 2022).........................................................23

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
  573 F.3d 98 (2d Cir. 2009) ............................................................................. 23, 24

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*,
  75 F.3d 801 (2d Cir. 1996) ..................................................................................17

*In re Satyam Comput. Servs. Ltd. Sec. Litig.*,
  915 F. Supp. 2d 450 (S.D.N.Y. 2013) ........................................................... 10, 11

*Sec. Inv'r Protection Corp. v. BDO Seidman, LLP*,
   222 F.3d 63 (2d Cir. 2000) ............................................................... 31

*SEC v. AT&T, Inc.*,
   2022 WL 4110466 (S.D.N.Y. Sept. 8, 2022) ..................................... 29

*SEC v. Rio Tinto PLC*,
   41 F.4th 47 (2d Cir. 2022) ............................................................... 22

*In re Shanda Games Ltd. Sec. Litig.*,
   2022 WL 992794 (S.D.N.Y. Mar. 31, 2022) ................................ 28, 29

*Shields v. Citytrust Bancorp, Inc.*,
   25 F.3d 1124 (2d Cir. 1994) ............................................................. 24

*In re Skechers USA, Inc. Sec. Litig.*,
   444 F. Supp. 3d 498 (S.D.N.Y. 2020) .............................................. 13

*Stoyas v. Toshiba Corp.*,
   896 F.3d 933 (9th Cir. 2018) ........................................................... 10

*Suero v. NFL*,
   2022 WL 17985657 (S.D.N.Y. Dec. 16, 2022) ............................. 9, 13

*Suero v. NFL*,
   No. 22-cv-31 (AKH) (BCM) (S.D.N.Y. Jan. 4, 2022) ......................... 9

*In re Synchrony Fin. Sec. Litig.*,
   988 F.3d 157 (2d Cir. 2021) ............................................................. 18

*In re Take-Two Interactive Sec. Litig.*,
   551 F. Supp. 2d 247 (S.D.N.Y. 2008) .............................................. 28

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) .................................................................. 23, 25

*Villare v. Abiomed, Inc.*,
   19 Civ. ...................................................................................... 16, 17

*In re Wachovia Equity Sec. Litig.*,
   753 F. Supp. 2d 326 (S.D.N.Y. 2011) .............................................. 30

*Weizmann Inst. of Sci. v. Neschis*,
   229 F. Supp. 2d 234 (S.D.N.Y. 2002) .............................................. 19

*Wilson v. Merrill Lynch & Co., Inc.*,
   671 F.3d 120 (2d Cir. 2011) ............................................................. 21

*Zappin v. Schorr*,
    2023 WL 2601578 (S.D.N.Y. Mar. 22, 2023) ....................................................................32

### **Rules / Statutes**

15 U.S.C. § 78c ...............................................................................................................10

15 U.S.C. § 78j(b) .....................................................................................................*passim*

15 U.S.C. § 78t-1 ..................................................................................................9, 28, 29

15 U.S.C. § 78u-4 ....................................................................................................*passim*

28 U.S.C. § 1367(c)(3) .......................................................................................................30

17 C.F.R. § 240.10b-5 ..............................................................................................*passim*

Fed. R. Civ. P. 8 .........................................................................................................12, 26

Fed. R. Civ. P. 9 .......................................................................................................*passim*

## PRELIMINARY STATEMENT

Enough is enough.  It is well past time for this baseless and frivolous action to be dismissed with prejudice.  Plaintiffs' *fourth* attempt to plead a complaint for securities fraud against Defendants Tesla, Inc. and Elon Musk—based on nothing more than Mr. Musk's innocuous and often silly tweets about a cryptocurrency called "Dogecoin" (known for its meme image of a Shibu Inu dog)—comes no closer to stating a claim than Plaintiffs' three prior attempts.  There is nothing unlawful about tweeting words of support for, or funny pictures about, a cryptocurrency that holds a market capitalization of over $11 billion.  Plaintiffs' fanciful, meandering, and often incomprehensible Third Amended Class Action Complaint does not come close to stating a claim, much less meeting the exacting standards of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 ("PSLRA").[1]

Plaintiffs' claims are critically deficient.  Plaintiffs' theory, to the extent one emerges, is that *every single time* Mr. Musk speaks publicly about Dogecoin, he manipulates the market and trades on the "insider" information of his own purported intent to manipulate the price of Dogecoin, but this allegation does not withstand the barest scrutiny.  Plaintiffs' theory rests, at bottom, on allegations that certain cryptocurrency wallets that allegedly bought and sold Dogecoin are owned by Defendants.  But Plaintiffs plead no particularized facts whatsoever establishing that the wallets identified in the Complaint in fact *belong* to Defendants or that either Mr. Musk or Tesla *ever sold* Dogecoin.  Absent these allegations, Plaintiffs do not, and cannot, state a claim against Defendants for market manipulation or insider trading.  Likewise, Plaintiffs fail to state a

---

[1]    Defendants dispute Plaintiffs' characterization of Dogecoin as a "security," but because Plaintiffs have *attempted* to plead violations of federal securities law, the PSLRA applies to their claims.  *Gluck v. Hecla Mining Co.*, 2023 WL 2161958, at *6 (S.D.N.Y. Feb. 22, 2023) ("When a plaintiff has alleged securities fraud claims, the complaint is subject to . . . [the PSLRA].").

claim that Mr. Musk's cheerleading for Dogecoin—quintessential inactionable puffery—was materially false or misleading, or that Defendants acted with the requisite intent.

Plaintiffs' pleading deficiencies are underscored by their attempt to state a claim for fraud based on, for example, Mr. Musk's tweet of the word "Doge," a meaningless single-word tweet that is neither false nor material. Plaintiffs' other allegations about Mr. Musk's tweets are similarly wanting and do not, individually or collectively, constitute an *intentional* and *deceptive* scheme to manipulate the market for Dogecoin or to trade and profit on insider information. Further, Plaintiffs' claim that they and the market somehow were deceived by Mr. Musk's tweets also is belied by other allegations of the Complaint. For instance, Plaintiffs characterize one of Mr. Musk's tweets as a *public admission* that he was manipulating Dogecoin, which (however implausible) would mean that the public *knew* about Mr. Musk's purported manipulation and nothing was concealed.

For these and the following reasons, this Court should dismiss the Complaint with prejudice.

*First*, Plaintiffs do not plead any domestic transactions in Dogecoin under the U.S. Supreme Court's decision in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), barring their claims on jurisdictional grounds. Plaintiffs, at most, plead that a *minority* of computers that record Dogecoin transactions are located within the United States. This is insufficient as a matter of law.

*Second*, Plaintiffs do not plead any material misrepresentation, let alone with the particularity required by Rule 9(b) and the PSLRA. Plaintiffs contend that statements such as "Dogecoin might be my fav cryptocurrency. It's pretty cool." the single word "Doge," and text-free images of dogs, rockets, and a scene from *The Lion King* are somehow fraudulent, but

Plaintiffs do not allege, much less to an exacting standard of particularity, what these statements purportedly mean or why the statements are untrue.  *E.g.*, ¶¶ 67, 71, 73, 75, 78, 87-88, 91-92, 114, 118, 124.[2]  The remaining statements on which Plaintiffs rely—including that Mr. Musk believes Dogecoin is "[t]he future currency of Earth," "Dogecoin to the moooonn," "Dogecoin will live forever," or "[o]n the actual moon," ¶¶ 81, 87, 89—are quintessential puffery, not falsehoods, and do not constitute material guarantees, particularly given that, as Plaintiffs and the general public knew, Mr. Musk is not affiliated with Dogecoin.

Nor do Plaintiffs allege what risks Defendants concealed from the market.  Plaintiffs assert that Dogecoin is "a highly speculative security investment," "not backed by any product, service, bank, commodity, insurer, government, or bona fide corporation," p. 4, ¶ 22, but these purported facts were public, widely known, and obvious.  Dogecoin's co-founder, Billy Markus, among others, repeatedly made these very points.

*Third*, in apparent recognition of the fundamental weakness of their misstatements and omissions claims, Plaintiffs unsuccessfully attempt to repackage the exact same statements as claims of "market manipulation" under Rules 10b-5(a) and (c).  It is settled in the Second Circuit, however, that manipulative conduct must be *distinct* from the alleged misstatements underlying a claim under Rule 10b-5(b).  Plaintiffs nowhere make any such allegations.

*Fourth*, each of Plaintiffs' putative securities fraud claims fails because Plaintiffs do not plead scienter (much less a *strong inference* of scienter).  In response to Defendants' prior motion to dismiss on this ground, Plaintiffs now include a single five-paragraph section alleging that Mr. Musk's scienter is "supported" by Mr. Musk's entirely unrelated statements concerning Bitcoin

---

[2]  Citations to "¶ __" refer to the Third Amended Class Action Complaint ("Complaint") filed June 7, 2023 (Dkt No. 77).  All emphasis is added and quotations and citations omitted unless noted.

