**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

COLBY GOROG, JOSHUA FLINT,
LOUIS ROBINSON, and MICHAEL
LERRO, individually and on behalf of all
others similarly situated,

Plaintiffs,

v.

ELON MUSK and TESLA, INC.,

Defendants.

Civil Action No.: 1:22-cv-05037-AKH

ECF CASE

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ..............................................................................................................................3

I.    PLAINTIFFS' OWN ALLEGATIONS SHOW THAT THIS COURT DOES NOT HAVE JURISDICTION TO HEAR PLAINTIFFS' CLAIMS.................................3

    A.    Plaintiffs Fail To Rebut Defendants' Showing That They Do Not Meet Their Jurisdictional Burden ................................................................................3

    B.    Plaintiffs' *Howey* Arguments Are Premature, Not Properly Before the Court, and Misguided ................................................................................5

II.    PLAINTIFFS' OPPOSITION DOES NOT SALVAGE THEIR SECTION 10(B) CLAIMS ...........................................................................................................6

    A.    Plaintiffs' Materiality and Falsity Arguments Fail ................................6

    B.    Plaintiffs Misapprehend the Nature of the "Duty" to Disclose ...........10

    C.    Plaintiffs' Scienter Arguments Are Unavailing....................................12

    D.    Plaintiffs' Opposition Does Not Remedy The Defects in Their Market Manipulation Claim ................................................................................13

        1.    Plaintiffs Do Not Plead a Deceptive Act ................................14

        2.    Plaintiffs Do Not Establish Reliance on a Market Free of Manipulation ...........................................................................15

    E.    Plaintiffs' Loss Causation Arguments are Confused and Unavailing .................16

III.    PLAINTIFFS' OPPOSITION DOES NOT SALVAGE THEIR INSIDER TRADING CLAIM ................................................................................................17

IV.    PLAINTIFFS DO NOT REBUT DEFENDANTS' SHOWING THAT THEIR STATE LAW CLAIMS MUST BE DISMISSED .......................................................19

V.    PLAINTIFFS' FAILURE TO PLEAD OWNERSHIP AND SALE OF DOGECOIN WITH PARTICULARITY DEFEATS ALL OF THEIR CLAIMS ...........20

VI.    PLAINTIFFS DO NOT REBUT DEFENDANTS' SHOWING THAT THEIR CLAIMS AGAINST TESLA ARE INADEQUATELY PLEADED AND MUST BE DISMISSED................................................................................................20

VII.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND................................................................................................21

CONCLUSION................................................................................................22

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto,*
    677 F.3d 60 (2d Cir. 2012) ........................................................................5

*ATAX N.Y., Inc. v. Canela #1,*
    2022 WL 3018151 (S.D.N.Y. July 29, 2022) ..........................................9

*Basic, Inc. v. Levinson,*
    485 U.S. 224 (1988) ..................................................................................7

*CFTC v. McDonnell,*
    287 F. Supp. 3d 213 (E.D.N.Y. 2018) ......................................................6

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.,*
    2021 WL 3727095 (S.D.N.Y. Aug. 23, 2021) .........................................10

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG,*
    752 F.3d 173 (2d Cir. 2013) .....................................................................10

*City of St. Clair Shores Police & Fire Ret. Sys. v. Unilever PLC,*
    2023 WL 5578090 (S.D.N.Y. Aug. 29, 2023) .........................................22

*Demarco v. Robertson Stephens Inc.,*
    318 F. Supp. 2d 110 (S.D.N.Y. 2004) ......................................................20

*Dimond v. Darden Restaurants, Inc.,*
    2014 WL 3377105 (S.D.N.Y. July 9, 2014) .............................................23

*ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.,*
    553 F.3d 187 (2d Cir. 2009) .....................................................................14

*Freydl v. Meringolo,*
    2010 WL 3026578 (S.D.N.Y. Aug. 2, 2010) ...........................................22

*In re Inv. Tech. Grp., Inc.,*
    251 F. Supp. 3d 596 (S.D.N.Y. 2017) ......................................................9

*Kalnit v. Eichler,*
    264 F.3d 131 (2d Cir. 2001) .....................................................................13

*King County v. IKB Deutsche Industriebank AG,*
    863 F. Supp. 2d 288 (S.D.N.Y. 2012) ......................................................12

*Koplyay v. Cirrus Logic Inc.*,
    2013 WL 6233908 (S.D.N.Y. Dec. 2, 2013) .................................................................14

*Lentell v. Merrill Lynch & Co. Inc.*,
    396 F.3d 161 (2d Cir. 2005) ..................................................................................16, 18

*Marcus v. Frome*,
    275 F. Supp. 2d 496 (S.D.N.Y. 2003) ...................................................................21

*Martin v. Dickson*,
    100 Fed. Appx. 14 (2d Cir. 2004) .........................................................................23

*Mendoza v. USCIS*,
    2022 WL 1090525 (S.D.N.Y. Mar. 22, 2022) .....................................................6-7

*In re Merrill Lynch Auction Rate Sec. Litig.*,
    704 F. Supp. 2d 378 (S.D.N.Y. 2010) ...................................................................17

*In re Morgan Stanley Tech. Fund Sec. Litig.*,
    643 F. Supp. 2d 366 (S.D.N.Y. 2009) .............................................................11, 12

*Morrison v. Nat'l Austl. Bank Ltd.*,
    561 U.S. 247 (2010) ............................................................................................3, 4

*Oasis Capital, LLC v. Connexa Sports Techs.*,
    2023 WL 4304725 (S.D.N.Y. June 30, 2023) ......................................................19

*In re Omnicom Group, Inc. Sec. Litig.*,
    597 F.3d 501 (2d Cir. 2010) .................................................................................18

*Prime Mover Cap. Partners L.P. v. Elixir Gaming Techs., Inc.*,
    898 F. Supp. 2d 673 (S.D.N.Y. 2012) ...................................................................21

*Russell Publ'g Grp., Ltd. v. Brown Printing Co.*,
    2014 WL 1329144 (S.D.N.Y. Apr. 3, 2014) ........................................................12

*SEC v. Coinbase, Inc.*,
    No. 23-4378 (S.D.N.Y. June 6, 2023) ....................................................................4

*SEC v. Ishan Wahi, Nikhil Wahi, and Sameer Ramani*,
    No. 22-1009 (W.D. Wa. July 21, 2022) ................................................................19

*SEC v. Kik Interactive Inc.*,
    492 F. Supp. 3d 169 (S.D.N.Y. 2020) .....................................................................6

*SEC v. Telegram Grp. Inc.*,
    448 F. Supp. 3d 352 (S.D.N.Y. 2020) .....................................................................6

*SEC v. W.J. Howey Co.*,
  328 U.S. 293 (1946) ................................................................................5

