UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COLBY GOROG, JOSHUA FLINT, LOUIS ROBINSON, and MICHAEL LERRO, individually and on behalf of all others similarly situated,<br><br>                      Plaintiffs,<br>    v.<br><br>ELON MUSK and TESLA, INC.,<br><br>                      Defendants. | Civil Action No.: 1:22-cv-05037-AKH<br><br>**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR LEAVE TO FILE THE FOURTH AMENDED CLASS ACTION COMPLAINT** |

*Submitted By:*

EVAN SPENCER LAW, PLLC
Evan Spencer, Esq.
305 Broadway, 7th Floor
New York, NY 10007
(917) 547-4665
Evan@EvanSpencerLaw.com

*Lead Attorney for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................3

INTRODUCTION ..........................................................................................................................6

LEGAL STANDARD .....................................................................................................................7

ARGUMENT...................................................................................................................................7

    I.  THE REQUESTED AMENDMENT IS OBVIOUSLY NOT FUTILE ............................8

        A.  The Fourth Amended Complaint Strengthens Plaintiffs' Well-Pleaded Allegations of Dogecoin Trading and Wallet Ownership ........................................9

        B.  The Fourth Amended Complaint Adequately Pleads Loss Causation ..................11

    II.  THE REQUESTED AMENDMENT IS OBVIOUSLY NOT PREJUDICIAL ...............13

    III. THE REQUESTED AMENDMENT IS OBVIOUSLY NOT UNDULY DELAYED ....15

    IV. LEAVE TO AMEND IS NOT SOUGHT IN BAD FAITH .............................................17

CONCLUSION.............................................................................................................................20

## TABLE OF AUTHORITIES

**Cases**                                                                                                           **Page(s)**

*Abramson v. Newlink Genetics Corp.*,
965 F.3d 165 (2d Cir. 2020) ...................................................................................................11

*AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*,
626 F.3d 699 (2d Cir. 2010).....................................................................................................13

*Antrobus v. N.Y.C. Dep't of Sanitation*,
2016 WL 5394697 (E.D.N.Y. Feb. 25, 2016) ........................................................................16

*Baskin v. Hawley*,
807 F.2d 1120 (2d Cir. 1986) ..................................................................................................15

*Block v. First Blood Assocs.*,
988 F.2d 344 (2d Cir. 1993) ....................................................................................................15

*BrainBuilders LLC v. EmblemHealth, Inc.*,
2022 WL 17156714 (S.D.N.Y. Nov. 22, 2022) ......................................................................14

*Bromfield v. Bronx Lebanon Special Care Ctr., Inc.*,
2019 WL 1873156 (S.D.N.Y. Apr. 26, 2019) ........................................................................16

*Cresswell v. Sullivan & Cromwell*,
922 F.2d 60 (2d Cir. 1990) ......................................................................................................15

*Degroote v. City of Troy*,
2010 WL 2696400 (N.D.N.Y. June 25, 2010) .......................................................................19

*Foman v. Davis*,
371 U.S. 178, 182 (1962) ................................................................................................7-8, 15

*Gracia v. City of N.Y.*,
2017 WL 4286319 (S.D.N.Y. Sept. 26, 2017) .......................................................................15

*Guan v. Lash Princess 56 Inc.*,
2023 WL 2242050 (S.D.N.Y. Feb. 27, 2023) ........................................................................19

*Holsworth v. BProtocol Found.*,
2021 WL 706549 (S.D.N.Y. Feb. 22, 2021) ..........................................................................19

*In re AOL, Inc.*,
966 F. Supp. 2d 307 (S.D.N.Y. 2013) ....................................................................................10

*In re Countrywide Financial Corp. Mortgage-Backed Securities Litigation*,
934 F.Supp.2d, 1219 (C.D. Cal. Mar. 21, 2013) ..................................................................14

*In re Facebook, Inc.*,
986 F. Supp. 2d 428 (S.D.N.Y. 2014) ..................................................................................7

*Integrity Soc. Work Servs., LCSW, LLC v. Becerra*,
WL 1930866 (2d Cir. June 6, 2022) ...................................................................................12

*Lyondell-Citgo Ref., LP v. Petroleos De Venezuela S.A.*,
2004 WL 2650884 (S.D.N.Y Nov. 22, 2004) .....................................................................16

