**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

COLBY GOROG, JOSHUA FLINT,
LOUIS ROBINSON, and MICHAEL
LERRO, individually and on behalf of all
others similarly situated,

                Plaintiffs,

     v.

ELON MUSK and TESLA, INC.,

                Defendants.

Civil Action No.: 1:22-cv-05037-AKH

ECF CASE

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' FOURTH AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ........................................................................................................................5

      A.      Plaintiffs Allege That Dogecoin Is a Widely Used Cryptocurrency ......................5

      B.      Plaintiffs' Allegations Concerning Mr. Musk's Purported Connection to Dogecoin .................................................................................................................5

            1.      Plaintiffs Allege That Mr. Musk Made Limited, General Public Statements Relating to Dogecoin ................................................................5

            2.      Plaintiffs Fail to Plead That Mr. Musk or Tesla Sold Dogecoin................6

      C.      Plaintiffs Make Repeated, Sweeping Amendments After Filing This Action ....................................................................................................................7

ARGUMENT .............................................................................................................................8

I.        PLAINTIFFS FAIL TO PLEAD A DOMESTIC TRANSACTION, REQUIRING DISMISSAL OF THEIR FEDERAL SECURITIES LAW CLAIMS ..............................8

II.      PLAINTIFFS' CLAIMS AGAINST TESLA MUST BE DISMISSED ..........................11

II.      PLAINTIFFS' SECTION 10(B) CLAIMS MUST BE DISMISSED ..............................13

      A.      Plaintiffs Do Not Plead Material Misstatements or Omissions ...........................13

            1.      Plaintiffs Do Not Plead Any False or Misleading Statement with the Requisite Particularity ........................................................................14

            2.      Plaintiffs' Cause of Action for False Statements Also Fails Because the Statements Are Opinions, Puffery, or Otherwise Immaterial ..........................................................................................17

                    (a)      Many Alleged Misstatements Are Protected Opinions ................17

                    (b)      The Same Statements Are Puffery or Otherwise Immaterial ........19

            3.      Plaintiffs Do Not Attempt to Plead Falsity for the Remaining Statements .......................................................................................20

            4.      Plaintiffs Do Not Plead Any Omission...................................................21

      B.      Plaintiffs Fail to Plead Market Manipulation .....................................................22

      C.      Plaintiffs Fail to Plead Scienter .........................................................................24

            1.      Plaintiffs' Allegations Do Not Support a Plausible Inference of Motive or Opportunity ..............................................................................24

            2.      Plaintiffs Fail to Allege Circumstantial Evidence of Conscious Misbehavior or Recklessness .....................................................25

      D.      Plaintiffs Fail to Plead Loss Causation ...............................................................27

III.     PLAINTIFFS FAIL TO ALLEGE INSIDER TRADING UNDER SECTION 20A........30

IV.     PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED ..................................32

     A.     Plaintiffs' New York Deceptive Trade Practices Claim Must Be Dismissed .......32

     B.     Plaintiffs' Common Law Fraud Claim Must Be Dismissed................................34

     C.     Plaintiffs' Negligent Misrepresentation Claim Must Be Dismissed....................35

     D.     Plaintiffs' Unjust Enrichment Claim Must Be Dismissed ...................................36

CONCLUSION....................................................................................................................37

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
677 F.3d 60 (2d Cir. 2012) ..................................................................9, 10

*Abu Dhabi Com. Bank v. Morgan Stanley & Co.*,
2009 WL 3346674 (S.D.N.Y. Oct. 15, 2009) ....................................38

*Abuhamdan v. Blyth, Inc.*,
9 F. Supp. 3d 175 (D. Conn. 2014) ....................................28

*Ackerman v. Ackerman*,
908 F. Supp. 2d 540 (S.D.N.Y. Dec. 12, 2012) ....................................38

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
529 F. Supp. 3d 111 (S.D.N.Y. 2021) ............................................30, 31

*In re Alcatel Sec. Litig.*,
382 F. Supp. 2d 513 (S.D.N.Y. 2005) ....................................13

*Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*,
2007 WL 674691 (E.D.N.Y. 2007) ....................................35

*Anderson v. Binance*,
2022 WL 976824 (S.D.N.Y. Mar. 31, 2022) ....................................10

*Appalachian Enters., Inc. v. ePayment Sols., Ltd.*,
2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) ....................................11

*In re Aratana Therapeutics Inc. Sec. Litig.*,
315 F. Supp. 3d 737 (S.D.N.Y. 2018) ....................................18

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) .................................... 15, 23, 25, 30

*AUSA Life Ins. Co. v. Ernst & Young*,
206 F.3d 202 (2d Cir. 2000) ....................................35

*Avalos v. IAC/Interactivecorp.*,
2014 WL 5493242 (S.D.N.Y. Oct. 30, 2014) ....................................38

*In re Banco Bradesco S.A. Sec. Litig.*,
277 F. Supp. 3d 600 (S.D.N.Y. 2017) ....................................13

*Barilli v. Sky Solar Holdings, Ltd.*,
389 F. Supp. 3d 232 (S.D.N.Y. 2019) ....................................17

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) .................................................................................................29

*Baxter v. A.R. Baron & Co.*,
    1995 WL 600720 (S.D.N.Y. Oct. 12, 1995) ...........................................................11

*In re Bear Stearns Cos., Sec., Deriv., and ERISA Litig.*,
    763 F. Supp. 2d 423 (S.D.N.Y. 2011) ...................................................................30

*Berger v. E\*Trade Grp., Inc.*,
    2000 WL 360092 (N.Y. Sup. Ct. Mar. 28, 2000) ........................................... 33, 34

*Boluka Garment Co. v. Canaan Inc.*,
    547 F. Supp. 3d 439 (S.D.N.Y. 2021) ............................................................. 27, 28

*City of N.Y. v. Smokes-Spirits.com, Inc.*,
    912 N.Y.3d 616 (N.Y. App. Div. 2009), and (iv) ..................................................33

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
    752 F.3d 173 (2d Cir. 2013) .................................................................................19

*City of Taylor Gen. Emps. Ret. Sys. v. Magna Int'l Inc.*,
    967 F. Supp. 2d 771 (S.D.N.Y. 2013) ...................................................................30

*Cohen v. Stevanovich*,
    722 F. Supp. 2d 416 (S.D.N.Y. 2010) ...................................................................28

*In re Commodity Exch., Inc.*,
    213 F. Supp. 3d 631 (S.D.N.Y. 2016) ...................................................................37

*Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp.*,
    433 F. Supp. 3d 515 (S.D.N.Y. 2020) ...................................................................22

*Debora v. WPP Grp. PLC*,
    1994 WL 177291 (S.D.N.Y. May 5, 1994) ...........................................................22

*Digilytic Int'l FZE v. Alchemy Finance, Inc.*,
    2022 WL 912965 (S.D.N.Y. Mar. 29, 2022) .........................................................36

*Dimond v. Darden Restaurants, Inc.*,
    2014 WL 3377105 (S.D.N.Y. July 9, 2014) ..........................................................38

*Dulsky v. Worthy*,
    2013 WL 4038604 (S.D.N.Y. July 30, 2013) ........................................................11

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ......................................................................................... 27, 30

*Dwyer v. Allbirds, Inc.*,
    598 F. Supp. 3d 137 (S.D.N.Y. 2022) ........................................................................ 36, 37

*DynCorp v. GTE Corp.*,
    215 F. Supp. 2d 308 (S.D.N.Y. 2002) ............................................................................. 36

*Eaves v. Designs for Finance Inc.*,
    785 F. Supp. 2d 229 (S.D.N.Y. 2011) ............................................................................... 5

*ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009) ........................................................................................... 26

*Fezzani v. Bear Stearns & Co., Inc.*,
    384 F. Supp. 2d 618 (S.D.N.Y. 2004) ............................................................................ 22

*In re Fyre Festival Litig.*,
    399 F. Supp. 3d 203 (S.D.N.Y. 2019) ............................................................................ 36

*Gale v. Int'l Bus. Mach. Corp.*,
    781 N.Y.S.2d 45 (N.Y. App. Div. 2004) ........................................................................ 34

*Gamm v. Sanderson Farms, Inc.*,
    944 F.3d 455 (2d Cir. 2019) ........................................................................................... 14

*In re GE/CBPS Data Breach Litig.*,
    2021 WL 3406374 (S.D.N.Y. Aug. 4, 2021) ................................................................. 34

*Gilleo v. J.M. Smucker Co.*,
    2021 WL 4341056 (S.D.N.Y. Sept. 23, 2021) ............................................................... 35

*Gluck v. Hecla Mining Co.*,
    2023 WL 2161958 (S.D.N.Y. Feb. 22, 2023) ................................................................... 1

*Gomez v. Credit Suisse AG*,
    2023 WL 2744415 (S.D.N.Y. Mar. 31, 2023) .......................................................... 13, 24

*Gray v. Seaboard Sec., Inc.*,
    788 N.Y.S. 2d 471 (N.Y. App. Div. 2005) .................................................................... 33

*Grimes v. Fremont Gen. Corp.*,
    933 F. Supp. 2d 584 (S.D.N.Y. 2013) .............................................................................. 6

*Gross v. Waywell*,
    628 F. Supp. 2d 475 (S.D.N.Y. 2009) ............................................................................ 11

*Hong v. Extreme Networks, Inc.*,
    2017 WL 1508991 (N.D. Cal. Apr. 27, 2017) .......................................................... 15, 16

*Hurckes v. JPMorgan Chase Bank*,
    2023 WL 2664080 (S.D.N.Y. Mar. 27, 2023) ....................................................20

*In re IAC/InterActiveCorp. Sec. Litig.*,
    695 F. Supp. 2d 109 (S.D.N.Y. Mar. 19, 2010) ..............................................17

*IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of
    Scotland Grp., PLC*,
    783 F.3d 383 (2d Cir. 2015) .......................................................................20

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
    251 F. Supp. 3d 596 (S.D.N.Y. 2017) ..........................................................19

*Jackson v. Abernathy*,
    960 F.3d 94 (2d Cir. 2020) .........................................................................24

*Jaffe v. Capital One Bank*,
    2010 WL 691639 (S.D.N.Y. Mar. 1, 2010) ..................................................12

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001) .................................................................25, 26

*Lau v. Opera Ltd.*,
    527 F. Supp. 3d 537 (S.D.N.Y. 2021) ..........................................................28

*Lejilex v. SEC*,
    No. 24-cv-00168 (N.D. Tex. Feb. 21, 2024), ECF No. 1 ................................9

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005) .........................................................23, 27, 29, 30

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    27 F. Supp. 3d 447 (S.D.N.Y. 2014) ...........................................................37

*Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*,
    223 F. Supp. 2d 435 (S.D.N.Y. 2001) ..........................................................31

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
    26 F. Supp. 3d 278 (S.D.N.Y. 2014) ...........................................................28

*In re Manulife Fin. Corp. Sec. Litig.*,
    276 F.R.D. 87 (S.D.N.Y. 2011) ..................................................................28

*Marcus v. AT&T Corp.*,
    138 F.3d 46 (2d Cir. 1998) .........................................................................33

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ....................................................................14

*Meyer v. Greene*,
    710 F.3d 1189 (11th Cir. 2013).............................................................................28

*Miles v. Merrill Lynch & Co.*,
    471 F.3d 24 (2d Cir. 2006) ...................................................................................29

*Morgan Stanley Tech. Fund Sec. Litig.*,
    643 F. Supp. 2d 366 (S.D.N.Y. 2009) ..................................................................22

*Morrison v. National Australia Bank Ltd.*,
    561 U.S. 247 (2010) ...........................................................................................2, 8

*Mountz v. Global Vision Prods., Inc.*,
    770 N.Y.S.2d 603 (N.Y. Sup. Ct. 2003)...............................................................34

*Newman v. Fam. Mgmt. Corp.*,
    530 F. App'x 21 (2d Cir. 2013) ............................................................................34

*In re Omega Healthcare Invs., Inc.*,
    376 F. Supp. 3d 496 (S.D.N.Y. 2019) ..................................................................16

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015) .........................................................................................18, 19

*Parnes v. Gateway 2000, Inc.*,
    122 F.3d 539 (8th Cir. 1997) .............................................................................20, 21

*In re Petrobras Sec. Litig.*,
    2016 WL 3144395 (S.D.N.Y. May 5, 2016) ........................................................24

*In re Philip Morris Int'l Inc. Sec. Litig.*,
    89 F.4th 408 (2d Cir. 2023) .................................................................................18

*Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Comm.*,
    694 F. Supp. 2d 297 (S.D.N.Y. 2010) ..................................................................27

*Prime Mover Cap. Partners, L.P. v. Elixir Gaming Techs., Inc.*,
    793 F. Supp. 2d 651 (S.D.N.Y. 2011) ..................................................................35

*Reiner v. Teladoc Health, Inc.*,
    2021 WL 4451407 (S.D.N.Y. Sept. 8, 2021)....................................................30, 31

*In re Rockwell Med., Inc. Sec. Litig.*,
    2018 WL 1725553 (S.D.N.Y. Mar. 30, 2018) ......................................................15

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004) .................................................................................15

*Rotunno v. Wood,*
　2022 WL 14997930 (2d Cir. Oct. 27, 2022)........................................................25

*S. Cherry St., LLC v. Hennessee Grp. LLC,*
　573 F.3d 98 (2d Cir. 2009) ...................................................................... 24, 26

*In re Satyam Comput. Servs. Ltd. Sec. Litig.,*
　915 F. Supp. 2d 450 (S.D.N.Y. 2013) .....................................................................8

*Schiro v. Cemex, S.A.B. de C.V.,*
　396 F. Supp. 3d 283 (S.D.N.Y. 2019) ...................................................................21

*Sec. Inv'r Protection Corp. v. BDO Seidman, LLP,*
　222 F.3d 63 (2d Cir. 2000) ...................................................................................35

*SEC v. AT&T, Inc.,*
　2022 WL 4110466 (S.D.N.Y. Sept. 8, 2022)........................................................31

*SEC v. Rio Tinto PLC,*
　41 F.4th 47 (2d Cir. 2022) .....................................................................................23

*In re Shanda Games Ltd. Sec. Litig.,*
　2022 WL 992794 (S.D.N.Y. Mar. 31, 2022) .........................................................31

*Shields v. Citytrust Bancorp, Inc.,*
　25 F.3d 1124 (2d Cir. 1994) .................................................................................26

*Steamfitters Local 449 Pension Plan v. Skechers U.S.A. Inc.,*
　412 F. Supp. 3d 353 (S.D.N.Y. Sept. 23, 2019) ...................................................19

*Stoyas v. Toshiba Corp.,*
　896 F.3d 933 (9th Cir. 2018) ...................................................................................9

*Swanhart v. New York,*
　2022 WL 875846 (S.D.N.Y. Mar. 24, 2022)........................................................21

