**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

COLBY GOROG, JOSHUA FLINT,
LOUIS ROBINSON, and MICHAEL
LERRO, individually and on behalf of all
others similarly situated,

               Plaintiffs,

v.

ELON MUSK and TESLA, INC.,

               Defendants.

Civil Action No.: 1:22-cv-05037-AKH

ECF CASE

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT .................................................................................................................................3

I.    PLAINTIFFS' OWN ALLEGATIONS SHOW THAT THIS COURT DOES
NOT HAVE JURISDICTION TO HEAR PLAINTIFFS' CLAIMS ..................................3

      A.    Plaintiffs Fail to Rebut Defendants' Showing That They Do Not Meet
Their Jurisdictional Burden....................................................................................3

      B.    Plaintiffs' *Howey* Arguments Are Premature, Not Properly Before the
Court, and Misguided..............................................................................................5

II.    PLAINTIFFS' FAILURE TO PLEAD OWNERSHIP AND SALE OF
DOGECOIN WITH PARTICULARITY DEFEATS NEARLY ALL OF THEIR
CLAIMS .............................................................................................................................5

III.    PLAINTIFFS' OPPOSITION DOES NOT SALVAGE THEIR SECTION 10(B)
CLAIMS .............................................................................................................................6

      A.    The Opposition Improperly Attempts to Rewrite the Complaint ...........................6

      B.    Plaintiffs' Falsity Arguments Fail...........................................................................7

      C.    The Alleged Misstatements Are Inactionable Opinions, Puffery, and
Otherwise Immaterial............................................................................................10

      D.    Plaintiffs Do Not Plead Actionable Omissions.....................................................13

      E.    Plaintiffs' Opposition Does Not Remedy the Defects in Their Market
Manipulation Claim ..............................................................................................15

          1.    Plaintiffs Do Not Plead a Deceptive Act ...................................................15

          2.    Plaintiffs Do Not Establish Reliance on a Market Free of
Manipulation..............................................................................................16

      F.    Plaintiffs' Scienter Arguments Fail ......................................................................17

      G.    Plaintiffs' Loss Causation Arguments Fail ...........................................................20

IV.    PLAINTIFFS' OPPOSITION DOES NOT SALVAGE THEIR INSIDER
TRADING CLAIM............................................................................................................22

V.    PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED ...................................24

VI.    PLAINTIFFS DO NOT STATE ANY CLAIM AGAINST TESLA ...............................26

VII.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITHOUT LEAVE TO
AMEND............................................................................................................................28

CONCLUSION............................................................................................................................28

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
  677 F.3d 60 (2d Cir. 2012)...................................................................................4, 5

*Ades v. Deloitte & Touche*,
  799 F. Supp. 1493 (S.D.N.Y. 1992)...............................................................14, 15

*Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*,
  2007 WL 674691 (E.D.N.Y. 2007)........................................................................25

*Anschutz Corp. v. Merrill Lynch & Co.*,
  690 F.3d 98 (2d Cir. 2012)....................................................................................25

*ATAX N.Y., Inc. v. Canela #1*,
  2022 WL 3018151 (S.D.N.Y. July 29, 2022) ........................................................6

*Avalos v. IAC/Interactivecorp.*,
  2014 WL 5493242 (S.D.N.Y. Oct. 30, 2014) .......................................................12

*Basic, Inc. v. Levinson*,
  485 U.S. 224 (1988)..............................................................................................12

*Boluka Garment Co. v. Canaan Inc.*,
  547 F. Supp. 3d 439 (S.D.N.Y. 2021)..................................................................21

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d Cir. 2013)..................................................................................10

*Dimond v. Darden Restaurants, Inc.*,
  2014 WL 3377105 (S.D.N.Y. July 9, 2014) .........................................................27

*Dingee v. Wayfair Inc.*,
  2016 WL 3017401 (S.D.N.Y. May 24, 2016) .......................................................13

*ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009)..................................................................................19

*Freydl v. Meringolo*,
  2010 WL 3026578 (S.D.N.Y. Aug. 2, 2010) ........................................................26

*In re Fyre Festival Litig.*,
  399 F. Supp. 3d 203 (S.D.N.Y. 2019)..................................................................24

*Harrington Glob. Opportunity Fund v. CIBC World Mkts. Corp.*,
    585 F. Supp. 3d 405 (S.D.N.Y. 2022)..................................................................24

*Hurckes v. JPMorgan Chase Bank*,
    2023 WL 2664080 (S.D.N.Y. Mar. 27, 2023) .........................................................18

*In re IAC/InterActiveCorp Sec. Litig.*,
    478 F. Supp. 2d 574 (S.D.N.Y. 2007)..................................................................14

*In re Inv. Tech. Grp., Inc.*,
    251 F. Supp. 3d 596 (S.D.N.Y. 2017)..................................................................11

*In re Jumei Int'l Holding Ltd. Sec. Litig.*,
    2017 WL 95176 (S.D.N.Y. Jan. 10, 2017) .............................................................9

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001)......................................................................17, 19

*In re Kandi Techs. Grp. Inc. Sec. Litig.*,
    2019 WL 4918649 (S.D.N.Y. Oct. 4, 2019) ...........................................................9

*King County v. IKB Deutsche Industriebank AG*,
    863 F. Supp. 2d 288 (S.D.N.Y. 2012), *rev'd on other grounds* 2012 WL
    11896326 (S.D.N.Y. Sept. 28, 2012) ..................................................................14

*Koplyay v. Cirrus Logic Inc.*,
    2013 WL 6233908 (S.D.N.Y. Dec. 2, 2013) ..........................................................19

*Local No. 38 Int'l Bhd. of Elec. Workers' Pension Fund v. Am. Exp. Co.*,
    724 F. Supp. 2d 447 (S.D.N.Y. 2010)..................................................................19

*Marcus v. Frome*,
    275 F. Supp. 2d 496 (S.D.N.Y. 2003)..................................................................24

*In re Merrill Lynch Auction Rate Sec. Litig.*,
    704 F. Supp. 2d 378 (S.D.N.Y. 2010)..................................................................16

*Morrison v. Nat'l Austl. Bank Ltd.*,
    561 U.S. 247 (2010)................................................................................3

*In re Omnicom Grp., Inc. Sec. Litig.*,
    597 F.3d 501 (2d Cir. 2010)..........................................................................21

*In re Philip Morris Int'l Inc. Sec. Litig.*,
    89 F.4th 408 (2d Cir. 2023) .........................................................................11

*Prime Mover Cap. Partners L.P. v. Elixir Gaming Techs., Inc.*,
    898 F. Supp. 2d 673 (S.D.N.Y. 2012)..................................................................25

*Prudential Insurance Company of America v. Dewey, Ballantine, Bushy, Palmer & Wood*,
  80 N.Y.2d 377 (N.Y. Ct. App. 1992).............................................................................25

*Russell Publ'g Grp. v. Brown Printing Co.*,
  2014 WL 1329144 (S.D.N.Y. Apr. 3, 2014)..................................................................14

*S.E.C. v. W.J. Howey Co.*,
  328 U.S. 293 (1946)..........................................................................................................5

*Salvani v. ADVFN PLC*,
  50 F. Supp. 3d 459 (S.D.N.Y. 2014)..............................................................................16

*SEC v. Coinbase, Inc.*,
  No. 23-04738 (S.D.N.Y. June 6, 2023) .......................................................................3, 4

*Silsby v. Icahn*,
  17 F. Supp. 3d 348 (S.D.N.Y. 2014)..............................................................................17

*Small v. Arch Capital Grp.*,
  2006 WL 2708448 (S.D.N.Y. Sept. 20, 2006)...............................................................18

*In re Synchrony Financial Securities Litigation*,
  988 F.3d 157 (2d Cir. 2021)......................................................................................11, 12

*Tamar v. Mind C.T.I., Ltd.*,
  723 F. Supp. 2d 546 (S.D.N.Y. 2010)............................................................................18

*Tan v. Goldman Sachs Grp.*,
  2023 WL 2753238 (S.D.N.Y. Mar. 31, 2023) ...............................................................23

*Thomas v. Shiloh Indus., Inc.*,
  2017 WL 1102664 (S.D.N.Y. Mar. 23, 2017) ...............................................................18

*Thuman v. Dembski*,
  2017 WL 3614522 (S.D.N.Y. Apr. 4, 2017)..................................................................26

*In re Turquoise Hill Ltd. Res. Sec. Litig.*,
  625 F. Supp. 3d 164 (S.D.N.Y. 2022)............................................................................16

