**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| COLBY GOROG, JOSHUA FLINT, LOUIS ROBINSON, and MICHAEL LERRO, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>ELON MUSK and TESLA, INC.,<br><br>     Defendants. | Civil Action No.: 1:22-cv-05037-AKH<br><br><br>ECF CASE |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO AMEND, MAKE ADDITIONAL FINDINGS, AND AMEND FINAL**
**JUDGMENT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE**
**<u>52(b) AND 59(e) AND 15 U.S.C. § 78u-4(c)</u>**

<u>**TABLE OF CONTENTS**</u>

<u>**Page**</u>

PRELIMINARY STATEMENT ......................................................................................1

BACKGROUND .........................................................................................................3

ARGUMENT ..............................................................................................................3

    A.    Standards For Sanctions Under The PSLRA..........................................4

    B.    This Action Was Brought For An Improper Purpose, Without Reasonable Inquiry, And Without Factual And Legal Support ...................................5

        1.    This Action Was Brought For An Improper Purpose................................6

        2.    Plaintiffs' Whack-A-Mole Serial Pleadings .............................................9

        3.    Each Of Plaintiffs' Five Complaints Relied On Allegations That Were Demonstrably False Or Entirely Lacking Evidentiary Support ...............14

    C.    Defendants Are Entitled To An Award Of Their Fees And Expenses ................16

CONCLUSION...........................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

<b><u>Page</u></b>

### <u>Cases</u>

*AJ Energy LLC v. Woori Bank*,
   2019 WL 4688629 (S.D.N.Y. Sept. 26, 2019)......................................................................15

*An v. Despins*,
   2023 WL 4931832 (S.D.N.Y. Aug. 2, 2023)...........................................................................7

*In re AOL, Inc. Repurchase Offer Litig.*,
   2013 WL 6331802 (S.D.N.Y. Dec. 5, 2013) ..........................................................................3

*In re Austl. & N.Z. Banking Grp. Ltd. Sec. Litig.*,
   712 F. Supp. 2d 255 (S.D.N.Y. 2010) .............................................................................5, 15

*Avalos v. IAC/Interactivecorp.*,
   2014 WL 5493242 (S.D.N.Y. Oct. 30, 2014)..........................................................................9

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384 (1990) ...........................................................................................................15

*Dimond v. Darden Restaurants, Inc.*,
   2014 WL 3377105 (S.D.N.Y. July 9, 2014) ..........................................................................9

*Galin v. Hamada*,
   283 F. Supp. 3d 189 (S.D.N.Y. Sept. 26, 2017) ..................................................................15

*Gurary v. Nu-Tech Bio-Med, Inc.*,
   303 F.3d 212 (2d Cir. 2002) .................................................................................3, 4, 5, 16

*Katzman v. Victoria's Secret Catalogue*,
   167 F.R.D. 649 (S.D.N.Y. 1996) ..........................................................................................7

*Kropelnicki v. Siegel*,
   290 F.3d 118 (2d. Cir. 2002) ..............................................................................................15

*Levine v. F.D.I.C.*,
   2 F.3d 476 (2d Cir. 1993) .....................................................................................................6

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,
   547 U.S. 71 (2006) ..............................................................................................................4

*Morrison v. National Australia Bank Ltd.*,
   561 U.S. 247 (2010) ...........................................................................................................12

*Parnoff v. Fireman's Fund Ins. Co.*,
    796 F. App'x 6 (2d Cir. 2019) ........................................................................12

*Richter v. Achs*,
    174 F.R.D. 316 (S.D.N.Y. 1997) .....................................................................2

*Rosario v. Receivable Mgmts. Servs. Corp.*,
    2012 WL 2359874 (S.D.N.Y. July 21, 2012) ...................................................6

*S. Pac. Shipping Co. v. Redi-Fresh Produce Inc.*,
    2014 WL 6968039 (S.D.N.Y. Dec. 9, 2014) ....................................................7

*Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*,
    186 F.3d 157 (2d Cir. 1999) .......................................................................3, 4

*Suero v. NFL*,
    2022 WL 17985657 (S.D.N.Y. Dec. 16, 2022) ............................................8, 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ......................................................................................13

## Rules/Statutes

15 U.S.C. § 78t-1 .................................................................................................1

15 U.S.C. § 78u-4(c) .....................................................................................*passim*

Fed. R. Civ. P. Rule 8...........................................................................................11

Fed. R. Civ. P. Rule 9...........................................................................................11

Fed. R. Civ. P. 11(b) .....................................................................................*passim*

Fed. R. Civ. P. 52(b) ........................................................................................1, 2

Fed. R. Civ. P. 59(e)........................................................................................1, 2

## Other Authorities

H.R. Conf. Rep. No. 104-349 .....................................................................*passim*

H.R. Conf. Rep. No. 104-369 .................................................................................4