("BTC") and unproven allegations by third parties that Mr. Musk "manipulated" BTC.  ¶¶ 166-
170.  These nonsensical and unparticularized allegations, even accepted as true, do not establish
the requisite intent.

*Fifth*, Plaintiffs do not plead loss causation.  Where, as here, Plaintiffs attempt to plead that
the Class Period extends "until the present," there is no loss causation, because (by definition) if
the alleged fraud is *ongoing*, then there *cannot* have been a corrective disclosure that resulted in
Plaintiffs' losses, as required to plead loss causation.  Further, Plaintiffs also wholly fail to allege
that *any* disclosure revealed to the market an otherwise-concealed fact, correcting the alleged prior
misstatement or omission.   Indeed, all of Plaintiffs' claims are to the contrary; according to
Plaintiffs, the supposed "truth" behind Defendants' alleged manipulation has been *public
knowledge* since Mr. Musk's appearance on *Saturday Night Live* more than two years ago.  This
likewise forecloses Plaintiffs' claims.

*Sixth*, Plaintiffs' attempt to plead insider trading—based on an unprecedented theory that
Mr. Musk traded on the purportedly material non-public information of his own intent to
manipulate the market—fails on its face.   Mr. Musk's private *intentions* (even if accurately
described in the Complaint, which they are not), are not *material non-public information* about
*Dogecoin*.   Nor is there a breach of any duty, whether under a corporate insider or corporate
outsider theory:  Plaintiffs do not plead that Mr. Musk (or Tesla) are Dogecoin insiders who owe
a duty of trust to Dogecoin, nor do Plaintiffs plead that Mr. Musk breached a duty of trust owed to
himself (a logical impossibility).

*Finally*, Plaintiffs' common law claims should be dismissed, both because they suffer from
the same pleading deficiencies as Plaintiffs' securities law claims, and because Plaintiffs fail to
plead that they even *read* the alleged misstatements, much less *relied* on them in transacting in

Dogecoin.  And Plaintiffs' unjust enrichment claim should be dismissed both because it is duplicative and because Defendants had no direct dealings with Plaintiffs that could give rise to such a claim.

Plaintiffs have had the opportunity to file *four* complaints in this case and their allegations continue to fall well short of pleading any cause of action, let alone a sufficiently particularized complaint under Rule 9(b) and the PSLRA.  This Court should dismiss the Complaint in its entirety, with prejudice, putting an end to this baseless action once and for all.

## BACKGROUND

### A.    Plaintiffs Allege That Dogecoin Is A Widely Used Cryptocurrency

Dogecoin is an open-source, peer-to-peer cryptocurrency created by software engineers Jackson Palmer and Billy Markus in 2013.  ¶¶ 24, 60.  The Dogecoin blockchain is not controlled by any central authority; instead, its transaction information is stored as a public ledger maintained across thousands of computers, or nodes.  ¶ 23.[3]  As Plaintiffs plead, Dogecoin is a "speculative digital asset[] designed to function as electronic cash" that is not backed by gold, precious metals, or any government guarantees.  ¶ 22.  Nonetheless, since its introduction, Dogecoin has developed a strong and devoted following, ¶ 61, and it is common knowledge that Dogecoin has been accepted as payment at such major retailers as GameStop, Nordstrom, Barnes and Noble, AMC, Ulta Beauty, Petco, Bed Bath & Beyond, Lowe's, and Newegg.[4]

---

[3]    *See also* DOGECOIN, https://dogecoin.com/dogepedia/articles/what-is-a-blockchain/ (last visited Aug. 7, 2023).

[4]    *10 Companies That Now Accept Shiba Inu and Dogecoin As Payment*, BUSINESS INSIDER (Feb. 10, 2022), https://markets.businessinsider.com/news/stocks/10-companies-that-now-accept-shiba-inu-and-dogecoin-as-payment-1031183926.

### B.  Plaintiffs' Allegations Concerning Mr. Musk's and Tesla's Connection to Dogecoin

#### 1.  Plaintiffs Allege That Mr. Musk Made Limited, General Public Statements Relating to Dogecoin

Beginning in April 2019, Mr. Musk began expressing his general enthusiasm for Dogecoin on Twitter.  ¶ 67.  Mr. Musk's Dogecoin-related tweets consisted primarily of general expressions of optimism and humorous memes.  For example, Mr. Musk tweeted that Dogecoin "is the people's crypto," ¶ 79, that Dogecoin is "pretty cool," ¶ 67, and that it "will live forever," ¶ 89.  Mr. Musk stated publicly that he supported Dogecoin because, among other reasons, he thought it was more accessible than other cryptocurrencies and because many employees on the production lines at Tesla and SpaceX owned Dogecoin.  ¶ 145.

Mr. Musk has, however, also espoused significant caution about purchasing Dogecoin, given its inherently speculative and unbacked nature.  Mr. Musk's very first tweet about Dogecoin, on April 2, 2019, cautioned that "Dogecoin value may vary," and linked to an article published by a satirical newspaper that was critical of the cryptocurrency.  *See* Second Amended Class Action Complaint ("SAC"), Ex. B at 1, Dkt No. 39.  Mr. Musk also stated publicly that he "never said that people should invest in crypto," and he even joked on national television that Dogecoin was "a hustle."  ¶¶ 106, 107, 146.

#### 2.  Plaintiffs Fail to Plead That Mr. Musk or Tesla Own or Sold Dogecoin

Plaintiffs assert that Mr. Musk owns Dogecoin "wallets"—a term of art that refers to accounts in which an individual can hold, and transact in, Dogecoin [5]—that, at times, held significant quantities of Dogecoin.  ¶¶ 179, 185, 201, 204, 206, 208.  But Plaintiffs do not make

---

[5]  *See* DOGECOIN, https://dogecoin.com/dogepedia/articles/how-do-i-get-a-wallet/ (last visited Aug. 7, 2023).

more than conclusory assertions that those wallets *actually belong* to Mr. Musk (or Tesla). Dkt. Nos. 89, 90. The website on which Plaintiffs relied in their First Amended Class Action Complaint ("FAC"), ¶ 135, Dkt. No. 9, states that wallet DH5ya[6] belongs to *Robinhood*, a platform that permits retail investors to buy and sell cryptocurrencies, including Dogecoin.[7] *See also* ¶ 53 (acknowledging that the "Robinhood platform has offered U.S. investors non-custodial trading of Dogecoin through its corporate wallet(s) since July 2018"). Plaintiffs now disavow their own prior pleading, instead speculating that the wallet belongs to Mr. Musk, based on bizarre allegations that: (i) certain transactions in that wallet purportedly took place on the numeric equivalent of Mr. Musk's birthday, ¶ 186; (ii) the wallet was opened two months before Mr. Musk first tweeted about Dogecoin, ¶ 191; (iii) this wallet sold Dogecoin when the market was up, ¶¶ 194-95; and (iv) a purported (but unexplained) connection between Mr. Musk's tweets that "had the tone of a wistful (and self-serving) denouement signifying the closing of a chapter in Musk's relationship with Dogecoin," and an increase in the price of Dogecoin four days later, ¶¶ 199-200. Such speculative—and illusory— "connections" do not and cannot establish ownership. Likewise, for six of the wallets identified in the Complaint, Plaintiffs infer "ownership" based on little more than the allegation that these wallets sold Dogecoin either when, according to Plaintiffs, prices were higher or shortly after Mr. Musk's tweets. ¶¶ 201-02 (DPDL), ¶¶ 204-05 (DRSq, DSP3, D6dq), ¶¶ 206-07 (DDuX), ¶¶ 208-09 (D8ZEV). And one wallet, DJ6Kc, is not alleged to have *sold* Dogecoin *at all*. ¶ 183 (alleging only that wallet "sent" and "received" Dogecoin).[8]

---

[6]  References to cryptowallets use the same abbreviations as in the Complaint.

[7]  BIT INFO CHARTS, https://bitinfocharts.com/dogecoin/address/ DH5yaieqoZN36fDVciNyRueRGvGLR3mr7L (last visited Aug. 7, 2023).

[8]  Plaintiffs plead that that this wallet has made at least *737,920* transactions. ¶ 183. This fact, if true, *undermines* Plaintiffs' speculation that this wallet belongs to Mr. Musk (or *any*

Plaintiffs also allege that Tesla, "and/or" Mr. Musk, owns five of the wallets, ¶¶ 204-08, but plead no specific facts supporting that claim.  The *only* other Tesla-specific allegation pleaded with anything approaching the requisite particularity is that Tesla offered merchandise for sale in exchange for Dogecoin—a claim that, even if true, violates no securities law.  ¶ 135.