*Silsby v. Icahn*,
  17 F. Supp. 3d 348 (S.D.N.Y. 2014) ....................................................13

*In re Synchrony Fin. Sec. Litig.*,
  988 F.3d 157 (2d Cir. 2021) ...................................................................7

*Tacopina v. O'Keeffe*,
  2015 WL 5178405 (S.D.N.Y. Sep. 4, 2015) .........................................13

*Thomas v. Shiloh Indus., Inc.*,
  2017 WL 1102664 (S.D.N.Y. Mar. 23, 2017) ......................................13

*Tung v. Bristol-Myers Squibb Co.*,
  412 F. Supp. 3d 453 (S.D.N.Y. 2019) ...................................................22

*United States v. Falcone*,
  257 F.3d 226 (2d Cir. 2001) .................................................................20

*United States v. Georgiou*,
  777 F.3d 125 (3d Cir. 2015) ...................................................................4

*United States v. Zaslavskiy*,
  2018 WL 4346339 (E.D.N.Y. Sept. 11, 2018) .......................................6

*Veleron Holding, B.V. v. Stanley*,
  117 F. Supp. 3d 404 (S.D.N.Y. 2015) ...................................................16

## Rules/Statutes

15 U.S.C. § 78c(a)(1) .............................................................................3, 4

15 U.S.C. § 78t-1 .....................................................................................22

15 U.S.C. § 78u-4 ...........................................................................2, 8, 14

17 C.F.R. § 240.10b-5 ......................................................................20, 21

Fed. R. Civ. P. 9(b) ..................................................................................8

Fed. R. Civ. P. 11 .............................................................................2, 23

## PRELIMINARY STATEMENT

Plaintiffs' Opposition[1]—long on rhetoric, but short on substance—does not change the necessary outcome here:  This Court should dismiss without leave to amend, putting an end to this unfounded action once and for all.  In the 15 months that this case has been pending, Plaintiffs have filed **four** separate complaints—and now seek leave of Court for a fifth bite at the apple in a concurrently-filed cross-motion for leave (which this Court should deny).[2]  After the Opposition's hyperbole and strawman arguments are stripped away, Plaintiffs still fail to state a claim under either federal securities law or state law.  This Court should dismiss with prejudice.

As an initial matter, the Court lacks jurisdiction to hear Plaintiffs' claims because Plaintiffs do not satisfy *Morrison*'s domesticity requirement.  Plaintiffs allege that they purchased Dogecoin on Coinbase and similar cryptocurrency platforms, **not** one of the 18 registered securities exchanges in the United States.  And Plaintiffs concede that irrevocable liability was incurred through a decentralized process that took place over multiple computer nodes, the **majority** of which are located outside the U.S.  Plaintiffs cannot escape the import of their own pleading:  This Court does not have jurisdiction.

Should the Court reach the merits, each of Plaintiffs' causes of action fails:

---

[1]   Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Third Amended Complaint (Dkt. No. 96) ("Opposition" or "Opp.").

Unless otherwise defined, capitalized terms herein have the meanings assigned to them in Defendants' Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Third Amended Complaint (Dkt. No. 95).  Citations to "¶ __" refer to the Third Amended Class Action Complaint ("TAC") filed June 7, 2023 (Dkt No. 77).  All emphasis is added and quotations and citations omitted unless noted.

[2]   *See* Plaintiffs' Cross-Motion for Leave to File Fourth Amended Class Action Complaint (Dkt. Nos. 98, 98-1); Defendants' Opposition to Plaintiffs' Cross-Motion for Leave to File Fourth Amended Complaint (concurrently filed).

*First*, Plaintiffs do not state a claim against Mr. Musk for securities fraud under Section 10(b)—whether a strained misstatements and omissions claim or a repackaged market manipulation claim—because Plaintiffs have not pleaded a single element of securities fraud with particularity.  Specifically, Plaintiffs do not:  (i) allege any material false statement or omission; (ii) plead a duty to disclose; (iii) come close to pleading an inference of scienter, let alone one that is "cogent and compelling," as required under the PSLRA; (iv) point to any manipulative conduct forming the predicate of a market manipulation claim; or (v) plead loss causation, a failure that is all the more glaring where, as here, Plaintiffs purport to extend the Class Period "to the present," without pleading a single alleged corrective disclosure after ***May 2021***.  Count I must be dismissed.

*Second*, Plaintiffs do not state a claim against Defendants for insider trading under Section 10(b).  Mr. Musk is not a Dogecoin "insider" who owed any duty of care to the public, and his "silly," Opp. at 44, and public social media posts are not material non-public information.  Count II must be dismissed.

*Third*, Plaintiffs do not state a claim against Mr. Musk for common law fraud or against either Defendant for unjust enrichment because these claims are both duplicative of Plaintiffs' purported claims under the federal securities laws and inadequately pleaded.  Counts III and IV must be dismissed.

*Fourth*, Plaintiffs persist in pressing forward with their claims based on nothing more than inference, speculation, and innuendo, despite Defendants' repeated showing that Plaintiffs fail to plead Defendants' control of the alleged wallets or Dogecoin trading with the requisite particularity and despite Defendants' submission (in support of their Rule 11 sanctions motion) of ***sworn declarations*** establishing that neither Mr. Musk nor Tesla owned ***any of the wallets*** about which Plaintiffs complain nor ***ever sold Dogecoin***.  Dkt. Nos. 89-90.

*Finally*, Plaintiffs' Opposition (like the TAC itself) appears to include Tesla as a mere afterthought, devoting less than **one page** of 50 to attempting to identify any purported well-pleaded allegations against Tesla (which, of course, do not exist).  Because Plaintiffs' allegations are insufficient to sustain any claim against Tesla, let alone a fraud or unjust enrichment claim, Counts II and IV must be dismissed against Tesla.

* * * *

For these reasons, and as further detailed below and in Defendants' opening brief, this Court should dismiss the TAC without leave to amend.

## ARGUMENT

## I.   PLAINTIFFS' OWN ALLEGATIONS SHOW THAT THIS COURT DOES NOT HAVE JURISDICTION TO HEAR PLAINTIFFS' CLAIMS

Plaintiffs' response to Defendants' *Morrison* arguments misses the mark:  Plaintiffs have not met their burden to show that Lead Plaintiffs' and the putative class's alleged transactions in Dogecoin occurred **on a domestic exchange** (defined by the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(1) ("Exchange Act")) or **within the United States**.  Mot. at 9-10 (citing *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 267 (2010)).