*McLaughlin v. Pezzolla*,
2007 WL 676674 (N.D.N.Y. Feb. 28, 2007) ......................................................................19

*Pasternack v. Shrader*,
863 F.3d 162 (2d Cir. 2017).................................................................................................16

*Phillips v. Kidder, Peabody & Co.*,
1994 WL 570072 (S.D.N.Y. Oct. 13, 1994) .........................................................................7

*PI, Inc., v. Quality Prods., Inc.*,
907 F. Supp. 752 (S.D.N.Y. 1995) .................................................................................13-14

*Quinones v. PRC Mgmt. Co., LLC*,
14-CV-9064 (S.D.N.Y. July 7, 2015) .................................................................................14

*Ricciuti v. N.Y.C. Transit Auth.*,
941 F.2d 119 (2d Cir. 1991)..................................................................................................7

*Shiah Yih Indus. Co. v. Sitco Importing Co.*,
No. 96 CIV. 0356, 1997 WL 304903 (S.D.N.Y. June 5, 1997)............................................8

*Shi Ming Chen v. Hunan Manor Enter., Inc.*,
437 F.Supp.3d 361 (S.D.N.Y. 2020) ..................................................................................16

*Technomarine SA v. Giftports, Inc.*,
758 F.3d 493 (2d Cir. 2014) ...............................................................................................14

*Thompson v. U.S. Dep't of Educ.*,
20-CV-693 (S.D.N.Y. Mar. 30, 2021) ................................................................................14

*Twahir v. Vill. Care of New York, Inc.*,
No. 10 CIV. 9452, 2011 WL 2893466 (S.D.N.Y. July 12, 2011) ........................................7

*U.S. ex rel. Polansky v. Pfizer, Inc.*,
2009 WL 1456582 (E.D.N.Y. May 22, 2009) ...........................................................................10

OTHER AUTHORITIES

Fed. R. Civ. P. 15(a) ........................................................................................................................6

Plaintiffs Colby Gorog, Joshua Flint, Louis Robinson and Michael Lerro, in reply to Defendants' opposition memorandum, ECF. No. 100, respectfully submit this reply brief in support of their cross motion for leave to file the Fourth Amended Class Action Complaint.

## **INTRODUCTION**

Defendants' opposition to Plaintiffs' cross motion for leave to amend is effectively a re-hash of the specious arguments made in their earlier motion for sanctions, ECF Nos. 82, 83, and their motion to dismiss. ECF Nos. 94, 95. Ignoring the large volume of new evidence presented in the Fourth Amended Complaint, all that Defendants really argue now in their opposition to the cross motion is (1) that the Fourth Amended Complaint is futile; (2) that the question of Dogecoin wallet ownership simply cannot be resolved (as if it is perfectly normal for billions of dollars' worth of assets to be traded anonymously with no possibility of regulatory or judicial oversight); and (3) that the requested amendment is prejudicial because it would require Defendants to answer after filing a number of defensive motions.

The first of these three arguments is glaringly false, as elaborated below. The second argument contradicts the whole substance of Defendants' earlier motion for sanctions, viz., that two non-party hearsay declarations from Defendants' employees are dispositive of the whole question of wallet ownership and, indeed, of this whole case. And the third argument would require the Court to agree that the ordinary burdens of litigation are prejudicial. None of these arguments is remotely convincing and the Court should disregard them.

Doing their best to sidestep the considerable volume of newly discovered evidence put forward in the Fourth Amended Complaint, e.g., ¶¶ 194-200, 215, 316-346, Defendants attempt to make hay out of the number of prior pleadings and the fact that Plaintiffs failed to confer about an amendment Defendants had clearly already opposed. *See* ECF. No. 95, p. 32. It is

remarkable that Defendants now have so much to say about an initial complaint and two subsequent amendments that Defendants refused to even accept service of at the time they were filed, and have never bothered to respond to otherwise. Indeed, the first time Defendants responded to Plaintiffs' allegations at all was in March 2023, nearly ten months after this action was commenced. If ordered to answer the Fourth Amended Complaint, it would be the first time Defendants have even filed a responsive pleading in this case.