*In re Synchrony Fin. Sec. Litig.,*
　988 F.3d 157 (2d Cir. 2021) ........................................................................... 17, 20

*In re Take-Two Interactive Sec. Litig.,*
　551 F. Supp. 2d 247 (S.D.N.Y. 2008) ...................................................................30

*Tan v. Goldman Sachs Grp.,*
　2023 WL 2753238 (S.D.N.Y. Mar. 31, 2023)......................................................32

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
　551 U.S. 308 (2007) ................................................................................... 3, 24, 27

*In re Turquoise Hill Ltd. Res. Sec. Litig.*,
    625 F. Supp. 3d 164 (S.D.N.Y. 2022) ..................................................23

*Villare v. Abiomed, Inc.*,
    2021 WL 4311749 (S.D.N.Y. Sept. 21, 2021) ............................. 18, 20

*Vining v. Oppenheimer Holdings Inc.*,
    2010 WL 3825722 (S.D.N.Y. Sept. 29, 2010) .................................25

*In re Wachovia Equity Sec. Litig.*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011) ..............................................34

*Wilson v. Merrill Lynch & Co.*,
    671 F.3d 120 (2d Cir. 2011) .............................................................23

*Zappin v. Schorr*,
    2023 WL 2601578 (S.D.N.Y. Mar. 22, 2023) .................................37

*Zuchowski v. SFC Glob. Supply Chain*,
    2022 WL 3586716 (S.D.N.Y. Aug. 22, 2022) .................................34

## **Rules / Statutes**

15 U.S.C. § 78c ...................................................................................9

15 U.S.C. § 78e ...................................................................................9

15 U.S.C. § 78j(b) ...................................................................... 3, 13, 22

15 U.S.C. § 78o(a) ..............................................................................9

15 U.S.C. § 78q-1(b)(1) .......................................................................9

15 U.S.C. § 78t-1 ........................................................................... 8, 30

15 U.S.C. § 78u–4 ......................................................................*passim*

28 U.S.C. § 1367(c)(3) ......................................................................32

Fed. R. Civ. P. 8 ...................................................................... 1, 11, 28

Fed. R. Civ. P. 9(b) .....................................................1, 11, 14, 28, 30

New York General Business Law § 349 ....................................... 4, 33, 34

## PRELIMINARY STATEMENT

Just two and a half months ago, this Court granted without prejudice Defendants' motion to dismiss Plaintiffs' Third Amended Complaint ("TAC"), which was Plaintiffs' *fourth* attempt to plead a complaint against Defendants since this case's inception over a year and a half ago. Dkt. No. 103. In its order, the Court clearly stated its expectations for any further amended pleading:

> Rule 8, Fed. R. Civ. P. [r]equires a short and plain statement showing entitlement to the relief requested. Rule 9(b), Fed. R. Civ. P. [r]equires specificity regarding specified matters. The complaint should not allege evidentiary matter. The TAC is prolix, encumbered with evidentiary exhibits, and unduly burdensome for defendants to answer and for the court to administer. Plaintiff is cautioned to observe pleading requirements, and not to mix the function of a complaint and a brief or press release.

*Id.* Although arguably less "prolix," and "encumbered with evidentiary exhibits," Plaintiffs' Fourth Amended Complaint ("4AC")—their *fifth* complaint in this action—still does not satisfy Rule 8's threshold pleading standard, much less the exacting standards of Rule 9(b) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4 ("PSLRA").[1] Nor does the 4AC cure myriad other deficiencies detailed in each of Defendants' prior motions to dismiss, motion for Rule 11 sanctions, and opposition to Plaintiffs' motion for leave to amend. Dkt. Nos. 61-62, 86-90, 94-95, 100-01. It is time for this Court to dismiss this action with prejudice, putting to rest Plaintiffs' baseless claims for once and for all.

Plaintiffs' latest attempt to cobble together purported violations of federal securities law and state law by Defendants—still based on nothing more than Mr. Musk's innocuous and often

---

[1] Defendants dispute Plaintiffs' characterization of Dogecoin as a "security," but because Plaintiffs have attempted to plead violations of federal securities law, the PSLRA applies to their claims. *Gluck v. Hecla Mining Co.*, 2023 WL 2161958, at *6 (S.D.N.Y. Feb. 22, 2023) ("When a plaintiff has alleged securities fraud claims, the complaint is subject to ... [the PSLRA].").

silly tweets about a cryptocurrency called "Dogecoin" (known for its meme image of a Shiba Inu dog)—is as fruitless as Plaintiffs' four prior attempts. There is nothing actionable—much less fraudulent—about tweeting words of support for, or funny pictures about, a widely used cryptocurrency. Plaintiffs' theory, to the extent one emerges, is that *every single time* Mr. Musk speaks publicly about Dogecoin, he either makes a materially false statement or manipulates the market; but Plaintiffs plead no facts (much less particularized facts) establishing that the two wallets identified in the 4AC in fact *belong* to Mr. Musk or that either Mr. Musk or Tesla *ever sold* Dogecoin. This stops Plaintiffs' alleged claims for market manipulation or insider trading at the gate, requiring dismissal. Likewise, Plaintiffs fail to state a claim that Mr. Musk's cheerleading for Dogecoin—quintessential inactionable puffery—was materially false or misleading or that Defendants acted with the requisite intent.

For these and the following reasons, this Court should dismiss the 4AC with prejudice:

*First*, Plaintiffs do not plead any domestic transaction in Dogecoin under the U.S. Supreme Court's decision in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), barring Plaintiffs' federal securities law claims on jurisdictional grounds. Plaintiffs, at most, plead that a *minority* of computers that record Dogecoin transactions are located within the United States. This is insufficient as a matter of law.

*Second*, Plaintiffs' 4AC contains *no* specific allegations against Tesla, much less the "who," "what," "when," "where," and "why" required for Plaintiffs' claims of market manipulation and insider trading. Plaintiffs do not allege any *act* or *omission* by Tesla, any *connection* between Tesla and any sale of Dogecoin, or that Tesla owned *any* wallets in which Dogecoin traded.

*Third*, Plaintiffs do not plead any misrepresentation or false statement. Plaintiffs challenge

just *ten* total statements as allegedly false and misleading, citing statements such as "Dogecoin might be my fav cryptocurrency.  It's pretty cool," "Dogecoin is underestimated," and "SpaceX is going to put a literal Dogecoin on the literal moon," as somehow false or misleading.  ¶¶ 60, 90, 103.[2]  But Plaintiffs do not allege—much less to an exacting standard of specificity—what these statements mean or why the statements are untrue.  Indeed, these and other statements included in the 4AC are inactionable opinions, quintessential puffery, or both.  And, although Plaintiffs quote or paraphrase more than 60+ additional statements in the 4AC, these memes, cartoons, and silly tweets are not even *alleged* to be false.

*Fourth*, recognizing the fundamental weakness of their misstatements claim, Plaintiffs unsuccessfully attempt to repackage it as "market manipulation" under Section 10(b) and Rules 10b-5(a) and (c).  But alleged manipulative conduct and deceptive acts—which Plaintiffs fail to plead—must be *distinct* from alleged misstatements.  And, to the extent Plaintiffs purport to allege a "pump and dump scheme," they do not even allege either Defendant ever *sold* Dogecoin.

*Fifth*, each of Plaintiffs' securities fraud claims fails because Plaintiffs do not plead *any* inference of scienter, much less a strong inference.  The words "scienter" and "motive" do not appear anywhere in the 4AC, and Plaintiffs' handful of boilerplate allegations of "intent" are not supported by particularized facts.  These unparticularized allegations fall far short of the "cogent and compelling" inference of intent required under *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 310 (2007).

*Sixth*, Plaintiffs do not plead loss causation because they fail to allege that *any* disclosure revealed to the market an otherwise concealed fact that corrected a prior misstatement or omission.

---

[2]  Citations to "¶ __" refer to the Fourth Amended Class Action Complaint ("4AC"), filed on January 22, 2024.  Dkt. No. 108.  All emphasis is added and quotations and citations omitted unless otherwise noted.

Indeed, all of Plaintiffs' assertions are to the contrary; according to Plaintiffs, the supposed "truth" behind Defendants' alleged manipulation has been *public knowledge* since Mr. Musk's appearance on *Saturday Night Live* more than two years ago, and that appearance triggered a protracted alleged price decline.  This likewise forecloses Plaintiffs' claims.

*Seventh*, Plaintiffs endeavor to plead insider trading, but do not identify a single piece of material nonpublic information on which Defendants allegedly traded.  Plaintiffs do not identify any fact that Mr. Musk purportedly knew about Dogecoin that was not known to the public. Moreover, even if Plaintiffs pleaded some material nonpublic information in Mr. Musk's unique possession (and they do not), Plaintiffs do not sufficiently plead the existence of a duty, and therefore there is no breach, whether under a corporate insider or corporate outsider theory.

*Finally*, each of Plaintiffs' state law claims must be dismissed.  Plaintiffs' claim for alleged deceptive trade practices under New York's General Business Law fails because that statute is inapplicable to securities transactions (even apart from Plaintiffs' failure to plead misleading consumer-directed conduct or that any claim arises out of a New York transaction in a commercial good or service).  Plaintiffs' common law fraud claim suffers from the same pleading deficiencies as their federal securities law claims, and Plaintiffs do not allege with particularity that they relied on the alleged misstatements because they fail to plead that they even *read* the alleged misstatements.  Plaintiffs' negligent misrepresentation claim fails not only because economic loss is not recoverable under a negligence-based theory, but also because Plaintiffs cannot allege sufficient facts to plead that Mr. Musk owed them any duty.  And, lastly, Plaintiffs' unjust enrichment claim must be dismissed both because it is duplicative of Plaintiffs' other claims and because Defendants did not deal directly with Plaintiffs, a requisite element of this claim.

This Court should dismiss this action in its entirety with prejudice.

## BACKGROUND

**A.      Plaintiffs Allege That Dogecoin Is a Widely Used Cryptocurrency**

Dogecoin is an open-source, peer-to-peer cryptocurrency created by software engineers Jackson Palmer and Billy Markus in 2013.  ¶¶ 24, 51.  The Dogecoin blockchain is not controlled by any central authority; instead, its transaction information is stored as a public ledger maintained across hundreds of computers, or nodes.  ¶¶ 24-28.  Dogecoin is a "highly volatile" digital asset that is not backed by any "product, service, bank, commodity, insurer, government, or corporation." ¶¶ 22, 70.  Nonetheless, since its introduction, Dogecoin has developed a strong and devoted following.  ¶ 51.

**B.      Plaintiffs' Allegations Concerning Mr. Musk's Purported Connection to Dogecoin**

**1.      Plaintiffs Allege That Mr. Musk Made Limited, General Public Statements Relating to Dogecoin**

Beginning in April 2019, Mr. Musk began expressing his general enthusiasm for Dogecoin on the social media platform then known as Twitter.  ¶ 60.  Mr. Musk's Dogecoin-related tweets consisted primarily of general expressions of optimism and humorous memes.  For example, Mr. Musk tweeted that Dogecoin "is the people's crypto," ¶ 82, that Dogecoin is "pretty cool," ¶ 60, and that it "rulz," ¶ 60.  Mr. Musk stated publicly that he supports Dogecoin because, among other reasons, he believes that it is more accessible than other cryptocurrencies and because many employees on the production lines at Tesla and SpaceX own Dogecoin.  ¶ 163.

Mr. Musk has, however, also expressed caution and conservatism about Dogecoin, given Dogecoin's inherently speculative and unbacked nature.  Mr. Musk's first tweet about Dogecoin, on April 2, 2019, cautioned that "Dogecoin value may vary," and linked to an article published by a satirical newspaper that was critical of the cryptocurrency.  *See* Second Amended Class Action Complaint ("SAC"), Dkt. No. 39, Ex. B at 1; *Eaves v. Designs for Finance Inc.*, 785 F. Supp. 2d

229, 245 (S.D.N.Y. 2011) (taking judicial notice of prior complaints in deciding motion to dismiss amended complaint).  Mr. Musk also has stated publicly that he "never said that people should invest in crypto," Dkt. No. 77 ¶ 146, and even joked on national television that Dogecoin was "a hustle."  ¶¶ 114-15.

### 2.      Plaintiffs Fail to Plead That Mr. Musk or Tesla Sold Dogecoin

Abandoning their prior allegations that eight "wallets"—a term of art that refers to accounts in which an individual can hold, and transact in, Dogecoin[3]—belong to Mr. Musk or Tesla, Dkt. No. 77 ¶¶ 179, 185, 201, 204, 206, 208, Plaintiffs now speculate that just two wallets—DH5ya[4] and DJ6Kc—belong to Mr. Musk, ¶¶ 165, 174.  (Plaintiffs identify no wallets purportedly belonging to Tesla.)  Plaintiffs concede that they do not have *evidence* of Mr. Musk's alleged wallet ownership.  ¶ 182.  Moreover, a website on which Plaintiffs expressly relied in their First Amended Complaint ("FAC"), Dkt. No. 9 ¶ 135, states that wallet DH5ya (which Plaintiffs now allege belongs to Mr. Musk[5]) belongs to *Robinhood*, a platform that permits retail investors to buy and sell cryptocurrencies, including Dogecoin.[6]  Plaintiffs' contradiction of their own prior pleading rests on gossamer-thin allegations that the DH5ya wallet:  (i) was opened two months before Mr. Musk first tweeted about Dogecoin, ¶ 175; (ii) sold Dogecoin when the market was up, ¶ 177; and (iii) exhibits behavior of an automated "hot wallet," which makes many small purchases

---

[3]    *See* DOGECOIN, https://dogecoin.com/dogepedia/articles/how-do-i-get-a-wallet/ (last visited Mar. 1, 2024).

[4]    References to cryptowallets use the same abbreviations as in the 4AC.

[5]    "[A] court may disregard amended pleadings when they directly contradict facts that have been alleged in prior pleadings."  *Grimes v. Fremont Gen. Corp.*, 933 F. Supp. 2d 584, 592 n.1 (S.D.N.Y. 2013).

[6]    Dkt. No. 9 ¶ 135 (citing BIT INFO CHARTS, https://bitinfocharts.com/dogecoin/address/DH5yaieqoZN36fDVciNyRueRGvGLR3mr7L (last visited Mar. 1, 2024)).

and sells large quantities when trading volume is high, ¶ 178.  The only other wallet at issue in the 4AC, DJ6Kc, is alleged to have purchased and sold Dogecoin in 739,600 transactions, which Plaintiffs speculate means that this wallet is operated by a software program.  ¶¶ 169, 171.  But Plaintiffs allege no facts tying this wallet to Mr. Musk.