*United States v. Falcone*,
  257 F.3d 226 (2d Cir. 2001)...........................................................................................23

*United States v. Georgiou*,
  777 F.3d 125 (3d Cir. 2015)..............................................................................................3

*United States v. Martoma*,
  993 F. Supp. 2d 452 (S.D.N.Y. 2014)..............................................................................8

*Veleron Holding, B.V. v. Stanley,*
   117 F. Supp. 3d 404 (S.D.N.Y. 2015) ........................................................................15

### **Rules/Statutes**

15 U.S.C. § 78c(a)(1) ................................................................................................3, 4

15 U.S.C. § 78u–4 ........................................................................................2, 7, 19, 28

Fed. R. Civ. P. 9(b) ..................................................................................................7, 18, 28

Fed. R. Civ. P. 11 ...........................................................................................................26

New York General Business Law § 349 ........................................................................2, 24

## PRELIMINARY STATEMENT

This Court correctly dismissed Plaintiffs' "prolix" Third Amended Complaint ("TAC"), observing that the TAC was "unduly burdensome for defendants to answer and for the court to administer." Dkt. No. 103. Plaintiffs' Fourth Amended Complaint ("4AC") is no different. As Plaintiffs' meandering, legally groundless, and inconsistent Opposition[1] makes clear, two years and ***five complaints*** later, Plaintiffs still fail to state a claim under either federal securities law or state law. After the Opposition's hyperbole and strawman arguments are stripped away, Plaintiffs are left with blank pages. This Court should dismiss the 4AC with prejudice, putting an end to this unfounded action once and for all.

As an initial matter, this Court lacks jurisdiction to hear Plaintiffs' claims because Plaintiffs do not satisfy *Morrison*'s domesticity requirement. Plaintiffs allege that they purchased Dogecoin on Coinbase and similar cryptocurrency platforms, ***not*** one of the eighteen registered securities exchanges in the United States. And Plaintiffs concede that irrevocable liability was incurred through a decentralized process that took place over multiple computer nodes, the ***majority*** of which are located outside the U.S. Plaintiffs cannot escape the import of their own pleading.

Should the Court reach the merits, each of Plaintiffs' causes of action fails:

*First*, Plaintiffs urge this Court to press forward with claims based on nothing more than inference, speculation, and innuendo, despite Defendants' repeated showing that Plaintiffs fail to plead the core elements of control of the alleged wallets and Dogecoin trading.

---

[1]  Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Fourth Amended Complaint (Dkt. No. 111) ("Opposition" or "Opp.").

Unless otherwise defined, capitalized terms herein have the meanings assigned to them in Defendants' Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Fourth Amended Complaint (Dkt. No. 110). Citations to "¶__" refer to the Fourth Amended Complaint ("4AC" or "Complaint") filed January 22, 2024 (Dkt. No. 108). All emphasis is added and quotations and citations omitted unless noted.

*Second*, Plaintiffs do not state a claim against Defendants for securities fraud under Section 10(b)—whether a misstatements and omissions claim (against Mr. Musk) or a market manipulation claim (against Mr. Musk or Tesla)—because Plaintiffs have not pleaded a single element of securities fraud with particularity.  Specifically, Plaintiffs do not:  (i) allege any material false statement or omission; (ii) plead a duty to disclose; (iii) come close to pleading an inference of scienter, let alone one that is "cogent and compelling," as required under the PSLRA; (iv) point to any manipulative conduct forming the predicate of a market manipulation claim; or (v) plead loss causation, a failure that is especially fatal here, where Plaintiffs allege a Class Period through April 10, 2023 without pleading a single alleged corrective disclosure after ***May 2021***.  Counts I and II must be dismissed.

*Third*, Plaintiffs do not state a claim against Defendants for insider trading under Section 10(b).  Mr. Musk is not a Dogecoin "insider" who owed any duty of care to the public, and his "silly," Opp. 41, and public social media posts, including those referring to him as the "Dogefather," are neither material non-public information nor facts alleging that Mr. Musk was an insider.  Count III must be dismissed.

*Fourth*, Plaintiffs do not state a claim for any state law cause of action:  Plaintiffs do not state a claim against Mr. Musk for common law fraud or against either Defendant for unjust enrichment because these claims are both duplicative of Plaintiffs' purported claims under the federal securities laws and inadequately pleaded.  Plaintiffs' negligent misrepresentation claim fails both because economic loss is not recoverable under a negligence-based theory, and because Plaintiffs do not allege sufficient facts to plead that Mr. Musk owed them any duty.  And Plaintiffs concede that they have no claim for deceptive trade practices under New York's General Business Law.  Counts IV, V, VI and VII must be dismissed.

*Finally*, Plaintiffs' Opposition (like the 4AC itself) addresses Tesla as a mere afterthought, devoting just **two pages** of fifty to attempting to identify any purported well-pleaded allegations against Tesla (which do not exist).  Because Plaintiffs' allegations are insufficient to sustain any claim against Tesla, Counts II, III, and VII must be dismissed against Tesla.

The Court should dismiss the 4AC in its entirety with prejudice.

## **ARGUMENT**

### I.   **PLAINTIFFS' OWN ALLEGATIONS SHOW THAT THIS COURT DOES NOT HAVE JURISDICTION TO HEAR PLAINTIFFS' CLAIMS**

Plaintiffs' response to Defendants' *Morrison* arguments misses the mark:  Plaintiffs have not met their burden to show that Plaintiffs' and the putative class's alleged transactions in Dogecoin occurred **on a domestic exchange** (defined by the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(1) ("Exchange Act")) or **within the United States**.  Mot. 8-10 (citing *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 267 (2010)).

#### A.   **Plaintiffs Fail to Rebut Defendants' Showing That They Do Not Meet Their Jurisdictional Burden**

*First*, Plaintiffs argue that one of the Lead Plaintiffs and unidentified members of the putative class "purchased Dogecoin using Coinbase," Opp. 13, and assert—based on unproven allegations by the U.S. Securities and Exchange Commission ("SEC") in a recently-filed complaint—that Coinbase "resemble[s]" an "exchange" under the Exchange Act, *id.*  This is insufficient under *Morrison*.  "Exchange," as used in *Morrison*, is a term of art, meaning a **registered** exchange under the Exchange Act.  *E.g.*, *United States v. Georgiou*, 777 F.3d 125, 134-35 (3d Cir. 2015) (first prong of *Morrison* applies to transactions in securities listed on one of the eighteen U.S. registered securities exchanges) (citing cases).  The SEC recently has taken the position that Coinbase **should have been registered** under the Exchange Act.  Complaint, *SEC v. Coinbase, Inc.*, No. 23-04738 (S.D.N.Y. June 6, 2023).  But Coinbase disputes the SEC's claims

and no fact-finder has so-held.  *See* Coinbase Answer at 173-75, *SEC v. Coinbase, Inc.*, No. 23-04738 (S.D.N.Y. June 28, 2023) (denying SEC is entitled to relief sought and asserting defenses, including failure to state a claim, no authority to regulate, major questions doctrine, lack of due process and fair notice, abuse of discretion, and unclean hands).[2]  More importantly, ***no*** cryptocurrency platform on which Dogecoin may have been purchased or sold by any member of the putative class is a ***registered*** exchange under the Exchange Act, as required by *Morrison*.

*Second*, both the 4AC and Plaintiffs' Opposition establish, at most, that a ***minority*** of Dogecoin transactions take place on computers within the United States.  *See* ¶¶ 41-42 (alleging ***43 percent*** of the computer network running Dogecoin core software is in the U.S., and therefore admitting that ***57 percent*** of the computer network is ***outside*** the U.S.); Opp. 14 ("[E]ach blockchain transaction in Dogecoin is verified by one of hundreds of 'full nodes,' forty percent of which were located in the U.S. at the start of the class period, and forty-three percent of which are located in the U.S. at present.  [¶]¶ 25, 41-42.").  Because Plaintiffs' own allegations establish that the majority of transactions in Dogecoin occur ***outside*** the United States, Plaintiffs have not pleaded that "irrevocable liability" passed in the United States, nor could they.  Plaintiffs plead that—at best—there is a 43% probability that irrevocable liability passed in the United States and a 57% probability that it did ***not***.  Plaintiffs point to no authority supporting their theory that the purported locus of the cryptocurrency platforms on which Plaintiffs allegedly bought and sold, Opp. 13-14, are relevant to the question whether irrevocable liability occurred ***in the U.S.***, where, as here, approximately 60 percent of the transactions are—by Plaintiffs' own pleading—foreign.