Defendants Elon Musk and Tesla, Inc. ("Defendants") respectfully submit this memorandum of law in support of their Motion to Amend, Make Additional Findings, and To Amend the Court's Final Judgment Pursuant to Federal Rules of Civil Procedure 52(b) and 59(e) and 15 U.S.C. § 78u-4(c). Defendants seek limited post-judgment relief from this Court, so that the Court may make the mandatory findings pursuant to the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(c)(1) ("PSLRA"), with regard to Plaintiffs' and Plaintiffs' counsel's substantial violations of Rule 11(b) and award mandatory reasonable attorneys' fees and expenses pursuant to the PSLRA, *id.* § 78u-4(c)(2)-(3)(A)(ii).

## **PRELIMINARY STATEMENT**

On August 29, 2024, this Court correctly granted Defendants' motion to dismiss the Fourth Amended Complaint ("4AC") with prejudice, holding that the statements cited and relied upon by Plaintiffs in the 4AC as the basis for their claims pursuant to Section 10(b) and Rules 10b-5(a) and (c), 15 U.S.C. § 78t-1, and state law are "aspirational and puffery, not factual and susceptible to being falsified. *They cannot be the basis of [a] 10b-5 lawsuit ... and no reasonable investor could rely upon them.*" Dkt. No. 113 at 1-2 ("Order") (emphasis added). The Court declined to reach Defendants' many other grounds for dismissal, finding this ground alone sufficient. *Id.* at 1 ("Defendants move to dismiss the Fourth Amended Complaint ('4AC') for a number of reasons, only one of which needs to be discussed."). The Court further held, as to Plaintiffs' allegations concerning an "alleged 'pump and dump' scheme," that "*it is not possible to understand* the allegations that form the basis of Plaintiffs' conclusion of market manipulation, a 'pump and dump' scheme, a breach of fiduciary duty amounting to insider trading, or the state law claims." *Id.* at 2 (emphasis added).

This Court's Order confirms what Defendants have argued since the outset of this action— Plaintiffs and Plaintiffs' counsel have substantially failed to comply with each requirement of Rule

11(b) of the Federal Rules of Civil Procedure and this Court should make mandatory findings and award sanctions to Defendants pursuant to the PSLRA, 15 U.S.C. § 78u-4(c)(1)-(3). Any objectively reasonable inquiry into the bases of Plaintiffs' allegations would have exposed their deficiencies and the lack of evidentiary support (or future likelihood thereof). That means that Plaintiffs either failed to perform such an inquiry before filing *any* of *five* separate complaints in this action, or did perform such an inquiry, but ignored what they found. Plaintiffs advanced factual contentions without evidentiary support and that were not likely to have evidentiary support after discovery. *See* Fed. R. Civ. P. 11(b)(3). Plaintiffs made claims that were not warranted under existing law or by a nonfrivolous argument for extending or modifying existing law. *See* Fed. R. Civ. P. 11(b)(2). Further, Plaintiffs' recent Notice of Appeal, Dkt. No. 115—quickly followed by a baseless multi-million-dollar settlement demand—confirms that Plaintiffs' action was presented for an improper purpose, namely, to perpetuate a press cycle and force a settlement. *See* Fed. R. Civ. P. 11(b)(1). These violations are substantial, permeate the entire action, and warrant an award to Defendants of reasonable attorneys' fees and expenses under the PSLRA. 15 U.S.C. § 78u-4(c)(3)(A)(ii).

Defendants therefore ask this Court under Federal Rules of Civil Procedure 52(b) and 59(e) for limited post-judgment relief, so that the Court may make specific findings as to whether Plaintiffs and Plaintiffs' counsel have complied with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(c)(1); *Richter v. Achs*, 174 F.R.D. 316, 318-19 (S.D.N.Y. 1997) (making mandatory findings pursuant to PSLRA following motion to amend judgment under Rule 59(e) to impose Rule 11 sanctions). If this Court determines, as it should, that a violation of Rule 11(b) has occurred, then Defendants ask this Court to amend its judgment to impose mandatory sanctions under the PSLRA. 15 U.S.C. § 78u-4(c)(2). Where, as here, there

is a "*substantial* failure of [the] complaint to comply with any requirement" of Rule 11(b), the award shall be the full amount of the reasonable attorneys' fees and expenses. *Id.* § 78u-4(c)(3)(A) (emphasis added).