### C.     Plaintiffs Make Repeated, Sweeping Amendments After Filing This Action

On June 16, 2022, Plaintiffs filed a putative class action claiming Mr. Musk and Tesla, along with Space Exploration Technologies Corp. ("SpaceX"), operated a Dogecoin "Crypto Pyramid Scheme."  Initial Complaint at 1, Dkt. No. 1.  The Initial Complaint asserted claims for RICO, common law fraud, negligence, false advertising, "deceptive practices," products liability, and unjust enrichment, and sought damages of *$258 billion*.  *Id*. at ¶¶ 146-210, p. 26.  Less than three months later, on September 6, 2022, Plaintiffs amended the Initial Complaint, (i) adding six defendants:   (A) The Boring Company, (B) Dogecoin Foundation, Inc. ("DCFI"), (C) Billy Markus, (D) Jackson Palmer, (E) "Dogecoin Developers class representative Ross Nicholl," and (F) "Doge Army class representative Matt Wallace"; (ii) adding causes of action for violations of Sections 5, 10(b), 12(a)(1), and 17(a) of the Securities Act; and (iii) dropping claims for negligence, false advertising, deceptive practices, and products liability.  FAC at 7-8, ¶¶ 382-467.  Plaintiffs sought appointment as lead class counsel which (unsurprisingly, given the fantastical nature of Plaintiffs' claims), was uncontested.  Dkt No. 41-42.  And, on December 13, 2022, after counsel to Defendants alerted Plaintiffs' counsel that the FAC failed to satisfy the PSLRA, Plaintiffs filed the SAC, which, among other changes, included allegations arising after the date

---

individual), since no human being trading in his own account could possibly execute that many transactions over a 6-year period.

of the FAC and dismissed all but three defendants.  SAC at 3-4.

On March 31, 2023, Defendants, including DCFI, moved to dismiss the SAC.  Dkt. Nos. 59-62.  On May 23, 2023, just over a week before Plaintiffs' opposition was due, Plaintiffs sought leave to stay briefing pending resolution of a forthcoming motion for leave to file a *Third* Amended Class Action Complaint.  Dkt. No. 88, Ex. 2.  On June 7, 2023, Plaintiffs filed the Third Amended Complaint, dropping DCFI as a defendant, dropping the RICO claim, and adding, for the first time, a claim for alleged insider trading under Section 20A of the Securities Exchange Act.  Dkt. No. 77.[9]

## ARGUMENT

## I.   PLAINTIFFS FAIL TO PLEAD DOMESTIC TRANSACTIONS

Plaintiffs have not pleaded facts that establish that the federal securities laws apply to the transactions at issue, namely, that Dogecoin is "listed on [a] domestic exchange[]" or that Plaintiffs' purchases were domestic transactions under the Supreme Court's landmark decision in *Morrison v. National Australia Bank Ltd.*.  561 U.S. 247, 267 (2010) (federal securities laws do

---

[9]   Plaintiffs' counsel's tactics repeatedly (and unsuccessfully) have played out in proceedings before courts in this District.  *E.g.*, *Dimond v. Darden Restaurants, Inc.*, 2014 WL 3377105, at *15 (S.D.N.Y. July 9, 2014) (detailing history of Spencer's amendments and rejecting further leave); *Avalos v. IAC/Interactivecorp.*, 2014 WL 5493242, at *2 (S.D.N.Y. Oct. 30, 2014) (dismissing Spencer's pleading after repeated amendments and noting one argument did not "pass the laugh test, let alone the plausibility test").  And, in *Suero v. NFL*, 2022 WL 17985657 (S.D.N.Y. Dec. 16, 2022) (also dismissed), Spencer demanded that "the NFL Giants and Jets be renamed the New Jersey or East Rutherford Giants and Jets," *Suero v. NFL*, No. 22-cv-31 (AKH) (BCM) (S.D.N.Y. Jan. 4, 2022), Complaint at 19, Dkt. No. 3, because "[a]s Giants and Jets fans, Plaintiff and the class are insulted, ridiculed, harassed, tormented, and bullied by NFL fans around the United States due to the affiliation of the Giants and Jets with the State of New York rather than their true home, New Jersey."  *Id.* at 10.

Spencer also has sought to weaponize the docket in this case.  In response to Defendants' properly noticed Rule 11 motion in this action, Dkt. No. 86, Spencer already has filed a disqualification and sanctions motion, Dkt. No. 83, and "disciplinary complaints against Defense Counsels [*sic*]" with this Court and New York State, Dkt. No. 85-1 ¶ 26, and has threatened to file his own Rule 11 motion, despite having no grounds to do so.

not apply extraterritorially); *In re Satyam Comput. Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 474 (S.D.N.Y. 2013).  Setting aside whether Dogecoin is a "security" (it is not; *see* note 1, *supra*), Plaintiffs' allegations are insufficient under both *Morrison* prongs.

*First*, Plaintiffs cannot establish the existence of a domestic transaction under *Morrison*'s first prong—transactions in securities listed on domestic exchanges.  At a bare minimum, satisfying this prong requires a trade on a U.S. securities *exchange*.  "Exchange," as used in *Morrison*, is a term of art and specifically means an "exchange" as defined by the Securities Exchange Act of 1934, 15 U.S.C. § 78c, Section 3(a)(1).  *Stoyas v. Toshiba Corp.*, 896 F.3d 933, 946-47 (9th Cir. 2018).  Here, Plaintiffs allege that their purchases occurred on various "cryptocurrency exchange platforms," ¶¶ 53-58, perfunctorily characterizing these platforms as "domestic exchanges," ¶ 52, but *none* of the entities identified by Plaintiffs is registered with the U.S. Securities and Exchange Commission as a "domestic exchange" under the Exchange Act.

*Second*, Plaintiffs cannot establish the existence of a domestic transaction under *Morrison*'s second prong—"domestic transactions in other securities"—because this prong requires the existence of a transaction where irrevocable liability is incurred or title passes *within the United States*.  *See Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 67 (2d Cir. 2012) (plaintiff must plausibly allege "that the purchaser incurred irrevocable liability *within* the United States to take and pay for a security, or that the seller incurred irrevocable liability *within* the United States to deliver a security").  Conclusory assertions that transactions took place in the United States (*e.g.*, ¶ 52) are insufficient; rather, a complaint must include facts concerning "the formation of the contracts, the placement of purchase orders, the passing of title, or the exchange of money."  *Absolute Activist*, 677 F.3d at 70.  Further, it is settled law that "domestic transactions in other securities" *do not* include purchases made on foreign trading platforms, even

when an order to purchase is placed from the U.S., and even when some of the computers over which trading orders may have traveled are located in the U.S.  *See Anderson v. Binance*, , 2022 WL 976824, at *4 (S.D.N.Y. Mar. 31, 2022) (holding that allegations that  title "passed in whole or in part over servers located in California" were insufficient to show that "irrevocable liability is incurred or title passes within the United States").

Plaintiffs also fail to "allege facts indicating that irrevocable liability was incurred or that title was transferred within the United States."  *Absolute Activist*, 677 F.3d at 69.  Plaintiffs allege only that Dogecoin transactions "are *initially* validated" (which Plaintiffs do not define) in the U.S. because 40% of the computer network running Dogecoin core software is in the U.S.  ¶¶ 43, 49-51.  But Plaintiffs also admit that, in order for a transaction to become "verified" or a "part of the permanent record on the blockchain," ¶ 43, it must be verified by the *majority* of the network, and Plaintiffs' pleading admits that the majority—*60%*—of the computer network (and relevant transactions) are *outside* the U.S., ¶ 49.  Plaintiffs' vague assertion about validation also says nothing about the location of *Plaintiffs'* purchases or sales, or whether *irrevocable liability* for any purchase was incurred in the United States.  *See In re Satyam*, 915 F. Supp. 2d at 474 ("An investor's location in the United States does not transform an otherwise foreign transaction into a domestic one.").  Accordingly, Plaintiffs' Complaint must be dismissed for lack of jurisdiction.  Because Plaintiffs' *Morrison* pleading failure cannot be cured, this Court should dismiss without leave to amend.

## II.  PLAINTIFFS' CLAIMS AGAINST TESLA ARE INADEQUATELY PLEADED AND SHOULD BE DISMISSED

Plaintiffs' claims against Tesla should be dismissed because Plaintiffs fail to make *any* specific allegations against Tesla  that could give rise to liability.  It is well-settled that where, as here, "multiple defendants are asked to respond to allegations of fraud," the complaint must

"inform *each* defendant of the nature of his alleged participation in the fraud." *Baxter v. A.R. Baron & Co.*, 1995 WL 600720, at *7 (S.D.N.Y. Oct. 12, 1995); *Gross v. Waywell*, 628 F. Supp. 2d 475, 496  (S.D.N.Y. 2009) (Rule 9(b) requires a showing that "each particular defendant was directly or indirectly involved or had responsibility"); *Dulsky v. Worthy*, 2013 WL 4038604, at *5 (S.D.N.Y. July 30, 2013) ("Rule 9(b) is not satisfied by filing a complaint in which defendants are clumped together in vague allegations.").  Plaintiffs may not engage in group pleading that "lumps together all of the defendants in each claim without providing any factual allegations to distinguish their conduct."  *Appalachian Enters., Inc. v. ePayment Sols., Ltd.*, 2004 WL 2813121, at *9 (S.D.N.Y. Dec. 8, 2004).