### A.   Plaintiffs Fail To Rebut Defendants' Showing That They Do Not Meet Their Jurisdictional Burden

*First*, Plaintiffs argue that one of the Lead Plaintiffs and unidentified members of the putative class "purchased Dogecoin using Coinbase, ¶¶ 6, 52," Opp. at 11, and assert—based on unproven allegations by the U.S. Securities and Exchange Commission ("SEC") in a recently-filed complaint—that Coinbase "resemble[s]" an "exchange" under the Exchange Act, *id*.  This is insufficient under *Morrison*.  "Exchange," as used in *Morrison*, is a term of art, meaning a **registered** exchange under the Exchange Act.  *E.g.*, *United States v. Georgiou*, 777 F.3d 125, 134-35 (3d Cir. 2015) (first prong of *Morrison* applies to transactions in securities listed on one of the

3

18 U.S. registered securities exchanges) (citing cases).  The SEC recently has taken the position that Coinbase **should have been registered** under the Exchange Act.  Complaint, *SEC v. Coinbase, Inc.*, No. 23-4378 (S.D.N.Y. June 6, 2023).  But Coinbase disputes the SEC's claims and no fact-finder has so-held.  *See* Coinbase Answer at 173-75, *SEC v. Coinbase, Inc.*, No. 23-4378 (S.D.N.Y. June 28, 2023) (denying SEC is entitled to relief sought and asserting defenses, including failure to state a claim, no authority to regulate, major questions doctrine, lack of due process and fair notice, abuse of discretion, and unclean hands).  More importantly, **no** cryptocurrency platform on which Dogecoin may have been purchased or sold by any member of the putative class is a **registered** securities exchange under the Exchange Act, as contemplated under *Morrison*.

*Second*, both the TAC and Plaintiffs' opposition establish, at most, that a **minority** of Dogecoin transactions take place on computers within the United States.  *See* ¶¶ 43, 49-51 (alleging **40 percent** of the computer network running Dogecoin core software is in the U.S., and therefore admitting that **60 percent** of the computer network is **outside** the U.S.); Opp. at 14 ("Over **40%** of full nodes in the Dogecoin computer network are located within the United States, ¶ 47, n.2, and this percentage was roughly the same at the start of the class period, ¶ 49, n.3.").  Because Plaintiffs' own allegations establish that the majority of transactions in Dogecoin occur **outside** the United States, Plaintiffs have not pleaded that "irrevocable liability" passed in the United States, nor could they.  Plaintiffs plead that—at best—there is a 40% probability irrevocable liability passed in the United States and a 60% probability that it did **not**.  The purported locations of cryptocurrency platform websites and trading concentrations, Opp. at 13, are irrelevant to the question whether irrevocable liability occurred in the U.S., where, as here, 60 percent of the transactions are—by Plaintiffs' own pleading—foreign.  *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 67 (2d Cir. 2012) (plaintiff must plausibly allege "that the purchaser

incurred irrevocable liability *within* the United States to take and pay for a security, or that the seller incurred irrevocable liability *within* the United States to deliver a security").

**B.    Plaintiffs' *Howey* Arguments Are Premature, Not Properly Before the Court, and Misguided**

Plaintiffs devote over one-third of their six-page *Morrison* argument to rebutting an argument that Defendants ***do not make at this time***: That Dogecoin is not a security.  To be clear, the facts-and-circumstances-based question whether Plaintiffs' transactions in Dogecoin were or were not securities transactions is not before this Court, and this Court must resist Plaintiffs' invitation to engage in *dicta*.  ***This Court need not decide the question whether Dogecoin is or is not a security to dismiss all of Plaintiffs' claims with prejudice.***  Mot. at 1-5.  Should Plaintiffs' claims survive Defendants' motion to dismiss (which they should not), then Defendants intend to challenge—***at the appropriate time***—Plaintiffs' baseless allegation that Dogecoin is an "investment contract" under *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946).  That assessment would require applying each component of the *Howey* test to the facts and circumstances to be developed through yet-to-be-conducted third-party discovery of the Dogecoin Foundation, which Plaintiffs (of course) do not do.  Rather, Plaintiffs argue that "[t]his Court, other courts in this district, other courts in this Circuit, other federal courts, and the SEC have consistently held over the past six years that cryptocurrencies are securities under federal law," Opp. at 9, but in their invitation to this Court to prejudge an issue not properly before it, Plaintiffs misstate the legal landscape, including as set forth in the very cases they cite.  As this Court stated in *SEC v. Kik Interactive Inc.*, 492 F. Supp. 3d 169, 183 (S.D.N.Y. 2020), for example, "***every cryptocurrency***, along with the issuance thereof, is ***different*** and ***requires a fact-specific analysis***."  Other courts within this Circuit similarly have held.  *E.g.*, *SEC v. Telegram Grp. Inc.*, 448 F. Supp. 3d 352, 358 (S.D.N.Y. 2020) (recognizing that some digital tokens are not securities); *United States v. Zaslavskiy*, 2018

WL 4346339, *4 (E.D.N.Y. Sept. 11, 2018) ("Whether a transaction or instrument qualifies as an investment contract is a ***highly fact-specific inquiry***" that must be analyzed "based on evidence presented at trial."); *see also, e.g.*, *CFTC v. McDonnell*, 287 F. Supp. 3d 213, 229 (E.D.N.Y. 2018) ("***[S]ome*** products that are labeled cryptocurrencies have characteristics that make them securities.").

* * * *

In sum, jurisdictional requirements underpin the U.S. system of jurisprudence and are essential to the appropriate administration of justice. *See, e.g.*, *Mendoza v. USCIS*, 2022 WL 1090525, at *2 (S.D.N.Y. Mar. 22, 2022).   Plaintiffs are incapable of curing this threshold jurisdictional defect, and this Court should dismiss with prejudice.

## II.    PLAINTIFFS' OPPOSITION DOES NOT SALVAGE THEIR SECTION 10(B) CLAIMS

In response to Defendants' showing that Plaintiffs' Section 10(b) claims must be dismissed because Plaintiffs do not plead material misstatements or omissions or any act of manipulation (much less an entire scheme), scienter, or loss causation, Plaintiffs advance a veritable kitchen sink of arguments, each less availing than the last.