The Fourth Amended Complaint does not add or remove any parties or causes of action. Because it is not futile, is not prejudicial, and is based on the discovery of relevant new evidence, leave to amend should be granted and Defendants should be ordered to answer.

## LEGAL STANDARD

Defendants do not dispute that under Rule 15(a) of the Federal Rules of Civil Procedure, the standard for granting leave to amend is permissive, such that leave to amend "should ordinarily be granted." *Ricciuti v. N.Y.C. Transit Auth*., 941 F.2d 119, 123 (2d Cir. 1991). Neither do Defendants dispute that courts in this District normally permit amendment based on the discovery of new facts. *See*, e.g., *In re Facebook, Inc*., 986 F. Supp. 2d 428, 472 (S.D.N.Y. 2014); *Phillips v. Kidder, Peabody & Co.*, No. 87 Civ. 4936, 1994 WL 570072, at * 4 (S.D.N.Y. Oct. 13, 1994).

## ARGUMENT

Leave to amend can be denied only where it is sought in, "bad faith or [with] dilatory motive," where it will prejudice the defendant, where there has been, "repeated failure to cure deficiencies," or if amendment would be futile. *See*, e.g., *Twahir v. Vill. Care of New York, Inc*., No. 10 CIV. 9452, 2011 WL 2893466, at *1 (S.D.N.Y. July 12, 2011) (quoting *Foman v. Davis*,

7

371 U.S. 178, 182 (1962)); *Shiah Yih Indus. Co. v. Sitco Importing Co.*, No. 96 CIV. 0356, 1997 WL 304903, at *1–*4 (S.D.N.Y. June 5, 1997).

Defendants fail to convincingly argue that any of these factors pertains to the Fourth Amended Complaint. Though Defendants place outsized emphasis on the element of futility, this is their weakest argument, as the Fourth Amended Complaint alleges newly discovered facts that relate to (and fortify) Plaintiffs' earlier, well-pleaded allegations of scienter, and market manipulation.

Defendants' further argument that they would be prejudiced by the Fourth Amended Complaint is not even remotely colorable, as Defendants' only support for this hyperbole is the fact that they would be required to answer after having filed a number of defensive motions. If that was the standard for finding prejudice, no lawsuit could ever be filed. Neither do Defendants' arguments succeed in showing bad faith or undue delay. Because Defendants do not and cannot make any serious argument to support their opposition, Plaintiffs' cross motion for leave to amend should be granted.

## I. THE REQUESTED AMENDMENT IS OBVIOUSLY NOT FUTILE

Defendants first argue that the Third Amended Complaint ("TAC") is futile, and then liken the TAC to the Fourth Amended Complaint ("4AC") to argue that it, too, would be futile for the same reasons. *See* p. 6-7. This is very strange, considering that Defendants have taken the liberty of redlining the 4AC to show how extensively it differs from its predecessor. *See* ECF Nos. 101, 101-1. Yet although it neither adds nor removes any parties or causes of action, the 4AC does differ from the TAC in that it adds a great deal of newly discovered facts relating to extant claims, and strengthens those already well-pleaded claims.

For these reasons, the Fourth Amended Complaint cannot be disparaged as being futile, and leave to amend should be granted.

### A. The Fourth Amended Complaint Strengthens Plaintiffs' Well-Pleaded Allegations of Dogecoin Trading and Wallet Ownership

Defendants' argument that Plaintiffs' allegations as to Defendants' ownership and trading of Dogecoin are futile simply because Defendants deny them is absurd non-sequitur. In support of this, Defendants assert that their non-party employees' hearsay declarations (ECF Nos. 89, 90) amount to, "undisputed sworn evidence [that] is fatal to all of Plaintiffs' claims," p. 8, and that by refusing to dismiss the case on the basis of this flimflam, "Plaintiffs persist on [*sic*] disregarding ***known facts*** in favor of speculation." *Id*., (bold italics in the original). This would be outrageous if it was not so risible. Plaintiffs' allegations as to Defendants' ownership and trading of Dogecoin are well-pleaded in the TAC, and the 4AC only strengthens those allegations.