Plaintiffs' allegations against Tesla are even more bereft:  Plaintiffs do not allege that *any* specific wallet belongs to Tesla, only that Tesla supposedly has traded Dogecoin "via numerous other Dogecoin wallets and accounts currently unknown to Plaintiffs."  ¶ 180.

### C.    Plaintiffs Make Repeated, Sweeping Amendments After Filing This Action

On June 16, 2022, Plaintiffs filed a putative class action claiming Mr. Musk and Tesla, along with Space Exploration Technologies Corp. ("SpaceX"), operated a Dogecoin "Crypto Pyramid Scheme."  Dkt. No. 1 at 1.  The Initial Complaint asserted claims for RICO, common law fraud, negligence, false advertising, "deceptive practices," products liability, and unjust enrichment, and sought damages of *$258 billion*.  *Id.* at 26, ¶¶ 146-210.  Less than three months later, on September 6, 2022, Plaintiffs amended the Initial Complaint, (i) adding six defendants: (a) The Boring Company, (b) Dogecoin Foundation, Inc. ("DCFI"), (c) Billy Markus, (d) Jackson Palmer, (e) "Dogecoin Developers class representative Ross Nicholl," and (f) "Doge Army class representative Matt Wallace"; (ii) adding causes of action for violations of Sections 5, 10(b), 12(a)(1), and 17(a) of the Securities Act; and (iii) dropping claims for negligence, false advertising, deceptive practices, and products liability.  Dkt. No. 9 at 7-8, ¶¶ 382-467.  Plaintiffs sought appointment as lead class counsel which (unsurprisingly, given the fantastical nature of Plaintiffs' claims) was uncontested.  Dkt. Nos. 41-42.  On December 13, 2022, after counsel to Defendants alerted Plaintiffs' counsel that the FAC failed to satisfy the PSLRA, Plaintiffs filed the SAC, which, among other changes, included allegations arising after the date of the FAC and dismissed all but three defendants.  Dkt. No. 39 at 5, ¶ 93.

On March 31, 2023, Defendants, including DCFI, moved to dismiss the SAC. Dkt. Nos. 59-62. On May 23, 2023, just over a week before Plaintiffs' opposition was due, Plaintiffs sought leave to stay briefing pending resolution of a forthcoming motion for leave to file a third amended complaint. Dkt. No. 88, Ex. 2. On June 7, 2023, Plaintiffs filed the TAC, dropping DCFI as a defendant, dropping the RICO claim, and adding, for the first time, a claim for alleged insider trading under Section 20A of the Securities Exchange Act. Dkt. No. 77 ¶¶ 1-2, 231-45. On August 7, 2023, Defendants moved to dismiss the TAC. Dkt. Nos. 94-95. Plaintiffs opposed the motion to dismiss and filed a cross motion for leave to file a fourth amended complaint. Dkt. Nos. 96-98. Following this Court's dismissal of the TAC with leave to amend, Dkt. No. 103, Plaintiffs filed the 4AC, reincorporating claims for negligence and "deceptive practices" that originally were alleged, but subsequently dropped, from the FAC. Dkt. No. 108 ¶¶ 243-46, 252-58 .

## ARGUMENT

## I.   PLAINTIFFS FAIL TO PLEAD A DOMESTIC TRANSACTION, REQUIRING DISMISSAL OF THEIR FEDERAL SECURITIES LAW CLAIMS

Plaintiffs admit that they have not pleaded (and cannot plead) that Dogecoin is "listed on [a] domestic exchange[]" or that Plaintiffs' purchases were domestic transactions under *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 267 (2010), instead averring that "[a]ll evidence of Defendants' Dogecoin transactions is entirely in their hands," ¶ 65. Because the federal securities laws do not apply extraterritorially, Plaintiffs' cop-out does not relieve them of their pleading obligations. *Morrison*, 561 U.S. at 267; *see also In re Satyam Comput. Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 474 (S.D.N.Y. 2013). Plaintiffs' allegations are insufficient under both *Morrison* prongs, and this Court must dismiss Plaintiffs' federal securities laws claims (Counts I-III) for lack of jurisdiction.

*First*, Plaintiffs cannot allege sufficient facts to plead the existence of a domestic transaction under *Morrison*'s first prong—transactions in securities listed on domestic exchanges. At a bare minimum, satisfying this prong requires a trade on a U.S. securities *exchange*. "Exchange," as used in *Morrison*, is a term of art and specifically means an "exchange" as defined by the Securities Exchange Act of 1934, 15 U.S.C. § 78c, Section 3(a)(1). *See Stoyas v. Toshiba Corp.*, 896 F.3d 933, 946-47 (9th Cir. 2018). Here, Plaintiffs allege that their purchases occurred on various cryptocurrency platforms, ¶ 44, perfunctorily claiming that Plaintiffs traded domestically because the platforms were "advertised to U.S. investors, and were U.S.-based or operated domestically via U.S. subsidiaries," *id.*, but none of the entities identified by Plaintiffs is *registered with the U.S. Securities and Exchange Commission* as a "domestic exchange" under the Exchange Act.[7]

*Second*, Plaintiffs do not sufficiently allege the existence of a domestic transaction under *Morrison*'s second prong—"domestic transactions in other securities"—because this prong requires the existence of a transaction where irrevocable liability is incurred or title passes within the United States. *See Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 68 (2d Cir. 2012) (plaintiff must plausibly allege "that the purchaser incurred irrevocable liability *within* the United States to take and pay for a security, or that the seller incurred irrevocable liability *within* the United States to deliver a security"). Conclusory assertions that transactions took place

---

[7]   Whether any cryptocurrency platform is required to register with the U.S. Securities and Exchange Commission as a securities exchange is hotly contested, as evidenced by a new crypto trading platform's recent declaratory judgment action in the U.S. District Court for the Northern District of Texas, asking the court to hold that secondary market sales of digital assets do not constitute securities transactions and therefore fall outside the SEC's jurisdiction to require registration as a securities exchange (under 15 U.S.C. § 78e), as a broker-dealer (under 15 U.S.C. § 78o(a), or as a clearing agency (under 15 U.S.C. § 78q-1(b)(1)). Complaint at ¶ 94, *Lejilex v. SEC*, No. 24-cv-00168 (N.D. Tex. Feb. 21, 2024), ECF No. 1.

in the United States (*e.g.*, ¶ 43) are insufficient; rather, a complaint must include facts concerning "the formation of the contracts, the placement of purchase orders, the passing of title, or the exchange of money." *Absolute Activist*, 677 F.3d at 70.  Further, "domestic transactions in other securities" *do not* include purchases made on foreign trading platforms, even when an order to purchase is placed from the U.S., and even when some of the computers over which trading orders may have traveled are located in the U.S. *See Anderson v. Binance*, 2022 WL 976824, at *4 (S.D.N.Y. Mar. 31, 2022) (holding that allegations that title "passed in whole or in part over servers located in California" were insufficient to show that "irrevocable liability is incurred or title passes within the United States").

Here, Plaintiffs allege that only *43%* of the computer nodes running Dogecoin core software are in the U.S.  ¶ 42.  In other words, not only do Plaintiffs fail to allege that their transactions were validated within the U.S., they *admit that the majority—57%—*of the computer network (and relevant transactions) are *outside* of the U.S.  ¶¶ 41-42.  Perhaps in an attempt to mitigate this deficiency, Plaintiffs allege that irrevocable liability is incurred when the transaction is validated by a "full node," or "through the records of the custodial platform," ¶¶ 45, 49, but these assertions do not suffice to plead that this validation occurred *in the United States*, particularly in light of Plaintiffs' own assertions that the *majority* of the network is extraterritorial. *See generally Absolute Activist*, 677 F.3d at 68 (plaintiff must plausibly allege "that the purchaser incurred irrevocable liability *within* the United States to take and pay for a security, or that the seller incurred irrevocable liability *within* the United States to deliver a security").

Plaintiffs' federal securities law claims (Counts I-III) must be dismissed for lack of jurisdiction.  Because Plaintiffs' *Morrison* pleading failure cannot be cured—as evidenced by Plaintiffs' prior attempts—this Court should dismiss without leave to amend.

## II.      PLAINTIFFS' CLAIMS AGAINST TESLA MUST BE DISMISSED

Plaintiffs' claims against Tesla (Counts II, III, VII) must be dismissed.  Plaintiffs fail to plead core elements of their claims against Tesla, including that Tesla owned any specific Dogecoin wallet; made, approved, or disseminated any alleged misstatement; committed any deceptive act; sold any Dogecoin; possessed any material non-public information about Dogecoin; or acted intentionally or recklessly.  *See* Sections II.B-D, III, IV.D, *infra*.  It is well-settled that where, as here, "multiple defendants are asked to respond to allegations of fraud," the complaint must "inform *each* defendant of the nature of his alleged participation in the fraud." *Baxter v. A.R. Baron & Co.*, 1995 WL 600720, at *7 (S.D.N.Y. Oct. 12, 1995); *Gross v. Waywell*, 628 F. Supp. 2d 475, 496 (S.D.N.Y. 2009) (Rule 9(b) requires a showing that "each particular defendant was directly or indirectly involved or had responsibility").

Plaintiffs' 4AC is facially deficient as to Tesla:  Plaintiffs include a handful of conclusory assertions that conduct was undertaken by Mr. Musk *and* Tesla, ¶¶ 65, 138, 180, but do not allege with specificity that *Tesla* did anything whatsoever of relevance to this action—let alone allegations sufficient to state a cause of action. *E.g.*, *Appalachian Enters., Inc. v. ePayment Sols.*, *Ltd*., 2004 WL 2813121, at *9 (S.D.N.Y. Dec. 8, 2004) (discussing impermissibility of pleading that "lumps together all of the defendants in each claim without providing any factual allegations to distinguish their conduct"); *see also Dulsky v. Worthy*, 2013 WL 4038604, at *5 (S.D.N.Y. July 30, 2013) ("Rule 9(b) is not satisfied by filing a complaint in which defendants are clumped together in vague allegations.").  Plaintiffs' group pleading allegations deserve no weight and fail to satisfy even Rule 8's notice pleading standard. *Id.*

Likewise, the handful of allegations in the 4AC specific to Tesla do not assert actionable misconduct, *e.g.*, assertions that:

- ¶ 139:  Tesla accepted Dogecoin as payment for "three items out of approximately 170

offered for sale on its website";

- ¶ 197:  Tesla purchased Bitcoin;

- ¶ 190:  Tesla owned Dogecoin; and

- ¶¶ 191-92:  Tesla purchased and sold "digital assets."

These allegations—even if true—do not describe any actionable wrongful act.

And, even where Plaintiffs attempt to allege actionable misconduct, their underlying allegations are wholly conclusory and speculative, *e.g.*:

- ¶¶ 180, 190:  Alleging Tesla "profitably traded ... concurrent with Musk's pumping of the asset," while admitting that "*amounts owned, and dates bought and sold are unknown*" and failing to distinguish Tesla from any other market participant—including *Plaintiffs*;

- ¶ 237:  Alleging Tesla "sold Dogecoin securities while in possession of material, non-public information," without explaining what the purported material non-public information was; and

- ¶¶ 229, 231: Alleging Tesla "employed a manipulative or deceptive device or contrivance" and "engaged in market activity aimed at deceiving Plaintiffs and the Class," without explaining how.

Such vagaries and legal boilerplate cannot state a claim for securities fraud.  *E.g.*, *Jaffe v. Capital One Bank*, 2010 WL 691639, at *6 (S.D.N.Y. Mar. 1, 2010) ("Allegations that are conclusory or unsupported by factual assertions are insufficient to state a claim for fraud."); *see also Quad/Graphics, Inc.*, 521 F. Supp. 3d 469, 478-79 (S.D.N.Y. 2021) (dismissing as "puzzle-pleading" where complaint "plac[ed] the burden on the Court to sort out the alleged misrepresentation and then match them with the corresponding adverse facts").  This Court should dismiss all of Plaintiffs' claims against Tesla and dismiss Tesla from this action.

## II.   PLAINTIFFS' SECTION 10(b) CLAIMS MUST BE DISMISSED

Plaintiffs assert two equally deficient theories of liability under Section 10(b), alleging that (i) Mr. Musk made material misstatements and omissions under Section 10(b) and Rule 10b-5(b) (Count I), and (ii) both Mr. Musk and Tesla manipulated the market for Dogecoin under Section 10(b) and Rules 10b-5(a) and (c) (Count II).   Plaintiffs do not come close to pleading any actionable material misstatement or any deceptive or manipulative act (much less an entire scheme), scienter, or loss causation, the requisite elements of these securities fraud claims.  *E.g.*, *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 630 (S.D.N.Y. 2017) (misstatements); *Gomez v. Credit Suisse AG*, 2023 WL 2744415, at *7 (S.D.N.Y. Mar. 31, 2023) (market manipulation).  Plaintiffs also do not meet the particularity requirements of the PSLRA.  15 U.S.C. § 78u–4(b)(1) (requiring Plaintiffs to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement ... is made on information or belief, the complaint shall state with particularity all facts on which that belief is formed"); *see also In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513, 535 (S.D.N.Y. 2005) (dismissing Section 10(b) claims for "failure to plead with sufficient particularity").

### A.   Plaintiffs Do Not Plead Material Misstatements or Omissions

Although Plaintiffs' 4AC quotes and paraphrases over seventy tweets, memes, and statements by Mr. Musk,[8] Plaintiffs allege that just *ten* of these are false and misleading.[9]  The ten

---

[8]   For the Court's convenience, Defendants have attached Appendix A, which identifies each statement alleged in the 4AC and the reasons why each statement is inactionable.

[9]   ¶¶ 60, 68, 85, 90, 92-94, 98, 103, 120, 124, 223.  Plaintiffs' reason for including dozens of tweets, memes, and cartoons in the 4AC that are not alleged to be *false* is inscrutable, but to the extent Plaintiffs seek to rely on these statements as a basis of *either* of their Section 10(b) claims, they have not so pleaded and any such attempt would be futile, for the reasons stated herein. Plaintiffs also allege that a handful of statements about *Bitcoin*—an entirely separate cryptocurrency—are false, but these allegations cannot state a claim for securities fraud in

statements are comprised of cartoon memes and jokes, general statements of optimism and support, and *literally true* statements.  Such true statements of fact, opinions, and puffery are not actionable.

### 1.    Plaintiffs Do Not Plead Any False or Misleading Statement with the Requisite Particularity

Plaintiffs' unsupported, speculative, and conclusory allegations of falsity fail to meet the particularity requirement of Rule 9(b) and the PSLRA.  It "is a serious matter to charge a person with fraud and hence no one is permitted to do so unless he is in a position and is willing to put himself on record as to what the alleged fraud consists of specifically."  *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 464 (2d Cir. 2019).  Plaintiffs do not attempt to explain how Mr. Musk's tweets could even be *falsifiable*, much less *actually* false or misleading.  *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (PSLRA "prevents a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception unaccompanied by a particularized explanation stating *why* the defendant's alleged statements or omissions are deceitful").  These include memes, ¶¶ 68, 98; general statements of support, ¶¶ 60, 85, 90, 92-94; insubstantial or cryptic statements that make no particular representation at all, ¶¶ 103, 120 ("to the moooonn"); and conclusory allegations that Mr. Musk somehow was affiliated with the Dogecoin Foundation, ¶¶ 124, 223, none of which states a claim.