---

[2]   On March 27, 2024, the Coinbase court denied in part and granted in part Coinbase's motion for judgment on the pleadings, permitting the SEC's contested claim that Coinbase is operating an unregistered securities exchange to proceed to discovery.  *See* Opinion and Order, *SEC v. Coinbase Inc.*, No. 23-04738 (S.D.N.Y. Mar. 27, 2024).

*Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 68 (2d Cir. 2012) (plaintiff must plausibly allege "that the purchaser incurred irrevocable liability ***within*** the United States to take and pay for a security, or that the seller incurred irrevocable liability ***within*** the United States to deliver a security").

> **B.     Plaintiffs' *Howey* Arguments Are Premature, Not Properly Before the Court, and Misguided**

Plaintiffs attempt to rebut an argument that Defendants do not make at this time:  That Plaintiffs' transactions in Dogecoin are not "securities transactions."  Opp. 10-12.  This Court need not decide the question whether Plaintiffs' transactions in Dogecoin were or were not securities transactions to dismiss all of Plaintiffs' claims with prejudice.  Mot. 1-4.  Should Plaintiffs' claims survive Defendants' motion to dismiss (which they should not), then Defendants intend to challenge—at the appropriate time—Plaintiffs' baseless allegation that Dogecoin is an "investment contract" under *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293 (1946).[3]

## II.     PLAINTIFFS' FAILURE TO PLEAD OWNERSHIP AND SALE OF DOGECOIN WITH PARTICULARITY DEFEATS NEARLY ALL OF THEIR CLAIMS

Plaintiffs' Opposition ignores the 4AC's fundamental defect—speculative and conclusory allegations of wallet ownership and purported sales of Dogecoin by Defendants are insufficient as a matter of law, defeating ***all*** of Plaintiffs' securities claims as well as state law claims for common

---

[3]     Defendants dispute that Plaintiffs' Dogecoin purchases and sales are transactions in securities subject to the federal securities laws, because, among other reasons, Plaintiffs did not "invest[] money in a common enterprise with profits to come solely from the efforts of others." *Howey*, 328 U.S. at 301.  Plaintiffs' allegations are inadequate for several reasons, including because the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  For purposes of this motion to dismiss, however, Defendants limit their arguments to the purely legal deficiencies with Plaintiffs' 4AC.  Should this case proceed further, Defendants intend to establish that Plaintiffs' Dogecoin purchases and sales are neither investment contracts nor transactions in securities.

law fraud and unjust enrichment.  Mot. 6-7, 22-24, 30-37.  Notably, Plaintiffs do not directly rebut Defendants' showing that they fail adequately to allege that Defendants controlled the two wallets identified in the 4AC or sold Dogecoin.  Instead, Plaintiffs pepper their Opposition with a handful of passing references to the 4AC's deficient allegations.  Opp. 27 ("Musk was engaged in undisclosed, large-scale trading of Dogecoin."); *id.* at 31 ("Musk . . . was trading and mining Dogecoin via the wallets alleged by Plaintiffs.").  But Plaintiffs' conclusory and speculative allegations are contradicted by known fact and fail to state a claim.  Mot. 6-7.

## III.   PLAINTIFFS' OPPOSITION DOES NOT SALVAGE THEIR SECTION 10(B) CLAIMS

In response to Defendants' showing that Plaintiffs' Section 10(b) claims must be dismissed because Plaintiffs do not plead material misstatements or omissions or any act of manipulation (much less an entire scheme), scienter, or loss causation, Plaintiffs advance a veritable kitchen sink of arguments, each less availing than the last.

### A.   The Opposition Improperly Attempts to Rewrite the Complaint

Despite Plaintiffs' characterization of Defendants' opening Memorandum as "a tedious re-writing job that grossly misstates Plaintiffs' allegations," Opp. 9, it is ***Plaintiffs*** not ***Defendants*** who impermissibly seek to re-write the 4AC in their Opposition.  Much of Plaintiffs' Opposition is devoted to oft incomprehensible arguments about statements that are not even alleged to be false in the 4AC.  *E.g.*, Opp. 18-23; *see* Mot. 20-21, App. A.  Indeed, after inaccurately asserting that there is no dispute that they have "specifi[ed] each statement alleged to have been misleading," Opp. 15, Plaintiffs attempt to bolster their pleading after-the-fact and recast statements that were ***not alleged to be false or misleading*** in the 4AC as the basis for Plaintiffs' misstatements claim.  Opp. 17-23 (citing ¶¶ 78, 80, 82, 84, 96, 107, 122, 126, 127, 135, 137, 143, 145, 146, 163, 183, 184, 186, 187, 188, 189, 212, 215).  Plaintiffs "may not amend the allegations in their Complaint

by asserting new facts in their Opposition." *ATAX N.Y., Inc. v. Canela #1*, 2022 WL 3018151, at *5 (S.D.N.Y. July 29, 2022).  As Defendants' opening Memorandum makes clear, the 4AC challenges just *ten* statements in total as false.  Mot. 13, 20-21.  Accordingly, each of Plaintiffs' rambling arguments about statements that are not alleged to be false at all (the vast majority of the "falsity" section of Plaintiffs' brief) can be swiftly disposed of by this Court.  Defendants' Reply therefore addresses only those statements identified as false in the 4AC and categorized as such in Defendants' opening Memorandum (to the extent Plaintiffs address them in their Opposition): ¶¶ 60, 68, 85, 90, 92-94, 98, 103, 120, 124, 223.  Mot. 13 n.9, App. A at 1-3.

### B.      Plaintiffs' Falsity Arguments Fail

Although Plaintiffs devote endless pages of their Opposition to a variety of falsity arguments, Opp. 15-23, saying it (no matter how repetitively) does not make it so.[4]  Plaintiffs contend that they allege falsity with "[a]mple [p]articularity," Opp. 17, but Plaintiffs' argument is conclusory, facially self-serving, and incorrect.  Despite acknowledging that they are required under Rule 9(b) and the PSLRA to "specify each statement alleged to have been misleading [*and*] the reason or reasons why the statement is misleading," *id.* at 15, Plaintiffs do not meet this standard.  Instead, where they even try to address the statements, the best Plaintiffs can do is repackage inadequate materiality and scienter arguments as falsity.  These arguments fail.[5]

*First*, Plaintiffs set forth no viable arguments in response to Defendants' showing that the

---

[4]  The "Misstatements" section of Plaintiffs' Opposition (Opp. 15-27) follows no clear organization and does not attempt to categorize the alleged misstatements in any discernable fashion, whether by Defendants' categorization or otherwise.  To aid the Court, Defendants have endeavored to place Plaintiffs' arguments (where they can be discerned) into appropriate categories based on the groupings in Defendants' opening Memorandum.

[5]  Plaintiffs' Opposition is complicated by the fact that many of the 4AC paragraphs cited in the Opposition do not say what Plaintiffs represent that they say.  *Compare* Opp. 21 ("Musk stated over and over that his endorsement will impart long-term value to Dogecoin and that its value will continue to rise indefinitely.  ¶¶ 78-79, 96, 98-99."), *with* ¶ 78 (Musk "tweeted a picture

meme "statements," ¶¶ 68, 98, must be dismissed, Mot. 14-15.   In particular, Defendants demonstrated that the Dust Storm Meme and the Soldier Meme are not actionable misstatements because not only do they not communicate any discernable message, they do not say what Plaintiffs allege they do.  *Id.* at 15.  Repeating the allegations in the 4AC, Plaintiffs argue in response only that there were "clear" messages conveyed by the Dust Storm Meme and the Soldier Meme without explaining how that is so.  Opp. 18, 21.  Plaintiffs provide neither Defendants nor this Court with any basis on which to understand why these cartoon memes were somehow actionably ***false***.[6]

*Second*, Plaintiffs set forth no facts establishing the falsity of Mr. Musk's general statements of support for Dogecoin, to the extent they bother to make any arguments at all. Mot. 15-16 (citing ¶¶ 60, 85, 90, 92-94).  Plaintiffs rely only on inference and speculation to argue that ***one*** of these statements should be sustained.  In particular, Plaintiffs assert that Mr. Musk's tweet that Dogecoin "might be my favorite currency" (and apparently acknowledging a "nominal or honorary 'CEO' position") is false because of Mr. Musk's alleged "extensive" relationship with Dogecoin, Opp. 17 (citing ¶ 63).  But Plaintiffs concede that they need discovery to support even this claim.  Mot. 15-16.  What's more, Plaintiffs' latest argument undermines, rather than supports, the falsity of these statements:  Plaintiffs argue that a May 2021 interview "reveal[ed]" that Mr.