## BACKGROUND

Defendants rely on and expressly incorporate by reference Defendants' prior pleadings in this action, which, individually and collectively, detail Plaintiffs' numerous and substantial violations of Rule 11(b) and provide this Court with grounds to impose mandatory sanctions under the PSLRA.  *See* Defendants' Motion to Dismiss the Second Amended Class Action Complaint and memorandum of law in support thereof (Dkt. Nos. 61-62); Defendants' Motion for Rule 11 Sanctions and memorandum of law and declarations in support thereof (Dkt. Nos. 86-90)[1]; Defendants' Motion to Dismiss the Third Amended Class Action Complaint and memorandum of law in support thereof (Dkt. Nos. 94-95); Defendants' Opposition to Plaintiffs' Cross-Motion for Leave to File the Fourth Amended Class Action Complaint (Dkt. No. 100); and Defendants' Motion to Dismiss the Fourth Amended Complaint and memorandum of law in support thereof (Dkt. Nos. 109-110).

## ARGUMENT

After filing the first complaint in this action on June 12, 2022, Plaintiffs amended *four* times, culminating in the 4AC, filed on January 22, 2024, which the Court dismissed with prejudice

---

[1]    Although this Court previously denied the parties' cross-motions for sanctions, Dkt. No. 105, the instant Motion is on materially different footing.  As detailed below, PSLRA sanctions are intended to "put teeth" into Rule 11, and Plaintiffs' misconduct is now exacerbated by a baseless Notice of Appeal and settlement demand, precisely the type of conduct the PSLRA was enacted to prevent.  *See* Argument § A, *infra*; *Gurary v. Nu-Tech Bio-Med, Inc.*, 303 F.3d 212, 219-20 (2d Cir. 2002) ("[T]he 104th Congress included in the [PSLRA] a measure intended to put 'teeth' in Rule 11." (quoting *Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 166-67 (2d Cir. 1999)); *see also, e.g.*, *In re AOL, Inc. Repurchase Offer Litig.*, 2013 WL 6331802, at *2 (S.D.N.Y. Dec. 5, 2013) (imposing sanctions following *sua sponte* order requiring plaintiff to address its compliance with Rule 11(b)).

on August 29, 2024.  Dkt. No. 113 at 1-2.  Over the course of the litigation, Plaintiffs alleged *different* plaintiffs, *different* defendants, *different* theories of the case, *different* claims, and *different* legal and factual bases for their claims, but the frivolous, unsubstantiated, and harassing nature of their allegations remained constant.  At all times, now culminating in a Notice of Appeal and baseless settlement demand, Plaintiffs have persisted in litigating claims that have no basis in fact or law and that could have been put to rest through the barest of inquiries.  Moreover, Plaintiffs' claims are often unintelligible, requiring excessive amounts of Court and Defendant resources to attempt to understand and rebut.  As this Court observed in its orders dismissing both the Third and Fourth Amended Complaints, it is inordinately difficult to understand the majority of Plaintiffs' allegations and pleadings, even through the most charitable of lenses.  *See* Dkt. No. 113 at 2 ("it is not possible to understand…"); Dkt. No. 103 ("The TAC [Third Amended Complaint] is prolix, encumbered with evidentiary exhibits, and unduly burdensome for defendants to answer and for the court to administer.").  This Court should find that Plaintiffs substantially violated the PSLRA and award sanctions.

### A.    Standards For Sanctions Under The PSLRA

The PSLRA was enacted by Congress to "curb . . . perceived abuses" in securities litigation, deter frivolous securities claims, and redress nuisance securities lawsuits.  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 81 (2006) (citing H.R. Conf. Rep. No. 104-369, at 31 (1995)).  To achieve this objective, the PSLRA contains provisions, captioned "Sanctions for Abusive Litigation," that mandate imposition of sanctions for frivolous litigation. 15 U.S.C. § 78u-4(c)(2).  Congress found that Rule 11 was not an adequate deterrent to abusive securities litigation, and therefore enacted the sanctions provisions "to put 'teeth' in Rule 11." *Gurary*, 303 F.3d at 219 (citing *Simon DeBartolo Group.*, 186 F.3d at 166-67; H.R. Conf. Rep. No. 104-369, at 39 (1995)).  The PSLRA requires review regarding compliance with Rule 11 and

imposes mandatory sanctions whenever any portion of a complaint violates Rule 11. *Id.* at 220 (citing 15 U.S.C. § 78u-4(c)(1)-(2)). Indeed, the "express congressional purpose" of this provision of the PSLRA is to "increase the frequency of Rule 11 sanctions in the securities context, and thus tilt the 'balance' toward greater deterrence of frivolous securities fraud claims." *In re Austl. & N.Z. Banking Grp. Ltd. Sec. Litig.*, 712 F. Supp. 2d 255, 263 (S.D.N.Y. 2010).