In an attempt to assert claims against Tesla, Plaintiffs include a handful of assertions that conduct was undertaken by Mr. Musk *or* Tesla, ¶¶ 204, 206, 208, but make no particularized allegations about Tesla, let alone any sufficient to plead a cause of action against Tesla.  Plaintiffs' "and/or" allegations constitute impermissible group pleading, because they "lump[] together all of the defendants in each claim without providing any factual allegations to distinguish their conduct."  *Appalachian Enters.*, 2004 WL 2813121, at *9.  Such allegations deserve no weight and fail to satisfy even the notice pleading standard under Federal Rule of Civil Procedure 8.  *Id.*

Moreover, the limited allegations in the Complaint specific to Tesla do not assert actionable misconduct. *E.g.*, ¶ 135 (Tesla accepted Dogecoin as payment for "three items out of approximately 170 offered for sale on its website"); ¶ 167 (Tesla purchased Bitcoin); ¶ 176 (Tesla purchased Dogecoin).[10]   Plaintiffs' only allegations of purported wrongdoing are the conclusory assertions that "Tesla traded profitably . . . having been tipped off to [insider] information by

---

[10]   The Complaint also includes irrelevant allegations that Tesla has conducted layoffs, reduced salaries, and instituted a hiring freeze.  ¶¶ 149, 151, 153.

Defendant Musk," (without a single fact supporting this bold accusation), ¶¶ 178, 204, 206, 208, and that Tesla committed fraud (without explaining how), ¶¶ 234, 236.   These claims are insufficient.  *Hudson Bay Master Fund Ltd. v. Patriot Nat'l*, 309 F. Supp. 3d 100, 119 (S.D.N.Y. 2018) ("Conclusory statements of associations or generalized allegations of scienter against a group of defendants will not state a claim for securities fraud.").  Plaintiffs also plead no reason why the mere act of buying and selling a cryptocurrency (even if true), is wrongful, providing no support for any cause of action against Tesla.  *See Suero*, 2022 WL 17985657, at *8.  This Court should dismiss all of Plaintiffs' claims against Tesla and dismiss Tesla from this action.

## II.   PLAINTIFFS' SECTION 10(b) CLAIMS SHOULD BE DISMISSED

To assert claims under Section 10(b) and Rule 10b-5, Plaintiffs must plead, *inter alia*, "a material misrepresentation or omission," "scienter," and "loss causation."  *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 630 (S.D.N.Y. 2017).  The PSLRA requires plaintiffs to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information or belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u–4(b)(1); *see also* Fed. R. Civ. P. 9(b); *In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513, 534 (S.D.N.Y. 2005); *In re Skechers USA, Inc. Sec. Litig.*, 444 F. Supp. 3d 498, 511 (S.D.N.Y. 2020) ("The PSLRA expanded on the Rule 9(b) standard . . . .").

Here, Plaintiffs assert two, equally deficient, theories of liability under Section 10(b), alleging that Defendants (i) made material misstatements and omissions under Rule 10b-5(b), and (ii) manipulated the market for Dogecoin under Rules 10b-5(a) and (c).  These theories fail because Plaintiffs do not plead material misstatements or omissions, any act of manipulation (much less an entire scheme), scienter, or loss causation.

### A.     Plaintiffs Do Not Plead Material Misstatements or Omissions

#### 1.     Plaintiffs Fail to Plead Any False or Misleading Statement with the Requisite Particularity

Plaintiffs' unsupported, speculative, and conclusory allegations fail to meet the particularity requirement of Rule 9(b) and the PSLRA.  It "is a serious matter to charge a person with fraud and hence no one is permitted to do so unless he is in a position and is willing to put himself on record as to what the alleged fraud consists of specifically."  *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 464 (2d Cir. 2019).  But Plaintiffs do not attempt to explain how Mr. Musk's tweets could even be *falsifiable*, much less *actually* false or misleading.  These include tweets that contain only memes, ¶¶ 67, 71, 75, 76, 78, 91, 118, 122, 124, 143-44; tweets with a picture of a dog, ¶ 139; and other insubstantial or cryptic statements that make no particular representation at all, *see, e.g.*, ¶73 ("Doge"), ¶ 97 ("What does the future hodl?"), ¶ 122 (noting "three more tweets" without description), ¶ 132 (a tweet with a "Shiba Inu in a Twitter t-shirt"),[11] ¶ 133 ("Dogecoin Trillionaire, the Movie"), ¶ 142 ("Dogecoin").   And many allegations are nothing more than Plaintiffs' baseless conjecture, such as the claim that Mr. Musk "admi[tted]" to manipulating the Dogecoin market when he tweeted "[h]e who controls the memes, controls the universe."  ¶ 92; *see also* ¶¶ 78, 91; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2d Cir. 2007) (general allegations "resting upon speculation are insufficient").  Plaintiffs curiously allege that Mr. Musk tweeted that "I haven't & won't sell any Doge," ¶ 174,[12] but allege no reason why that statement is *false* other than Plaintiffs' say-so.

---

[11]     Plaintiffs allege that this tweet "teased rumors that Twitter would be accepting Dogecoin as payment for the Twitter Blue subscription service," ¶ 139; *see also* ¶¶ 132, 140, but never explain why such a cryptic and humorous tweet accompanied by "a winking emoji icon" is actionable securities fraud.

[12]     *See also* ¶ 119 ("Musk tweeted that he would never sell his Dogecoin.").

As for Mr. Musk's other statements—that he bought Dogecoin for his son, ¶ 85, that Dogecoin is money, ¶ 124, and that Dogecoin "has no formal organization [and] no one reports" to him, ¶ 120—Plaintiffs do not even claim they are false. *See In re Micro Focus Int'l PLC Sec. Litig.*, 2020 WL 5817275, at *6 (S.D.N.Y. Sep. 29, 2020) ("To the degree these statements contain statements of present fact, Plaintiff has failed to plead falsity."); *see also* ¶ 118 ("Working with Doge devs to improve system transaction efficiency."), ¶ 129 ("Doge holders using Binance should be protected from errors that are not their fault."), ¶ 131 ("Musk tweeted that it might be a good idea to change the Twitter bird logo to 'a doge.'"), ¶ 137 ("Musk tweeted that he would keep supporting Dogecoin.").

In other instances, Plaintiffs' allegations contradict one another, undercutting Plaintiffs' claims.  For example, Plaintiffs allege that Mr. Musk's tweet that "Tesla merch buyable with Dogecoin" was false, but acknowledge *in the very next paragraph* that Tesla accepted Dogecoin as payment for certain merchandise.  ¶¶ 130, 134-35.  Plaintiffs allege that Mr. Musk falsely claimed Dogecoin is decentralized, but simultaneously allege that Dogecoin is stored on a "decentralized, digital public ledger." ¶¶ 23, 113.  And Plaintiffs also allege that, at one point, Mr. Musk publicly encouraged Dogecoin holders to *sell* their holdings, explaining that "[i]f major Dogecoin holders sell most of their coins, it will get my full support." ¶ 86.  Such sales would, of course, likely cause the value of Dogecoin to *decline*, contrary to Plaintiffs' claim that Defendants sought to "artificially inflat[e] the price and/or value of Dogecoin." ¶ 218.  The Court need not try to resolve these incoherent assertions, but simply can reject them all.  *See Hurckes v. JPMorgan Chase Bank*, 2023 WL 2664080, at *2 (S.D.N.Y. Mar. 27, 2023) ("Faced with [] internally inconsistent allegations, the Court is neither obligated to reconcile nor accept them as true."); *Pierce v. Fordham Univ., Inc.*, 2016 WL 3093994, at *2 n.1 (S.D.N.Y. June 1, 2016) ("[A] court

is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss."), *aff'd*, 692 F. App'x 644 (2d Cir. 2017).