### A.    Plaintiffs' Materiality and Falsity Arguments Fail

Although Plaintiffs devote roughly one-third of their Opposition to a variety of materiality arguments, Opp. at 15-32, saying it (no matter how insistently or repetitively) does not make it so. Plaintiffs' arguments boil down to the assertion that because Mr. Musk is "a household name" with a large social media following, it would "deny reality" to find Mr. Musk's tweets about a cryptocurrency accompanied by the image of a Shiba Inu dog immaterial.  Opp. at 15.  The alleged importance of the speaker and the frequency and sweep of the statements do not, however, create a "a ***substantial likelihood*** that the disclosure . . . would have been viewed by the reasonable

investor as having significantly altered the total mix of information made available," *Basic, Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988), particularly where, as here, Plaintiffs expressly plead that the total mix of information ***also*** included Dogecoin co-founder Billy Marcus's statement that cryptocurrency is "a scam driven by 99.9% greater fool theory," ¶ 32, and Mr. Musk's description of Dogecoin as "a hustle," ¶ 106. *See also In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 170 (2d Cir. 2021). Because no reasonable investor would have considered Mr. Musk's tweets, memes, funny images, personal opinions, puffery, and praise as altering the total mix of readily available public information about the speculative nature of Dogecoin and cryptocurrencies generally (which Plaintiffs themselves cite, TAC at 4 & ¶ 22), each of Plaintiffs' materiality arguments fails.

*First*, Plaintiffs self-servingly argue that they allege both materiality and falsity with "ample particularity," Opp. at 16, but Plaintiffs' argument is both tautological and false. Although Plaintiffs acknowledge that they are required under Rule 9(b) and the PSLRA to "specify each statement alleged to have been misleading [***and***] the reason or reasons why the statement is misleading," *id.*, Plaintiffs do not meet this standard. For example, Plaintiffs assert that Mr. Musk's statements that Dogecoin "is money" and "viable as currency" "have always been untrue," Opp. at 16 (citing ¶ 126), but Paragraph 126 of the TAC does not state with specificity why it is misleading ***as a matter of law*** to refer to Dogecoin as "money" or "currency." Rather, this and similar portions of the TAC merely set forth Plaintiffs' ***speculation*** that "widespread adoption of Dogecoin as currency or money is ***unlikely***." ¶ 126. But substituting Plaintiffs' opinion for Mr. Musk's is not the stuff of securities fraud.[3]

---

[3] Plaintiffs' Opposition is complicated by the fact that many of the TAC paragraphs cited in the Opposition do not say what Plaintiffs represent that they say. *Compare* Opp. at 18 ("He even outright exhorted the public to invest. ¶ 79."), *with* ¶ 79 (Musk tweeted calling Dogecoin, "the people's crypto"); *compare* Opp. at 42 ("Elon Musk assured millions of unsophisticated investors . . . that his endorsement would sustain its increased value, ¶ 78."), *with* ¶ 78 (Mr. Musk

*Second*, Plaintiffs attempt to use their Opposition to insert new allegations into the TAC and recast existing allegations to bolster their pleading after-the-fact, Opp. at 16-18, but Plaintiffs "may not amend the allegations in their Complaint by asserting new facts in their Opposition." *ATAX N.Y., Inc. v. Canela #1*, 2022 WL 3018151, at *5 (S.D.N.Y. July 29, 2022).  For example, Plaintiffs highlight Mr. Musk's tweet that "[i]f major Dogecoin holders sell most of their coins, it will get my full support.  Too much concentration is the only real issue IMO ['in my opinion']." ¶ 86 (cited in Opp. at 17), but the TAC contains no allegation—even a conclusory one—that this is ***materially false***.  Instead, Plaintiffs belatedly suggest, for the first time, that Mr. Musk omitted to state that "***he*** was the biggest 'whale' of them all."  Opp. at 17 (emphasis in original).  But even if Plaintiffs' *ex post* pleading were permissible (which it is not), Plaintiffs do not allege with particularity "facts regarding the knowledge [Mr. Musk] did (or did not) possess at the time the opinion statements were made, whose omissions made those statements misleading."  Mot. at 17 (quoting *In re Inv. Tech. Grp., Inc.*, 251 F. Supp. 3d 596, 619 (S.D.N.Y. 2017)).  Likewise, in response to Defendants' showing that Mr. Musk's statement that "I haven't & won't sell any Doge" is ***true***, Mot. at 14; Dkt. Nos. 86-90, Plaintiffs aver that the TAC "explains in considerable detail why those claims were false, including at the time Musk made them," Opp. at 17 (citing ***38***

---

tweeted "a screen-capture of the famous "Circle of Life" scene from Disney's The Lion King animated film, with Dogecoin's Shiba Inu mascot and Elon Musk superimposed . . . above this image, Musk added the remark, "ur welcome" an apparent reference directed at Dogecoin investors.");  *compare* Opp. at 31 ("[I]n prefacing his remarks about Dogecoin's viability as currency in his December 2021 interview with Time, ¶ 125, Musk stated that, I could wax on about the nature of money for hours because I played a significant role in creating PayPal, and so my understanding of the money system at a fundamental level of how it actually works, the detailed mechanics of it, is—I think there are very few people who understand it better than me."), *with* ¶ 125 ("In a videorecorded interview with Time magazine posted to Twitter on December 13, 2021, Musk again falsely and misleadingly stated that Dogecoin has potential to replace currency as a medium of exchange.").

*paragraphs* of the TAC, *none* of which alleges with particularity that Mr. Musk ever *sold* Dogecoin).

*Third,* Plaintiffs insist that "many" of Mr. Musk's tweets, memes, funny images, cartoons, and insubstantial and cryptic statements "*do* contain objective statements" that Plaintiffs assert are false, Opp. at 18 (emphasis in original), but even a cursory review of the TAC evidences the inaccuracy of Plaintiffs' claim.  For example, Plaintiffs assert that Paragraph 71 of the TAC contains an actionable "objective" statement, but that paragraph states:

> On July 17, 2020, Musk tweeted a meme of a photo of a dust storm overtaking an urban area, with the face of the Dogecoin Shiba Inu superimposed on the dust cloud. The cloud was labeled "dogecoin standard."  The urban area about to be overtaken was labelled, "global financial system."  Above this image, Musk superimposed the remark, "It's inevitable."

¶ 71.  This paragraph is quintessential puffery and opinion, *not* a material misstatement of objective fact that could ever be subject to an action for securities fraud.  *See, e.g.*, *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2021 WL 3727095, at *9 (S.D.N.Y. Aug. 23, 2021).  Despite pages of often incomprehensible argument, Opp. at 20-25, Plaintiffs fail to rebut Defendants' showing that Mr. Musk's tweets are both immaterial opinions (that Mr. Musk genuinely held) and inactionable puffery that is not "sufficiently specific for an investor to reasonably rely on that statement as a guarantee of some concrete fact or outcome."  Mot. at 17 (quoting *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 185 (2d Cir. 2013)).

*Finally*, Plaintiffs repeatedly fall back on the argument that "*each and every one* of Musk's tweets related to Dogecoin make one very particular representation:  that the world's richest man endorses investment in Dogecoin."  Opp. at 18 (emphasis in original); *see also id.* at 25, 31, 42.  But this claim is belied by Plaintiffs' own allegations that, for example, Mr. Musk described Dogecoin as "a hustle" on national television.  TAC at 3.  Moreover, even if Mr. Musk had

*consistently* touted Dogecoin, rather than offering his own, often mercurial, opinions, Plaintiffs fail to state with particularity why that endorsement is ***materially false***.