First, Plaintiffs' allegations as to Defendants' ownership and trading of Dogecoin are well-pleaded because they are based on a pattern of massive Dogecoin trades made in tandem with Musk's misstatements and market manipulative acts. *See e.g.* TAC, ¶¶ 191-209 and 4AC, ¶¶ 249-253. These allegations also show that in February 2021, Defendant Musk revealed his ownership of the Dogecoin "whale wallet" beginning in DJ6Kc, when he announced a charitable donation paid in Dogecoin from that wallet. TAC, ¶¶ 179-184 and 4AC, ¶¶ 254-261. And Plaintiffs' allegations that the "whale wallet" beginning in DH5ya belongs to Defendants are based both on extensive media and internet speculation that it belongs to Musk, 4AC, ¶ 269, as well as repeated trading in tandem with acts and statements by Musk that he knew would effect Dogecoin's price and trading volume. 4AC, ¶¶ 263-268.

Second, the TAC's well-pleaded allegations as to Defendants' ownership and trading of Dogecoin are strengthened by the changes made to those allegations in the 4AC. This is because heightened pleading standards for fraud allegations are relaxed, "where much of the factual information needed to fill out a plaintiff's complaint lies peculiarly within the opposing party's knowledge." *U.S. ex rel. Polansky v. Pfizer, Inc.*, 2009 WL 1456582, at *8 (E.D.N.Y. May 22, 2009). Under such circumstances, "pleadings may be based upon information and belief [and] the allegations must be accompanied by a statement of the facts upon which the belief is based." *Id*.

Because Dogecoin wallet ownership is totally anonymous and virtually impossible to determine absent forensic discovery or voluntary disclosure, the factual information needed to fill out Plaintiffs' complaint, "lies peculiarly within the opposing party's knowledge." ¶¶ 238-239, 280. Accordingly, a number of Plaintiffs' wallet allegations not pleaded upon information and belief in the TAC are pleaded upon information and belief in the 4AC. ¶¶ 109-110, 237, 254, 261-262, 280. As in the TAC, the 4AC sets forth the facts upon which the belief is based with ample particularity. ¶¶ 240-247, 249-253, 255-260, 263-279. Thus, Defendants' assertion that, "Plaintiffs' submission of the [4AC] and motion for leave is tantamount to an admission that Plaintiffs have no ***particularized facts*** regarding wallet ownership or Dogecoin sales" (bold italics in the original) is fatuous to the point disrespecting the Court.

Indeed, authority that Defendants themselves have cited (at p. 9) supports Plaintiffs' argument that the 4AC is not futile as pleaded: "Under the PSLRA, a complaint that is based on information and belief cannot survive a motion to dismiss unless it states with particularity facts that are sufficient to support the belief in question." *In re AOL, Inc.*, 966 F. Supp. 2d 307, 313 (S.D.N.Y. 2013). Plaintiffs have clearly stated such facts with ample particularity. ¶¶ 237-280.

Accordingly, the 4AC would necessarily survive a motion to dismiss, and cannot be disparaged as futile. Leave to amend must therefore be granted.

### B. The Fourth Amended Complaint Adequately Pleads Loss Causation

Defendants' further argument that the 4AC is futile because loss causation is not adequately pleaded rests on two false premises: first, that there has been no corrective disclosure of Musk's misstatements, and second, that a corrective disclosure is necessary to allege loss causation in the context of a market manipulative scheme. Because each of these premises is false, Defendants' arguments fail.

Starting in April 2019 and accelerating particularly from February to May 2021, Defendant Musk falsely assured millions of people that through his endorsement, Dogecoin would reliably see long-term increases in value. ¶¶ 89, 93-96, 99, 106-109, 111-123, 129-131, 134-135, 139, 140, 144-145. In doing so, he failed to disclose his immense personal interest in Dogecoin, ¶¶ 109-110, 131, 237-239, 316-346, and knowingly targeted unsophisticated investors. ¶¶ 216-228. At times his assurances were made directly and unambiguously. *See* e.g., ¶¶ 139, 148. However, that this message was frequently conveyed obliquely through statements of opinion, or by utilizing cartoons, "memes," and cheeky innuendo, is no defense, because such statements are material where they, "contain one or more embedded factual statements that can be proven false," or where they imply facts that can be proven false, without providing critical context. *Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 175 (2d Cir. 2020). These embedded facts and implications were that Musk's endorsement, by itself, would make Dogecoin into a sustainable and growing investment opportunity. Indeed, investors took this message so seriously that Musk's endorsement pumped Dogecoin's price by 36,000% throughout the period he promoted it, and was the only factor that gave it any value. ¶¶ 152, 201-205.