***Memes.***  The first meme challenged by Plaintiffs as somehow false depicts a dust storm with the face of a Shiba Inu, which is labelled as "dogecoin standard," overtaking an urban area, which is labelled as "global financial system" (the "Dust Storm Meme").  ¶ 68.  Plaintiffs allege that the Dust Storm Meme is misleading because "Dogecoin is not scalable for widespread use as currency" due to several features including its volatility, concentrated ownership, and strain on

---

"connection with the purchase and sale of *Dogecoin*."  *Compare* ¶¶ 200, 202-03, *with* ¶¶ 226-27, 230, 233.

environmental resources.  ¶¶ 69-74.  Even assuming that this meme communicates some message, it says *nothing* about the scalability of Dogecoin, much less anything actionable.  *See Hong v. Extreme Networks, Inc*., 2017 WL 1508991, at *15 (N.D. Cal. Apr. 27, 2017) ("[T]he reasons [p]laintiffs offer as to why the statements are false or misleading bear no connection to the substance of the statements themselves.").  In the second meme challenged by Plaintiffs, a soldier, labelled as "memes," is protecting a sleeping child, labelled as "Dogecoin," from incoming gunfire, labelled as "Dogecoin value dropping" (the "Soldier Meme").  ¶ 98.  Plaintiffs allege this meme is misleading because Mr. Musk "should have known that his endorsement could not sustain Dogecoin's increased value," ¶ 100,[10] but the meme says nothing about any purported endorsement, and Plaintiffs' allegations again "bear no connection to the substance of the statements themselves." *Hong*, 2017 WL 1508991, at *15.

***General statements of support.***   Plaintiffs next challenge as false Mr. Musk's general statements of support for Dogecoin, ¶¶ 60, 85, 90, 92-94, but Plaintiffs' strained explanations of falsity do not hold water.  For example, Plaintiffs allege that Mr. Musk's statement that Dogecoin "might be my fav[orite] cryptocurrency," ¶ 60, is false because it "downplayed the extent of his involvement with DCFI," ¶ 63—a non sequitur incapable of stating a claim for securities fraud. *E.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 102 (2d Cir. 2007) (general allegations "resting upon speculation are insufficient").  Moreover, Plaintiffs allege no facts in support of Mr. Musk's purported "involvement" with DCFI and concede that they need discovery

---

[10]   Plaintiffs' tautological allegation is, in essence, that Mr. Musk's statement was misleading because he "should have known" it was misleading.   ¶ 100.   Such circular and speculative allegations are insufficient to plead falsity *or* scienter.  *E.g.*, *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004) ("[P]laintiffs must do more than say that the statements … were false and misleading; they must demonstrate with specificity why and how that is so."); *In re Rockwell Med., Inc. Sec. Litig.*, 2018 WL 1725553, at *14 (S.D.N.Y. Mar. 30, 2018) (finding no scienter where plaintiffs alleged only that defendants "must have been aware of the pitfalls").

to support this claim.  ¶ 63.  Plaintiffs next assert that Mr. Musk's tweet that Dogecoin is not meaningfully inflationary and that transaction speed "should ideally be a few orders of magnitude faster," ¶ 85, is misleading, because it "downplay[s] Dogecoin's inflationary qualities," "suggest[s] that transaction speed can simply be sped up," and "intentionally overstate[s] Dogecoin's scalability and viability as currency," ¶ 86.  But Mr. Musk's tweet contains no discernible representation that Dogecoin is "scalab[le]" or "viab[le]" as currency.  Nor do Plaintiffs allege any specific facts to suggest Dogecoin has a "meaningful[]" inflation rate or that transaction speed could not be increased.  Plaintiffs likewise claim that Mr. Musk's tweet that Dogecoin is "underestimated," ¶ 90, falsely suggests that Mr. Musk "will make Dogecoin a tool of empowerment for ordinary people," ¶ 91.  Once again, this explanation of falsity "bear[s] no connection to the substance of the statement[]." *Hong*, 2017 WL 1508991, at *15.  And even assuming that tweet makes such a representation, Plaintiffs' *own allegations* undercut falsity. ¶ 163 ("That's why I decided to support Doge—It felt like the people's crypto.").

**_Dogecoin on the moon._**  Plaintiffs allege that two tweets about "put[ting] a literal Dogecoin on the literal moon," ¶¶ 103, 120, are false, because "SpaceX has yet to launch any Dogecoin-themed spacecraft (or "literal Dogecoin") to the moon," ¶ 104; *see also* ¶ 121.  Even accepting Plaintiffs' fantastical premise that these tweets represented a *commitment* to launch a Dogecoin-themed spacecraft within a specified period of time, any such representation was not false when made.  First, Plaintiffs do not allege any facts evidencing that Mr. Musk did not genuinely believe his statements at the time he made them.  Second, Plaintiff's allegation that, to date, SpaceX has not yet launched any Dogecoin themed spacecraft is insufficient to plead that the statements were false *when made.  See In re Omega Healthcare Invs., Inc.*, 376 F. Supp. 3d 496, 506 (S.D.N.Y. 2019) ("A statement that was believed to be true when made, but was later shown to be false, is

insufficient to establish falsity.").

***Mr. Musk's affiliation with Dogecoin.***     Plaintiffs next allege that two statements concerning Mr. Musk's (lack of) affiliation with Dogecoin or the DCFI are false, ¶¶ 124, 223, but such objectively verifiable true statements cannot form the basis of a claim for securities fraud. *See Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 256 (S.D.N.Y. 2019) ("This statement was not false and, thus, may not form the basis of a Securities Act claim.").   Plaintiffs similarly allege that Mr. Musk's tweet that "Dogecoin has no formal organization & no one reports to [him]"—a true statement—is false, because of Mr. Musk's "close advisory ties with DCFI and Dogecoin core developers."  ¶¶ 123-25.   But Plaintiffs admit that they cannot plead any specific evidence in support of these alleged "advisory ties," ¶ 63, making clear that there is no falsity. Plaintiffs also do not allege any facts contradicting Mr. Musk's statement:  They do not assert that Dogecoin has a formal organization (it does not) or that anyone at DCFI reports to Mr. Musk (they do not).[11]

## 2.    Plaintiffs' Cause of Action for False Statements Also Fails Because the Statements Are Opinions, Puffery, or Otherwise Immaterial

### (a)    Many Alleged Misstatements Are Protected Opinions

Many of the ten statements Plaintiffs challenge as false also are "quintessential opinion statements" and therefore inactionable.[12]  *Villare v. Abiomed, Inc.*, 2021 WL 4311749, at *19

---

[11]    Plaintiffs claim that Mr. Musk's tweet that one of his employees, Jared Birchall, does not have "anything to do" with the DCFI is false because Mr. Birchall was previously listed as an "advisor" to the DCFI on its website.  ¶¶ 218, 221, 223.  But Plaintiffs do not allege whether Mr. Birchall was, in fact, an advisor to DCFI at the time of Mr. Musk's tweet.  Nor do Plaintiffs allege that Mr. Birchall was acting on behalf of Mr. Musk.  Moreover, even if assumed true for purposes of this motion—the website disclosure undermines any claim of misstatement—much less a material one.   *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 171 (2d Cir. 2021); *In re IAC/InterActiveCorp. Sec. Litig.*, 695 F. Supp. 2d 109, 118 (S.D.N.Y. Mar. 19, 2010) (Plaintiffs' "claim fails for a few reasons.  First, [Defendant] had already disclosed this fact.").

[12]    ¶¶ 60, 68, 85, 90, 92-94, 98.

(S.D.N.Y. Sept. 21, 2021); *see also In re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408, 418 (2d Cir. 2023) (holding opinions inactionable because plaintiffs "cannot point to any objective, black-and-white standard by which to verify" them).   These include the Dust Storm Meme, ¶¶ 68-69, and the Soldier Meme, ¶¶ 98-100, as well as Mr. Musk's personal views that Dogecoin "might be my fav[orite] cryptocurrency," ¶¶ 59-60, "Doge appears to be inflationary, but is not meaningfully so," ¶ 85, "Dogecoin is underestimated," ¶ 90, and that "[i]f major Dogecoin holders sell most of their coins, it will get my full support.   Too much concentration is the only real issue *IMO ['in my opinion']*," ¶ 92 (alteration in original).

Where, as here, a plaintiff challenges a statement of opinion or belief, it is not sufficient to show that the "belief turned out to be wrong," *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186 (2015), or even that the opinion was "unreasonable, irrational, [or] excessively optimistic," *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 754 (S.D.N.Y. 2018).   Rather, to plead that an opinion is false, Plaintiffs must allege either that (i) the statements were both objectively false and subjectively false (*i.e.*, not genuinely believed at the time they were made), *see Omnicare*, 575 U.S. at 185-86, or (ii) Mr. Musk omitted material facts underlying the basis for the opinion and those facts conflict with what a reasonable investor would take from the statement itself, *id.* at 189.   Plaintiffs' allegations do not satisfy this standard.

Even assuming, *arguendo*, that the Dust Storm Meme and the Soldier Meme make any representations at all, whether Dogecoin is "scalable for widespread use as currency," ¶ 69, or Mr. Musk was "safeguarding the value of their Dogecoin," ¶ 99, are matters of opinion on which reasonable minds can differ.   *E.g.*, *Steamfitters Local 449 Pension Plan v. Skechers U.S.A. Inc.*, 412 F. Supp. 3d 353, 363 (S.D.N.Y. Sept. 23, 2019) (statement that "we believe the strength of

our brand and our product has not slowed" was a statement of opinion "without sufficient specificity to offer any guarantee of some concrete fact or outcome"). Likewise, Mr. Musk's general statements of support and views about Dogecoin—*e.g.*, ¶ 92 (overconcentration the "real issue"), ¶ 60 ("fav[orite] cryptocurrency"), ¶ 90 ("underestimated")—are his own opinions, which Plaintiffs do not allege he did not genuinely hold. To the contrary, Plaintiffs' 4AC suggests that Mr. Musk was consistently bullish on Dogecoin. *E.g.*, ¶¶ 82, 188-89, 214-15, 217. And, once again, Plaintiffs do not allege that Mr. Musk knew any facts that he omitted which made the statements misleading. *See In re Inv. Tech. Grp., Inc. Sec. Litig.*, 251 F. Supp. 3d 596, 619 (S.D.N.Y. 2017) ("Plaintiff fails to allege particular facts regarding the knowledge Defendants did (or did not) possess at the time the opinion statements were made, whose omission made those statements misleading.").

### (b)      The Same Statements Are Puffery or Otherwise Immaterial

Many of the alleged misstatements, related fragmentary, and unspecific tweets,[13] are classic "puffery"—meaning they are not "sufficiently specific for an investor to reasonably rely on that statement as a guarantee of some concrete fact or outcome." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 185 (2d Cir. 2013); *see also IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 392 (2d Cir. 2015) ("Statements of general corporate optimism … do not give rise to securities violations."). They are also immaterial.

*First*, Mr. Musk's excited tweets of enthusiasm and support and cartoon memes are not the stuff of securities fraud. ¶¶ 60, 68, 85, 90, 92-94, 98, 103, 120. Not only are these statements "obvious hyperbole that no reasonable investor would rely upon," *Parnes v. Gateway 2000, Inc.*,

---

[13]   ¶¶ 60, 68, 85, 90, 92-94, 98, 103, 120.

122 F.3d 539, 547 (8th Cir. 1997), but they also are vague and lacking "sufficient specificity to offer any guarantee of some concrete fact or outcome," *Villare*, 2021 WL 4311749, at *14. It defies credulity to argue that statements like "to the mooooonn" constitute a binding and material guarantee that a "literal Dogecoin" would be sent to the "literal moon." *E.g.*, *Parnes*, 122 F.3d at 547 ("No reasonable investor would rely on these statements, and they are certainly not specific enough to perpetrate a fraud on the market.").

*Second*, statements such as these would be obvious hyberbolic puffery coming from *Dogecoin itself*; they are even less material and reliable when made by Mr. Musk, an unaffiliated third party. Further, Dogecoin-related risks already were well-known to the public, so there can be no "*substantial* likelihood that the disclosure of an omitted fact would have been viewed by a reasonable investor as having *significantly* altered the total mix of information made available." *In re Synchrony*, 988 F.3d at 170. Although Plaintiffs appear to argue that optimistic statements, such as that Dogecoin is "underestimated," ¶ 90, understated the speculative nature of investment in Dogecoin, Plaintiffs' own allegations refute this claim, *e.g.*, ¶ 70 ("Dogecoin's trading price is highly volatile"), ¶ 56 (acknowledging that Dogecoin's co-creator, Billy Markus, referred to cryptocurrency as "99.99% greater fool theory"). *See Hurckes v. JPMorgan Chase Bank*, 2023 WL 2664080, at *2 (S.D.N.Y. Mar. 27, 2023) ("Faced with [] internally inconsistent allegations, the Court is neither obligated to reconcile nor accept them as true."). By Plaintiffs' own admission, Dogecoin's risks were widely known and discussed and within the "common knowledge that a reasonable investor can be presumed to understand." *Parnes*, 122 F.3d at 546.

### 3. Plaintiffs Do Not Attempt to Plead Falsity for the Remaining Statements

Plaintiffs' 4AC is replete with sixty additional statements (mostly tweets), *none of which*

is alleged to be materially false or misleading.[14]  For the avoidance of doubt, these statements, individually and collectively, cannot form the basis of a Section 10(b) claim under the PSLRA, which mandates that Plaintiffs must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information or belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u–4(b)(1).  Put simply, "[t]hese statements are not actionable under the securities laws because there is no allegation that they were false."  *Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 299 (S.D.N.Y. 2019); *see also Swanhart v. New York*, 2022 WL 875846, at *9 (S.D.N.Y. Mar. 24, 2022) (the Court "cannot simply fill in the blanks to supply what is missing on a motion to dismiss ... or follow a bread crumb trail of a represented plaintiff").