---

of a rocket blasting into space with the moon looming in the background" and an additional message "that read, simply:  Doge."), ¶ 96 ("Musk tweeted an image of a cartoon Shiba Inu in a spacesuit, on the moon, holding up a flag labelled 'Doge.' Above this image, Musk added the remark, 'Literally.'"), *and* ¶ 98 (Musk tweeted a meme of a cartoon image of a soldier, labelled "memes," shielding a child sleeping, labelled "Dogecoin," from incoming gunfire, labelled "Dogecoin value dropping.").

[6]  To the extent Plaintiffs mean to argue that the memes were not "misplaced optimism," but instead "an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it," Opp. 18, that is the ***scienter*** standard and is not support (however conclusory) for ***falsity***. Plaintiffs' scienter arguments independently fail for the reasons set forth in Defendants' opening Memorandum, Mot. 24-27, and below, *infra* Section III.F.

Musk was "involved" in Dogecoin "for years."  Opp. 17-18.  Not only does this allegation bear no relationship to a tongue-and-cheek tweet exchange about Mr. Musk being an "honorary" CEO, but Plaintiffs also essentially argue that to the extent this information was concealed, it was "reveal[ed]" in May 2021 during an interview.  *Id.*  But Plaintiffs do not allege an attendant drop in Dogecoin's price, meaning Plaintiffs do not allege that Dogecoin holders viewed the alleged "revelation" as material.  *United States v. Martoma*, 993 F. Supp. 2d 452, 457 (S.D.N.Y. 2014) ("If a company's disclosure of information has no effect on stock prices, it follows that the information disclosed . . . was immaterial.").  Nor is it clear why they would—under Plaintiffs' own theory, Mr. Musk's involvement was a net ***benefit*** to Dogecoin.  *See, e.g.*, Opp. 32 ("[E]very time [Mr. Musk] communicates publicly about Dogecoin its price spikes.").

Plaintiffs do not respond at all to Defendants' falsity arguments for the remaining "support" statements, Mot. 15-16, and therefore concede these points, *see In re Jumei Int'l Holding Ltd. Sec. Litig.*, 2017 WL 95176, at *5 n.4 (S.D.N.Y. Jan. 10, 2017) ("[A]rguments not addressed in opposition brief are conceded.").  For example, Plaintiffs do not address at all Defendants' argument that Mr. Musk's statement that Dogecoin is not meaningfully inflationary, ¶ 85, cannot be false or misleading because it contains no discernable representation that Dogecoin is "scalable" or "viable as currency," Mot. 16; *see also* ¶¶ 90, 92-94.

*Third*, Plaintiffs' allegations do not establish the contemporaneous falsity of Mr. Musk's tweets about "putting a literal Dogecoin on the literal moon." Mot. 16 (citing ¶¶ 103, 120).  Among other things, Plaintiffs set forth no allegations that these representations were false when made, and it is axiomatic that a statement "believed to be true, but later shown to be false, is insufficient to establish actionable falsity." *In re Kandi Techs. Grp. Inc. Sec. Litig.*, 2019 WL 4918649, at *8 (S.D.N.Y. Oct. 4, 2019).  In response, Plaintiffs repeat their allegations that a Dogecoin-themed

spacecraft has yet to be launched into space and thus conclude that Mr. Musk's statements were false, but do not refute Defendants' arguments.  Opp. 20.  Indeed, Plaintiffs point to no pleaded facts suggesting that Mr. Musk possessed knowledge rendering these statements knowingly false when made.

*Finally*, Mr. Musk's statements concerning his affiliation with Dogecoin are objectively verifiable, true statements and are thus not actionable.  Mot. 17 (citing ¶¶ 124, 223).  Moreover, as Defendants pointed out and Plaintiffs ignore, Plaintiffs admit that they have no facts supporting their conclusory explanation that Mr. Musk had "close advisory ties" with DCFI.  Mot. 17.  Plaintiffs also ignore Defendants' argument that Plaintiffs have not pleaded falsity with respect to Mr. Musk's tweet that Jared Birchall "does not have anything to do" with DCFI because Plaintiffs do not allege whether Mr. Birchall was an advisor to DCFI at the time of Mr. Musk's statement, nor do they allege that he was acting on behalf of Mr. Musk.  Mot. 17 n.11.  Plaintiffs opt instead to repeat their inadequate allegations and characterize Mr. Musk's statements as "deliberate obscurantism."  Opp. 21.  Plaintiffs are free to characterize Mr. Musk's statements however they like, but it will not change the fact that they make not a single argument to support the falsity of the "affiliation" statements.

### C. The Alleged Misstatements Are Inactionable Opinions, Puffery, and Otherwise Immaterial

Despite pages of often incomprehensible argument, Opp. 23-27, Plaintiffs fail to rebut Defendants' showing that Mr. Musk's tweets are both immaterial opinions (that Mr. Musk genuinely held) and inactionable puffery that is not "sufficiently specific for an investor to reasonably rely on that statement as a guarantee of some concrete fact or outcome," Mot. 19 (quoting *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 185 (2d Cir. 2013)).  And, like their falsity arguments, Plaintiffs spend most of their argument

addressing the materiality of statements that are not alleged to be false in the 4AC.

To start, Plaintiffs advance no legitimate arguments in response to Defendants' showing that the Dust Storm and Soldier Memes and Mr. Musk's statements of support for Dogecoin, ¶¶ 60, 68, 85, 90, 92-94, 98, are all inactionable opinions.  Instead, Plaintiffs vaguely argue that Mr. Musk did not genuinely hold these opinions, Opp. 23-24, but that argument is not supported by the 4AC.  And, even if Plaintiffs' *ex post* pleading in the Opposition were permissible (it is not), Plaintiffs do not allege with particularity "facts regarding the knowledge [Mr. Musk] did (or did not) possess at the time the opinion statements were made, whose omissions made those statements misleading."  Mot. 19 (quoting *In re Inv. Tech. Grp., Inc*., 251 F. Supp. 3d 596, 619 (S.D.N.Y. 2017)).  Instead, Plaintiffs assert that Mr. Musk's references to "the technical and logistical impediments to scaling Dogecoin into a form of currency, as if solving those issues was a straightforward matter," Opp. 24 (citing ¶¶ 85, 92-94), were "untrue" because Mr. Musk "knew that the possibility of solving them was remote, uncertain, and likely impossible," *id.*  But this argument only reinforces the opinion nature of Mr. Musk's statements—whether or not something is "likely impossible" is purely a matter of opinion.  *In re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408, 418 (2d Cir. 2023) ("[W]here a statement expresses an inherently subjective assessment, that is [] sufficient to render it one of pure opinion.").

The Opposition similarly does not rebut Defendants' showing that the same alleged misstatements are inactionable puffery.[7]  Mot. 19-20; Opp. 25-27.  Instead, Plaintiffs rely on *In re*

---

[7]  Plaintiffs incorrectly criticize Defendants for "cherry-pick[ing]" allegations to categorize as puffery, Opp. 25, but Defendants address every single statement in the 4AC Plaintiffs allege to be false.  Plaintiffs identify only ten statements as false in the 4AC.  The vast majority of those ten statements are inactionable puffery.  Mot. 19-20.  The remaining statements scattered throughout the 4AC with no discernable purpose are not pleaded to be false and do not meet the barest of pleading requirements.  Mot. 20-21.

*Synchrony Financial Securities Litigation*, 988 F.3d 157, 171 (2d Cir. 2021) to argue that Defendants improperly ask the Court to consider those statements "in isolation." Opp. 25. But *Synchrony* provides no support for Plaintiffs' assertion that when "taken together and in context," inactionable statements somehow become actionable. *Id.* at 26. Rather, *Synchrony* (which ultimately ***dismissed*** the alleged false statements as inactionable puffery) stands only for the uncontroversial proposition that a plaintiff, including Plaintiffs here, "may not cherry pick certain public statements for [their] complaint and divorce them from the universe of disclosed information to plausibly allege fraud." 988 F.3d at 171. Plaintiffs' only additional argument as to why Mr. Musk's statements are not puffery is their vague and self-serving assertion that the statements cannot be puffery because they are "sufficiently specific." Opp. 25-26. But in support, Plaintiffs both mischaracterize and restate the statements themselves without any explanation as to why they are actionable. *See id.*

Plaintiffs' materiality arguments otherwise boil down to the assertion that because Mr. Musk is "a household name" with a large social media following, it "does not pass the laugh test, let alone the plausibility test" to find Mr. Musk's tweets immaterial. Opp. 15-16 (quoting *Avalos v. IAC/Interactivecorp.*, 2014 WL 5493242, at *6 (S.D.N.Y. Oct. 30, 2014) (responding to an argument advanced by ***Plaintiffs' counsel***, Evan Spencer)). These superficial allegations do not create "a ***substantial likelihood*** that the disclosure . . . would have been viewed by the reasonable investor as having significantly altered the total mix of information made available," *Basic, Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988), particularly where, as here, Plaintiffs expressly plead that the total mix of information ***also*** included Dogecoin co-creator Billy Markus's statement that cryptocurrency is "a scam driven by 99.9% greater fool theory," ¶ 56, and Mr. Musk's description of Dogecoin as "a hustle," ¶ 115. Because no reasonable investor would have considered Mr.