Congress was also troubled by the fact that even when Rule 11 sanctions are imposed, the award is "generally insufficient to make whole the victim of a Rule 11 violation." *Gurary*, 303 F.3d at 220 (citing H.R. Conf. Rep. No. 104-349, at 39). Thus, in cases where there is a "substantial failure of any complaint to comply with any requirement" of Rule 11(b), the PSLRA creates a *presumption* that the proper remedy is the full amount of the reasonable attorneys' fees and expenses. 15 U.S.C. § 78u-4(c)(3)(A)(ii); *In re Austl.*, 712 F. Supp. 2d at 268 ("The PSLRA establishes a presumption that, for *substantial* failure of any complaint to comply with any requirement of Rule 11(b), the award shall be the full amount of the reasonable attorneys' fees and costs."). A complaint's failure is "substantial" even when certain claims are found not to violate Rule 11(b) if those nonfrivolous claims are "insufficiently meritorious to save the [lawsuit] as a whole from being abusive." *In re Austl.*, 712 F. Supp. 2d at 268 (quoting *Gurary*, 303 F.3d at 222). Dismissal of an *entire* complaint for failure to state a claim signals that the nonfrivolous claims are "not 'of a quality sufficient to make the suit as a whole nonabusive,'" particularly where they "patently lacked merit." *Id.* at 269 & n.16 (quoting *Gurary*, 303 F.3d at 223).

### B. This Action Was Brought For An Improper Purpose, Without Reasonable Inquiry, And Without Factual And Legal Support

Rule 11 authorizes sanctions when a filing is legally unreasonable, without factual foundation, or is brought for an improper purpose. Fed. R. Civ. P. 11. By presenting each of the five complaints in this action to this Court, Plaintiffs' counsel certified that, "to the best of [his]

knowledge, information, and belief, formed after an inquiry reasonable under the circumstances … the factual contentions ha[d] evidentiary support or, if specifically so identified, [would] likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *Id.*; *see also Levine v. F.D.I.C.*, 2 F.3d 476, 479 (2d Cir. 1993) ("[A]n attorney may not transcend the facts of a given case," and counsel may not "concoct[] facts that [are] not well grounded."); *Rosario v. Receivable Mgmts. Servs. Corp.*, 2012 WL 2359874, at *5 (S.D.N.Y. July 21, 2012) ("[L]iability for Rule 11 violations requires only a showing of objective unreasonableness on the part of the attorney or client signing the papers.").

As set forth below and in each of the pleadings incorporated herein by reference, Plaintiffs and Plaintiffs' counsel have substantially violated the requirements of Rule 11 throughout this action.

## 1.    This Action Was Brought For An Improper Purpose

For more than two years and despite no reasonable inquiry or legal or factual basis to do so, Plaintiffs have relentlessly pursued Defendants, engaging in a series of whack-a-mole complaints, none of which redressed the fundamental deficiency of Plaintiffs' claims—the inability to plead that either Defendant ever *sold* Dogecoin or that specific cryptocurrency wallets in fact *belong* to Defendants. *See* Sections B.2-3, *infra.*  On August 29, 2024, this Court dismissed Plaintiffs' 4AC with prejudice, holding that Plaintiffs failed to plead any actionable misstatement under Section 10(b), and that it was "not possible to understand" each of Plaintiffs' remaining claims.  Dkt. No. 113 at 1-2.  Defendants, like any reasonable party reading this Court's Order, believed that this Court's decision dismissing the 4AC with prejudice would put to rest, for once and for all, this action.

Instead of taking their marbles and going home, Plaintiffs doubled-down again, filing a Notice of Appeal and making a settlement demand on Defendants—actions evidencing that this

case—from inception—was intended for an improper purpose, namely, to litigate in the press and extract a settlement from Defendants. Plaintiffs' two-year plus litigation against Defendants, continued pursuit of claims unsupported by fact and law, and now frivolous appeal waste resources to the potential detriment of Tesla, a public company, and its shareholders. Under these circumstances, this Court can, and should, infer an improper purpose. *An v. Despins*, 2023 WL 4931832, at *6 (S.D.N.Y. Aug. 2, 2023) ("[C]ourt may infer an improper purpose if, in light of Plaintiffs' conduct during and outside of litigation, a complaint is so baseless as to suggest that there is an ulterior motive behind the lawsuit."); *see also S. Pac. Shipping Co. v. Redi-Fresh Produce Inc.*, 2014 WL 6968039, at *10 (S.D.N.Y. Dec. 9, 2014) (holding that "the deficiency of [plaintiff's] claim, coupled with its behavior" in litigation in that and other courts gave rise to an "inference of improper purpose"); *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 661 (S.D.N.Y. 1996) ("The total lack of substance in the Plaintiffs' [] claims … gives rise to the inference that the action was filed for improper purposes.").