2. **Plaintiffs' Cause of Action for False Statements Also Fails Because the Statements Are Opinions, Puffery, or Otherwise Immaterial**

(a) **Many alleged misstatements are protected opinions**

Where, as here, a plaintiff challenges a statement of opinion or belief, it is not sufficient to show that the "belief turned out to be wrong," *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186 (2015), nor even that the opinion was "unreasonable, irrational, [or] excessively optimistic." *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 754 (S.D.N.Y. 2018) (internal citation omitted). Rather, to plead that an opinion is "false," Plaintiffs must allege either that (i) the statements were both objectively false and subjectively false (*i.e.*, not genuinely believed at the time they were made), *see Omnicare*, 575 U.S. at 185-186, or (ii) the defendant omitted material facts underlying the basis for the opinion and those facts conflict with what a reasonable investor would take from the statement itself. *Id.* at 189. Even the speaker's knowledge of "some fact cutting the other way"—that is, against the speaker's view— "is not necessarily misleading" because "[r]easonable investors understand that opinions sometimes rest on a weighing of competing facts." *Id.* at 189-90.

Many of Mr. Musk's tweets about Dogecoin are "quintessential opinion statements," including tweets that Dogecoin is "the people's crypto," ¶79, "[t]he future currency of Earth," ¶ 81, "pretty cool," ¶ 67, "will live forever," ¶ 89, "might be [his] fav[orite] cryptocurrency," ¶ 67, inflation would not be meaningful, ¶ 83, and statements merely expressing Mr. Musk's own casual views on Dogecoin, ¶ 125. *Villare v. Abiomed, Inc.*, 19 Civ. 7319 (ER), at *39 (S.D.N.Y. Sep. 21, 2021) ("Expressions of optimism and projections about the future are quintessential opinion statements."). Plaintiffs do not even allege that Mr. Musk did not genuinely hold these

opinions.  *See id.* (finding "no specific allegations regarding Defendants' beliefs at the time the alleged statements were made").  Nor do they meet the second criterion, as they fail to allege with any particularity "facts regarding the knowledge [Mr. Musk] did (or did not) possess at the time the opinion statements were made, whose omission made those statements misleading."  *In re Inv. Tech. Grp., Inc.*, 251 F. Supp. 3d 596 (S.D.N.Y. 2017).

### (b)    The same statements are puffery or otherwise immaterial

The same alleged misstatements, related fragmentary, and unspecific tweets, are classic "puffery"—meaning they are not "sufficiently specific for an investor to reasonably rely on that statement as a guarantee of some concrete fact or outcome."  *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 185 (2d Cir. 2013); *see also Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 37 (2d Cir. 2012) ("Statements [that] are too general to cause a reasonable investor to rely upon them," such as "puffery," are not actionable.); *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 392 (2d Cir. 2015) ("Statements of general corporate optimism . . . do not give rise to securities violations."); *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 811 (2d Cir. 1996) (company's statements that it was "optimistic" about future earnings and "expect[ed]" its product to do well was "puffery" that "cannot have misled a reasonable investor").  No reasonable purchaser could have been materially misled by Mr. Musk's tweets about a "literal Dogecoin" being sent to the moon.  ¶¶ 87, 94-95, 116-17.  Plaintiffs claim Mr. Musk's tweets were false because "SpaceX has yet to launch any Dogecoin-themed spacecraft (or coins, or computer node, or Shiba Inu) anywhere," ¶ 95, but the idea that anyone would believe that statements like "to the moooonn" were a binding and material promise strains credulity.  Such statements would be obvious hyberbolic puffery coming from *Dogecoin itself*; they are even less material and reliable when made by Mr. Musk, an unaffiliated third party.

Mr. Musk's alleged misstatements and omissions are immaterial for the additional reason that Dogecoin-related risks already were well-known, so there could have been no "*substantial likelihood that the misrepresentation or disclosure of an omitted fact would have been viewed by a reasonable investor as having *significantly* altered the total mix of information made available.*" *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 170 (2d Cir. 2021).  Plaintiffs appear to argue that Mr. Musk's optimistic statements concealed that Dogecoin is speculative, but *as Plaintiffs allege*, Dogecoin's risks were widely known and discussed and within the "common knowledge that a reasonable investor can be presumed to understand." *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997); *see also, e.g.*, ¶ 22 (Dogecoin is "speculative digital asset[]"); ¶ 32 (acknowledging that Dogecoin's co-founder, Billy Markus, referred to cryptocurrency as "99.99% greater fool theory").  Plaintiffs may not "cherry pick certain public statements for [their] complaint and divorce them from the universe of disclosed information to plausibly allege fraud." *In re Synchrony*, 988 F.3d at 171; *see also In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 377 (E.D.N.Y. 2003) ("Where allegedly undisclosed material information is in fact readily accessible in the public domain, the Second Circuit has found that a defendant may not be held liable for failing to disclose this information."); *Debora v. WPP Grp. PLC*, 1994 WL 177291, at *5 (S.D.N.Y. May 5, 1994) ("A complaint fails to state a § 10(b) claim when the alleged omission has actually been disclosed.").[13]  Regardless, no reasonable investor would consider fragmented

---

[13]  Plaintiffs claim that Mr. Musk's tweet that one of his employees, Jared Birchall, does not have "anything to do" with the DCFI was false because Mr. Birchall is listed as an "advisor" to the DCFI on its website.  ¶ 128.  But, as Plaintiffs admit, Mr. Birchall's "advisor" status—even if assumed true for purposes of this motion—was publicly disclosed on the DCFI website.  ¶ 127 n.11.  Plaintiffs therefore fail to plead a misstatement or omission, much less a material one.  *See In re Synchrony*, 988 F.3d at 171; *In re IAC/InterActiveCorp*, 695 F. Supp. 2d at 118 ("Plaintiffs contend that the S–4 did not disclose the hit IAC's business had taken . . . .  This claim fails for a few reasons. First, IAC had already disclosed this fact.").

and hyperbolic internet "memes" to have altered, much less *significantly* altered, the existing mix of information about Dogecoin.  *See Parnes*, 122 F.3d at 547 ("[S]ome statements are so vague and such obvious hyperbole that no reasonable investor would rely upon them.").

Mr. Musk's alleged statements were immaterial for the additional reason that he prefaced them with *his own warnings* as to the speculative and volatile nature of Dogecoin.  As alleged in the Initial Complaint at ¶ 11, and incorporated via exhibit into the SAC, Ex. B at 1, Mr. Musk's very first tweet about Dogecoin on April 2, 2019 noted that "Dogecoin value may vary" and linked to an article published by a satirical newspaper that criticized cryptocurrency for being "crazy imaginary internet money" susceptible to "sudden fluctuations in the market."[14]  The article also stated that "[t]his volatility may be connected to the fact that we're dealing with a pile of ones and zeros with no attachment to any bank or government and calling it legal tender, but we can't say for certain."  *Id.*[15]  These risks—which were sufficiently well-known to be the basis of satire— were thus "readily accessible in the public domain" by at least April 2019.  *Lau v. Opera Ltd.*, 527 F. Supp. 3d 537, 553 (S.D.N.Y. Mar. 13, 2021); *see also In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 576 (S.D.N.Y. 2013) (information in newspapers readily accessible to reasonable investors), *aff'd*, 566 F. App'x 93 (2d Cir. 2014).

### 3.  Plaintiffs Do Not Allege A Duty to Disclose

Plaintiffs' claims also fail to the extent they are premised on alleged omissions.  An omission is actionable only when the defendant is subject to a duty to disclose the omitted facts.

---

[14]  *Bitcoin Plunge Reveals Possible Vulnerabilities in Crazy Imaginary Internet Money*, THE ONION (Dec. 8, 2017) https://www.theonion.com/bitcoin-plunge-reveals-possible-vulnerabilities-in-craz-1821134169 (hereinafter "Onion").

[15]  In resolving a motion to dismiss, "a court may consider documents attached to the complaint as exhibits, as well as documents that are integral to, or explicitly referenced in, the pleading."  *Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234, 246 (S.D.N.Y. 2002).

*In re Morgan Stanley Tech. Fund Sec. Litig.*, 643 F. Supp. 2d 366, 375 (S.D.N.Y. 2009).

Plaintiffs' omission theory fails from the outset because Plaintiffs fail to establish that Defendants knew any undisclosed facts.  Rather than allege specific facts known to Defendants— but not investors—Plaintiffs claim that Defendants were aware of Plaintiffs' self-serving, speculative theories about Dogecoin, including

> Dogecoin's utter dependence on Defendant's public antics; the unsustainability of this support as a basis for Dogecoin's value; and the severe extent to which Dogecoin is limited in its potential, utility, fungibility, and sustainability as an investment, a medium of commercial exchange, and as a store of value whatsoever with a 4% built in annual inflation.

¶ 226.  Plaintiffs fail to plead with particularity that these assertions even *were* facts— indeed, there are no non-conclusory assertions that Dogecoin's value depended on Mr. Musk's tweets, nor that Dogecoin faced the "severe" limitation asserted by Plaintiffs.  And Plaintiffs fail to plead that these assertions, even if established, were *known* to Defendants *but not* to other investors.