### B.   Plaintiffs Misapprehend the Nature of the "Duty" to Disclose

Plaintiffs confidently assert that Mr. Musk "incurred a duty to disclose" alleged omitted facts, Opp. at 30, but their argument underscores their ignorance of the governing legal principle. As explained in Defendants' opening brief, an omission is actionable only when the defendant is subject to a ***duty to disclose*** the omitted facts. *In re Morgan Stanley Tech. Fund Sec. Litig.*, 643 F. Supp. 2d 366, 375 (S.D.N.Y. 2009). Thus, to prove a material omission under Section 10(b), Plaintiffs must plead (with the requisite level of particularity) that Mr. Musk was in a ***fiduciary*** or ***other confidential relationship*** with Dogecoin's investors, that Mr. Musk had an affirmative legal obligation creating a duty to disclose, or that the supposedly omitted facts were ***necessary*** to make Mr. Musk's statements not misleading. Mot. at 20. Plaintiffs' legal boilerplate and nonsensical rhetoric—"[d]espite all this, there is one duty Musk certainly was free from: the duty to promote Dogecoin in the first place," Opp. at 30—are incapable of satisfying this legal standard.

*First*, Plaintiffs fail to establish that Mr. Musk ***knew*** any ***facts*** that needed to be disclosed to make his tweets not misleading. Plaintiffs suggest that "[s]ubsequent . . . events rendered . . . [Mr. Musk's] assurances false," Opp. at 31, but cannot argue that Mr. Musk knew about ***subsequent events that had not yet occurred*** at the time of his purported assurances. Similarly, Plaintiffs assert that Mr. Musk "reasonably should have known significant countervailing facts that he failed to disclose," *id.*, but the purported "undisclosed facts" are Mr. Musk's *Saturday Night Live* ("SNL") performance and the fact that SpaceX has not launched a "Dogecoin-themed spacecraft anywhere," *id.* (citing ¶¶ 95, 103-12, 117). Even if these statements were material (they are not), Mr. Musk's SNL appearance and the fact that SpaceX has not launched a Dogecoin or a

Shiba Inu to the moon *were not concealed* or hidden from the public, and Mr. Musk therefore cannot have breached a duty to disclose these so-called "facts."

*Second*, Plaintiffs misapprehend the nature of the duty. Even if Plaintiffs adequately pleaded a causal connection between Dogecoin's value and Mr. Musk's tweets (they have not) and established that Defendants knew this purportedly undisclosed "fact" (they have not), they do not plead a *fiduciary* or other *confidential relationship* with Dogecoin investors giving rise to a duty to disclose. Plaintiffs do not allege that Mr. Musk's "position or superior access to confidential information is so great as virtually to require the other party to repose trust and confidence in" him, nor could they. *Russell Publ'g Grp., Ltd. v. Brown Printing Co.*, 2014 WL 1329144, at *3 (S.D.N.Y. Apr. 3, 2014). Nor do Plaintiffs allege that any trust or confidence placed in Mr. Musk was "accepted." *Id.*; *see also King County v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288, 314-15 (S.D.N.Y. 2012), 2012 WL 11896326 (S.D.N.Y. Sep. 28, 2012) (dismissing additional claims) ("New York does not recognize so broad a fiduciary duty—a fiduciary duty does not arise from a party's superior knowledge about an investment product, nor does it arise in a business transaction between an investor and a company soliciting investors."). Rather, Plaintiffs recite facts, untethered from the fiduciary standard, that Plaintiffs allege "support" the conclusory allegation of a fiduciary relationship between Mr. Musk and his social media followers. Opp. at 31-32. These do not suffice.

*Finally*, Plaintiffs do not even attempt to plead—or argue—that Mr. Musk had an affirmative legal obligation to make disclosures to investors. *In re Morgan Stanley Tech. Fund Sec. Litig.*, 643 F. Supp. 2d at 375.

11

### C.     Plaintiffs' Scienter Arguments Are Unavailing

Plaintiffs' Opposition underscores—rather than cures—the TAC's scienter pleading defects, which are fatal to Plaintiffs' securities fraud claims.

*First*, in apparent recognition that they fail to plead that Defendants **sold** Dogecoin, Plaintiffs now argue that Defendants' motive can be established through allegations that Defendants **continue to hold** Dogecoin at an increased market capitalization, Opp. at 38, but this argument fails.  The TAC contains no well-pleaded facts establishing that Defendants somehow benefitted by holding Dogecoin. *Tacopina v. O'Keeffe*, 2015 WL 5178405, at *5 n.5 (S.D.N.Y. Sept. 4, 2015) ("[A] complaint cannot be amended merely by raising new facts and theories in [a plaintiff's] opposition papers.").  Plaintiffs' new assertions are, in any case, insufficient to plead "a **concrete and personal benefit** . . . resulting from the fraud," *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001), because Plaintiffs fail plausibly to allege that Mr. Musk owned any of the Dogecoin wallets identified in the TAC, Mot. at 6-8; Section V *infra*, and likewise fail to plead that the price of Dogecoin is **higher** now than it was at whatever points in time Defendants allegedly purchased. *Silsby v. Icahn*, 17 F. Supp. 3d 348, 365 (S.D.N.Y. 2014) ("[P]laintiffs have not alleged any concrete and personal benefit to any defendant" where they "do not allege any sales of stock during the Class Period, nor do they identify any other specific means through which [defendants] might have gained by the alleged fraud."); *see also Thomas v. Shiloh Indus., Inc.*, 2017 WL 1102664, at *3 (S.D.N.Y. Mar. 23, 2017) ("A generalized motive to . . . keep stock prices high, is not sufficiently concrete for purposes of inferring scienter.").

*Second*, Plaintiffs do not allege facts evidencing conscious misbehavior or recklessness, but instead point to  inconsistent and contradictory allegations that show nothing of the kind.  Opp. at 38-40.  For example, Plaintiffs suggest that Mr. Musk "urged [investors] to **hold** when he reasonably should have known this was **terrible advice**," *id.* at 39, while **simultaneously** arguing

that Defendants had a motive to commit securities fraud because they were ***holding Dogecoin***, *id.* at 38 ("Given that Defendants admit investing in Dogecoin (and deny ever having sold it, Dkt. 89-90), they have clearly achieved concrete benefits by the means alleged.").   At most, Plaintiffs allege that Mr. Musk shared with his social media followers his excitement about Dogecoin, while also warning them of its risks.  ¶¶ 82, 86, 120.  Such allegations fall short of "conduct which is ***highly unreasonable*** and which represents an ***extreme departure*** from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 203 (2d Cir. 2009).   Mr. Musk was aware of precisely the same Dogecoin dangers as the general public.  *E.g.*, ¶ 32 (Billy Markus described Dogecoin as "99.99% greater fool theory").