So thoroughly was Dogecoin dependent on Musk's endorsement that when he referred to Dogecoin as "a hustle" in the course of his poorly received and heavily Dogecoin-themed performance on *Saturday Night Live*, it caused an immediate market crash from which Dogecoin has never recovered. ¶¶ 153-160. This is not just Plaintiffs' speculation—it is based on scientific research which shows that, "negative perceptions of Musk's performance led to a decline in the price of Dogecoin, which dropped 23.4% during the time Musk was on air." ¶ 205, n.27. Numerous misstatements alleged in the 4AC—particularly Musk's averments that his endorsement would prop up Dogecoin's value, ¶¶ 112-115, 129-131, 139—were revealed to be false on *Saturday Night Live*.

Defendants argue that the 4AC's loss causation allegations must fail because Plaintiffs allege that the class period extends to the present. But the class period extends to the present because anyone who purchased Dogecoin between February 2021 and the May 9, 2021, market crash, and is still holding, holds Dogecoin at a loss. Defendants cite absolutely no authority to suggest that defining the class period in this manner precludes allegations of a prior corrective disclosure, and courts need not consider such arguments that are unsupported by citation to any authority. *See*, e.g., *Integrity Soc. Work Servs., LCSW, LLC v. Becerra*, No. 21-2757-CV, 2022 WL 1930866, at *2 (2d Cir. June 6, 2022).

Furthermore, Musk continues to encourage investors to buy and hold this intrinsically valueless asset solely on the strength of his endorsement, and his false promises of viability as currency and adoption as payment by his companies. ¶¶ 178-199. Plaintiffs allege these misstatements as part of an overall market manipulative scheme, ¶¶ 356-364, and Defendants cite no authority to suggest that pleading loss causation in the context of such a scheme requires a corrective disclosure other than the loss itself. Again, the Court need not consider such

12

arguments that are unsupported by citation to authority. There is no "loss causation problem" in either the TAC or the 4AC, and neither complaint is futile.

## II. THE REQUESTED AMENDMENT IS NOT PREJUDICIAL

Defendants next assert that the 4AC is prejudicial to them. *See* p. 12. A party is prejudiced by an amendment only when it would, "require the opponent to expend significant additional resources to conduct discovery and prepare for trial" or "significantly delay the resolution of the dispute." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A..*, 626 F.3d 699, 725-26 (2d Cir. 2010) (internal quotation marks and citations omitted). Neither of those factors pertains in this instance.

Other than expressing a generalized umbrage with Plaintiffs' request for leave to amend, Defendants do not say just *how* the 4AC would give rise to any prejudice. They argue that Plaintiffs, "ignored Defendants' repeated exhortations to timely fix the deficiencies in their pleadings," p. 2, but the "fix" Defendants demanded was a full dismissal of the case, the "deficiencies" being the case's continued existence in the face of Defendants' peremptory denials of the TAC's allegations. *See* ECF No. 83-1. Again, this would be outrageous if it was not risible. Defendants are simply not being serious.

Defendants also argue that they would be, "prejudiced by the delay of dismissal of this action," *see* p. 2, and suggest that, "it appears… leave to amend is sought in anticipation of an adverse ruling on the original claims." p. 12, quoting *PI, Inc., v. Quality Prods., Inc.*, 907 F. Supp. 752, 764 (S.D.N.Y. 1995). But Defendants are not entitled to premise their arguments on their own presumptuous hubris. The fact is that only three weeks ago, Plaintiffs filed a fifty-page opposition brief in response to Defendants' motion to dismiss. Plaintiffs were of course in earnest with those arguments and have every reason to expect that the Court will take them under

13

serious consideration. Why Defendants presume anything different, they do not say. Unlike in *PI, Inc.*, Plaintiffs here did not cross-move for leave to amend after a motion to dismiss had been fully briefed, nor do Plaintiffs seek to dismiss some claims and add others, as the *PI, Inc.* plaintiffs did. Rather, Plaintiffs' cross motion asks the Court to deny Defendants' motion to dismiss and order them to answer the 4AC. Nothing in this procedural history suggests that Plaintiffs anticipate an adverse ruling on the TAC.