### 4.   Plaintiffs Do Not Plead Any Omission

Plaintiffs reference alleged "omissions" or "omitted" facts just *two times* in their Section 10(b) allegations.  ¶ 226 ("omitted … material facts"); ¶ 227 ("material …omissions").  To the extent Plaintiffs premise a claim under Section 10(b) and Rule 10b-5 based on alleged omissions, it is not sufficiently pleaded.  To plead an omissions claim, Plaintiffs must allege that Mr. Musk: (i) knew undisclosed facts; and (ii) was subject to a duty to disclose.  *See Debora v. WPP Grp. PLC*, 1994 WL 177291, at *5 (S.D.N.Y. May 5, 1994) ("A complaint fails to state a § 10(b) claim when the alleged omission has actually been disclosed."); *see also Morgan Stanley Tech. Fund Sec. Litig.*, 643 F. Supp. 2d 366, 375 (S.D.N.Y. 2009) (omission is actionable only when the

---

[14]   ¶¶ 60, 66, 75, 76, 78, 80, 82, 84, 87, 89, 96, 101, 105, 107, 110, 115, 122, 126, 127, 128-33, 135, 136, 137, 141, 143, 145, 146, 148, 149, 150, 163, 164, 166-67, 184, 185-86, 187, 188, 189, 190, 191, 192, 196, 197, 199, 204, 206, 207, 208, 209, 211, 212-13, 214-15, 216, 217.

defendant is subject to a duty to disclose the omitted facts).  Plaintiffs do not satisfy either of these prongs.  *First*, Plaintiffs do not specifically plead that:  (i) Mr. Musk had a duty to disclose any purported facts to "prospective buyers" of Dogecoin; or (ii) Mr. Musk was in a fiduciary or other confidential relationship with Dogecoin's investors.[15]  *Fezzani v. Bear Stearns & Co., Inc.*, 384 F. Supp. 2d 618, 640 (S.D.N.Y. 2004) (duty to disclose "arises when one party has information that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence").  *Second*, Plaintiffs do not plead that Mr. Musk was aware of *any* concealed fact necessary to make Mr. Musk's statements not misleading.  *Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp.*, 433 F. Supp. 3d 515, 531-32 (S.D.N.Y. 2020) (duty to speak if "statement would otherwise be inaccurate, incomplete, or misleading without the omitted fact").

### B.  Plaintiffs Fail to Plead Market Manipulation

To plead a cause of action for market manipulation under Rule 10b-5(a) or (c), Plaintiffs must allege "(1) manipulative acts; (2) damage (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by the defendant's use of the mails or any facility of a national securities exchange."  *ATSI*, 493 F.3d at 101-02 (requiring pleading of "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue"); *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 129 (2d Cir. 2011) (applying PSLRA's heightened pleading requirements to market manipulation).  Here, Plaintiffs fail to plead any cognizable manipulative conduct with

---

[15]  Plaintiffs' allegation that Mr. Musk was selected to be "CEO of Dogecoin" on April 1, 2019 (a tweet made by "a Twitter user," ¶ 60, not Mr. Musk) refers to a tongue-in-cheek Twitter poll, ¶ 59, and does not plead a duty owed to Plaintiffs.  Plaintiffs do not specifically allege that Mr. Musk assumed any position with DCFI, much less as "Dogecoin CEO" (a position that does not and—due to the decentralized nature of Dogecoin— cannot exist).

particularity as required under the PSLRA.  The sole theory of market manipulation—to the extent one is even discernable—is that Defendants engaged in a "pump and dump" scheme.  *See* ¶¶ 65, 81, 99, 138, 161, 180.  But Plaintiffs do not sufficiently plead either "pumping" or "dumping."

*First*, Plaintiffs do not plead a scheme to "pump" Dogecoin.  Indeed, Plaintiffs repeatedly reference Mr. Musk "pumping" the market but identify no alleged manipulative conduct outside of "Mr. Musk's twitter activity."  ¶ 152.  To prevail on a pump and dump market manipulation theory, however, Plaintiffs must allege an "inherently deceptive act that was *distinct* from an alleged misstatement."  *In re Turquoise Hill Ltd. Res. Sec. Litig.*, 625 F. Supp. 3d 164, 253 (S.D.N.Y. 2022).  As discussed above, Mr. Musk's statements either are not alleged to be false at all, *see* Section II.A.3, *supra*, or are the basis for Plaintiffs' misstatements claim, *see* Section II.A.1, *supra*.  It is well-settled that "where the sole basis for such claims is alleged misrepresentations or omissions, plaintiffs have not made out a market manipulation claim."  *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 177 (2d Cir. 2005); *see also SEC v. Rio Tinto PLC*, 41 F.4th 47, 53 (2d Cir. 2022) (reaffirming *Lentell*).

*Second*, Plaintiffs do not allege that Defendants sold (*i.e.*, "dumped") Dogecoin, a requisite element of a pump and dump claim.  Not only do Plaintiffs fail to allege any sales, they also admit that they need discovery to uncover such facts.  ¶¶ 65, 182.  But Plaintiffs cannot punt to discovery their core obligation (particularly under the PSLRA) to state the elements of their claims *now*.  *Cf., e.g.*, *In re Petrobras Sec. Litig.*, 2016 WL 3144395, at *3 (S.D.N.Y. May 5, 2016) ("Plaintiffs would receive the benefits of discovery without adequately pleading scienter before discovery began.  The PSLRA does not allow this arrangement.").  Plaintiffs do not plead an essential element of their market manipulation claim—a deceptive or manipulative act—and their market manipulation claim must be dismissed.  *E.g.*, *Gomez*, 2023 WL 2744415, at *11 ("[P]laintiff[s]

must specify what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and the effect the scheme had on investors in the securities at issue.").

### C.    Plaintiffs Fail to Plead Scienter

To plead scienter, Plaintiffs must "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2)(A), *i.e.*, with scienter, a "mental state embracing intent to deceive, manipulate, or defraud," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007).  It "does not suffice that a reasonable factfinder plausibly could infer from the complaint's allegations the requisite state of mind."  *Id.* at 314.  Rather, the PSLRA's "exacting pleading requirements" require that "an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Id.* at 309, 313; *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 111 (2d Cir. 2009).[16]  To meet this standard, Plaintiffs must allege facts (i) demonstrating "defendants had both motive and opportunity to commit the fraud," or (2) "constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI*, 493 F.3d at 99.  Here, Plaintiffs allege neither.

### 1.    Plaintiffs' Allegations Do Not Support a Plausible Inference of Motive or Opportunity

To plead an inference of scienter through allegations of motive and opportunity, Plaintiffs must allege "a concrete and personal benefit ... resulting from the fraud."  *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001).  The *only* attempt Plaintiffs make here at pleading motive is their

---

[16]   To plead scienter as to Tesla, Plaintiffs must allege facts sufficient to raise a "strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *See Jackson v. Abernathy*, 960 F.3d 94, 98 (2d Cir. 2020).  But Plaintiffs fail to allege that *anyone* acted with scienter, much less someone whose scienter could be imputed to Tesla.

unsupported allegation that Mr. Musk owned certain Dogecoin wallets, ¶¶ 165, 174, and that Tesla owned wallets "currently unknown," ¶ 180.  But as discussed above, Plaintiffs fail plausibly to allege that Mr. Musk owned either "wallet," and indeed admit that they *cannot* know whether Mr. Musk or Tesla sold Dogecoin.  ¶¶ 65, 182.[17]  "Plaintiffs' argument that future discovery will more fully develop these arguments is unavailing; the purpose of the PSLRA's heightened pleading standard is to avoid subjecting defendants to discovery on the basis of bare, conclusory claims." *Vining v. Oppenheimer Holdings Inc.*, 2010 WL 3825722, at *8 (S.D.N.Y. Sept. 29, 2010). Plaintiffs therefore fail to plead that Mr. Musk or Tesla obtained any personal benefit from manipulating the Dogecoin market, do not set forth any other motive allegations, and so fail to plead motive.  *See Rotunno v. Wood*, 2022 WL 14997930, at *2 (2d Cir. Oct. 27, 2022) ("[T]he kind of personal financial motive that [the Second Circuit has] ha[s] found sufficient" to plead scienter is "typically evidenced by insider trading for significant financial gain.").

### 2. Plaintiffs Fail to Allege Circumstantial Evidence of Conscious Misbehavior or Recklessness

Because Plaintiffs fail to plead motive, "the strength of the circumstantial allegations must be correspondingly greater."  *Kalnit*, 264 F.3d at 142.  To plead conscious misbehavior or recklessness, Plaintiffs must allege "at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 203 (2d Cir. 2009).  Conscious recklessness is "a state of mind *approximating actual intent,* and *not merely a heightened form of negligence*."  *S. Cherry St., LLC*, 573 F.3d at 109 (emphasis in original).  And

---

[17]  The wallets Plaintiffs identify do not belong to Mr. Musk or Tesla, nor has Mr. Musk or Tesla ever sold Dogecoin.  Dkt. Nos. 89-90.

because Plaintiffs fail (for the fourth time) to allege motive, "the strength of the circumstantial allegations must be correspondingly greater." *Local 134 IBEW Joint Pension Tr.*, 553 F.3d at 199.

Plaintiffs do not make even conclusory assertions of conscious misbehavior or recklessness as to Tesla. And Plaintiffs' conclusory allegations that unspecified statements by Mr. Musk were "reckless[]," ¶¶ 226, 248, or that he was "pumping Dogecoin's price intentionally," ¶ 81; *see also* ¶ 65, do not sufficiently plead that Mr. Musk intentionally, or recklessly, made misstatements about, or sought to manipulate the market for, Dogecoin. Plaintiffs do not allege facts to plead conscious misbehavior or recklessness, and even a generous interpretation of the allegations in the 4AC does not come close. For example, Plaintiffs speculate that Defendants manipulated Bitcoin, ¶¶ 196, 199, 202-04, but fail to allege how those accusations show scienter with regard to alleged trading in *Dogecoin*—an entirely separate cryptocurrency. Plaintiffs also allege that Mr. Musk encouraged investors to hold Dogecoin "[i]n the wake of" of market analysts predicting a crypto market correction, ¶¶ 106-07, but "misguided optimism is not a cause of action, and does not support an inference of fraud." *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994). Finally, Plaintiffs' assertion that Mr. Musk's tweet "ur welcome" with a meme from the Lion King was Mr. Musk "flaunting his power to sway the market and acknowledging that he was pumping Dogecoin's price intentionally," ¶¶ 80-81, not only is nonsense, but also shows that Plaintiffs contend Mr. Musk admitted his supposed manipulation *publicly*, which both undermines any inference of scienter and means investors could not have been misled.

Plaintiffs' own allegations also defeat an inference of scienter. For example, Plaintiffs highlight Mr. Musk's purported disparagement of Dogecoin on *Saturday Night Live* as a "hustle," ¶ 115, but this statement is antithetical to any alleged intent to fraudulently inflate or manipulate Dogecoin. Mr. Musk's alleged "conduct during the Class Period was" thus "not consistent with

fraud," *Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Comm.*, 694 F. Supp. 2d 297, 299 (S.D.N.Y. 2010), let alone sufficient to plead a strong inference that Mr. Musk knowingly or recklessly sought to "deceive, manipulate, or defraud" Dogecoin purchasers, *Tellabs*, 551 U.S. at 308.

### D.      Plaintiffs Fail to Plead Loss Causation

To plead loss causation, Plaintiffs must allege that a "misstatement or omission *concealed* something from the market that, when disclosed, negatively affected the value of the security." *Boluka Garment Co. v. Canaan Inc.*, 547 F. Supp. 3d 439, 445 (S.D.N.Y. 2021).  It is not enough to allege falsity or that misstatements "artificially inflated" the value of a security—Plaintiffs must also allege that the "subject of those false [statements] or any corrective disclosure regarding the falsity of those [statements] is the cause of the *decline* in [the security's] value that plaintiffs claim as their loss." *Lentell*, 396 F.3d at 175 (emphasis in original).  Section 10(b) is intended "not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations *actually cause*." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005).[18]

Plaintiffs fail to plead a corrective disclosure that resulted in a decline in the price of Dogecoin or Plaintiffs' alleged losses.  A corrective disclosure must "reveal to the market some part of the truth regarding the alleged fraud." *Boluka*, 547 F. Supp. 3d at 446.  The only corrective disclosure Plaintiffs even attempt to plead here is Mr. Musk's appearance on *Saturday Night Live*—in May 2021, almost two years before the ending of the class period—which "does not

---

[18]   Plaintiffs' loss causation allegations are subject to the heightened pleading standards of Rule 9(b) because Rule 9(b) "requires that *all circumstances* of fraud, except for intent, be pled with particularity." *E.g.*, *Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 432 n.9 (S.D.N.Y. 2010). Regardless, Plaintiffs' causation allegations fail under Rule 8, Rule 9(b), and the PSLRA.

qualify ... because the [Complaint] does not allege that [it revealed] any new material information." *In re Manulife Fin. Corp. Sec. Litig.*, 276 F.R.D. 87, 104 (S.D.N.Y. 2011); *see also Lau v. Opera Ltd.*, 527 F. Supp. 3d 537, 560 (S.D.N.Y. 2021) ("public information" and statements that "merely analyze[]" public information "cannot constitute a corrective disclosure sufficient to allege loss causation").  Nor do Plaintiffs identify which supposed prior misstatements the *Saturday Night Live* appearance is meant to have corrected—indeed, as alleged, the speculative nature of Dogecoin was, by then, well-known.  *See In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 300 (S.D.N.Y. 2014) (holding statement that caused stock price decline revealed no new information to market); *Abuhamdan v. Blyth, Inc.*, 9 F. Supp. 3d 175, 209 (D. Conn. 2014) (failure to plead loss causation where there was "nothing in the Complaint to suggest that" the stock price decline "was caused by the materialization of a *concealed* risk as opposed to a *disclosed* risk") (emphasis in original); *see also Meyer v. Greene*, 710 F.3d 1189, 1200 (11th Cir. 2013) (stock decline after presentation by "an investor who wielded great clout" was attributable to "changed investor expectations" because the "information used in the presentation had already been public for some time").

What's more, Plaintiffs now purport to extend the Class Period "until Apr[il] 10, 2023, ten days after Mr. Musk changed the Twitter Logo to the Dogecoin logo," ¶ 7, and allege additional false statements between Mr. Musk's *Saturday Night Live* appearance in 2021 and April 2023, ¶¶ 124, 223, but do not allege any subsequent corrective disclosures that allegedly "corrected" those later misstatements.  Plaintiffs thus cannot plead causation for those statements.