Musk's tweets, memes, and personal opinions as altering the total mix of readily available public information about the speculative nature of Dogecoin and cryptocurrencies generally (which Plaintiffs cite, ¶ 70), each of Plaintiffs' materiality arguments fails.

**D.    Plaintiffs Do Not Plead Actionable Omissions**

In attempting to salvage an omissions claim, Plaintiffs' Opposition borders on incomprehensible, Opp. 27-31, and does nothing to bolster the 4AC.  To plead an omissions claim, Plaintiffs must allege either that Mr. Musk knew and concealed material information that rendered affirmative statements misleading or was subject to a duty to disclose.  Mot. 21.  Plaintiffs do neither.

*First*, without acknowledging that alleged "omissions" are mentioned just ***two times*** in the entire 4AC, Mot. 21, Plaintiffs argue that the 4AC "alleges numerous material omissions":  that Mr. Musk was engaged in "large-scale trading of Dogecoin," was "overseeing the development of the Dogecoin blockchain," and had unspecified "long-term designs on control of Dogecoin," Opp. 27.  Even if these were omissions (and they are not), ***none of these allegations are pleaded as omissions in the 4AC*** and thus cannot be considered in opposition to Defendants' opening Memorandum, including as support for Plaintiffs' unpleaded argument that these alleged omissions rendered other statements misleading.[8]  Further, Plaintiffs emphasize that these alleged omissions are "material," Opp. 27-28, but provide no support for this argument apart from the conclusory assertion that "clearly" investors would want to know the allegedly omitted

---

[8]    For the avoidance of doubt, even if this Court were to consider Plaintiffs' arguments (without referencing the language of specific statements) that, for example, Mr. Musk's "appeals to populist sentiment . . . were misleading in light of his long term goal of personal control over Dogecoin, which he never disclosed," Opp. 29, those arguments fail to state a claim.  Plaintiffs do not even attempt to tie the alleged omissions to specific statements and explain how they rendered those statements false.

information, *id.* at 28.   Plaintiffs set forth ***no facts*** corroborating this assertion, including no allegations of movement in the price of Dogecoin when the information allegedly became public. Materiality is not a "nice to know" standard.   *Dingee v. Wayfair Inc.*, 2016 WL 3017401, at *5 (S.D.N.Y. May 24, 2016) ("There is no duty to disclose a fact merely because a reasonable investor would very much like to know that fact.").

*Second*, even if Plaintiffs alleged actionable omissions (and they do not) they do not argue that Mr. Musk ***knew*** any ***facts*** that needed to be disclosed in order to make his tweets not misleading.   Plaintiffs' vague and conclusory allegations of knowledge are not sufficient. *Compare In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d 574, 591 (S.D.N.Y. 2007) ("It is not enough, however, for plaintiffs to merely allege that defendants withheld negative information from the market . . . the complaint must state with particularity all facts on which that belief is formed."), *with* Opp. 27 ("[Mr. Musk] portrayed Dogecoin as a medium that could replace fiat currency while knowing about [] subtle technical factors that limit blockchain scaling."), *and id.* at 28 (Mr. Musk "fail[ed] to disclose his long-term designs on control of Dogecoin, which anticipated technical advances whose remoteness and uncertainty he likewise failed to disclose.").

*Lastly*, Plaintiffs do not plead (a deficiency which the Opposition does not cure) a ***fiduciary*** or other ***confidential relationship*** with Dogecoin investors giving rise to a duty to disclose. Plaintiffs do not allege that Mr. Musk's "position or superior access to confidential information is so great as virtually to require the other party to repose trust and confidence in" him, nor could they.   *Russell Publ'g Grp. v. Brown Printing Co.*, 2014 WL 1329144, at *3 (S.D.N.Y. Apr. 3, 2014).   Nor do Plaintiffs allege that any trust or confidence placed in Mr. Musk was "accepted." *Id.*; *see also King County v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288, 314-15 (S.D.N.Y. 2012) ("New York does not recognize so broad a fiduciary duty—a fiduciary duty does

not arise from a party's superior knowledge about an investment product, nor does it arise in a business transaction between an investor and a company soliciting investors."), *rev'd on other grounds* 2012 WL 11896326 (S.D.N.Y. Sept. 28, 2012) (dismissing additional claims). Plaintiffs recite facts, untethered from the fiduciary standard, that Plaintiffs allege are "support" for conclusory allegations of a fiduciary relationship between Mr. Musk and his social media followers. Opp. 29-30. Plaintiffs' authority provides no support for their theory that Mr. Musk incurred a fiduciary duty to everyone who reads his tweets. *Id.* at 30 (citing *Ades v. Deloitte & Touche*, 799 F. Supp. 1493, 1502 (S.D.N.Y. 1992) (accounting firm that audited financial statements in connection with a transaction knew that the statements would be relied on by investors)). Neither this nor Plaintiffs' nonsensical rhetoric—"[a]s the self-proclaimed 'Dogefather,' . . . Musk was a consummate insider," Opp. 30—are capable of satisfying the legal standard.

### E. Plaintiffs' Opposition Does Not Remedy the Defects in Their Market Manipulation Claim

Plaintiffs fail to state a claim for market manipulation because, *inter alia*, Plaintiffs do not plead: (i) a deceptive predicate act; (ii) loss causation; (iii) reliance; or (iv) scienter. Mot. 22-24. Any one of these pleading defects is sufficient to defeat Plaintiffs' claim, and the 4AC suffers from all of them. Plaintiffs' Opposition does not rehabilitate their deficient market manipulation claim.

#### 1. Plaintiffs Do Not Plead a Deceptive Act

The only remotely discernable theory of market manipulation in the 4AC is that Defendants allegedly engaged in a "pump and dump" scheme. Mot. 23. But Plaintiffs' Opposition barely mentions the words "pump and dump." Instead, Plaintiffs once again stray from their pleading and make a futile attempt to plead market manipulation in their Opposition, this time claiming that Defendants selling Dogecoin and Tesla accepting Dogecoin for select merchandise were "market

activity aimed at deceiving investors as to how other participants have valued Dogecoin." Opp. 42. These arguments are unavailing.

*First*, Plaintiffs argue that Defendants' "sales of Dogecoin . . . were not only made anonymously, . . . but in a way that concealed the fact of the sales themselves from the market." *Id.* But not only are there **no** well-pleaded allegations in the 4AC that Defendants ever sold Dogecoin, Section II *supra*, Plaintiffs also fail adequately to allege that this market activity was **deceptive**. *E.g.*, *Veleron Holding, B.V. v. Stanley*, 117 F. Supp. 3d 404, 459 (S.D.N.Y. 2015) ("A claim of market manipulation require[s] a showing that an alleged manipulator engaged in market activity aimed at deceiving investors as to how other market participants have valued a security.").

*Second*, Plaintiffs also claim, in a new theory, that Tesla accepting Dogecoin for limited merchandise was "a marketing gimmick intended to lend false credence to Mr. Musk's misstatements about Dogecoin's supposed utility as currency." Opp. 42. As an initial matter, even if this speculative accusation were sufficient to establish a manipulative act for purposes of a market manipulation claim, it appears nowhere in the 4AC. More importantly, a manipulative act is one that is "inherently deceptive." Mot. 22 (citing *In re Turquoise Hill Ltd. Res. Sec. Litig.*, 625 F. Supp. 3d 164, 253 (S.D.N.Y. 2022)). Plaintiffs' conjecture does not meet this standard.