On September 19, 2024, three weeks after this Courts' Order dismissing the 4AC, Plaintiffs noticed an appeal. Dkt. No. 115. On September 25, 2024, having not heard from Plaintiffs, counsel to Defendants contacted counsel to Plaintiffs to discuss the appeal. Declaration of Sarah Heaton Concannon in Support of Motion ¶¶ 5-6 & Ex. 1 ("Concannon Decl."). Just over six hours later, Plaintiffs' counsel, responded:

> I am writing in response to your email and **with regards to settlement**. Presently, I have around **130 clients** in addition to the four named Plaintiffs. **Total losses are approximately $5 million**. I have attached a report from our expert witness … who estimates there are approximately **7 million class members with collective losses of $5 billion.** My clients have given me authority to settle. Based upon Judge Hellerstein's 1 ½ page decision, I believe we have a reasonable chance of the reversal by the Second Circuit. They ruled against your client previously in the SEC case. If they do so in this case, I have **multiple top class action firms**

that would like to take over the case for discovery, class certification, and trial. ***That could turn a $5 million case into a $5 billion case***.

*Id.*

Plaintiffs' counsel's email—seeking a $5 million settlement for "130 clients in addition to the four named Plaintiffs" and stating that after appeal, "a $5 million case"[2] could turn into a $5 billion" case on behalf of "7 million class members"—makes Plaintiffs' intent here transparent: This action was and is intended to extract from Defendants a payout, despite the utter lack of reasonable inquiry or factual or legal basis for Plaintiffs' claims. Plaintiffs' continued pursuit of their baseless claims—now noticed to the Second Circuit—underscores that this action, from its beginning, has been nothing more than a harassment campaign driven by Plaintiffs' and Plaintiffs' counsel's desire to extort a quick handout.

Nor are such tactics by Plaintiffs' counsel anything new. Plaintiffs' counsel has a history of filing frivolous complaints and then repeatedly seeking leave to amend, making sweeping changes to the parties, legal theories, and causes of action with each amendment, and accompanying each new complaint with a press release, until the cases ultimately are dismissed after multiple rounds of pleadings. For example, in *Suero v. NFL*, 2022 WL 17985657 (S.D.N.Y. Dec. 16, 2022), Plaintiffs' counsel demanded that "the NFL Giants and Jets be renamed the New Jersey or East Rutherford Giants and Jets," because "[a]s Giants and Jets fans, Plaintiff and the class are insulted, ridiculed, harassed, tormented, and bullied by NFL fans around the United States due to the affiliation of the Giants and Jets with the State of New York rather than their true home, New Jersey." *Suero v. NFL*, No. 22-cv-31 (AKH) (BCM) (S.D.N.Y. Jan. 4, 2022), Complaint at 10, 19, Dkt. No. 3; *see Suero*, 2022 WL 17985657, at *1 (recommending that the complaint be dismissed for failure

---

[2] It is notable that Plaintiffs now describe this action as a "5 million case" (and *potentially* a "$5 billion case") after Plaintiffs initially purported to seek damages of *$258 billion*. Dkt. No. 1 at 26. This evidences Plaintiffs search for headlines over truth.

to state a claim and noting that Plaintiffs' counsel waited to file an amended complaint until after the motion to dismiss was filed). The *Suero* case, like this case, is emblematic of Plaintiffs' counsel's go-to tactics. *See also, e.g.*, *Dimond v. Darden Restaurants, Inc.*, 2014 WL 3377105, at *15 (S.D.N.Y. July 9, 2014) (detailing lengthy history of amendments filed by Plaintiffs' counsel and noting "plaintiff has amended his complaint three times … [i]t goes without saying that he has had ample opportunity to perfect his pleading, yet has failed to do so."); *Avalos v. IAC/Interactivecorp.*, 2014 WL 5493242, at *2 (S.D.N.Y. Oct. 30, 2014) (dismissing pleading filed by Plaintiffs' counsel after history of repeated amendments, noting one argument *did "not pass the laugh test, let alone the plausibility test"*) (emphasis added).

This case is no different. This Court should put a stop to Plaintiffs' counsel's extortionate tactics and waste of judicial and party resources by making findings pursuant to the PSLRA and imposing mandatory sanctions.

### 2.    Plaintiffs' Whack-A-Mole Serial Pleadings

This case began on June 16, 2022, when Plaintiff Keith Johnson filed a class action complaint against Elon Musk, Space Exploration Technologies Corp. dba SpaceX, and Tesla, Inc. Dkt. No. 1. The initial complaint asserted claims for alleged violations of Civil RICO, common law fraud, negligence, false advertising, deceptive practices, products liability, and unjust enrichment. *Id.* ¶¶ 146-210. After an email exchange with counsel to Defendants (and marking the first fundamental shift in the theory of the case), on September 6, 2022, Plaintiff Keith Johnson filed an amended complaint, Dkt. No. 9 ("FAC"), adding several named plaintiffs and additional defendants the Boring Company; Dogecoin Foundation, Inc.; Billy Markus; Jackson Palmer; Dogecoin Developers class representative, Ross Nichol; and Doge Army class representative, Matt Wallace. *Id.* at 6-8. Dropping the initial complaint's claims for negligence, false advertising, deceptive acts, and products liability, the FAC was styled as a putative securities class action,