Further, even if Plaintiffs sufficiently alleged that the foregoing were facts *and* that Defendants were uniquely aware of them, Plaintiffs fail to plead that Defendants had a duty to disclose them to "prospective buyers" of the cryptocurrency.  Plaintiffs fail to plead that either defendant was in a fiduciary or other confidential relationship with Dogecoin's investors,[16] or that these supposedly concealed facts were necessary to make Mr. Musk's statements—such as "Doge" and pictures of a dog—not misleading.  *Aetna Cas. and Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 582 (2d Cir. 2005) (duty to disclose only arises in "three circumstances," where there is a

---

[16]    Plaintiffs' allegation that Mr. Musk was "elected" "Dogecoin CEO" on April 1, 2019 refers to a tongue-in-cheek Twitter poll.  ¶ 65.  Plaintiffs do not, and cannot, allege that Mr. Musk assumed any position with DCFI, much less "Dogecoin CEO," a position that does not and (due to the decentralized nature of Dogecoin) cannot exist.

"fiduciary relationship," one party has "superior knowledge, not readily available to the other, and knows the other is acting based on mistaken knowledge," or the party has made a partial or ambiguous statement). Regardless, because the alleged risks facing Dogecoin were public and known, Defendants cannot be liable for having omitted them.

### B.  Plaintiffs Fail to Plead Market Manipulation

To plead a cause of action for market manipulation under Rules 10b-5(a) or (c), Plaintiffs must allege "(1) manipulative acts; (2) damage (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by the defendant's use of the mails or any facility of a national securities exchange." *ATSI*, 493 F.3d at 101.  Like Plaintiffs' misstatements and omissions claim, Plaintiffs' claim of market manipulation is subject to Rule 9(b) and the PSLRA.  *ATSI*, 493 F.3d at 101-02; *see also Wilson v. Merrill Lynch & Co., Inc.*, 671 F.3d 120, 129 (2d Cir. 2011) (applying PSLRA's heightened pleading requirements to market manipulation).  Plaintiffs therefore must plead "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue." *ATSI*, 493 F.3d at 102.  Plaintiffs do not adequately allege *any* of these elements.[17]

Plaintiffs' market manipulation claim also fails in its entirety because it is premised on the same alleged misrepresentations and omissions underlying Plaintiffs' alleged 10b-5(b) violation. It is well-settled that "where," as here, "the sole basis for such claims is alleged misrepresentations or omissions, plaintiffs have not made out a market manipulation claim." *Lentell v. Merrill Lynch*

---

[17]  Plaintiffs also fail to plead reliance on an efficient market, *see ATSI*, 493 F.3d at 101, because they allege that Mr. Musk publicly admitted that his "manipulations are intentional."  ¶ 92. *Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 493 (S.D.N.Y. 2011) ("Plaintiffs were not ignorant of the manipulation of the price of RMDX stock that they now claim to be victims of, and so cannot establish that they relied on market free of manipulation.").

& *Co. Inc.*, 396 F.3d 161, 177 (2d Cir. 2005); *see also SEC v. Rio Tinto PLC*, 41 F.4th 47, 53 (2d

Cir. 2022) (reaffirming *Lentell*).   Nonetheless, the sole basis for Plaintiffs' market manipulation

claim is the misstatements and omissions underlying Plaintiffs' 10b-5(b) claim.  *Compare* ¶ 130

("[I]n another publicity stunt directed at the market manipulation of Dogecoin, Musk tweeted,

'Tesla will make some merch buyable with Doge & see how it goes.'"), *with* ¶¶ 134-35 ("Musk

tweeted that Tesla 'merch' could be purchased with Doge . . . the truth is that Tesla only ended up

accepting Dogecoin as payment for three items out of approximately 170.").   Plaintiffs' claim is

therefore barred as a matter of law.  *In re Alstom SA*, 406 F. Supp. 2d 433, 475 (S.D.N.Y. 2005).

For the same reason, Plaintiffs fail to plead any cognizable manipulative conduct with particularity,

as required under the PSLRA.  And, even if misstatements or omissions could support a market

manipulation claim, Plaintiffs fail to plead that *any* misstatement alleged in support of the

manipulation claim was *false*.  *See, e.g.*, ¶¶ 100-102 (statement that Mr. Musk would appear on

*Saturday Night Live*, which he did); ¶ 130 (announcement that Tesla would make "some merch

buyable with Doge," which it did).[18]

### C.   Plaintiffs Fail to Plead Scienter

To plead scienter, Plaintiffs must "state with particularity facts giving rise to a *strong

inference* that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2)(A),

---

[18]   The only statements *anywhere* in the 47 page, 263-paragraph Complaint *specifically
alleged* to be false are both innocuous and irrelevant to Plaintiffs' claims of manipulation:
Dogecoin inflation would not be meaningful, ¶ 83-84; "SpaceX is going to put a literal Dogecoin
on the literal moon," ¶¶ 94-95, 114-117; cryptocurrency is "decentralized," ¶ 113; Dogecoin has
"potential to replace currency as a medium of exchange," ¶ 125; neither Jared Birchall nor Mr.
Musk "has anything to do with [DCFI]," ¶ 128; Dogecoin has potential to replace currency as a
medium of exchange, ¶¶ 125-26; Tesla merchandise could be bought with Doge, and "soon,
SpaceX merch too," ¶¶ 134-36; Mr. Musk "teased rumors of Dogecion adoption as a Twitter
payment method," ¶¶ 132, 139-41; and Mr. Musk said, "I have never said that people should invest
in crypto," ¶ 146.

*i.e.*, with scienter, a "mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (recognizing that securities fraud actions "can be employed abusively to impose substantial costs on companies and individuals whose conduct conforms to the law"). It "does not suffice that a reasonable factfinder plausibly could infer from the complaint's allegations the required state of mind." *Tellabs*, 551 U.S. at 314. Rather, the PSLRA's "exacting pleading requirements" require that "an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 313-14; *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009).[19]

To meet this heightened standard, Plaintiffs must allege facts (1) demonstrating "defendants had both motive and opportunity to commit the fraud," or (2) "constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI*, 493 F.3d at 99. Plaintiffs fail to satisfy either prong.

> ### 1.     Plaintiffs' Allegations Do Not Support A Plausible Inference of Motive or Opportunity

To plead a strong inference of scienter through allegations of motive and opportunity, Plaintiffs must allege "a concrete and personal benefit . . . resulting from the fraud." *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001). As discussed above, Plaintiffs fail plausibly to allege that Mr. Musk owned any of the Dogecoin "wallets" identified in the Complaint, and therefore fail to plead that he sold any Dogecoin. Plaintiffs therefore fail to plead that Mr. Musk obtained any personal benefit from manipulating the Dogecoin market, and so fail to plead motive. *See also*

---

[19]  To plead scienter as to Tesla, Plaintiffs must allege facts sufficient to raise a "strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *See Jackson v. Abernathy*, 960 F.3d 94, 98 (2d Cir. 2020). But Plaintiffs fail to allege that *anyone* acted with scienter, much less someone whose scienter could be imputed to Tesla.

*Rotunno v. Wood*, 2022 WL 14997930, at *2 (2d Cir. Oct. 27, 2022) ("[T]he kind of personal financial motive that [the Second Circuit has] found sufficient" to plead scienter is "typically evidenced by insider trading for significant financial gain.").

### 2.    Plaintiffs Fail to Allege Conscious Misbehavior or Recklessness

To plead conscious misbehavior or recklessness, Plaintiffs must allege "at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 203 (2d Cir. 2009). Conscious recklessness is "a state of mind *approximating actual intent,* and *not merely a heightened form of negligence*." *S. Cherry St., LLC*, 573 F.3d at 109 (emphasis in original). And, because Plaintiffs fail (for the fourth time) to allege motive, "the strength of the circumstantial allegations must be correspondingly greater." *Local 134 IBEW Joint Pension Tr.*, 553 F.3d at 199.