*Finally*, Plaintiffs endeavor to plead scienter through *Tellabs*' catch-all for "plausible opposing inference," Opp. at 40-41, but Plaintiffs' effort to shift the burden onto Defendants to explain why Mr. Musk did ***not*** act with scienter is unavailing and flies in the face of Plaintiffs' clear heightened burden under the PSLRA.  *Koplyay v. Cirrus Logic Inc.*, 2013 WL 6233908, at *8 (S.D.N.Y. Dec. 2, 2013) ("Defendants do not bear the burden of disproving scienter."). Plaintiffs' so-called "cogent" inference of scienter also is based on ***demonstrably false*** allegations for which there is no particularized support:  that Defendants "surreptitiously offload[ed] . . . this asset at the same time Musk [w]as pumping it."  Opp. at 40; *see* Section V *infra* (Plaintiffs fail to plead control of wallets or sales of Dogecoin).

### D.    Plaintiffs' Opposition Does Not Remedy The Defects in Their Market Manipulation Claim

In their opening brief, Defendants demonstrated that Plaintiffs fail to state a claim for market manipulation because, *inter alia*, Plaintiffs do not plead:  (i) a unique deceptive predicate

act; (ii) loss causation; (iii) reliance; or (iv) scienter.  Mot. at 21.  Any one of these pleading defects is sufficient to defeat Plaintiffs' claim, and the TAC suffers from *all* of them.  Plaintiffs' Opposition does not rehabilitate their market manipulation claim.

### 1. Plaintiffs Do Not Plead a Deceptive Act

Plaintiffs assert that Defendants are "mistaken" in claiming that their market manipulation claim impermissibly is premised on the same misrepresentations and omissions as their misstatements and omissions claim, Opp. at 34, but each of the so-called predicate acts to which Plaintiffs point ("[e]xhorting investors to buy, urging them to hold, to not panic, deliberately pumping the price of an asset while surreptitiously offloading it") is premised on the ***same*** purported misconduct as Plaintiffs' misstatements claim—***Mr. Musk's tweets***, *id.* (citing tweets pleaded in ¶¶ 69-70, 79, 88, 97, 118, 129-30, 134-35, 145, 196-98).  Indeed, Plaintiffs' Opposition categorizes multiple statements as ***both*** misrepresentations ***and*** market manipulation.  *Compare, e.g.*, Opp. at 34 (asserting Mr. Musk manipulated the market by using Twitter "to pump Dogecoin's price"), *with id.* at 16 (misstatements claim based on "Musk's sustained and obstreperous efforts to pump Dogecoin"); *compare id.* at 34 (market manipulation claim based on Mr. Musk "encourag[ing] investors to hold Dogecoin after surreptitiously selling a large amount of it"), *with id.* at 31 (Mr. "Musk's exhortation to hold" was alleged material misstatement); *compare id.* at 35 (market manipulation claim based on Tesla accepting Dogecoin as payment on its website following an announcement by Mr. Musk), *with id.* at 40 (this announcement was a "false promise[]").  Plaintiffs' strained attempt to plead misstatements and market manipulation on the same facts and failure to plead any deceptive act is fatal to their market manipulation claim.  Mot. at 21-22 (citing *Lentell v. Merrill Lynch & Co. Inc*., 396 F.3d 161, 177 (2d Cir. 2005) ("Where the

sole basis" for Plaintiffs' market manipulation claim "is alleged misrepresentations or omissions, [p]laintiffs have not made out a market manipulation claim.")).

In a futile attempt to establish market manipulation through "a showing that [the] alleged manipulator engaged in *market activity* aimed at deceiving as to how other market participants have valued a security," Opp. at 35 (emphasis in original), Plaintiffs again argue that Mr. Musk had an "artificial" effect on the market by "pumping the price of Dogecoin . . . while surreptitiously selling," *id.*  But not only are there no well-pleaded allegations in the TAC that Defendants ever sold Dogecoin, Section V *infra*, Plaintiffs also fail adequately to allege that this market activity was *deceptive*.  *E.g.*, *Veleron Holding, B.V. v. Stanley*, 117 F. Supp. 3d 404, 459 (S.D.N.Y. 2015) ("A claim of market manipulation require[s] a showing that an alleged manipulator engaged in market activity aimed at deceiving investors as to how other market participants have valued a security.").

### 2.      Plaintiffs Do Not Establish Reliance on a Market Free of Manipulation

Plaintiffs engage in a misguided attempt to establish the reliance element of their market manipulation claim by arguing that they plead the existence of "an efficient marketplace free of manipulation," because Dogecoin "was listed by major domestic exchanges and online brokerages . . . and promoted on social media and national television . . . by the world's richest man . . . a high-profile tech CEO who is directly responsible for the fortunes of investors in several major multinational corporations."  Opp. at 33.  Plaintiffs end with the conclusory proclamation that "[i]f *that* cannot support[] an assumption of an efficient market free of manipulation, . . . then nothing can, and no investor is safe."  *Id.* (emphasis in original).  This, not surprisingly, is *not* the "efficient market free of manipulation" contemplated by well-established case law.  *In re Merrill Lynch Auction Rate Sec. Litig.*, 704 F. Supp. 2d 378, 394 (S.D.N.Y. 2010) (presumption of an efficient

market free of manipulation arises when plaintiffs establish an "impersonal, well-developed market for securities").

Plaintiffs' efficient market hypothesis also is irretrievably damaged by their inherently contradictory allegations—Plaintiffs allege a market "free from manipulation," while **simultaneously** asserting that Mr. Musk **admitted** he had "grotesque power to sway the public" and that one of Mr. Musk's tweets was a "clear admission that Musk's manipulations are intentional." Opp. at 35 (quoting ¶ 92). Remarkably, Plaintiffs argue that it is "ridiculous" for Defendants to conclude that Plaintiffs allege that Mr. Musk's manipulations were intentional, while **also** arguing that Paragraph 92 of the TAC contains "[a] clear admission that Musk's manipulations are intentional." Opp. at 33.

Nor can Plaintiffs allege that they relied on a market free of manipulation when each iteration of their complaint purports to extend the Class period "to the present" while also alleging that Mr. Musk **continues** to manipulate the market. ¶ 8; *see* Dkt. No. 9 at ¶ 360, Dkt. No. 39 at ¶¶ 112-13.