Defendants cite *BrainBuilders LLC v. EmblemHealth, Inc.*, where it states that pleading is not, "an interactive game in which plaintiffs file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable complaint emerges." 2022 WL 17156714, at *17 (S.D.N.Y. Nov. 22, 2022). But the TAC is *already* viable; and Plaintiffs have not been, "bat[ting the pleadings] back and forth with the Court." Rather, Plaintiffs first amended in September 2022 in order to add causes of action under the Securities Exchange Act in direct response to a then-recent announcement from the SEC that it regards cryptocurrencies as securities. Plaintiffs next amended in order to include certifications of their trading activity as required by the PSLRA something, "courts are generally lenient in granting leave to amend the complaint to include." *In re Countrywide Financial Corp. Mortgage-Backed Securities Litigation*, 934 F.Supp.2d, 1219, 1231 (C.D. Cal. Mar. 21, 2013). The Second Amended Complaint made no significant changes to the First Amended Complaint other than the inclusion of those certifications. All of this was prior to Defendants even appearing in this case.

When Defendants finally deigned to appear and move for dismissal nearly ten months after the commencement of this action, Plaintiffs amended in response, which is permitted by Rule 15(a) and is not uncommon in this District. *See, e.g.*, *Thompson v. U.S. Dep't of Educ.*, 20-cv-693 (AJN), at *7 (S.D.N.Y. Mar. 30, 2021); *Quinones v. PRC Mgmt. Co., LLC*, 14-cv-9064

14

(VEC), at *11 n.7 (S.D.N.Y. July 7, 2015); *Technomarine SA v. Giftports, Inc.*, 758 F.3d 493, 506 (2d Cir. 2014). Denying Defendants' motion to dismiss the TAC and ordering Defendants to answer the 4AC (as Plaintiffs have requested) would spare Defendants the expense of further motions to dismiss and effectuate an acceleration of this action, rather than a delay. Defendants have failed to articulate any colorable argument that prejudice might result from the requested amendment. Because no such prejudice will result, leave to amend should be granted.

### III.    THE REQUESTED AMENDMENT IS NOT UNDULY DELAYED

Defendants next assert that, "Plaintiffs offer this Court ***no*** explanation why their delay ought to be excused…" p. 14 (bold italics in the original). This is rather perplexing, as Plaintiffs' request for leave to amend contains a detailed explanation of newly discovered facts that clearly merit the requested amendment. ECF Nos. 97-98. And the requirement of an explanation for the delay, *see Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990), is only part of the legal standard, because mere delay and the ordinary burdens of litigation do not, without more, furnish grounds for denial. *See*, e.g., *Block v. First Blood Assocs.*, 988 F.2d 344, 350–51 (2d Cir. 1993) Rather, leave to amend may be denied only upon a finding of *undue* delay, *Foman v. Davis*, 371 U.S. 178, 182 (1962); and Defendants do not, nor can they, show that the "mere delay" requested by Plaintiffs is undue.

Courts in this Circuit have declined to find undue delay based, "solely on delay and litigation expense." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017). They have declined to find undue delay when leave to amend is requested prior to discovery. *Gracia v. City of N.Y.*, 2017 WL 4286319, at *2 (S.D.N.Y. Sept. 26, 2017). And they have granted leave to amend based on newly discovered information. *Baskin v. Hawley*, 807 F.2d 1120, 1124 (2d Cir. 1986). These are cases cited *by Defendants themselves* in attempting to support their conclusory

15

assertion that the 4AC would unduly delay this case. *See* p. 14. All three cases are analogous to this one.