Plaintiffs' allegations about declines in the price of Dogecoin likewise do not plead loss causation because Plaintiffs fail to plead those declines were "caused by the alleged misstatements as opposed to intervening events."  *Lentell*, 396 F.3d at 174.  Plaintiffs' allegation that Dogecoin

fell in the days, weeks, and months after the *Saturday Night Live* appearance,[19] and their conclusory assertions that Plaintiffs lost money by "investing in Dogecoin" as a "direct and proximate result of Defendants' market manipulation," ¶¶ 3-6, 232, are insufficient.  Mere price declines, without more, do not "establish any causal connection" between Plaintiffs' losses and the alleged misrepresentations.  *ATSI*, 493 F.3d at 107.[20]  Indeed, Plaintiffs even plead that when Mr. Musk "admitted" he was manipulating the market, the price of Dogecoin *increased*.  ¶¶ 98, 102.[21]

---

[19]    Although Plaintiffs do not plead that they are entitled to a presumption of reliance, any attempt to do so would be contradicted by Plaintiffs' own allegations.  Plaintiffs plead that Mr. Musk's *Saturday Night Live* appearance allegedly caused declines in the price of Dogecoin that took place days, weeks, months, and even years afterwards.  ¶ 119 ("Within two days, Dogecoin lost $30 billion in market cap.  Within four days, Dogecoin's market cap dropped to $45 billion (a nearly 50% plunge from its peak) and its price dropped from an all-time high of $0.74 cents to $0.37 cents.  Dogecoin's price continued dropping until it sank to $0.06, a 90% loss, within a year.  Today it trades at around $0.08.").  Such allegations are antithetical to the existence of an efficient market in which Plaintiffs are entitled to a presumption of reliance.  *See Miles v. Merrill Lynch & Co.*, 471 F.3d 24, 43 (2d Cir. 2006) ("Plaintiffs' own allegations as to how slow the market was to correct the alleged price inflation despite what they also allege was widespread knowledge of the scheme indicate the very antithesis of an efficient market.").  Nor can Plaintiffs' salvage a presumption of reliance through their conclusory allegation that they purchased Dogecoin "in reasonable reliance on an assumption of an efficient market free of manipulation."  ¶ 232.  As the Supreme Court held in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), "[a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will ... rebut the presumption of reliance."  *Id.* at 247.

[20]    Plaintiffs' allegation that "a team of statisticians concluded that it is difficult to explain [Dogecoin's] abnormal price increase other than the Musk effect," ¶ 154, also does not plead loss causation.  *See Dura*, 544 U.S. at 342 ("[A]n inflated purchase price will not itself constitute or proximately cause the relevant economic loss."); *Lentell*, 396 F.3d at 175 (assertions that alleged misstatements "artificially inflated" the value of a security and plaintiffs "were damaged thereby" fail to plead loss causation).

[21]    Plaintiffs' contention that "numerous scientific studies have been conducted that show Musk's Twitter activity and publicity stunts exercise a singularly powerful sway over the market for Dogecoin," ¶ 152, is inadequate.  Plaintiffs do not allege a link between any decline in Dogecoin's price and any *specific disclosure* of information that corrected a purported misrepresentation by Mr. Musk.

### III.     PLAINTIFFS FAIL TO ALLEGE INSIDER TRADING UNDER SECTION 20A

Plaintiffs' Section 20A, 15 U.S.C. § 78t-1, claim against Defendants (Count III) fails alongside their other securities fraud claims.  To state a claim under Section 20A, Plaintiffs must plead both a predicate insider trading violation and that Defendants traded contemporaneously with Plaintiffs.  *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 309 (S.D.N.Y. 2008). Like the remainder of Plaintiffs' securities fraud claims, Section 20A claims must meet the heightened pleading standards of Rule 9(b) and the PSLRA.  *In re Bear Stearns Cos., Sec., Deriv., and ERISA Litig.*, 763 F. Supp. 2d 423, 487 (S.D.N.Y. 2011).

Plaintiffs "use the phrase *insider* trading … but utterly fail to plead its necessary components."  *Reiner v. Teladoc Health, Inc.*, 2021 WL 4451407, at *9 (S.D.N.Y. Sept. 8, 2021). As an initial matter, Plaintiffs do not plead a predicate violation of Section 10(b) consisting of "unlawful trading in securities based on material non-public information."  *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 175 (S.D.N.Y. 2021); *see also City of Taylor Gen. Emps. Ret. Sys. v. Magna Int'l Inc*., 967 F. Supp. 2d 771, 801 (S.D.N.Y. 2013). Plaintiffs can allege such a predicate under two theories:  *First*, that a "corporate *insider*" trades "shares of that corporation based on material non-public information in violation of the duty of trust and confidence insiders owe to shareholders."  *Aegean*, 529 F. Supp. 3d at 176; *see also In re Shanda Games Ltd. Sec. Litig.*, 2022 WL 992794, at *7 (S.D.N.Y. Mar. 31, 2022) (liability where "corporate insider" trades "on the basis of material, non-public information").  *Second*, that a "corporate *outsider* breaches a duty of trust owed to the source of confidential information by trading on that information."  *SEC v. AT&T, Inc.*, 2022 WL 4110466, at *36 n.53 (S.D.N.Y. Sept. 8, 2022); *see also Shanda Games*, 2022 WL 992794, at *8 (non-insider "misappropriates [material non-public information] in breach of a fiduciary duty or similar relationship of trust and confidence").

As a threshold issue, Plaintiffs cannot bring a claim for insider *trading* without alleging any *trades*. As discussed above, *supra* Section B.2, Plaintiffs do not allege that either Mr. Musk or Tesla ever sold Dogecoin and concede that they do not (and cannot) know whether Defendants sold Dogecoin absent discovery (that the PSLRA expressly precludes). ¶¶ 65, 182. Without any allegation that Defendants sold, Plaintiffs necessarily fail to plead that they contemporaneously traded with Defendants.

*Second*, Plaintiffs cannot bring a claim for insider trading without identifying any material non-public information that Defendants possessed. Relying only on conclusory allegations that Mr. Musk and Tesla purchased and sold Dogecoin while in possession of "material non-public information," ¶ 237, Plaintiffs do not allege "that [Mr. Musk] disclosed or used any material, nonpublic information ... much less describe that information, or identify any specific trade based on it." *Reiner*, 2021 WL 4451407, at *10; *see also Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 435, 447 (S.D.N.Y. 2001) (dismissing insider trading claim where plaintiff "failed to provide adequate specifics" concerning "[d]efendants' possession of non-public information," such as "what non-public information [p]laintiff gave [d]efendants, when the information was given, etc.").

*Finally*, even assuming, *arguendo*, that Plaintiffs adequately plead both contemporaneous trading and material non-public information (and they do not), Plaintiffs cannot proceed under either a corporate insider or corporate outsider theory. Plaintiffs do not plead that Mr. Musk (or Tesla) is a "corporate insider" of Dogecoin, as they fail credibly to allege that Mr. Musk is a director or officer of DCFI, or that Mr. Musk or Tesla has a sufficiently large (or any) interest in an entity that operates Dogecoin (nor could they, given that Dogecoin is an open-source, decentralized cryptocurrency). *See Tan v. Goldman Sachs Grp.*, 2023 WL 2753238, at *8

(S.D.N.Y. Mar. 31, 2023) ("Generally, insiders are those who would have a general fiduciary duty to the issuers.").[22]  Plaintiffs also fail to plead that Mr. Musk (or Tesla) breached a duty of trust owed to the source of material non-public information; Plaintiffs do not plead that Mr. Musk (or Tesla) was in possession of any material non-public information, much less obtained any material non-public information from a source to which a duty was owed.  *Id*. at *4 (corporate outsider theory requires plaintiff to allege a tippee "knew or had reason to know that the tipper disclosed [] information in breach of a duty and received a personal benefit in the process and [] the tippee used that information by trading or tipping for his own benefit").

## IV.    PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED

If this Court dismisses Plaintiffs' federal securities law claims, then it may decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.  28 U.S.C. § 1367(c)(3) (district court "may decline to exercise supplemental jurisdiction" once the court "has dismissed all claims over which it has original jurisdiction"); *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").  Regardless, each of Plaintiffs' state law claims (Counts IV-VII) is subject to dismissal on its merits.

### A.    Plaintiffs' New York Deceptive Trade Practices Claim Must Be Dismissed

Plaintiffs allege that Mr. Musk violated Section 349 of New York's General Business Law, N.Y. GEN. BUS. 349 (Count IV), but this claim does not get out of the starting gate and must be dismissed.  Throughout the 4AC, Plaintiff pleads that Dogecoin is a "security" and that Mr. Musk engaged in purported "securities transactions." ¶¶ 64, 226-27, 229-30, 232-33, 237, 239.  Although

---

[22]   Plaintiffs' allegation that Mr. Musk was selected in a tongue-in-cheek social media poll as the "CEO" of the Dogecoin Foundation and similar contentions, ¶¶ 59-60, 62-63, do not change the analysis.  *See* note 15, *supra.*

Defendants dispute this allegation, *see* note 1, *supra*, Plaintiffs are not "consumer[s] of goods, but [] investor[s]," which brings them "outside the scope of the General Business Law." *Berger v. E\*Trade Grp., Inc.*, 2000 WL 360092, at \*5 (N.Y. Sup. Ct. Mar. 28, 2000) ("[T]he sale of securities, which are considered to be investments rather than goods to be consumed or used, does not give rise to a consumer fraud claim."). Indeed, because "the securities arena is one which is highly regulated by the federal government, it is questionable that the legislature intended to give securities investors an added measure of protection beyond that provided by securities acts." *Gray v. Seaboard Sec., Inc*., 788 N.Y.S. 2d 471, 472 (N.Y. App. Div. 2005).

Even if there were an avenue for Plaintiffs to state a deceptive trade practices claim under New York law, however, Plaintiffs have not done so. To plead a violation of Section 349, Plaintiffs must allege that (i) Mr. Musk engaged in "consumer-oriented conduct"; (ii) that was "materially misleading"; (iii) "that Plaintiffs suffered injury as a result of the allegedly deceptive act or practice," *City of N.Y. v. Smokes-Spirits.com, Inc.*, 912 N.Y.3d 616, 621 (N.Y. App. Div. 2009), and (iv) that the transaction underlying the claim occurred in New York, *Mountz v. Global Vision Prods., Inc.*, 770 N.Y.S.2d 603, 608 (N.Y. Sup. Ct. 2003).

Here, Plaintiffs fail to plead any of these elements. *First*, Plaintiffs do not allege any transaction in New York. *E.g.*, *In re GE/CBPS Data Breach Litig.*, 2021 WL 3406374, at \*13 (S.D.N.Y. Aug. 4, 2021) (dismissing claim where court was "unable to discern from the Complaint the strength of New York's connection to the allegedly deceptive conduct at issue"). *Second*, Plaintiffs do not allege that Mr. Musk engaged in "consumer-oriented" conduct or any conduct concerning a consumer good or service. *Berger*, 2000 WL 360092, at \*4. *Third*, Plaintiffs do not plead that any such "consumer-oriented" conduct was materially misleading. *Zuchowski v. SFC Glob. Supply Chain*, 2022 WL 3586716, at \*3 (S.D.N.Y. Aug. 22, 2022) (dismissing claim where

plaintiff did not plead "an underlying materially misleading representation"); *see also* Section II.A, *supra*. *Finally*, Plaintiffs cannot plead causation where they do not allege that they even "saw any of [the misleading statements] before [they] purchased or came into possession of [Dogecoin]." *Gale v. Int'l Bus. Mach. Corp.*, 781 N.Y.S.2d 45, 47 (N.Y. App. Div. 2004).  This Court should dismiss Plaintiffs' Section 349 claim against Mr. Musk.

   **B.      Plaintiffs' Common Law Fraud Claim Must Be Dismissed**

   "The elements of claims for federal securities fraud and New York[23] common law fraud are nearly identical," *Newman v. Fam. Mgmt. Corp.*, 530 F. App'x 21, 24 (2d Cir. 2013), requiring this Court to dismiss Plaintiffs' claim against Mr. Musk for common law fraud (Count V) for the same reasons as Plaintiffs' federal securities fraud claims against him, *e.g.*, *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 380 (S.D.N.Y. 2011) (to state a claim for common law fraud under New York law, Plaintiffs must plead with particularity a "misrepresentation or omission of material fact," scienter, intent to induce reliance, reliance, and resulting injury).  As detailed above, Plaintiffs fail to plead any actionable misrepresentation, scienter, or injury.  *See* Sections II.A, C, D, *supra*.  Further, Plaintiffs' common law fraud claim also must be dismissed for failure to plead reliance.  "[F]ederal courts repeatedly have refused to apply the fraud on the market theory to state common law cases." *Sec. Inv'r Protection Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 73 (2d Cir. 2000).  Thus, Plaintiffs must plead *individual* reliance, *i.e.*, that they "took any action, refrained from acting, or entered into any transaction, *as a result of, or in reliance upon*, the defendants' alleged misstatements or omissions." *Prime Mover Cap. Partners, L.P. v. Elixir Gaming Techs., Inc.*, 793 F. Supp. 2d 651, 663 (S.D.N.Y. 2011).  But Plaintiffs here do not allege that they even

---

   [23]   Plaintiffs fail to allege which common law applies; for purposes of this motion, however, Defendants assume (without waiver) that New York law applies.

read Mr. Musk's allegedly false tweets, let alone that they specifically relied on them in deciding to transact in Dogecoin. Because they fail to plead that any alleged misrepresentation by Mr. Musk "caused the [Plaintiffs] to engage in the transaction[s] in question," *AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202, 209 (2d Cir. 2000), Plaintiffs' common law fraud claim must be dismissed.

### C. Plaintiffs' Negligent Misrepresentation Claim Must Be Dismissed

To plead a claim against Mr. Musk for alleged negligent misrepresentation (Count VI), Plaintiffs must plead facts sufficient to allege "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Gilleo v. J.M. Smucker Co.*, 2021 WL 4341056, at *7 (S.D.N.Y. Sept. 23, 2021). As a threshold matter of New York law, purely *economic* losses are not recoverable under a theory of negligent misrepresentation where there was neither "actual privity of contract between the parties or a relationship so close as to approach privity." *Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*, 2007 WL 674691, at *5 (E.D.N.Y. 2007). Here, Plaintiffs' claims of loss stemming from purported negligent misrepresentation are strictly economic, ¶ 258, and Plaintiffs have not established a relationship of privity with Mr. Musk. Plaintiffs' claims are foreclosed on that basis alone.

Plaintiffs' negligent misrepresentation claim also must be dismissed on the independent ground that Plaintiffs have not pleaded with particularity that Mr. Musk owed a duty to Plaintiffs because they have not pleaded facts in support of a "special relationship of trust or confidence between the parties." *DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 329 (S.D.N.Y. 2002); *see also In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 219 (S.D.N.Y. 2019) ("To plead a special relationship, plaintiffs must show that they were a known party … being one of a class of potential recipients of a statement will not suffice."). As explained above, Mr. Musk was an "outsider" to

Dogecoin who owed no duty of care to its investors, *see* Section II.A.4, *supra*, and Plaintiffs have not pleaded that they were a known party to Mr. Musk.  There was thus no duty to breach and no resulting loss (economic or otherwise) to Plaintiffs.  As discussed above, Plaintiffs also fail to plead any false statement by Mr. Musk or that they reasonably relied on any such statement.  *See* Sections II.A.1, IV.B, *supra*.