### 2. Plaintiffs Do Not Establish Reliance on a Market Free of Manipulation

Plaintiffs' **sole** argument that they have pleaded "reliance on an efficient marketplace free of manipulation" is that "Dogecoin was promoted by the world's richest man, before an audience of hundreds of millions, both on social media and national television." Opp. 42. Plaintiffs end with the conclusory proclamation that "[i]f **that** does not give rise to reasonable reliance on an assumption of an efficient market free of manipulation, it is unclear what could." *Id.* (emphasis in original). This, not surprisingly, is not the "efficient market free of manipulation" contemplated by well-established case law. *See, e.g.*, *In re Merrill Lynch Auction Rate Sec. Litig.*,

704 F. Supp. 2d 378, 394 (S.D.N.Y. 2010) (presumption of an efficient market free of manipulation arises when plaintiffs establish an "impersonal, well-developed market for securities"); *cf. Salvani v. ADVFN PLC*, 50 F. Supp. 3d 459, 472 (S.D.N.Y. 2014) (dismissing Section 10(b) claim where plaintiffs "[did] not allege that the Over-the-Counter Bullet Board [] is an efficient market").

Plaintiffs do not respond to Defendants' argument that Plaintiffs' efficient market hypothesis is irretrievably damaged by their inherently contradictory allegations. Mot. 29. Plaintiffs allege a market "free from manipulation," while simultaneously asserting that Mr. Musk admitted "that his purpose was to support Dogecoin by pumping its price." Opp. 50; *see also* ¶¶ 98-99 ("By this tweet, Musk [] acknowledged that he was pumping the market.").[9] Plaintiffs are not entitled to a presumption of reliance on an efficient market free from manipulation where, as here, they claim that Mr. Musk allegedly admitted to manipulating the market.

### F.   Plaintiffs' Scienter Arguments Fail

Plaintiffs' Opposition underscores—rather than cures—the 4AC's scienter pleading defects, which are fatal to each of Plaintiffs' securities fraud claims. Neither the 4AC nor the Opposition specify what purported "misstatements and omissions," Opp. 32, were made with the requisite scienter, or what that scienter purportedly was.

*First*, Plaintiffs' motive arguments fall flat. Plaintiffs argue that Mr. Musk was trading Dogecoin "by his own admission," Opp. 31, but in support of that claim, refer to paragraphs in the 4AC that either do not refer to trading in Dogecoin at all, or expressly assert that Mr. Musk was **not** selling, *e.g.*, ¶ 184 ("I set up some little Doge mining rigs with my kids"), ¶ 186 ("I haven't &

---

[9]   Plaintiffs also do not plead scienter or loss causation in connection with their market manipulation claim. Mot. 24-29.

won't sell any Doge").  Recognizing that they fail to plead that either Defendant **sold** Dogecoin, Plaintiffs now argue, without support, that Mr. Musk possessed motive because Defendants **owned** Dogecoin while the price increased.  Opp. 32.  But these new assertions are still insufficient to plead "a **concrete and personal benefit** . . . resulting from the fraud," *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001), because Plaintiffs fail plausibly to allege that Mr. Musk owned any of the Dogecoin wallets identified in the 4AC, Mot. 6-7; Section II *supra*, and likewise fail to plead that the price of Dogecoin is **higher** now than it was at whatever points in time Defendants allegedly purchased.  *Silsby v. Icahn*, 17 F. Supp. 3d 348, 365 (S.D.N.Y. 2014) ("[P]laintiffs have not alleged any concrete and personal benefit to any defendant" where they "do not allege any sales of stock during the Class Period, nor do they identify any other specific means through which [defendants] might have gained by the alleged fraud."); *see also Thomas v. Shiloh Indus., Inc.*, 2017 WL 1102664, at *3 (S.D.N.Y. Mar. 23, 2017) (generalized motive to "keep stock prices high[] is not sufficiently concrete for purposes of inferring scienter").[10]  And, even if Plaintiffs pleaded continued ownership during a period of time when the price of Dogecoin increased, this argument still would fail because "[a]bsent some allegation to explain how a defendant benefits from an inflated stock price, stock ownership does not provide sufficient motive to sustain the pleading burden under Rule 9(b)."  *Tamar v. Mind C.T.I., Ltd.*, 723 F. Supp. 2d 546, 556

---

[10]    Plaintiffs' argument that Mr. Musk possessed motive based on his desire to develop Dogecoin to "bring the Dogecoin project under his direct control without incurring the cost and liability of developing a proprietary crypto" is similarly unavailing.  ¶ 205; Opp. 32.  This argument undercuts Plaintiffs' argument that Mr. Musk "pumped" Dogecoin—presumably Mr. Musk would not seek to destroy the value of Dogecoin if he wanted it to be a viable currency.  An internally inconsistent motive is no motive at all.  *See Small v. Arch Capital Grp.*, 2006 WL 2708448, at *12 (S.D.N.Y. Sept. 20, 2006) (no motive alleged where "Plaintiffs weave a confusing web . . . in the hope that one of the allegations . . . will stick"); *Hurckes v. JPMorgan Chase Bank*, 2023 WL 2664080, at *2 (S.D.N.Y. Mar. 27, 2023) ("Faced with [] internally inconsistent allegations, the Court is neither obligated to reconcile nor accept them as true.").

(S.D.N.Y. 2010).   The 4AC contains no allegations that Defendants benefitted by holding Dogecoin.

*Second*, Plaintiffs make no viable arguments supporting conscious misbehavior or recklessness, instead pointing to inconsistent and contradictory allegations.   Opp. 33-34.   For example, Plaintiffs suggest that Mr. Musk "encourag[ed] millions of unsophisticated investors to hold at the outset of a large-scale crypto market correction," *id.* at 33, while **simultaneously** arguing that Defendants had a motive to commit securities fraud because they were **holding Dogecoin**, *id.* at 32 ("Even if he never sold Dogecoin, the increase in its price over the period he promoted it was motive enough.").   At most, Plaintiffs allege that Mr. Musk shared with his social media followers his excitement about Dogecoin, while also warning them of its risks.   ¶¶ 92, 124. Such allegations fall short of "conduct which is **highly unreasonable** and which represents an **extreme departure** from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."   *ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 203 (2d Cir. 2009). Mr. Musk was aware of precisely the same Dogecoin dangers as the general public.   *E.g.*, ¶ 56 (Billy Markus described Dogecoin as "99.99% greater fool theory").

*Third*, Plaintiffs advance myriad other arguments, including that Mr. Musk's alleged prior "manipulation" of Bitcoin supports his scienter here, Opp. 34, but again fail to corroborate how that unsubstantiated accusation bolsters a finding of scienter **in this case**.   Mot. 26.   Plaintiffs' remaining conclusory and circular arguments about "outright l[ies]" and "unfulfilled promises," Opp. 34, do not move the needle—Plaintiffs set forth no facts that would enable this Court to infer that Mr. Musk knew information contrary to his statements at the time he made them, *see Local No. 38 Int'l Bhd. of Elec. Workers' Pension Fund v. Am. Exp. Co.*, 724 F. Supp. 2d 447, 461

(S.D.N.Y. 2010) (no scienter where allegations do not explain "what specific contradictory information . . . Defendants received or when they received it"); *see Kalnit*, 264 F.3d at 142 (no scienter absent "defendants' knowledge of facts or access to information contradicting their public statements").

*Finally*, Plaintiffs' effort to shift the burden onto Defendants to explain why Mr. Musk did ***not*** act with scienter is unavailing and flies in the face of Plaintiffs' clear heightened burden under the PSLRA.  Opp. 35-36; *Koplyay v. Cirrus Logic Inc*., 2013 WL 6233908, at *8 (S.D.N.Y. Dec 2, 2013) ("Defendants do not bear the burden of disproving scienter.").  Plaintiffs' so-called "cogent" inference of scienter also is based on ***demonstrably false*** allegations for which there is no particularized support, *i.e.*, "the sheer pecuniary motives alleged in the complaint," or is ***internally inconsistent*** with allegations of scienter, *i.e.*, Mr. "Musk's business ambition to cultivate a malleable cryptocurrency."  Opp. 35; *see* Section II *supra* (Plaintiffs fail to plead control of wallets or sales of Dogecoin).  Plaintiffs' arguments must each be rejected.

### G.    Plaintiffs' Loss Causation Arguments Fail

Plaintiffs' Opposition does not resuscitate their deficient loss causation allegations, a defect fatal to all of Plaintiffs' Section 10(b) claims.  The ***only*** alleged corrective disclosure identified in the Opposition is Mr. Musk's SNL appearance nearly three years ago in May 2021, which begs the question (left unaddressed by Plaintiffs despite Defendants repeatedly making this argument, *see* Mot. 28; Dkt. No. 95 at 26) of how the Class Period somehow extends to April 2023, a superficial choice given the absence of any alleged corrective disclosures after May 2021.  Nor do Plaintiffs reckon with the fact that two of the ten alleged misstatements were ***after*** the SNL

appearance, ¶¶ 124, 223, and Plaintiffs fail to allege any subsequent disclosure that allegedly "corrected" those statements, *see* Mot. 28.