including claims under Sections 10(b) and 17(a) of the Securities Exchange Act of 1934, and Sections 5 and 12(a)(1) of the Securities Act of 1933. *Id.* ¶¶ 382-523. On December 13, 2022, after Defendants' counsel alerted Plaintiffs' counsel to obligations under the PSLRA with which he had failed to comply, Plaintiffs amended yet again. Dkt. No. 39 ("SAC"). The SAC included factual allegations that arose *after* the FAC and dismissed all but three defendants. Dkt. No. 39 at 3-4. Defendants moved to dismiss, as did the Dogecoin Foundation. Dkt. Nos. 59-62. Shortly after Defendants moved to dismiss the SAC on March 31, 2023, Plaintiffs' counsel told a news outlet:

> After reviewing Defendants' motions to dismiss we are more confident than ever that we will prevail in this case .... Our opposition brief will be filed within 60 days. After the court rules in our favor, we will be filing a motion to add Twitter as a Defendant.

Dkt. No. 88, Ex. 1 (Jim Edwards, *Twitter Will Be Added To Dogecoin Ponzi Scheme Litigation If Elon Musk Cannot Get Case Dismissed*, The Block (Apr. 12, 2023)).

Despite having expressed the intent to oppose—and win—the motion to dismiss in early April, on May 23, 2023, just over one week before Plaintiffs' opposition was due, Plaintiffs' counsel requested leave to stay the briefing schedule on the motion to dismiss pending resolution of his forthcoming motion for leave to file the Third Amended Complaint ("TAC"). Dkt. No. 88, Ex. 2 (Email correspondence from E. Spencer to S. Concannon et al. dated May 23, 2023). In response to an inquiry from counsel to Defendants, Plaintiffs' counsel stated that he could not provide a redlined copy of the proposed TAC "because it was *drafted from scratch*." *Id.*, Ex. 3 (Email correspondence from E. Spencer to S. Concannon et al. dated May 24, 2023). On June 7, 2023, Plaintiffs filed the TAC, dropping the Dogecoin Foundation as a defendant, dropping the Civil RICO claim, and adding, for the first time, a claim for insider trading. Dkt. No. 77. On December 10, 2023, this Court granted Defendants' Motion to Dismiss the TAC without prejudice.

Dkt. No. 103.  In its order, the Court provided Plaintiffs with clear guidelines for its expectations

for any further amended pleading:

> Rule 8, Fed. R. Civ. P. [r]equires a short and plain statement showing
> entitlement to the relief requested.  Rule 9(b), Fed. R. Civ. P. [r]equires
> specificity regarding specified matters.  The complaint should not allege
> evidentiary matter.  ***The TAC is prolix, encumbered with evidentiary
> exhibits, and unduly burdensome for defendants to answer and for the
> court to administer.***  Plaintiff is cautioned to *observe pleading
> requirement*s, and not to mix the function of a complaint and a brief or
> press release.

*Id.* (emphasis added).

Although arguably less "prolix," and "encumbered with evidentiary exhibits," Plaintiffs'

4AC—their *fifth* complaint in this action—still did not satisfy Rule 8's threshold pleading

standard, much less the exacting standards of Rule 9(b) and the PSLRA.  Nor did the 4AC cure

numerous other deficiencies detailed in each of Defendants' prior motions to dismiss, motion for

Rule 11 sanctions, and opposition to Plaintiffs' motion for leave to amend.  Dkt. Nos. 61-62, 86-90,

94-95, 100-01.  Instead, Plaintiffs' fifth attempt to cobble together purported violations of federal

securities law and state law by Defendants—still based on nothing more than Mr. Musk's

innocuous and often silly tweets about the cryptocurrency "Dogecoin" (known for its meme image

of a Shiba Inu dog)—was as fruitless as Plaintiffs' four prior attempts.  As this Court correctly

held in its Order, there is nothing actionable—much less fraudulent—about tweeting words of

support for, or funny pictures about, a widely used cryptocurrency.  Dkt. No. 113.  Statements such

as "Dogecoin might be my fav cryptocurrency.  It's pretty cool," "Dogecoin is underestimated,"

and "SpaceX is going to put a literal Dogecoin on the literal moon," 4AC ¶¶ 60, 90, 103, are

inactionable opinions, quintessential puffery, and not false.  Dkt. No. 110, Argument § III.A; *see*

*Parnoff v. Fireman's Fund Ins. Co.*, 796 F. App'x 6, 8 (2d Cir. 2019) (affirming Rule 11 sanctions

because "[n]o attorney could have reasonably believed that [plaintiff's claim] was warranted under existing law.").