Far from meeting this standard, the Complaint offers nothing more than conclusory assertions about Mr. Musk. *See, e.g.*, ¶¶ 223-225 (asserting that Mr. Musk "lent Dogecoin a false character in commerce" while knowing unspecified "countervailing information"). Plaintiffs also speculate that Mr. Musk manipulated Bitcoin, ¶¶ 166-170, though they fail to allege even an investigation into his actions, much less any actual findings (or how those accusations create scienter *here*); assert that he encouraged investors to hold Dogecoin "less than one week after market analysts predicted a market correction," ¶ 251; and that he encouraged investors to hold and lose 4% per year to Dogecoin inflation, ¶ 253; *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994) ("[M]isguided optimism is not a cause of action, and does not support an inference of fraud."). These unparticularized allegations about Bitcoin, and conclusory allegations that the foregoing statements were "reckless," do not plead that Mr. Musk or Tesla

intentionally, or recklessly, made misstatements about, or sought to manipulate the market for, Dogecoin.  And Plaintiffs' assertion that Mr. Musk's June 2020 tweet that "[h]e who controls the memes controls the world" was "a clear admission that Musk's manipulations are intentional" is not only nonsense (for the reasons discussed above), but shows that Plaintiffs contend Mr. Musk admitted his supposed manipulation publicly, *see* ¶ 92, which means investors could not have been not misled.[20]

Indeed, Plaintiffs' allegations *undermine* an inference of scienter.  In particular, Plaintiffs highlight Mr. Musk's disparagement of Dogecoin on SNL as a "hustle," ¶ 106, which, if anything, suggests *the opposite* of intent to fraudulently inflate or manipulate Dogecoin.  Mr. Musk's alleged "conduct during the Class Period was" thus "not consistent with fraud," *Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Comm.*, 694 F. Supp. 2d 297, 299 (S.D.N.Y. 2010), let alone sufficient to establish a strong inference that Mr. Musk knowingly or recklessly sought to "deceive, manipulate, or defraud" Dogecoin purchasers.  *Tellabs*, 551 U.S. at 308.

### D.      Plaintiffs Fail to Plead Loss Causation

To plead loss causation, Plaintiffs must allege that a "misstatement or omission *concealed*

---

[20]    The Complaint includes allegations that were previously offered in support of scienter in the SAC, but appear no longer to serve that purpose, following Defendants' first motion to dismiss.  For example, Plaintiffs cite a *Bloomberg* interview in which Mr. Musk said, among other things, "I intend to personally support Dogecoin because I just heard a lot of people who are not that wealthy who . . . have encouraged me to buy and support Dogecoin . . . just people when I walk around the factory at SpaceX or Tesla, they've asked me to support Dogecoin, so I'm doing so." *Compare* ¶ 146, *with* SAC ¶ 93; *compare also* ¶ 145, *with* SAC ¶ 55 ("Lots of people I talked to on the production lines at Tesla or building rockets at SpaceX own Doge . . . .  That's why I decided to support Doge—it felt like the people's crypto.").  Plaintiffs rightfully appear to have abandoned their prior claim that these statements imply Mr. Musk's "personal motive to effect the alleged fraud" in light of Defendants' showing that these are "speculati[ve] and conclusory allegations, which cannot [form the basis of] securities fraud claims." Dkt. No. 62 (Defendants' Memorandum in Support of Motion to Dismiss) at 22 (citing *In re Dynagas LNG Partners LP Sec. Litig.*, 504 F. Supp. 3d 289, 321 (S.D.N.Y. 2020)).

something from the market that, when disclosed, negatively affected the value of the security." *Boluka Garment Co. v. Canaan, Inc.*, 547 F. Supp. 3d 439, 445 (S.D.N.Y. 2021).  It is not enough to allege falsity, or that misstatements "artificially inflated" the value of a security—Plaintiffs must also allege that the "subject of those false [statements] or any corrective disclosure regarding the falsity of those [statements] is the cause of the *decline* in [the security's] value that plaintiffs claim as their loss."  *Lentell*, 396 F.3d at 175.  Section 10(b) is intended "not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations *actually cause*."  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005).[21]

Plaintiffs' assertion that the Class Period extends "until the present," ¶ 8, and their failure to plead a corrective disclosure that resulted in a decline in the price of Dogecoin or Plaintiffs' alleged losses, defeat Plaintiffs' claim of loss causation.  A corrective disclosure must "reveal to the market some part of the truth regarding the alleged fraud."  *Boluka*, 547 F. Supp. 3d at 446.  Plaintiffs purport to extend the Class Period "until the present," but in so doing, set forth no *corrective disclosure* demontrating that the alleged fraud caused Plaintiffs' losses.  Otherwise, the only corrective disclosure Plaintiffs even attempt to plead here is Mr. Musk's appearance on *Saturday Night Live*—in May 2021, over two years ago—which "does not qualify . . . because the [Complaint] does not allege that [it revealed] any new material information."  *In re Manulife Fin. Corp. Sec. Litig.*, 276 F.R.D. 87, 104 (S.D.N.Y. 2011); *see also Lau*, 527 F. Supp. 3d at 559 ("public information" and statements that "merely analyze[]" public information "cannot constitute a corrective disclosure sufficient to allege loss causation").  Nor do Plaintiffs identify

---

[21]  Plaintiffs' loss causation allegations are subject to the heightened pleading standards of Rule 9(b), because Rule 9(b) "requires that *all circumstances* of fraud, except for intent, be pled with particularity."  *E.g.*, *Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 432 n.9 (S.D.N.Y. 2010).  Regardless, Plaintiffs' causation allegations fail under either Rule 8 or Rule 9(b).

which supposed prior misstatements the *Saturday Night Live* appearance is meant to have corrected—indeed, as alleged, the speculative nature of Dogecoin was, by then, well-known. *See In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 300 (S.D.N.Y. 2014) (holding statement that caused stock price decline revealed no new information to market); *Abuhamdan v. Blyth, Inc.*, 9 F. Supp. 3d 175, 209 (D. Conn. 2014) (failure to plead loss causation where there was "nothing in the Complaint to suggest that" the stock price decline "was caused by the materialization of a *concealed* risk as opposed to a *disclosed* risk"); *see also Meyer v. Greene*, 710 F.3d 1189, 1200 (11th Cir. 2013) (stock decline after presentation by "an investor who wielded great clout" was attributable to "changed investor expectations" because the "information used in the presentation had already been public for some time").

Plaintiffs' allegations about declines in the price of Dogecoin likewise fail to plead loss causation because Plaintiffs fail to plead those declines were "caused by the alleged misstatements as opposed to intervening events." *Lentell*, 396 F.3d at 174. Plaintiffs' allegation that Dogecoin fell in the days, weeks, and months after the *Saturday Night Live* appearance, and their conclusory assertions that Plaintiffs lost money by "investing in Dogecoin" as a "direct and proximate result of Defendants' misconduct," ¶¶ 3-6, 8, are insufficient. Mere price declines, without more, do not "establish any causal connection" between Plaintiffs' losses and the alleged misrepresentations. *ATSI*, 493 F.3d at 107.[22] Indeed, Plaintiffs even plead that when Mr. Musk supposedly admitted

---

[22] Plaintiffs' allegation that "it is difficult to explain [Dogecoin's] abnormal price increase other than the Musk effect," ¶ 162, also does not plead loss causation. *See Dura*, 544 U.S. at 342 ("[A]n inflated purchase price will not itself constitute or proximately cause the relevant economic loss."); *Lentell*, 396 F.3d at 175 (allegations that alleged misstatements "artificially inflated" the value of a security and plaintiffs "were damaged thereby" fail to plead loss causation).

he was manipulating the market, the price of Dogecoin *increased*.  ¶¶ 91, 93.[23]

Plaintiffs' conclusory allegation that they purchased Dogecoin "in reliance on Defendants' material misrepresentations, ¶ 229, likewise falls short of pleading reliance.  Plaintiffs do not plead that they are entitled to any presumption of reliance.  Nor could they, since Plaintiffs do not allege Dogecoin traded in an efficient market.  To the contrary, Plaintiffs' allegations *undermine* any presumption of reliance by attributing to Mr. Musk alleged declines in the price of Dogecoin that took place days, weeks, and months after his Saturday Night Live appearance.  ¶¶ 110-11.

## III.  PLAINTIFFS FAIL TO ALLEGE INSIDER TRADING UNDER SECTION 20A

To state a claim under Section 20A, Plaintiffs must plead:  (1) a predicate insider trading violation, and (2) that Defendants traded contemporaneously with Plaintiffs.  *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 309 (S.D.N.Y. 2008).  Section 20A claims also must meet the heightened pleading standards of Rule 9(b) and the PSLRA.  *In re Bear Stearns Cos., Sec., Derivative*, *and ERISA Litig.*, 763 F. Supp. 2d 423, 487 (S.D.N.Y. 2011).