### E.   Plaintiffs' Loss Causation Arguments are Confused and Unavailing

Plaintiffs' Opposition does not resuscitate their deficient loss causation allegations, and this defect is fatal to all of Plaintiffs' Section 10(b) claims. Plaintiffs list a litany of supposedly "conceal[ed] risks," Opp. at 42, but fail to allege that **any** of these risks, to the extent they were disclosed, "when disclosed, negatively affected the value of the security." *Lentell*, 396 F.3d at 173. The only purported corrective disclosure identified in the Opposition is Mr. Musk's SNL appearance over two years ago in May 2021, which even Plaintiffs admit "did not explicitly reveal **all** of these hidden risks." Opp. at 42 (emphasis in original).

Moreover, Plaintiffs allege that when Mr. Musk declared on SNL that Dogecoin was "a hustle," "Dogecoin crashed completely, losing $20 billion in market cap within fifteen minutes,

$40 million within four days, and dropping in less than a year from a trading price of $0.73 to $0.06." *Id.* at 43.  To start, Plaintiffs do not (and cannot) explain what allegedly false statements this "disclosure" corrected.  Further, seeking to recover for decline over the course of a year (indeed, over two years with the extension of the putative Class Period until the "present") is inconsistent with the assertion that Dogecoin trades on an efficient market.[4]  *In re Omnicom Group, Inc. Sec. Litig.*, 597 F.3d 501, 510-11 (2d Cir. 2010) (holding plaintiffs did not establish loss causation and highlighting the inconsistency that exists when a plaintiff argues stock is traded on "a highly efficient" market "while seeking to recover for a stock price decline a year" after alleged fraud was disclosed).[5]

## III.   PLAINTIFFS' OPPOSITION DOES NOT SALVAGE THEIR INSIDER TRADING CLAIM

Plaintiffs' Opposition likewise fails to correct myriad pleading deficiencies undermining their insider trading claim, namely Plaintiffs' failure to plead:  (i) an insider;[6] (ii) with inside (material non-public) information; and (iii) purchases and sales while in possession of inside information.  Mot. at 28-30.  Instead, Plaintiff suggests, wrongly, that this case is "substantially similar" to the SEC's settled action in *SEC v. Ishan Wahi, Nikhil Wahi, and Sameer Ramani*,

---

[4]   Plaintiffs' decision to extend the Class Period "until the present" also is a superficial choice, given the absence of ***any*** alleged corrective disclosures beyond Mr. Musk's SNL appearance revealing new information to the market.

[5]   Incredibly, Plaintiffs also characterize Mr. Musk's SNL appearance as "undisclosed." Opp. at 31 (citing ¶¶ 103-12, which detail "Musk's SNL Appearance," in support of the argument that, "Subsequent, ***undisclosed*** events rendered all of these assurances false.").  It is unclear why Plaintiffs believe a live television appearance is "an undisclosed event," but whatever Plaintiffs' intent, it is wholly inconsistent with suggesting that the SNL appearance was a corrective disclosure.

[6]   Plaintiffs also do not plead a "corporate outsider" theory. Mot. at 29. *See Oasis Capital, LLC v. Connexa Sports Techs.*, 2023 WL 4304725, at *4 n.3 (S.D.N.Y. June 30, 2023) ("Failure to oppose an argument effectively waives it.").

against a former Coinbase product manager for allegedly tipping the timing and content of certain cryptocurrencies (not including Dogecoin) that would be made available for trading on Coinbase's platform.  Complaint at 1-3, *SEC v. Ishan Wahi, Nikhil Wahi, and Sameer Ramani*, No. 22-1009 (W.D. Wa. July 21, 2022).[7]  The timing and content of these announcements, which usually resulted in an increase in trading price, were material non-public information belonging to Coinbase, and Coinbase instructed employees not to trade on the basis of that information.  *Id.* at 9.  Thus, contrary to Plaintiffs' assertion, the SEC's settled insider trading action is inapposite, since there, the SEC alleged that an ***insider*** who ***owed a duty of care*** to Coinbase, ***traded*** while in possession of ***material non-public information***.  *Id.* at 60-61.

In stark contrast, here, Plaintiffs do not plead ***any*** of these elements.  Mot. at 28-30.  And, for Mr. Musk's own purported intent to manipulate the market to constitute material non-public information, this Court would have to credit Plaintiffs' theory that Mr. Musk somehow breached a duty to ***himself*** not to trade based on his own "intended tweets."  Opp. at 44.  This is not the law. *E.g.*, *Demarco v. Robertson Stephens Inc.*, 318 F. Supp. 2d 110, 126 (S.D.N.Y. 2004) ("To the extent that his opinion is in any sense inside information, Johnson is not prohibited from trading stock based on that opinion.  Indeed, it is hard to imagine on what basis he would trade stock if not on his own opinion.").  Whether Plaintiffs plead that "Dogecoin investors . . . reposited a duty of trust and confidence in Musk," Opp. at 45, is beside the point.  Merely averring that Mr. Musk is powerful, has a large social media following, or is "rich[]," Opp. at 24, does not plead the existence of a duty.  *United States v. Falcone*, 257 F.3d 226, 229 (2d Cir. 2001) ("[T]he duty of disclosure being breached is to persons with whom the insider is engaging in securities

---

[7]  *See* Opp. at 44 (citing SEC Press Release 2023-98, *Former Coinbase Manager and His Brother Agree to Settle Insider Trading Charges Relating to Crypto Asset Securities* (May 30, 2023), *available at* https://www.sec.gov/news/press-release/2023-98).

transactions, and the insider breaches that duty when he or she engages in the securities transaction without disclosure.").

## IV.   PLAINTIFFS DO NOT REBUT DEFENDANTS' SHOWING THAT THEIR STATE LAW CLAIMS MUST BE DISMISSED

Plaintiffs' Opposition likewise is incapable of salvaging their inadequately pleaded and duplicative common law fraud and unjust enrichment claims.  *See* Mot. at 30-32.

Plaintiffs first advance the nonsensical argument that their common law fraud claim—despite hinging on the ***exact same alleged misstatements and omissions*** as their federal securities fraud claim—somehow is ***not*** duplicative, because "Rule 10b-5 requires any fraudulent statement or omission be made in connection with the purchase or sale of a security, while common law fraud claims entail no such requirement."  Opp. at 48.  Plaintiffs miss the point.  Because the elements of their federal securities fraud and New York common law fraud claims are virtually identical (but for an additional jurisdictional requirement under federal securities law and an additional reliance element under common law), Plaintiffs' common law fraud claim suffers from identical pleading defects as their Section 10(b) claim and must be dismissed.  Mot. at 30-31; *e.g.*, *Marcus v. Frome*, 275 F. Supp. 2d 496, 503 (S.D.N.Y. 2003) (dismissing common law fraud claims where plaintiff failed to satisfy the pleading requirements of 10b-5 claim).