Defendants attempt to distinguish cases cited by Plaintiffs, where leave to amend was granted at much later stages of litigation than is requested here; and then offer conclusory speculation as to when Plaintiffs knew about the new facts alleged in the 4AC, without specifying which facts those are and when Plaintiffs allegedly discovered them. *See* p. 13-14. But the bulk of the 4AC's new allegations are based on media reports released in July and August of this year, *after* Defendants moved to dismiss. *See e.g.*, ¶¶ 196-199, 215; ¶ 233, n.34; ¶ 315; ¶ 331, n.58; ¶ 333. n.60, n. 61, n.62; ¶ 334, n.63, n.64; ¶¶ 335. To the extent any prior existing facts are newly pleaded, or are pleaded differently in the 4AC, those prior existing facts have new relevance, or are pleaded with greater particularity, in light of what the newer facts reveal about Musk's scienter. *See* ¶¶ 207-215, 216-228, 316-346. Thus, Defendants simply have no basis for stating that, "Plaintiffs have known many of these facts for **months** (even **years**) [before] filing their cross motion for leave." *See* p. 14 (bold italics in the original). This is just another conclusory assertion from Defendants, using their signature, wild-eyed **bold italics** to distract from its utter lack of factual support.

Courts in this Circuit have found undue delay when leave to amend is sought after the close of discovery, *see e.g. Lyondell-Citgo Ref., LP v. Petroleos De Venezuela S.A.*, 2004 WL 2650884, at *1 (S.D.N.Y Nov. 22, 2004); when leave to amend is sought after years of pre-trial activity and would add new parties, *e.g., Antrobus v. N.Y.C. Dep't of Sanitation*, 2016 WL 5394697, at *11 (E.D.N.Y. Feb. 25, 2016); when leave to amend would require the reopening of discovery, *Bromfield v. Bronx Lebanon Special Care Ctr., Inc.*, 2019 WL 1873156, at *3-4 (S.D.N.Y. Apr. 26, 2019); and where plaintiffs gave no explanation for their delay in seeking

16

leave to amend. *Shi Ming Chen v. Hunan Manor Enter., Inc.*, 437 F.Supp.3d 361, 366-67 (S.D.N.Y. 2020).

Aside from their conclusory assertion that Plaintiffs have allegedly not explained why leave to amend is not unduly delayed, Defendants make no argument that any such circumstance pertains here, and cite no authority that might suggest why leave to amend in this instance would cause an *undue* delay. Accordingly, their arguments are without merit, and leave to amend should be granted.

### IV. LEAVE TO AMEND IS NOT SOUGHT IN BAD FAITH

Finally, Defendants attempt to argue that leave to amend is sought in bad faith. Defendants list four purported reasons for this: first, that the new facts alleged in the 4AC either predate the TAC, or are irrelevant; second, that Plaintiffs did not confer with Defendants prior to cross moving for leave to amend; third, that Plaintiffs choose not to correct alleged deficiencies in the TAC, as Defendants demanded; and fourth, Defendants suggest without citing authority that Plaintiffs' request that the Court both deny Defendants' motion to dismiss and order them to answer the 4AC would violate due process. Each of these arguments is misleading, the first one is patently false, and none furnishes any basis for a finding of bad faith.

*First*, as already stated, the bulk of the 4AC's new allegations are based on media reports released in July and August of this year, *after* Defendants moved to dismiss. *See e.g.*, ¶¶ 196-199, 215; ¶ 233, n.34; ¶ 315; ¶ 331, n.58; ¶ 333. n.60, n. 61, n.62; ¶ 334, n.63, n.64; ¶¶ 335. Taken together with the TAC's pre-existing allegations, this reporting suggests that Defendant Musk is pursuing a long-term plan for control of the internet to which his promotion of Dogecoin is integral. This is because promoting an *apparently* decentralized cryptocurrency brand whose development team he controls allows Musk to continue using Twitter ("X") to target

unsophisticated investors, and subject Dogecoin to his dominance, while evading federal securities laws.

These new facts present a dramatically augmented picture of Musk's scienter and lend new context to his repeated statements, already alleged in the TAC, that Dogecoin is, "the future of currency." These new facts also lend new context to Musk's relationship with the Dogecoin core development team and his misstatements about that relationship, which was already alleged in the TAC. And to the extent the 4AC adds allegations predating the TAC, it is because these allegations are relevant to the new picture of Musk's scienter that has emerged in media reports this July and August that are incorporated in the 4AC. *See*, e.g., ¶¶ 324-329. Defendants cannot seriously argue that this new information is irrelevant, much less that seeking to include it in an amended pleading constitutes "bad faith."