### D.    Plaintiffs' Unjust Enrichment Claim Must Be Dismissed

Plaintiffs' unjust enrichment claim against Defendants (Count VII) is wholly duplicative of Plaintiffs' common law fraud claim against Mr. Musk (Count V) and their federal securities fraud claims against Defendants (Counts I and II) and should be dismissed for that reason alone. *E.g.*, *Digilytic Int'l FZE v. Alchemy Finance, Inc.*, 2022 WL 912965, at *8 (S.D.N.Y. Mar. 29, 2022) (dismissing unjust enrichment as duplicative of fraud); *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 157 (S.D.N.Y. 2022) ("Courts will routinely dismiss an unjust enrichment claim that simply duplicates, or replaces, a conventional contract or tort claim.").

Plaintiffs' unjust enrichment claim also fails on its merits because Plaintiffs cannot show that "(1) [Defendants were] enriched; (2) at the expense of [Plaintiffs]; and (3) that it would be inequitable to permit [Defendants] to retain that which is claimed by Plaintiff[s]."  *Dwyer*, 598 F. Supp. 3d at 156.  Plaintiffs fail to plead any *unjust* conduct on the part of Defendants for the same reasons they fail to plead fraud.  *See* Sections II.A-C, *supra*.  Moreover, an unjust enrichment claim must be dismissed where, as here, the parties "simply had no dealings with each other."  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447, 479 (S.D.N.Y. 2014).  In that circumstance, any purported *benefit* conferred on the defendant cannot have been "at the expense of the plaintiff."  *Dwyer*, 598 F. Supp. 3d at 156.  Plaintiffs do not allege that they entered into any transaction with—or otherwise had any relationship with—either Mr. Musk or Tesla (nor could they).  *See, e.g.*, *In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631, 677 (S.D.N.Y. 2016) ("Because

Plaintiffs have failed to allege that they had any relevant relationship with the Defendants or that Defendants were enriched at Plaintiffs' expense, the [complaint] fails to state a claim for unjust enrichment.").  Indeed, read generously, Plaintiffs assert only that Defendants were enriched through an *increase in Dogecoin's value*, *see, e.g.*, ¶¶ 7, 111, not through any alleged benefit conferred by any Plaintiff on any Defendant.  This does not state a claim for unjust enrichment, and this claim should be dismissed.

## CONCLUSION

Plaintiffs' fifth pleading attempt still falls woefully short of pleading jurisdiction or stating a claim for any violation of federal securities law or state law.  Even worse, Plaintiffs' "litigation tactics evince a desire to harass and intimidate [Plaintiffs'] adversaries and unduly burden the judicial system, rather than an honest attempt to litigate genuine allegations."  *Zappin v. Schorr*, 2023 WL 2601578, at *11 (S.D.N.Y. Mar. 22, 2023).[24]  Additional opportunities to replead will be futile, delay resolution of this action, prejudice Defendants, and permit further abuse of process and waste of judicial resources.  *See Dimond*, 2014 WL 3377105, at *15.  This Court should dismiss this action in its entirety with prejudice.[25]

---

[24]  Plaintiffs' serial pleading in this action is typical of their counsel's tactics, including in this District.  *E.g.*, *Avalos v. IAC/Interactivecorp.*, 2014 WL 5493242, at **6 (S.D.N.Y. Oct. 30, 2014) (dismissing pleading after repeated amendments, noting one argument did not "pass the laugh test, let alone the plausibility test"); *Dimond v. Darden Restaurants, Inc.*, 2014 WL 3377105, at *15 (S.D.N.Y. July 9, 2014) (detailing history of amendments and denying further leave to amend).

[25]  *E.g.*, *Abu Dhabi Com. Bank v. Morgan Stanley & Co.*, 2009 WL 3346674, at *2 (S.D.N.Y. Oct. 15, 2009) (dismissal with prejudice "generally appropriate where a court puts a plaintiff on notice of a complaint's deficiencies and the plaintiff fails to correct those deficiencies after amendment"); *see also Ackerman v. Ackerman*, 908 F. Supp. 2d 540, 545 (S.D.N.Y. Dec. 12, 2012) ("Because the plaintiff has failed to state a claim after three opportunities to do so, the Second Amended Complaint is dismissed with prejudice.").

Dated:   March 1, 2024

Respectfully submitted,

/s/ *Alex Spiro*

Alex Spiro
Sarah Heaton Concannon
Brenna Nelinson
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, New York 10038
Tel: 202-538-8122
Fax: 202-538-8100
alexspiro@quinnemanuel.com
sarahconcannon@quinnemanuel.com
brennanelinson@quinnemanuel.com

Allison Huebert (*pro hac vice*)
TESLA, INC.
1 Tesla Road
Austin, TX 78725
Tel: (512) 557-8797
ahuebert@tesla.com

*Attorneys for Defendants Tesla, Inc. and Elon Musk*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 1, 2024, I electronically served a copy of the foregoing to all counsel of record.

<div align="center">

*/s/ Alex Spiro*
Alex Spiro

</div>

**APPENDIX A**

*Johnson v. Musk*, No. 1:22-cv-05037-AKH (S.D.N.Y.)

Chart of statements alleged in Plaintiffs' Fourth Amended Class Action Complaint ("4AC").  Dkt. No. 108.

I.      **Statements Alleged To Be False Or Misleading**

| Stmt. No. | 4AC ¶¶ | Speaker, Date & Medium | Alleged False & Misleading Statement | Defendants' Response |
|---|---|---|---|---|
| 1. | 60 | Speaker: Musk<br><br>Date: April 2, 2019<br><br>Medium: Twitter | "Dogecoin might be my fav cryptocurrency. It's pretty cool." | • Not false<br>• Opinion<br>• Puffery |
| 2. | 68 | Speaker: Musk<br><br>Date: July 17, 2020<br><br>Medium: Twitter | Arial photo of dust storm overtaking an urban area, with the face of the Dogecoin Shiba Inu superimposed on the dust cloud, which was labeled "dogecoin standard," while the urban area about to be overtaken by the dust cloud was labelled "global financial system." Above this image, Musk added the remark, "It's inevitable." | • Not false<br>• Opinion<br>• Puffery |
| 3. | 85 | Speaker: Musk<br><br>Date: February 7, 2021<br><br>Medium: Twitter | "Doge appears to be inflationary, but is not meaningfully so, whereas BTC [i.e., Bitcoin] is arguably deflationary to a fault. Transaction speed of Doge should ideally be a few orders of magnitude faster." | • Not false<br>• Opinion<br>• Puffery |
| 4. | 90 | Speaker: Musk | "Dogecoin is underestimated." | • Not false<br>• Opinion<br>• Puffery |

| Stmt. No. | 4AC ¶¶ | Speaker, Date & Medium | Alleged False & Misleading Statement | Defendants' Response |
|---|---|---|---|---|
| | | <u>Date</u>: February 11, 2021<br><br><u>Medium</u>: Twitter | | |
| 5. | 92-94 | <u>Speaker</u>: Musk<br><br><u>Date</u>: February 14, 2021<br><br><u>Medium</u>: Twitter | "If major Dogecoin holders sell most of their coins, it will get my full support. Too much concentration is the only real issue IMO ['in my opinion']."<br><br>"I will literally pay actual $ if they just void their accounts."<br><br>Twitter user @itsALLrisky: "Whales [i.e., owners of the few wallets holding the largest amounts of Dogecoin] will have to consider Elon's ultimatum here. If they comply, #Dogecoin becomes the currency of the internet. If they don't, or 'cheat' by distributing their coins across multiple wallets, then it loses Elon's endorsement. Easy decision for the whales. Do the right thing."<br><br>Musk: "Yup." | • Not false<br>• Opinion<br>• Puffery |
| 6. | 98 | <u>Speaker</u>: Musk<br><br><u>Date</u>: March 1, 2021<br><br><u>Medium</u>: Twitter | A cartoon image of a soldier, kneeling, arms outstretched, shielding a child sleeping in bed from an incoming barrage of fire and missiles. The incoming barrage was labelled, "Dogecoin value dropping," the cartoon soldier was labeled, "memes" and the sleeping child was labeled, "Dogecoin." | • Not false<br>• Opinion<br>• Puffery |
| 7. | 103 | <u>Speaker</u>: Musk<br><br><u>Date</u>: April 1, 2021 | "SpaceX is going to put a literal Dogecoin on the literal moon." | • Not false<br>• Puffery |

| Stmt. No. | 4AC ¶¶ | Speaker, Date & Medium | Alleged False & Misleading Statement | Defendants' Response |
|---|---|---|---|---|
| | | <u>Medium</u>: Twitter | | |
| 8. | 120 | <u>Speaker</u>: Musk<br><br><u>Date</u>: May 9, 2021<br><br><u>Medium</u>: Twitter | "SpaceX launching satellite Doge-1 to the moon next year. Mission paid for in Doge, 1st crypto in space, 1st meme in space. To the mooooonnn!!!" | • Not false<br>• Puffery |
| 9. | 124 | <u>Speaker</u>: Musk<br><br><u>Date</u>: May 25, 2021<br><br><u>Medium</u>: Twitter | "Please note Dogecoin has no formal organization & no one reports to me, so my ability to take action is limited." | • Not false |
| 10. | 223 | <u>Speaker</u>: Musk<br><br><u>Date</u>: October 23, 2021<br><br><u>Medium</u>: Twitter | @mishaboar tweeted:  [Dogecoin core developer] Ross [Nicoll] made an important note about advisors and the @DogecoinFdn. For example, Jared Birchall represents @elonmusk, but as all advisors he has no direct voting rights. This guarantees the foundation stays independent while taking advantage of the expertise of shibes [i.e., Shiba Inus, a nickname for Dogecoin fans] like Elon.<br><br>Musk tweeted in response, "Neither Jared, nor me, nor anyone I know has anything to do with this foundation." | • Not false |

## II.    Statements About Bitcoin

| Stmt. No. | 4AC ¶¶ | Speaker, Date & Medium | Alleged Statement | Defendants' Response |
|---|---|---|---|---|
| 1. | 200 | Speaker: Musk<br><br>Date: May 12, 2021<br><br>Medium: Twitter | Tesla had suspended vehicle purchases using Bitcoin because it is environmentally harmful. | • Concerns separate cryptocurrency<br>• Irrelevant |
| 2. | 202 | Speaker: Musk<br><br>Date: April 12, 2021<br><br>Medium: Twitter | Jack Dorsey tweeted a link to an article titled, "Bitcoin is Key to an Abundant, Clean Energy Future," adding the remark, "Bitcoin incentivizes renewable energy."<br><br>Musk replied, "True." | • Concerns separate cryptocurrency<br>• Irrelevant |
| 3. | 203 | Speaker: Musk<br><br>Date: May 12, 2021<br><br>Medium: Twitter | "Tesla will not be selling any Bitcoin." | • Concerns separate cryptocurrency<br>• Irrelevant |
| 4. | 203 | Speaker: Musk<br><br>Date: May 17, 2021<br><br>Medium: Twitter | "Tesla has not sold any Bitcoin." | • Concerns separate cryptocurrency<br>• Irrelevant |

| 5. | 203 | <u>Speaker</u>: Musk<br><br><u>Date</u>: May 19, 2021<br><br><u>Medium</u>: Twitter | Musk suggested that Tesla would hold and not sell Bitcoin, tweeting (using a combination of emojis) "Tesla has diamond hands." | • Concerns separate cryptocurrency<br>• Irrelevant |

**III.     Statements Set Forth In Complaint But Not Alleged To Be False Or Misleading Or To Constitute A Deceptive Act**

| Stmt. No. | 4AC ¶¶ | Speaker, Date & Medium | Alleged Statement | Defendants' Response |
|---|---|---|---|---|
| 1. | 60 | Speaker: Musk<br><br>Date: April 2, 2019<br><br>Medium: Twitter | The @dogecoin account "quote retweeted" a tweet by Musk with the remark, "It looks like you're the CEO now, @elonmusk, DM [i.e., direct message] us where to email the access codes :-D."<br><br>Musk tweeted the reply, "Uh oh." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 2. | 60 | Speaker: Musk<br><br>Date: April 2, 2019<br><br>Medium: Twitter | A Dogecoin meme and the remark, "Doge rulz." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 3. | 66 | Speaker: Musk<br><br>Date: N/A<br><br>Medium: Twitter | Declared himself "the Dogefather." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 4. | 75 | Speaker: Musk<br><br>Date: December 20, 2020<br><br>Medium: Twitter | "One Word: Doge." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |

| Stmt. No. | 4AC ¶¶ | Speaker, Date & Medium | Alleged Statement | Defendants' Response |
|---|---|---|---|---|
| 5. | 76 | Speaker: Musk<br><br>Date: January 28, 2021<br><br>Medium: Twitter | An image of a magazine cover parodying Vogue magazine, titled "Dogue," with a picture of a Dalmatian in a bright red turtleneck. | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 6. | 78 | Speaker: Musk<br><br>Date: February 4, 2021<br><br>Medium: Twitter | A picture of a rocket blasting into space with the Moon looming in the background.<br><br>Musk then "reply-tweeted" an additional message that read, simply: "Doge." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 7. | 80 | Speaker: Musk<br><br>Date: February 4, 2021<br><br>Medium: Twitter | A screen-capture of the famous "Circle of Life" scene from Disney's The Lion King animated film, showing the royal steward Rafiki, a baboon, triumphantly displaying the newborn lion Prince Simba in his outstretched arms—but with Dogecoin's Shiba Inu mascot superimposed over Simba, and Rafiki's face replaced with a smiling picture of Musk, along with the remark "ur welcome." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 8. | 82 | Speaker: Musk<br><br>Date: February 4, 2021<br><br>Medium: Twitter | "Dogecoin is the people's crypto" and "No need to be a gigachad [i.e., an extremely muscular man] to own." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |

| Stmt. No. | 4AC ¶¶ | Speaker, Date & Medium | Alleged Statement | Defendants' Response |
|---|---|---|---|---|
| 9. | 84 | Speaker: Musk<br><br>Date: February 5, 2021<br><br>Medium: Twitter | An interactive survey, labeled "The future currency of Earth," with two options for Twitter users to choose from: "Dogecoin to the moooonn" or "All other crypto combined." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 10. | 87 | Speaker: Musk<br><br>Date: February 10, 2021<br><br>Medium: Twitter | Musk Tweeted that he had purchased Dogecoin for his son. | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 11. | 89 | Speaker: Musk<br><br>Date: February 11, 2021<br><br>Medium: Twitter | An image of the "One Ring" from the 2001-2003 Lord of the Rings film series, with the text, "One coin to rule them all," and the remark, "Frodo was the underdoge, all thought he would fail, himself most of all." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 12. | 96 | Speaker: Musk<br><br>Date: February 24, 2021<br><br>Medium: Twitter | An image of a cartoon Shiba Inu in a spacesuit, on the moon, holding up a flag labelled "Doge." Above this image, Musk added the remark, "Literally." Musk then followed up with a reply to this tweet, stating "On the actual moon." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 13. | 101 | Speaker: Musk | @itsALLrisky tweeted that the crypto exchange Coinbase should list Dogecoin, | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |

| Stmt. No. | 4AC ¶¶ | Speaker, Date & Medium | Alleged Statement | Defendants' Response |
|---|---|---|---|---|
| | | Date: March 12, 2021<br><br>Medium: Twitter | Musk: "Yes!" | |
| 14. | 105 | Speaker: Musk<br><br>Date: April 15, 2021<br><br>Medium: Twitter | Unspecified Dogecoin meme. | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 15. | 107 | Speaker: Musk<br><br>Date: April 24, 2021<br><br>Medium: Twitter | "What does the future hodl?" | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 16. | 110 | Speaker: Musk<br><br>Date: April 28, 2021<br><br>Medium: Twitter | "The Dogefather SNL May 8." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 17. | 115 | Speaker: Musk<br><br>Date: May 8, 2021 | Dogecoin is a "hustle." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |

| Stmt. No. | 4AC ¶¶ | Speaker, Date & Medium | Alleged Statement | Defendants' Response |
|---|---|---|---|---|
| | | Medium: SNL performance | | |
| 18. | 122 | Speaker: Musk<br><br>Date: May 13, 2021<br><br>Medium: Twitter | "DON'T PANIC." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 19. | 122 | Speaker: Musk<br><br>Date: May 13, 2021<br><br>Medium: Twitter | "Working with Doge devs to improve system transaction efficiency. Potentially promising." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 20. | 126 | Speaker: Musk<br><br>Date: July 1, 2021<br><br>Medium: Twitter | "Release the Doge!" with a meme image of Marlon Brando as "the Godfather," containing the text, "You come to me at runtime to tell me the code you are executing does not compile." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 21. | 127 | Speaker: Musk<br><br>Date: July 25, 2021<br><br>Medium: Twitter | Two sequential screenshots from the film The Matrix, one showing actor Keanu Reeves as the character Neo, labelled, "What are you trying to tell me, that I can make a lot of money with Dogecoin?", and another of showing actor Laurence Fishburne as the character Morpheus, but with a cartoon Shiba Inu in sunglasses superimposed over his face, and labelled, "No Neo. I'm trying to tell you that Dogecoin is money." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |

| Stmt. No. | 4AC ¶¶ | Speaker, Date & Medium | Alleged Statement | Defendants' Response |
|---|---|---|---|---|
| | | | | |
| 22. | 128-133 | Speaker: Musk<br><br>Date: November 11, 2021<br><br>Medium: Twitter | @dogecoin_devs, posted a ten-tweet "thread" explaining technical problems that Dogecoin investors were experiencing due to stuck transactions on the Binance exchange.<br><br>Musk: "Hey @cz_binance, what's going on with your Doge customers? Sounds shady."<br><br>@binance: "Hey @elonmusk – no, not shady – just frustrating and we're working on it."<br><br>Musk: "Doge holders using Binance should be protected from errors that are not their fault."<br><br>Zhao: Elon, we are pretty certain it is an issue with the latest #doge wallet. We are in communications with the devs. Apologies for any inconvenience that may have caused you…"<br><br>Musk: I don't use Binance… so no inconvenience to me personally. Just raising this issue on behalf of other Doge holders." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 23. | 135 | Speaker: Musk<br><br>Date: December 14, 2021<br><br>Medium: Twitter | "Tesla will make some merch buyable with Doge & see how it goes." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 24. | 136 | Speaker: Musk | "I will eat a happy meal on tv if @McDonalds accepts Dogecoin." | • Not alleged to be false or to constitute deceptive act |

| Stmt. No. | 4AC ¶¶ | Speaker, Date & Medium | Alleged Statement | Defendants' Response |
|---|---|---|---|---|
| | | Date: January 25, 2022<br><br>Medium: Twitter | | • Irrelevant |
| 25. | 137 | Speaker: Musk<br><br>Date: May 27, 2022<br><br>Medium: Twitter | Tesla "merch" could be purchased with Dogecoin, and that soon, "SpaceX merch too." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 26. | 141 | Speaker: Musk<br><br>Date: March 26, 2022<br><br>Medium: Twitter | @WSBChairman suggested that Musk should buy Twitter "and change the bird logo to a doge."<br><br>Musk: "Haha that would be sickkk." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 27. | 143 | Speaker: Musk<br><br>Date: April 9, 2022<br><br>Medium: Twitter | "Everyone who signs up for Twitter Blue should get an authentication checkmark" and "Maybe even an option to pay in Doge?" | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 28. | 145 | Speaker: Musk<br><br>Date: October 31, 2022 | A photo of a Shiba Inu in a Twitter t-shirt beside a Halloween pumpkin with the Twitter logo carved into it. Above this image, Musk added a winking emoji icon. | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |

| Stmt. No. | 4AC ¶¶ | Speaker, Date & Medium | Alleged Statement | Defendants' Response |
|---|---|---|---|---|
| | | Medium: Twitter | | |
| 29. | 146 | Speaker: Musk<br><br>Date: November 24, 2022<br><br>Medium: Twitter | Billy Markus tweeted that Twitter subscription services might not be easily monetized.<br><br>Musk used emojis to tweet, "shit brings money." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 30. | 148 | Speaker: Musk<br><br>Date: April 3, 2023<br><br>Medium: Twitter | Changed Twitter's logo to Shiba Inu. | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 31. | 149 | Speaker: Musk<br><br>Date: April 3, 2023<br><br>Medium: Twitter | A cartoon of a cop at a traffic stop, examining a driver's license with the Twitter blue bird logo while the driver, a cartoon Shiba Inu dog, says, "That's an old photo." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 32. | 150 | Speaker: Musk<br><br>Date: June-July 2023<br><br>Medium: Twitter | Six unspecified tweets referencing Dogecoin. | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |

| Stmt. No. | 4AC ¶¶ | Speaker, Date & Medium | Alleged Statement | Defendants' Response |
|---|---|---|---|---|
| 33. | 163 | <u>Speaker</u>: Musk<br><br><u>Date</u>: October 24, 2021<br><br><u>Medium</u>: Twitter | "Lots of people I talked to on the production lines at Tesla or building rockets at SpaceX own Doge. They aren't financial experts or Silicon Valley technologists. That's why I decided to support Doge – it felt like the people's crypto." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 34. | 164 | <u>Speaker</u>: Musk<br><br><u>Date</u>: October 24, 2021; February 3, 2022; August 11, 2023<br><br><u>Medium</u>: Twitter | "Who controls the memes, controls the Universe." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 35. | 166, 167 | <u>Speaker</u>: Musk<br><br><u>Date</u>: February 10, 2021<br><br><u>Medium</u>: Twitter | GiveDirectly tweeted, "Now accepting #dogecoin! Give directly to recipients living in poverty at DJbsZ[]."<br><br>Musk responded by tweeting, "Just sent some." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 36. | 184 | <u>Speaker</u>: Musk<br><br><u>Date</u>: February 20, 2021<br><br><u>Medium</u>: Twitter | "I just set up some little Doge mining rigs with my kids." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |

14

| Stmt. No. | 4AC ¶¶ | Speaker, Date & Medium | Alleged Statement | Defendants' Response |
|---|---|---|---|---|
| 37. | 185, 186 | <u>Speaker</u>: Musk<br><br><u>Date</u>: May 20, 2021<br><br><u>Medium</u>: Twitter | @heydave7 : "… I think it's plausible Elon has a large Doge holding. With major skin in the game, it doesn't look like this will stop anytime soon since without Elon I think Doge goes back to $0.01. To clarify, I don't think Elon would ever sell any of his Doge holdings…"<br><br>Musk: "Yeah, I haven't & won't sell any Doge." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 38. | 187 | <u>Speaker</u>: Musk<br><br><u>Date</u>: October 24, 2021<br><br><u>Medium</u>: Twitter | "Out of curiosity, I acquired some ascii hash strings called 'Bitcoin, Ethereum & Doge.'" | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 39. | 188 | <u>Speaker</u>: Musk<br><br><u>Date</u>: June 19, 2022<br><br><u>Medium</u>: Twitter | Musk: "I will keep supporting Dogecoin."<br><br>@AltcoinGordon: "Keep buying it then"<br><br>Musk: "I am." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 40. | 189 | <u>Speaker</u>: Musk<br><br><u>Date</u>: June 21, 2022<br><br><u>Medium</u>: interview at Qatar Economic Forum | "I also bought some Dogecoin and I intend to personally support Dogecoin." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |

| Stmt. No. | 4AC ¶¶ | Speaker, Date & Medium | Alleged Statement | Defendants' Response |
|---|---|---|---|---|
| | | | | |
| 41. | 190 | Speaker: Musk<br><br>Date: July 20, 2022<br><br>Medium: Tesla quarterly investor call | Tesla owned Dogecoin. | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 42. | 191 | Speaker: Tesla<br><br>Date: January 30, 2023<br><br>Medium: 10-K | Tesla stated that it had purchased and/or received $1.5 billion in digital assets during 2021 and 2022; that it had converted 75% of these purchases into fiat currency; and that the fair market value of its digital assets held as of Dec. 31, 2022 and 2021 was $191 million and $1.99 billion, respectively. | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 43. | 192 | Speaker: Tesla<br><br>Date: July 21, 2023<br><br>Medium: 10-Q | Tesla stated that it had realized $936 million in proceeds from sales of digital assets during 2022, and that as of June 30, 2023, it held $184 million in digital assets. | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 44. | 196 | Speaker: Musk<br><br>Date: January 28, 2021<br><br>Medium: Twitter | Musk added "#bitcoin" to his Twitter bio. | • Not alleged to be false or to constitute deceptive act<br>• Concerns separate cryptocurrency<br>• Irrelevant |

| Stmt. No. | 4AC ¶¶ | Speaker, Date & Medium | Alleged Statement | Defendants' Response |
|---|---|---|---|---|
| 45. | 197 | Speaker: Tesla<br><br>Date: February 8, 2021<br><br>Medium: 10-K | Tesla announced in its SEC Form 10-K that it had purchased $1.5 billion worth of Bitcoin the previous month. | • Not alleged to be false or to constitute deceptive act<br>• Concerns separate cryptocurrency<br>• Irrelevant |
| 46. | 199 | Speaker: Musk<br><br>Date: March 24, 2021<br><br>Medium: Twitter | "You can now buy a Tesla with Bitcoin." | • Not alleged to be false or to constitute deceptive act<br>• Concerns separate cryptocurrency<br>• Irrelevant |
| 47. | 204 | Speaker: Musk<br><br>Date: June 13, 2021<br><br>Medium: Twitter | Musk tweeted that Tesla had already sold 10% of its Bitcoin holdings. | • Not alleged to be false or to constitute deceptive act<br>• Concerns separate cryptocurrency<br>• Irrelevant |
| 48. | 204 | Speaker: Tesla<br><br>Date: July 2022<br><br>Medium: unclear | Tesla announced that it had sold 75% of its Bitcoin. | • Not alleged to be false or to constitute deceptive act<br>• Concerns separate cryptocurrency<br>• Irrelevant |
| 49. | 206 | Speaker: Musk<br><br>Date: August 4, 2023 | Twitter (which he rebranded as "X") will never launch a proprietary crypto token. | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |

| Stmt. No. | 4AC ¶¶ | Speaker, Date & Medium | Alleged Statement | Defendants' Response |
|---|---|---|---|---|
| | | <u>Medium</u>: Twitter | | |
| 50. | 207 | <u>Speaker</u>: Musk<br><br><u>Date</u>: February 19, 2019<br><br><u>Medium</u>: Interview on "FYI – For Your Innovation" Podcast | "Paper money is going away," and "Crypto is a far better way to transfer value than pieces of paper, that's for sure." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 51. | 208 | <u>Speaker</u>: Musk<br><br><u>Date</u>: February 5, 2021<br><br><u>Medium</u>: street interview | "There's a good chance that crypto is the future currency of earth." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 52. | 209 | <u>Speaker</u>: Musk<br><br><u>Date</u>: February 20, 2021<br><br><u>Medium</u>: Twitter | "Money is just data that allows us to avoid the inconvenience of barter. That data, like all data, is subject to latency and error. The system will evolve to that which minimizes both." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |

18

| Stmt. No. | 4AC ¶¶ | Speaker, Date & Medium | Alleged Statement | Defendants' Response |
|---|---|---|---|---|
| 53. | 209 | Speaker: Musk<br><br>Date: May 20, 2021<br><br>Medium: Twitter | "Currency is already digital." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 54. | 211 | Speaker: Musk<br><br>Date: February May 12, 2021<br><br>Medium: Twitter | "We are also looking at other cryptocurrencies that use <1% of Bitcoin's energy/transaction." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 55. | 212, 213 | Speaker: Musk<br><br>Date: May 15, 2021<br><br>Medium: Twitter | Musk: "Ideally, Doge speeds up block time 10x, increases block size 10x & drops fee 100x. Then it wins hands down."<br><br>@long_elon: "Why not just make a crypto from scratch that does everything you want technically and has a lot of dev support and doesn't have high concentration of ownership at least initially?"<br><br>Musk: "Only if Doge can't do it. Big pain in the neck to create another one." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 56. | 214, 215 | Speaker: Musk<br><br>Date: May 24, 2021<br><br>Medium: Twitter | Vitalik Buterin, co-creator of the Ethereum cryptocurrency, penned a blog post, explaining why Musk's proposal to make Dogecoin more efficient is "fundamentally flawed" because, "there are subtle technical factors that limit blockchain scaling." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |

| Stmt. No. | 4AC ¶¶ | Speaker, Date & Medium | Alleged Statement | Defendants' Response |
|---|---|---|---|---|
| | | | Musk tweeted: "He fears the Doge," and included a meme with text reading, "You will never use the dollar again." | |
| 57. | 216 | Speaker: Musk<br><br>Date: September 22, 2021<br><br>Medium: Twitter | "Super important for Doge fees to drop to make things like buying movie tix viable." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |
| 58. | 217 | Speaker: Musk<br><br>Date: December 2021<br><br>Medium: Interview with Time Magazine | "I could wax on about the nature of money for hours because I played a significant role in creating PayPal, and so my understanding of the money system at a fundamental level of how it actually works, the detailed mechanics of it… there are very few people who understand it better than me… The total transaction flow that you can do with Dogecoin is substantially more than—like, transactions per day, has much higher potential than Bitcoin." | • Not alleged to be false or to constitute deceptive act<br>• Irrelevant |