Plaintiffs otherwise argue that Mr. Musk's reference to Dogecoin as a "hustle" caused the Dogecoin market to crash in the days, weeks, and months to follow.  Opp. 39 (citing ¶ 119).  But Plaintiffs do not (and cannot) explain what allegedly false statements this "disclosure" corrected. Perhaps Plaintiffs' theory is that Mr. Musk's "hustle" comment (an opinion in and of itself) revealed that Mr. Musk was "not a paragon of the people but an awkward rich guy . . . whose motives were not what he had previously said they were."  Opp. 39.  But Plaintiffs do not explain how their opinion that Mr. Musk is "not a paragon of the people but an awkward rich guy" revealed the ***falsity*** of any prior alleged misstatement or market manipulation, and Defendants similarly are at a loss.  Even a cursory review of the ten statements alleged as false shows that those statements bear absolutely no relationship to the alleged "disclosure" that Dogecoin was a "hustle."  Plaintiffs must allege that a "misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security."  *Boluka Garment Co. v. Canaan Inc*., 547 F. Supp. 3d 439, 445 (S.D.N.Y. 2021).  Plaintiffs advance no such arguments here.  For example, Plaintiffs do not explain how Mr. Musk's comment that Dogecoin is a "hustle" purportedly "corrected" statements that "SpaceX is going to put a literal Dogecoin on the literal moon," ¶ 103, that "Doge appears to be inflationary, but is not meaningfully so," ¶ 85, or that "If major Dogecoin holders sell most of their coins, it will get my full support.  Too much concentration is the only real issue IMO," ¶ 92.  For the avoidance of doubt, not only was the SNL appearance ***not*** corrective of ***any*** of the ten statements alleged to be false, but it also was not corrective of any other statement.  *E.g.* ¶ 164 ("Who controls the memes, controls the Universe."), ¶ 87 ("Musk tweeted that he had purchased Dogecoin for his son.").

Plaintiffs' loss causation claim separately fails because Plaintiffs' attempt to recover damages for the decline in Dogecoin's price over the course of a year (indeed, over **two** years with the extension of the putative Class Period until April 10, 2023) is inconsistent with Plaintiffs' assertion that Dogecoin trades on an efficient market. *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 510-11 (2d Cir. 2010) (holding plaintiffs did not establish loss causation and highlighting the inconsistency that exists when a plaintiff argues stock is traded on "a highly efficient" market "while seeking to recover for a stock price decline a year" after alleged fraud was disclosed).

Plaintiffs also argue that loss causation is pleaded under a materialization of the risk theory, Opp. 40-41, but the 4AC pleads no such thing. To plead loss causation under a materialization of the risk theory, Plaintiffs must allege "that the loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement." *In re Omnicom*, 597 F.3d at 513. Not only are these allegations nowhere in the 4AC, Plaintiffs' Opposition argument is unintelligible. Plaintiffs neither allege nor argue what **specific** risks were concealed by the **specific** alleged false statements, nor do they explain how Mr. Musk's comments during an appearance on SNL were somehow a "materialization" of those concealed risks (and Defendants are not sure how Plaintiffs could so explain). Nor do Plaintiffs allege a single concealed risk that materialized, when the risk purportedly materialized, or the impact on the price of Dogecoin.[11]

## IV.   PLAINTIFFS' OPPOSITION DOES NOT SALVAGE THEIR INSIDER TRADING CLAIM

Plaintiffs' Opposition likewise fails to correct numerous pleading deficiencies

---

[11]   To the extent Plaintiffs allege that the "risk" that materialized was "the risk of trusting Elon Musk to ensure . . . that Dogecoin would retain long-term value," Opp. 41, that argument only underscores Plaintiffs' fundamental misunderstanding of what pleading a materialization of the risk theory requires. This was not a risk that any Defendant fraudulently concealed.

undermining their insider trading claim, including, most fundamentally, that they attempt to plead insider trading **without any trades.**  Mot. 30-32.

*First*, Plaintiffs have not and cannot allege any **sales**, a necessary predicate for an insider **trading** claim.   Mot. 31.   Plaintiffs' Opposition neither addresses nor cures this fundamental deficiency.  Plaintiffs also do not grapple with their own allegation that they **do not know** whether Defendants sold Dogecoin absent discovery.  ¶¶ 65, 182; *see Vining v. Oppenheimer Holdings Inc.*, 2010 WL 3825722, at *8 (S.D.N.Y. Sept. 29, 2010) ("Plaintiffs' argument that future discovery will more fully develop these arguments is unavailing; the purpose of the PSLRA's heightened pleading standard is to avoid subjecting defendants to discovery on the basis of bare, conclusory claims.").  And because Plaintiffs do not plead any trades, they necessarily do not plead contemporaneous trading with Plaintiffs.  Mot. 31.  Plaintiffs' insider trading claim should be dismissed on this basis alone.

*Second*, Plaintiffs' belated attempt **yet again** to rewrite the 4AC by inserting into the Opposition new allegations about alleged material nonpublic information fails on its face.  Opp. 46-48.  To be clear, the 4AC identifies **no material nonpublic information** that Mr. Musk purportedly possessed.  Mot. 31.  Faced with this deficiency, Plaintiffs argue in their Opposition that the inside information Mr. Musk purportedly possessed while "trading" was that Mr. Musk (i) was allegedly "overseeing development" of the blockchain, (ii) had unspecified long-term designs on control of Dogecoin, and (iii) was anonymously trading.  Opp. 47.  Setting aside that these alleged "facts" are not pleaded as material nonpublic information (or even omissions) in the 4AC, they do not suffice.  Plaintiffs do not allege what purported covert oversight of the Dogecoin blockchain Mr. Musk was allegedly involved in at the time he was allegedly trading; what his alleged future secret plans for Dogecoin were, or what alleged "remote" and "uncertain"

"technological advances" Mr. Musk anticipated (or how Plaintiffs have concluded that such secret plans and concerns existed); or any facts whatsoever to support their accusation that Mr. Musk was "anonymously trading."  Opp. 46-47.

*Finally*, the Opposition's explanation for why Mr. Musk was purportedly an "insider" and thus allegedly owed a duty to Plaintiffs strains credulity.  Opp. 45-46.  Whether Plaintiffs plead that Mr. "Musk [was] widely regarded as a major fintech expert" or "held himself out as the 'Dogefather,'" *id.* at 46, is irrelevant.  Merely averring that Mr. Musk is powerful or has a large social media following, *id.*, does not plead the existence of a legal **duty**.  *See United States v. Falcone*, 257 F.3d 226, 229 (2d Cir. 2001) ("[T]he duty of disclosure being breached is to persons with whom the insider is engaging in securities transactions, and the insider breaches that duty when he or she engages in the securities transaction without disclosure.").  None of Plaintiffs' irrelevant arguments (nor any allegation of the 4AC) pleads that Mr. Musk was a director or officer of DCFI with duties to "investors" in DCFI, or that either Mr. Musk or Tesla has a sufficiently large interest in Dogecoin to be characterized as "controlling shareholders."  *See Tan v. Goldman Sachs Grp.*, 2023 WL 2753238, at *8 (S.D.N.Y. Mar. 31, 2023) ("[I]nsiders are those who would have a general fiduciary duty to the issuers" including "[d]irectors, officers, and controlling shareholders.").

## V.    PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED

Plaintiffs' Opposition likewise is incapable of salvaging their inadequately pleaded and duplicative state law claims.  Mot. 32-37.

***Deceptive trade practices.***  Plaintiffs abandon their claim for deceptive trade practices under New York's General Business Law by failing to address Defendants' arguments at all in their Opposition.  *See* Mot. 32-34; *Harrington Glob. Opportunity Fund v. CIBC World Mkts. Corp.*, 585 F. Supp. 3d 405, 423 (S.D.N.Y. 2022) ("At the motion to dismiss stage, a plaintiff

abandons a claim by failing to respond to defendant's arguments in support of dismissing that claim.").

  ***Common law fraud.*** Nothing in Plaintiffs' Opposition changes the fact that their common law fraud claim suffers from identical pleading defects as their Section 10(b) claim and must be dismissed. Mot. 34-35; *e.g.*, *Marcus v. Frome*, 275 F. Supp. 2d 496, 503 (S.D.N.Y. 2003) (dismissing common law fraud claims where plaintiff failed to satisfy the pleading requirements of 10b-5 claim). Further, to state a claim for common law fraud, Plaintiffs are required to plead individualized reliance, but Plaintiffs do not argue that they even read Mr. Musk's allegedly false tweets, let alone relied on them. Mot. 34-35. Plaintiffs' vague and unsupported assertion that "***there was absolutely no reason other than Musk's publicity*** for virtually any purchase of Dogecoin made between February 4 and May 9, 2021," Opp. 48 (emphasis in original), falls far short of the pleading standard.