Defendants' motion to dismiss the 4AC also detailed seven *additional* grounds for dismissal, evidencing that Plaintiffs' 4AC was not well-pleaded, legally and factually meritless, unsupported by any reasonable inquiry, and frivolous:

1.      Plaintiffs did not plead any domestic transaction in Dogecoin under the U.S. Supreme Court's decision in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), barring Plaintiffs' federal securities law claims on jurisdictional grounds.  Plaintiffs, at most, pleaded that a *minority* of computers that record Dogecoin transactions are located within the United States.  That is insufficient as a matter of law.  Dkt. No. 110, Argument § I.

2.      Plaintiffs' 4AC contained *no* specific allegations against Tesla, much less the "who," "what," "when," "where," and "why" required for Plaintiffs' claims of market manipulation and insider trading.  Plaintiffs did not allege any *act* or *omission* by Tesla, any *connection* between Tesla and any sale of Dogecoin, or that Tesla owned *any* wallets in which Dogecoin traded.  *Id.*, Argument § II.

3.      Plaintiffs unsuccessfully attempted to repackage their misstatements claim as "market manipulation" under Section 10(b) and Rules 10b-5(a) and (c).  But alleged manipulative conduct and deceptive acts—which Plaintiffs failed to plead—must be *distinct* from alleged misstatements.  And, to the extent Plaintiffs purported to allege a "pump and dump scheme," they did not even allege either Defendant ever *sold* Dogecoin.  *Id.*, Argument § III.B.

4.      Each of Plaintiffs' securities fraud claims failed because Plaintiffs did not plead *any* inference of scienter, much less a strong inference.  The words "scienter" and "motive" do not appear anywhere in the 4AC, and Plaintiffs' handful of boilerplate allegations of "intent" were not

12

supported by particularized facts.  These unparticularized allegations fell far short of the "cogent and compelling" inference of intent required under *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 310 (2007).  *Id.*, Argument § III.C.

5.    Plaintiffs did not plead loss causation because they failed to allege that *any* disclosure revealed to the market an otherwise concealed fact that corrected a prior misstatement or omission.  Indeed, all of Plaintiffs' assertions were to the contrary; according to Plaintiffs, the supposed "truth" behind Defendants' alleged manipulation has been *public knowledge* since Mr. Musk's appearance on *Saturday Night Live* years ago, and that appearance triggered a protracted alleged price decline.  This likewise foreclosed Plaintiffs' claims.  *Id.*, Argument § III.D.

6.    Plaintiffs endeavored to plead insider trading, but did not identify a single piece of material nonpublic information on which Defendants allegedly traded.  Plaintiffs did not identify any fact that Mr. Musk purportedly knew about Dogecoin that was not known to the public. Moreover, even if Plaintiffs pleaded some material nonpublic information in Mr. Musk's unique possession (and they did not), Plaintiffs did not sufficiently plead the existence of a duty, and therefore there was no breach, whether under a corporate insider or corporate outsider theory.  *Id.*, Argument § III.

7.    Each of Plaintiffs' state claims was legally and factually baseless:  (i) Plaintiffs' claim for alleged deceptive trade practices under New York's General Business Law failed, because that statute is inapplicable to securities transactions (even apart from Plaintiffs' failure to plead misleading consumer-directed conduct or that any claim arises out of a New York transaction in a commercial good or service); (ii) Plaintiffs' common law fraud claim suffered from the same pleading deficiencies as their federal securities law claims, and Plaintiffs did not allege with particularity that they relied on the alleged misstatements because they failed to plead that they

even *read* the alleged misstatements; (iii) Plaintiffs' negligent misrepresentation claim failed not only because economic loss is not recoverable under a negligence-based theory, but also because Plaintiffs could not allege sufficient facts to plead that Mr. Musk owed them any duty; and (iv) lastly, Plaintiffs' unjust enrichment claim failed because it was duplicative of Plaintiffs' other claims and because Defendants did not deal directly with Plaintiffs, a requisite element of this claim. *Id.*, Argument § IV.

On August 29, 2024, this Court correctly granted Defendants' motion to dismiss the 4AC with prejudice.