To start, Plaintiffs fail to plead a predicate violation of Section 10(b) consisting of "unlawful trading in securities based on material non-public information."  *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 175 (S.D.N.Y. 2021); *see also City of Taylor Gen. Emps. Ret. Sys. v. Magna Int'l Inc.*, 967 F. Supp. 2d 771, 801 (S.D.N.Y. 2013) ("[F]ailure to allege a violation of the Exchange Act precludes plaintiff's recovery under section 20A.").  Plaintiffs can allege such a predicate under two theories:  *First*, that a "corporate insider

---

[23] Plaintiffs' allegation that "numerous independent scientific studies credibly demonstrate that Musk's social media manipulations are the direct and proximate cause of the dramatic price fluctuations of Dogecoin," Complaint at 4, fails to establish loss causation, because it fails to link any *specific declines* in Dogecoin's price to any specific, alleged disclosures of information previously concealed by a purported misrepresentation or omission by Mr. Musk or Tesla.

is prohibited from trading shares of that corporation based on [material non-public information] in violation of the duty of trust and confidence insiders owe to shareholders." *Aegean*, 529 F. Supp. 3d at 176; *see also In re Shanda Games Ltd. Sec. Litig.*, 2022 WL 992794, at *7 (S.D.N.Y. Mar. 31, 2022) (liability where "corporate insider" trades "on the basis of material, non-public information"). *Second*, that a "corporate *outsider* breaches a duty of trust owed to the source of confidential information by trading on that information." *SEC v. AT&T, Inc.*, 2022 WL 4110466, at *36 n.53 (S.D.N.Y. Sept. 8, 2022); *see also In re Shanda Games*, 2022 WL 992794, at *7 (non-insider "misappropriates [material non-public information] in breach of a fiduciary duty or similar relationship of trust and confidence").

Plaintiffs fail to plead a predicate act under either theory. *First*, as a threshold matter, Plaintiffs do not plead that Mr. Musk (or Tesla) possessed any material non-public information about Dogecoin. Plaintiffs identify as material non-public information only Mr. Musk's "own intended moves to manipulate the price of Dogecoin with his public statements and actions," ¶ 237, which on its face *cannot* be inside information about *Dogecoin*. Indeed, under Plaintiffs' novel theory *every* Section 10(b) defendant would be a Section 20A defendant, because they, of course, have knowledge of their own intended trading. Further, as addressed above, Plaintiffs fail to plead that Mr. Musk did, or intended to, make material misstatements or omissions or manipulate the market. Mr. Musk therefore could not have possessed material non-public information of an intent to do these things. Plaintiffs present this Court with a tautology.

*Second*, even if Mr. Musk's own internal intentions could constitute material non-public information, Plaintiffs do not plead a predicate act under either 20A theory. Plaintiffs fail to plead that Mr. Musk (or Tesla) are somehow "corporate insiders" of Dogecoin, as they fail to allege that Mr. Musk is a director or officer of DCFI, or that Mr. Musk or Tesla has a sufficiently large (or

any) interest in an entity that operates Dogecoin (nor could they, given that Dogecoin is an open-source, decentralized cryptocurrency).   And Mr. Musk could not have "misappropriated" purported material non-public information by breaching a duty to its source, since Mr. Musk cannot breach a duty to himself.

*Third*, Plaintiffs also fail to plead the second element—contemporaneous trading—by failing to allege that Plaintiffs traded at the same time as Defendants (who Plaintiffs also fail to allege with particularity ever sold Dogecoin).  Regardless, Plaintiffs' (incorrect) allegations that Mr. Musk "admitted" to market manipulation mean that Plaintiffs cannot also claim that they unwittingly suffered harm in their trading.

## IV.   PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED

If this Court dismisses Plaintiffs' federal securities law claims, then it may decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.   28 U.S.C. § 1367(c)(3) (providing that the district court "may decline to exercise supplemental jurisdiction" once the court "has dismissed all claims over which it has original jurisdiction"); *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").  Regardless, these claims are also ripe for dismissal on their merits.

### A.   Plaintiffs' Common Law Fraud Claim Must Be Dismissed

To state a claim for common law fraud under New York law,[24] Plaintiffs must plead with particularity a "misrepresentation or concealment of a material fact," scienter on the part of the wrongdoer, intent to induce reliance, reliance, and resulting injury.  *In re Wachovia Equity Sec.*

---

[24]   Plaintiffs fail to allege which common law applies; for purposes of this motion, Defendants assume, without waiver, that New York law applies.

*Litig.*, 753 F. Supp. 2d 326, 380 (S.D.N.Y. 2011).  Because "[t]he elements of claims for federal securities fraud and New York common law fraud are nearly identical," Plaintiffs' claim for common law fraud should be dismissed for the same pleading deficiencies as their federal securities fraud claim.  *Newman v. Fam. Mgmt. Corp.*, 530 F. App'x 21, 24 (2d Cir. 2013).

This claim also should be dismissed for failure to plead reliance.  "[F]ederal courts repeatedly have refused to apply the fraud on the market theory to state common law cases."  *Sec. Inv'r Protection Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 73 (2d Cir. 2000).  Plaintiffs therefore must plead *individual* reliance, *i.e.*, that they "took any action, refrained from acting, or entered into any transaction, *as a result of, or in reliance upon*, the defendants' alleged misstatements or omissions."  *Prime Mover Cap. Partners, L.P. v. Elixir Gaming Techs., Inc.*, 793 F. Supp. 2d 651, 663 (S.D.N.Y. 2011).  But Plaintiffs do not allege that they even *read* Mr. Musk's allegedly false tweets, let alone *relied* on them in deciding to transact in Dogecoin.  Because they fail to plead that any alleged misrepresentation by any Defendant "cause[d] the [Plaintiffs] to engage in the transaction in question," Plaintiffs' common law fraud claim should be dismissed.  *AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202, 209 (2d Cir. 2000).

### B.    Plaintiffs' Unjust Enrichment Claim Should Be Dismissed

Plaintiffs' unjust enrichment claim is entirely duplicative of Plaintiffs' common law fraud and securities fraud claims and should be dismissed for that reason alone.  *See Digilytic Int'l FZE v. Alchemy Finance, Inc.*, 2022 WL 912965, at *8 (S.D.N.Y. Mar. 29, 2022) (dismissing unjust enrichment as duplicative of fraud); *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 156 (S.D.N.Y. 2022) ("Courts will routinely dismiss an unjust enrichment claim that simply duplicates, or replaces, a conventional contract or tort claim.").  Plaintiffs' unjust enrichment claim also fails on its merits, because Plaintiffs cannot show that "(1) [Defendants were] enriched; (2) at the expense of [Plaintiffs]; and (3) that it would be inequitable to permit [Defendants] to retain that which is

claimed by Plaintiff[s]." *Id.* Plaintiffs fail to plead any *unjust* conduct on the part of Defendants for the same reasons they fail to plead fraud. Moreover, an unjust enrichment claim must be dismissed where, as here, the parties "simply had no dealings with each other." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447, 479 (S.D.N.Y. 2014). In that circumstance, any purported *benefit* conferred on the defendant cannot have been "at the expense of the plaintiff." *Dwyer*, 598 F. Supp. 3d at 156. Here, Plaintiffs appear to claim that Defendants were enriched through an *increase in Dogecoin's value*, not through any alleged benefit conferred by Plaintiffs themselves on any Defendant. Plaintiffs do not, and cannot, allege that they entered into any transaction with—or otherwise had any relationship with—either Mr. Musk or Tesla. *See, e.g.*, *In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631, 677 (S.D.N.Y. 2016) ("Because Plaintiffs have failed to allege that they had any relevant relationship with the Defendants or that Defendants were enriched at Plaintiffs' expense, the [complaint] fails to state a claim for unjust enrichment."). This Court should dismiss Plaintiffs' unjust enrichment claim.

## V.   THE COURT SHOULD DENY PLAINTIFFS LEAVE TO AMEND

Plaintiffs' fourth attempt to plead their claims still falls dramatically short of stating a claim for any violation of federal securities or common law. Indeed, this action is yet another example of counsel's abusive and belligerent litigation tactics. *See* note 9, *supra*; *see also Zappin v. Schorr*, 2023 WL 2601578, at *11 (S.D.N.Y. Mar. 22, 2023) ("[Plaintiffs'] litigation tactics evince a desire to harass and intimidate [Plaintiffs'] adversaries and unduly burden the judicial system, rather than an honest attempt to litigate genuine allegations."). Additional opportunities to replead will be futile and only delay resolution of this action, prejudice Defendants, and permit further abuse of process. *See Dimond*, 2014 WL 3377105, at *15.

## CONCLUSION

For these reasons, Defendants Tesla and Elon Musk respectfully request that this Court dismiss this action in its entirety with prejudice.

Dated:   August 7, 2023

Respectfully submitted,

/s/ *Alex Spiro*

Alex Spiro
Sarah Heaton Concannon
Brenna Nelinson
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, New York 10038
Tel: 202-538-8122
Fax: 202-538-8100
alexspiro@quinnemanuel.com
sarahconcannon@quinnemanuel.com
brennanelinson@quinnemanuel.com

Allison Huebert (*pro hac vice*)
TESLA, INC.
1 Tesla Road
Austin, TX 78725
Tel: (512) 557-8797
ahuebert@tesla.com

*Attorneys for Defendants Tesla, Inc. and Elon Musk*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 7, 2023, I electronically served a copy of the foregoing to all counsel of record.

*/s/ Alex Spiro*
Alex Spiro