Plaintiffs implicitly acknowledge that their unjust enrichment claim is based on the same factual allegations as those supporting Plaintiffs' other claims, Opp. at 49, warranting dismissal. Moreover, Plaintiffs fail to establish a benefit was conferred, arguing only that Plaintiffs "contribut[ed] to Dogecoin's increased market cap and trading price by which Defendants were enriched at other investors' expense."  Opp. at 49.  But even if this were true, "this type of indirect benefit is insufficient to sustain an unjust enrichment claim."  *Prime Mover Cap. Partners L.P. v. Elixir Gaming Techs., Inc.*, 898 F. Supp. 2d 673, 697 (S.D.N.Y. 2012) (dismissing unjust

enrichment claim where plaintiffs allege that "defendants received an indirect benefit from [their] stock purchases" after plaintiffs purchased defendants' "securities at artificially inflated prices").

## V.   PLAINTIFFS' FAILURE TO PLEAD OWNERSHIP AND SALE OF DOGECOIN WITH PARTICULARITY DEFEATS ALL OF THEIR CLAIMS

In their Opposition, Plaintiffs continue to ignore the TAC's fundamental defect—speculative and conclusory allegations of wallet ownership and purported sales of Dogecoin by Defendants are insufficient as a matter of law, defeating *all* of Plaintiffs' securities and state law claims.  Mot. at 6-8, 23-25, 32.  Notably, Plaintiffs do not directly rebut Defendants' showing that they fail adequately to allege that Defendants controlled the eight wallets identified in the TAC or sold Dogecoin.  Instead, Plaintiffs pepper their Opposition with a handful of passing references to the TAC's deficient allegations.  Opp. at 46 ("Musk, along with Tesla, Inc., traded on [Dogecoin] unannounced."); *id.* at 34 ("The TAC alleges that Musk . . . sold Dogecoin for millions of dollars.").  But Plaintiffs' conclusory and speculative allegations are contradicted by known fact and fail to state a claim.  Mot. at 6-8; *see also* Defendants' Opposition to Plaintiffs' Cross-Motion for Leave to File Fourth Amended Complaint at 8-10.

## VI.   PLAINTIFFS DO NOT REBUT DEFENDANTS' SHOWING THAT THEIR CLAIMS AGAINST TESLA ARE INADEQUATELY PLEADED AND MUST BE DISMISSED

Like the TAC, Plaintiffs' Opposition barely mentions Tesla, devoting less than one page of 50 to arguing that "Tesla's participation is clearly and sufficiently pleaded."  Opp. at 47.  This is false; the TAC does not contain *any* specific allegations against Tesla giving rise to liability, and the Opposition does not cure this fundamental defect.

Plaintiffs deflect by claiming that *Mr. Musk* may somehow be liable as a Tesla control person, Opp. at 47, but this argument misapprehends Section 20A of the Exchange Act of 1934, 15 U.S.C. § 78t-1, and turns the inquiry on its head—Mr. Musk's control is not relevant to whether

Plaintiffs state a claim against **Tesla**. *Tung v. Bristol-Myers Squibb Co.*, 412 F. Supp. 3d 453, 462 (S.D.N.Y. 2019) ("Plaintiffs have failed to allege any primary violation; thus, they cannot establish control-person violation."). Even assuming, *arguendo*, Plaintiffs sufficiently pleaded that Mr. Musk has "the power to direct or cause the direction of the management and policies of" Tesla, they skip the mandatory first step of pleading a "primary violation" by **Tesla**. *E.g.*, *City of St. Clair Shores Police & Fire Ret. Sys. v. Unilever PLC*, 2023 WL 5578090, at *6 (S.D.N.Y. Aug. 29, 2023). Nor can Plaintiffs rely on a relaxed pleading standard, Opp. at 47, because "a complaint must adduce specific facts supporting an inference of fraud or it will not satisfy even a relaxed pleading standard." *Freydl v. Meringolo*, 2010 WL 3026578, at *4 (S.D.N.Y. Aug. 2, 2010).

Plaintiffs also bizarrely assert—contrary to hundreds of pages of briefing in this matter, including Defendants' Rule 11 motion for sanctions, Dkt. Nos. 86-90—that "Defendants do not dispute that Tesla owns and has traded Dogecoin." Opp. at 47. Defendants consistently have maintained, including in sworn declarations, that Tesla **has never sold Dogecoin**. Dkt. Nos. 86-90. Plaintiffs' citations to Tesla's 2023 SEC filings do not say anything different, as Plaintiffs admit. Opp. at 28 ("Tesla's 2023 SEC Forms 10-K and 10-Q, [] disclose substantial trading and profit in **unspecified** digital assets . . . ."). Absent **any** particularized allegations of misconduct by Tesla, Plaintiffs' claims against Tesla must be dismissed.

## VII.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND

Courts routinely dismiss complaints without leave to amend where, as here, Plaintiffs have had an opportunity to amend after being apprised of Defendants' arguments in support of dismissal, yet have failed to plead any new allegations sufficient to support a cause of action, evidencing that Plaintiffs cannot plead any actionable claim. *E.g.*, *Dimond v. Darden Restaurants, Inc.*, 2014 WL 3377105, at *15 (S.D.N.Y. July 9, 2014) ("Plaintiff has amended his complaint

three times . . . . It goes without saying that he has had ample opportunity to perfect his pleading, yet has failed to do so.").  Further, as detailed in Defendants' contemporaneously-filed opposition to Plaintiffs' cross-motion for leave to file a ***fourth*** amended complaint, any amended pleading would be subject to dismissal and therefore futile.  *See, e.g.*, *Martin v. Dickson*, 100 Fed. Appx. 14, 16 (2d Cir. 2004).  This Court should dismiss with prejudice.

## <u>CONCLUSION</u>

For the foregoing reasons, and the reasons in Defendants' opening brief, Defendants respectfully request that the Court dismiss the TAC and this action with prejudice.

DATED:  September 20, 2023            QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By  */s/ Alex Spiro*
Alex Spiro
Sarah Heaton Concannon
Brenna Nelinson
51 Madison Avenue, 22nd Floor
New York, New York 10038
Tel: 202-538-8122
Fax: 202-538-8100
alexspiro@quinnemanuel.com
sarahconcannon@quinnemanuel.com
brennanelinson@quinnemanuel.com

Allison Huebert (*pro hac vice*)
TESLA, INC.
1 Tesla Road Austin, TX 78725
Tel: (512) 557-8797
ahuebert@tesla.com

*Attorneys for Defendants Tesla, Inc. and Elon Musk*

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2023, I electronically served a copy of the foregoing to all counsel of record.

*/s/ Alex Spiro*
Alex Spiro