*Second*, Plaintiffs' decision not to confer with Defendants prior to seeking leave to amend was taken for the obvious reason that Defendants, in their motion to dismiss filed just one month earlier, had already clarified their opposition to *any* further amendment. ECF No 95, p. 32. One would think that Defendants, having emphasized the importance of their own time and resources, *see* p. 2, would refrain from demanding that Plaintiffs waste both parties' time and resources by attempting to confer on matters where Defendants had already clarified their position. And Defendants cite no authority for their proposition, at p. 16, that Plaintiffs were required to explain Defendants' position to the Court, when Defendants had already clarified their position to the Court.

*Third*, Defendants' argument, at pp. 16-17, that Plaintiffs were required to "correct" alleged "deficiencies" in the TAC is both disingenuous, and overreaching. This is, first, because the "correction" Defendants demanded was a full dismissal of the case, the "deficiencies" being

the case's continued existence in the face of Defendants' peremptory denials of the TAC's allegations. *See* ECF No. 83-1. Furthermore, as Defendants themselves acknowledge, at p. 16, the 4AC removes three of the eight allegations that Defendants had previously taken issue with. That Defendants attempt to spin this into an act of bad faith shows that conferring with them prior to requesting leave would have been fruitless.

*Fourth*, Defendants suggest, at p. 17, that denying their motion to dismiss the TAC and ordering them to answer the 4AC (on the grounds that it, too, would survive a motion to dismiss) somehow violates their due process rights. Defendants do not explain how this would violate due process and cite no authority to suggest that it would. Defendants do not dispute that such a course of action by courts in this Circuit is perfectly normal, as Plaintiffs have cited ample authority to demonstrate. *See McLaughlin v. Pezzolla*, No. 06-CV-00376, 2007 WL 676674, at *8 (N.D.N.Y. Feb. 28, 2007) ("Amendment would not futile because the claims would survive a Rule 12(b)(6) challenge. Accordingly, Defendants' motion to dismiss is denied and Plaintiff's cross-motion to amend is granted.") *See also Guan v. Lash Princess 56 Inc.*, No. 22 CIV. 2552 (KPF), 2023 WL 2242050, at *14 (S.D.N.Y. Feb. 27, 2023) ("Plaintiff's cross-motion to amend is GRANTED and Defendants' motion to dismiss is DENIED. Plaintiff is directed to file the SAC [and] Defendants are directed to file an answer…") *And see Degroote v. City of Troy*, No. 1:09-CV-413, 2010 WL 2696400, at *2 (N.D.N.Y. June 25, 2010) ("[D]efendants' motion to dismiss is denied and DeGroote's cross-motion to amend is granted.")

Lastly, it should be pointed out that Defendants' citation to *Holsworth v. BProtocol Found.*, is completely inapposite. The plaintiffs in that case filed a nearly two-hundred page complaint containing over one-hundred purported causes of action, yet failed to allege any injury-in-fact, and then sought jurisdictional discovery after failing to allege a domestic

19

transaction. 2021 WL 706549, at *2-3 (S.D.N.Y. Feb. 22, 2021). Defendants are putting themselves far out on a limb by suggesting that this presents any kind of analogy to the case at bar, where losses on numerous identifiable trades are alleged in clear dollar amounts, and domesticity is more than adequately pleaded. *See* ECF Nos. 77-1, 77-2, 77-3 and 77-4; and ECF 96, pp. 9-14.

Defendants utterly fail to show that the requested amendment is sought in bad faith. Accordingly, the cross-motion for leave to amend should be granted.

## CONCLUSION

For the reasons stated, the Court should deny Defendants' motion to dismiss the TAC, grant Plaintiffs' cross motion to file the Fourth Amended Complaint, and order Defendants to answer.

Dated: September 26, 2023

By: */s Evan Spencer*
Evan Spencer Law, PLLC
305 Broadway, 7th Floor
New York, NY 10007
Tel. 917.547.4665
Evan@EvanSpencerLaw.com

*Lead Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 26th day of September 2023, a true and correct copy of the above and foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, giving notice to all parties in this action.

*/s/Evan Spencer*
Evan Spencer, Esq.

20