  ***Negligent Misrepresentation.*** Plaintiffs argue in their Opposition that Mr. Musk owed a duty of care to Plaintiffs, Opp. 49-50, but, as explained above, have not ***pleaded*** the existence of any such a duty. *Supra* Sections III.D, IV. Plaintiffs also do not plead a "special relationship of trust or confidence between the parties, Mot. 35, nor could they, where each Plaintiff is "one of a class of potential recipients of a statement," *In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 219 (S.D.N.Y. 2019); *see also Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 115 (2d Cir. 2012) (holding New York law requires "direct contact" between defendant and plaintiff to sustain a claim for negligent misrepresentation). Plaintiffs' failure to plead privity with Mr. Musk (and therefore their inability to recover for economic losses) is an independent ground for dismissal. Mot. 35 (citing *Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*, 2007 WL 674691, at *5 (E.D.N.Y.

2007)).[12]

    ***Unjust enrichment.***  Plaintiffs implicitly acknowledge that their unjust enrichment claim is based on the same factual allegations as those supporting Plaintiffs' other claims, *see* Opp. 50-51, warranting dismissal.  Further, Plaintiffs fail to establish a benefit was conferred, arguing only that Plaintiffs "contribut[ed] to Dogecoin's increased market cap and trading price by which Defendants were enriched at other investors' expense."  *Id.* at 51.  Even if this were true, "this type of indirect benefit is insufficient to sustain an unjust enrichment claim."  *Prime Mover Cap. Partners L.P. v. Elixir Gaming Techs., Inc.*, 898 F. Supp. 2d 673, 697 (S.D.N.Y. 2012) (no unjust enrichment claim where plaintiffs allege that "defendants received an indirect benefit from [their] stock purchases" after plaintiffs purchased defendants' "securities at artificially inflated prices").

## VI.    PLAINTIFFS DO NOT STATE ANY CLAIM AGAINST TESLA

    Like the 4AC, Plaintiffs' Opposition barely mentions Tesla.  The Opposition sets forth no compelling (let alone legally sound) arguments as to why Plaintiffs' market manipulation, insider trading, or unjust enrichment claims against Tesla should be sustained.

    Plaintiffs first bizarrely assert—contrary to ***hundreds*** of pages of briefing in this matter (including Defendants' Rule 11 motion for sanctions, Dkt. Nos. 86-90)—that "Defendants

---

[12]  Plaintiffs' citation to *Prudential Insurance Company of America v. Dewey, Ballantine, Bushy, Palmer & Wood*, 80 N.Y.2d 377, 383-84 (N.Y. Ct. App. 1992) is inapposite.  Opp. 49.  In *Prudential*, to find there was near or actual privity between a law firm that furnished an opinion letter containing false assurances to a third party pursuant to its client's instructions, the Court distinguished the law firm's conduct from cases in which there was no evidence that an audit report was prepared "for the specific purpose of inducing the plaintiff's reliance" and "no proof that the firm had directly supplied the plaintiff with a copy of the audit report."  80 N.Y.2d at 385.  Here, even assuming Mr. Musk's tweets are in any way comparable to an opinion letter or audit report (which they are not), Plaintiffs do not plead that Mr. Musk tweeted for the ***specific purpose*** of inducing their reliance or that he "directly supplied" them with copies of his tweets.

themselves admit that Tesla was trading Dogecoin," Opp. 43.   This is wrong.   Defendants consistently have maintained—including in sworn declarations—that Tesla **has never sold Dogecoin**.  Dkt. Nos. 86-90.  Plaintiffs' citations to Mr. Musk's statements and Tesla's 2023 SEC filings do not say anything different.  Opp. 43 (citing ¶ 189 (Mr. Musk bought Dogecoin), ¶ 190 (Mr. Musk disclosed that "Tesla owned Dogecoin"), ¶¶ 191-92 (Tesla traded unspecified "digital assets")).  Nor are Plaintiffs entitled to a relaxed pleading standard, Opp. 43, because "a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard." *Freydl v. Meringolo*, 2010 WL 3026578, at *4 (S.D.N.Y. Aug. 2, 2010).

Plaintiffs next argue that Tesla is vicariously liable for torts and securities fraud allegedly committed by Mr. Musk under *respondeat superior*.  Opp. 43.  As a threshold matter, Plaintiffs do not even plead that Tesla is liable for any "torts."  Nor does this theory revive the securities fraud claims against Tesla because "*respondeat superior* does not impose vicarious liability upon [an] employer unless the misconduct . . . giving rise to liability occurs during the scope of the employee's employment in furtherance of the employer's business."  *Thuman v. Dembski*, 2017 WL 3614522, at *8 (S.D.N.Y. Apr. 4, 2017) (dismissing Section 10(b) claim based on *respondeat superior* because "plaintiff's allegations . . . [were] patently deficient").  Plaintiffs have not argued (much less pleaded) that any statements that are the purported basis for their securities fraud claims were made in the scope of Mr. Musk's employment or in "furtherance of [Tesla's] business."  Nor could they, since the allegation that Mr. Musk was acting in the scope of his employment or in furtherance of Tesla's business would be directly **inverse** to Plaintiffs' (baseless) theory that Mr. Musk used Tesla as a tool to "lend false credence to [his] misstatements about Dogecoin[]." Opp. 42.

Plaintiffs' remaining scattershot arguments in support of their claims against Tesla fall

equally flat.  In purported support of their fraud claims against Tesla, Plaintiffs argue that (i) Tesla accepted Dogecoin as a "marketing gimmick" to support Mr. Musk's misstatements, and that (ii) both Tesla and Mr. Musk "pumped and dumped" and therefore manipulated ***Bitcoin***.  Opp. 44. These conclusory arguments are unsupported by any well-pleaded facts and do not plead a fraud claim against Tesla.

Absent ***any*** particularized allegations of misconduct ***by Tesla***, Plaintiffs' claims against Tesla must be dismissed.

## VII.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND

Courts routinely dismiss complaints without leave to amend where, as here, Plaintiffs have had an opportunity to amend after being apprised of Defendants' arguments in support of dismissal, yet have failed to plead any new allegations sufficient to support a cause of action, evidencing that Plaintiffs cannot plead any actionable claim.  *E.g.*, *Dimond v. Darden Restaurants, Inc.*, 2014 WL 3377105, at *15 (S.D.N.Y. July 9, 2014) ("Plaintiff has amended his complaint three times . . . . It goes without saying that he has had ample opportunity to perfect his pleading, yet has failed to do so.").  This is especially the case here, where Plaintiffs have had ***five*** opportunities to file a complaint that withstands scrutiny, and this Court instructed Plaintiffs, in dismissing the TAC, to "observe pleading requirements, and not to mix the function of a complaint and a brief or press release." Dkt. No. 103.  Plaintiffs have not and cannot comply with this Court's order or the pleading requirements of the PSLRA and Rule 9(b).  This Court should dismiss the 4AC in its entirety with prejudice.

## <u>CONCLUSION</u>

For the foregoing reasons and the reasons set forth in Defendants' opening Memorandum, Defendants respectfully request that the Court dismiss the 4AC and this action with prejudice.

DATED: April 10, 2024                    Respectfully submitted,


                                         */s/ Alex Spiro*
                                         Alex Spiro
                                         Sarah Heaton Concannon
                                         Brenna Nelinson
                                         QUINN EMANUEL URQUHART &
                                         SULLIVAN LLP
                                         51 Madison Avenue, 22nd Floor
                                         New York, New York 10038
                                         Tel: 202-538-8122
                                         Fax: 202-538-8100
                                         alexspiro@quinnemanuel.com
                                         sarahconcannon@quinnemanuel.com
                                         brennanelinson@quinnemanuel.com

                                         Allison Huebert (*pro hac vice*)
                                         TESLA, INC.
                                         1 Tesla Road Austin, TX 78725
                                         Tel: (512) 557-8797
                                         ahuebert@tesla.com

                                         *Attorneys for Defendants Tesla, Inc. and Elon*
                                         *Musk*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2024, I electronically served a copy of the foregoing to all counsel of record.

*/s/ Alex Spiro*
_____
Alex Spiro