### 3.    Each Of Plaintiffs' Five Complaints Relied On Allegations That Were Demonstrably False Or Entirely Lacking Evidentiary Support

The 4AC also relied on allegations that were demonstrably false or entirely lacking evidentiary support.  Plaintiffs pleaded no facts (much less particularized facts) establishing that the two wallets identified in the 4AC in fact *belonged* to Mr. Musk or that either Mr. Musk or Tesla *ever sold* Dogecoin.  Dkt. No. 110 at 2, 25 n.17 & Background § B.2.  Each of Plaintiffs' four prior complaints likewise incorrectly hinged on the fundamental—and false—premises that certain wallets belonged to Defendants and that Defendants *sold* Dogecoin, when they did not. Dkt. No. 87, Argument § I.  Plaintiffs and Plaintiffs' counsel filed *five* complaints without any reasonable inquiry and premised on allegations known by Plaintiffs to be false and allegations that lacked any evidentiary support.  After being informed of these fundamental inaccuracies, Plaintiffs elected not to withdraw the action, even though the inaccuracies and errors refute the very claims asserted.  Indeed, the substantial violation of Rule 11(b) in the complaints is evident as Defendants' alleged sales of Dogecoin are "the cornerstone of plaintiff's theory of the case and thereby 'infected the entire pleading.'"  *In re Austl.*, 712 F. Supp. 2d at 269 (granting sanctions because without a false allegation, "there [was] no colorable basis whatsoever for alleging scienter").  The

foundational factual allegations in purported support of each of the five complaints in this action are *false*, requiring sanctions under the PSLRA. 15 U.S.C. § 78u-4(c); *see also AJ Energy LLC v. Woori Bank*, 2019 WL 4688629, at *10 (S.D.N.Y. Sept. 26, 2019) (finding Rule 11(b) violation where "the only reasonable inference to be drawn from the documents attached to the FAC is that the transfers upon which all of [plaintiff's] claims were based did not occur").

"A pleading violates Rule 11(b)(3) where 'after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact.'" *In re Austl.*, 712 F. Supp. 2d at 263 (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d. Cir. 2002); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401-02 (1990) (requiring a more thorough inquiry "when an attorney has months to prepare a complaint," rather than "only a few days"), *superseded by rule on other grounds*. Here, Plaintiffs failed to conduct any reasonable inquiry. Dkt. No. 87, Argument § I. In fact, Plaintiffs *ignored* evidence in their possession refuting their claims of ownership. Dkt. No. 89 (Declaration of Jared Birchall in Support of Defendants' Motion for Rule 11 Sanctions); Dkt. No. 90 (Declaration of Suk Patel in Support of Defendants' Motion for Rule 11 Sanctions). In both cases, Plaintiffs' conduct violates Rule 11(b)(3). *Galin v. Hamada*, 283 F. Supp. 3d 189, 203 (S.D.N.Y. Sept. 26, 2017) ("[C]ounsel had an obligation under Rule 11 to withdraw the Complaint because they knew—by that point if not earlier—that their allegations on the central (and dispositive) issue in the case were utterly lacking in support.").

Plaintiffs' substantial violations in the 4AC and each of Plaintiffs' prior complaints remain subject to sanctions. *See In re Austl.*, 712 F. Supp. 2d at 266 (granting sanctions under Rule 11 and the PSLRA for an initial complaint even after an amended complaint was filed). It is not *Defendants'* obligation under the PSLRA to conduct a reasonable inquiry before filing federal securities fraud claims, it's the *Plaintiffs'*—a burden they woefully failed to meet. No attorney who conducted an

inquiry reasonable under the circumstances would have presented to the Court such frivolous allegations, *see* Fed. R. Civ. P. 11(b)(3), nor could an attorney properly maintain these erroneous allegations after being informed they were false.

**C.    Defendants Are Entitled To An Award Of Their Fees And Expenses**

As a result of the substantial violations of Rule 11 set forth above, Defendants are entitled to an award of their full fees and expenses in defending this action.  15 U.S.C. § 78u-4(c)(3)(A); *Gurary*, 303 F.3d at 220.  To date, Defendants have expended approximately $750,000.00 in attorneys' fees (including paralegal and legal support) defending this action, not including fees for the preparation of this motion.  Concannon Decl. ¶ 3.  Defendants have incurred expenses of $200.00.  *Id.* ¶ 4.[3]

<u>**CONCLUSION**</u>

For the reasons set forth above and in pleadings incorporated by reference herein, Plaintiffs failed to comply with Rule 11 in filing this action against Defendants.  Thus, the mandatory provisions of the PSLRA require that Plaintiffs and their counsel be sanctioned.  The appropriate remedy is the assessment of Defendants' attorneys' fees and expenses against Plaintiffs and Plaintiffs' counsel.

---

[3]    Defendants will provide this Court with a full itemization of Defendants' reasonable attorneys' fees and expenses upon request by the Court.

DATED: September 27, 2024          Respectfully submitted,
New York, New York



Alex Spiro
Sarah Heaton Concannon
Brenna Nelinson
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10038
Tel: 202-538-8122
Email: alexspiro@quinnemanuel.com
sarahconcannon@quinnemanuel.com
brennanelinson@quinnemanuel.com

Allison Huebert (*pro hac vice*)
TESLA, INC.
1 Tesla Road
Austin, TX 78725
Tel: 512-557-8797
Email: ahuebert@tesla.com

*Attorneys for Defendants Elon Musk and Tesla, Inc.*