UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COLBY GOROG, JOSHUA FLINT, LOUIS ROBINSON, and MICHAEL LERRO, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> ELON MUSK and TESLA, INC., <br><br> Defendants. | **Civil Action No.: 1:22-cv-05037-AKH** <br><br><br> **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO AMEND, MAKE ADDITIONAL FINDINGS, AND AMEND FINAL JUDGMENT** |

*Submitted By:*

EVAN SPENCER LAW, PLLC
Evan Spencer, Esq.
305 Broadway, 7th Floor
New York, NY 10007
(917) 547-4665
Evan@EvanSpencerLaw.com
EvanSpencerLaw.com

*Attorney for Plaintiffs*

# <u>TABLE OF CONTENTS</u>

LEGAL STANDARD ....................................................................................6

ARGUMENT.............................................................................................7

I.     THIS CASE WAS BROUGHT IN GOOD FAITH
UPON REASONABLE INQUIRY.....................................................7

II.    THE COURT ALREADY DECLINED TO SANCTION MR. SPENCER
AND FOUND THAT THIS CASE IS NOT FRIVOLOUS..............................10

III.   NO 'SUBSTANTIAL' VIOLATION OF RULE 11 OCCURRED...................11

1.  Plaintiffs Pleaded Domestic Transactions per *Morrison*
in Conformity with Rule 11.................................................12

2.  Plaintiffs Pleaded Specific Allegations Against Tesla
in Conformity with Rule 11.................................................13

3.  Plaintiffs Pleaded Market Manipulation
in Conformity with Rule 11.................................................13

4.  Plaintiffs Pleaded Scienter
in Conformity with Rule 11.................................................14

5.  Plaintiffs Pleaded Loss Causation
in Conformity with Rule 11.................................................15

6.  Plaintiffs Pleaded Insider Trading
in Conformity with Rule 11.................................................16

7.  Plaintiffs' State Law Claims Were Pleaded
in Conformity with Rule 11.................................................17

IV.   ANY VIOLATION OF RULE 11 WAS DE MINIMIS AND THE
PSLRA DOES NOT PERMIT SANCTIONS FOR
NON-FRIVOLOUS CLAIMS................................................................18

V.    SANCTIONS SHOULD NOT BE AWARDED FOR PROCEEDINGS
OCCURRING PRIOR TO DEFENDANTS' APPEARANCE............................19

VI.   FOR EIGHT MONTHS DEFENDANTS FAILED TO PROVIDE
SAFE HARBOR NOTICE REGARDING THE
FOURTH AMENDED COMPLAINT................................................20

VII.    DEFENDANTS' FEE REQUEST IS GROSSLY EXCESSIVE
        AND UNATTESTED BY NECESSARY EVIDENCE....................................21

VIII.   DEFENDANTS' AD HOMINEM ATTACK ON PLAINTIFFS'
        COUNSEL IS FRIVOLOUS AND EXCESSIVE.............................................22

IX.     SANCTIONS WILL IMPOSE AN UNREASONABLE BURDEN
        ON PLAINTIFFS AND FAILURE TO MAKE SUCH AN AWARD
        WILL NOT IMPOSE A GREATER BURDEN ON DEFENDANTS.............24


CONCLUSION..................................................................................................................25

## **TABLE OF AUTHORITIES**

**CASES**                                                                                              **Page(s)**

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
579 F.3d 143 (2d Cir. 2009)..................................................................................................21

*Cox v. Microsoft Corp.*,
778 N.Y.S.2d 147 (1st Dep't 2004).................................................................................18-19

*Lucasfilm, Ltd. v. MMG*,
82 F. Supp. 2d 897 (2002) ……………………………………………………………22

*Dimond v. Darden Restaurants, Inc.*,
2014 WL 3377105 (S.D.N.Y. July 9, 2014)........................................................................23

*Eastway Constr. Corp. v. City of New York.*,
762 F.2d 243 (2d Cir.1985) ............................................................................................7, 16-17

*Greenberg v. Chrust*,
297 F. Supp. 2d 699 (S.D.N.Y. 2004) ............................................................................6, 16, 18

*Gurary v. Nu-Tech Bio-Med, Inc.*,
303 F.3d 212 (2d Cir. 2002) ...........................................................................................6, 7, 25

*Myun-Uk Choi v. Tower Rsch. Cap. LLC*,
890 F.3d 60 (2d Cir. 2018) .................................................................................................18

*Newman v. Fam. Mgmt. Corp.*,
530 F. App'x 21 (2d Cir. 2013) ..........................................................................................18

*Prudential Ins. Co. of Am. v. Dewey, Ballantine, Bushby, Palmer & Wood*,
80 N.Y.2d 377 (1992) ........................................................................................................18

*Sharette v. Credit Suisse Int'l*,
127 F. Supp. 3d 60 (S.D.N.Y. 2015) ..................................................................................13

*Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*,
186 F.3d 157 (2d Cir. 1999) ..........................................................................................6, 10, 19

*Simpson v. Putnam Cnty. Nat. Bank of Carmel*,
112 F. Supp. 2d 284 (S.D.N.Y. 2000) ................................................................................16

*Suero v. NFL*,
2022 WL 17985657 ...................................................................................................23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ...............................................................................................14

OTHER AUTHORITIES

15 U.S.C. § 78u–4(c) ...........................................................................7, 12, 19, 21, 24

Fed. R. Civ. P. 12...............................................................................................13, 15, 17

Fed. R. Civ. P. 11...............................................................................................passim

Fed. R. Civ. P. 15 ...............................................................................................20

Plaintiffs Colby Gorog, Joshua Flint, Michael Lerro, and Louis Robinson ("Plaintiffs") respectfully submit this memorandum of law, declarations of Plaintiffs' counsel and Plaintiffs, and the curriculum vitae and expert narrative report of Dr. Stan Smith (Exhibits "A" and "B") in opposition to Defendants Elon Musk's and Tesla, Inc.'s ("Defendants") Motion to Amend, Make Additional Findings, and Amend Final Judgment, ECF Nos. 116 and 117.

## LEGAL STANDARD

"[T]he PSLRA establishes a rebuttable presumption that the appropriate sanction for a 'substantial failure of any complaint to comply with any requirement of Rule 11(b) ... is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred in the action.'" *Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 178 (2d Cir. 1999), *quoting* 15 U.S.C. § 78u–4(c)(3)(A)(ii) (emphasis in the original). However, not just any violation of Rule 11(b) will suffice to raise this presumption. "In order for a sanction of reasonable attorney's fees and costs to be assessed against a plaintiff, the PSLRA requires the Court to find that a 'substantial' violation of Rule 11(b) has occurred." *Gurary v. Nu-Tech Bio-Med, Inc.*, 303 F.3d 212, 215 (2d Cir. 2002).

In determining whether sanctions are warranted, "the test is whether an attorney's conduct was objectively reasonable at the time he or she signed the pleading… Rule 11 sanctions are only appropriate 'where it is patently clear that a claim has absolutely no chance of success under existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands....' This is the case as sanctions must be imposed carefully lest they chill the creativity essential to the evolution of the law." *Greenberg v. Chrust*, 297 F. Supp. 2d 699, 703 (S.D.N.Y. 2004) *quoting Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985).

If the Court finds that a *substantial* violation of Rule 11(b) has occurred, the presumption in favor of sanctions, "may be rebutted… upon proof that 'the violation of Rule 11(b) was de minimis' or that the sanctions 'will impose an unreasonable burden on that party or attorney and would be unjust, and the failure to make such an award would not impose a greater burden on the party in whose favor sanctions are to be imposed.'" *Gurary*, supra, 303 F.3d at 215, *quoting* 15 U.S.C. § 78u–4(c)(3)(B).

## ARGUMENT

### I.    THIS CASE WAS BROUGHT IN GOOD-FAITH UPON REASONABLE INQUIRY

This action was commenced on June 16, 2022, initially under civil RICO, as a putative class action. The initial complaint was the product of hundreds of hours of research by Plaintiffs' Counsel, Evan Spencer, into crypto markets, into Defendant Elon Musk's activities promoting the Dogecoin cryptocurrency, and the effect those activities had on the market. That complaint suffices to show, in accordance with Rules 8 and 9(b), both that Musk was solely responsible for the meteoric rise and precipitous fall of Dogecoin's trading price and volume between 2019 and 2021, *and* that he realized he was encouraging the masses to buy an intrinsically valueless asset, whose risk he grossly understated. ECF No. 1.

Over the following several months, Mr. Spencer received an outpouring of interest from hundreds of potential lead plaintiffs who had collectively sustained over millions of dollars in losses investing in Dogecoin. Over 100 of those individuals retained Mr. Spencer, including a cancer patient who lost his life savings; the mother of a man who committed suicide after losing his life savings; and an honorably discharged U.S. Army combat veteran who lost tens of thousands of dollars. To all appearances, these very real injuries were directly attributable to Musk's promotional activity and its intentional effects on Dogecoin's trading price.

In light of subsequent announcements clarifying that the SEC considers cryptocurrency a security, on September 6, 2022, Plaintiffs amended their complaint as a matter of course, per Fed. R. Civ. P. 15(a)(1)(B), to allege violations of the Securities Exchange Act. The 115-page FAC alleges dozens of misrepresentations with particularity. It also incorporates numerous scientific studies which strongly suggest that Dogecoin's trading price and volume were solely attributable to Musk's activity, and that he was knowingly manipulating the market. *See*, e.g., ECF No. 9, ¶¶ 306-325. The FAC was, again, the product of hundreds of hours of research, this time primarily by New Jersey attorney Santos Perez, a now-former associate of Mr. Spencer (see ECF 119, memorandum of law, affidavit, and exhibits "A" – "D" filed by Mr. Perez).

In the PSLRA sanctions context, the Second Circuit has made clear that plaintiffs must be afforded a certain amount of latitude to plead their claims. "'[T]he extent to which a litigant has researched the issues and found some support for its theories even in minority opinions, in law review articles, or through consultation with other attorneys should certainly be taken into account in determining whether paragraph (b)(2) of Rule 11 has been violated.'" *Simon Debartolo Group*, supra, 186 F.3d at 166 (2d Cir.1999) (quoting Fed. R. Civ. P. 11 advisory committee note to 1993 amendments).

During the pendency of the FAC, Mr. Spencer consulted with numerous other attorneys, including at reputable and well-resourced plaintiffs' class action and securities litigation firms. Every single one of these attorneys believed that this case was viable, but none wanted to risk entering a case against Elon Musk before seeing the risk reduced in further proceedings. Before Defendants had even appeared in this case, partners at one major firm even penned a twenty-five page memo to their senior leadership in support of taking the case over from Mr. Spencer, but

senior partners ultimately declined. Mr. Spencer has been made aware of continuing interest from several of these firms, should the Court's dismissal be overturned at the Second Circuit.

Not just the FAC, but each amended complaint, has incorporated scientific studies that suggest that Musk was knowingly manipulating the market for Dogecoin. *See e.g.*, ECF No. 9, ¶¶ 306-325, *and* ECF No. 77, ¶¶ 160-165. Plaintiffs have also repeatedly alleged particularized facts showing that Musk was actively and substantially trading Dogecoin the entire time he promoted it, through one specific wallet that he publicly, if inadvertently, admitted he owned. *Id.*, ¶¶ 179-184; *and see* ECF No. 108, ¶¶ 165-173. In light of such allegations, it cannot be seriously argued that this case was brought without reasonable inquiry. Furthermore, in March 2024, Dr. Smith provided a report which concluded that an estimated class of 7 million members had lost approximately $5 billion in the aggregate, during the class period.[1]

Plaintiffs have also made ample and particularized allegations of misstatements. Although the Court held that these statements were mere puffery, ECF No. 113, at least as alleged by Plaintiffs, many of Musk's misrepresentations were quite glaring. It cannot be seriously argued that Plaintiffs made these allegations in bad faith. For example, Musk suggested that his concern about Dogecoin was disinterested, ECF No. 108, ¶¶ 92-95, all while failing to disclose that he was one of the top Dogecoin holders and was trading at substantial volume. *Id.*, ¶¶ 77, 165-173. He then targeted unsophisticated investors with promotional outreach, *id.*, ¶¶ 157-164, and encouraged them to hold on the cusp of a market downturn. *Id.*, ¶¶ 106-109. He repeatedly made specific promises to promote Dogecoin through his companies, which were never fulfilled. ECF No. 77, ¶¶ 114, 117, 130-136. And he publicly lied about the intimacy of his ties to Dogecoin's

---

[1] This report was not immediately exchanged with Defendants nor filed with the Court because Plaintiffs were awaiting the Court's decision on Defendants' motion to dismiss the Fourth Amended Complaint.

institutional backing. ECF No. 108, ¶¶ 218-223. These are only a few of the many examples that show Plaintiffs' Counsel filed this action upon reasonable inquiry.

Moreover, to the extent that Defendants seek sanctions based on the Third Amended Complaint ("TAC"), that amendment was filed *with Defendants' stipulation*. ECF No. 69. And to the extent that Defendants seek sanctions based on the Fourth Amended Complaint ("4AC"), that amendment was filed not only with leave of the Court, but in strict accordance with the Court's instructions. On December 10, 2023, the Court issued its Order dismissing the TAC without prejudice, and granting leave to amend. ECF No. 103. That Order specifically instructed Plaintiffs to reduce the volume of the pleadings and remove exhibits, and Plaintiffs did so, filing a 4AC that was eleven pages shorter, and contained forty-four fewer exhibits. Having declined to enter any Rule 11(b) finding based on the TAC, ECF No. 105, the Court should not impose sanctions based on a substantially similar 4AC which was filed in good-faith accordance with the Court's instructions.

## II.     THE COURT HAS ALREADY DECLINED TO SANCTION MR. SPENCER AND FOUND THAT THIS CASE IS NOT FRIVOLOUS

As a threshold matter, the Court should not enter Rule 11(b) findings against Mr. Spencer when it has already found that his conduct is not sanctionable under the Rule. ECF No. 105. In response to an initial motion to dismiss, ECF Nos. 61 and 62, Plaintiffs on June 7, 2023, filed the Third Amended Complaint ("TAC"), ECF No. 77, *with Defendants' stipulation*. ECF No. 69. Yet on July 14, 2023, Defendants noticed a motion for Rule 11 sanctions against Mr. Spencer, ECF No. 86, not only seeking dismissal of the TAC, but making allegations regarding virtually all of Mr. Spencer's alleged litigation conduct up to July 2023. *Id*. That motion was nearly identical to Defendants' now-pending motion, with many of their earlier arguments now rehashed verbatim. *Compare* ECF No. 87 *and* ECF No. 117.

On December 11, 2023, the Court denied Defendants' earlier motion for sanctions, explicitly finding that, "Plaintiffs have presented non-frivolous and good-faith issues to litigate, which are appropriate for dispositive motions and at trial." ECF No. 105. Defendants' now-pending motion makes no reference to that earlier Order, and fails to argue why the Order was mistaken. The Court, having declined to impose sanctions on the basis of the very same arguments made in Defendants' July 2023 motion, should not permit those arguments to be re-litigated now, with regard to a substantially similar amended complaint. As of December 2023, the Court held clearly that this action was brought in good faith. To the extent Defendants' current motion concerns matters pre-dating that Order, the Court should decline to entertain Defendants' arguments.

## III.    NO 'SUBSTANTIAL' VIOLATION OF RULE 11 OCCURRED

Though Plaintiffs' pleadings are imperfect, there has been no "substantial" violation of Rule 11(b). Defendants contend generally that Plaintiffs, "engag[ed] in a series of whack-a-mole complaints, none of which redressed [their] inability to plead that either Defendant ever *sold* Dogecoin or that specific cryptocurrency wallets in fact *belong* to Defendants." ECF No. 117, p. 6. That is categorically false. Plaintiffs have repeatedly alleged, with particularly, that Musk was trading heavily through one specific Dogecoin wallet he publicly, if inadvertently, admitted to owning. ECF No. 77, ¶¶ 179-184; *and see* ECF No. 108, ¶¶ 165-173.

Defendants further contend that, subsequent to entry of the Court's dismissal Order, ECF No. 113, "Plaintiffs doubled-down again, filing a Notice of Appeal and making a settlement demand on Defendants—actions evidencing that this case… was intended for an improper purpose, namely, to litigate in the press and extract a settlement from Defendants." ECF No. 117, pp. 6-7. Yet there has been no press coverage of Mr. Spencer's recent settlement demand, and

Defendants fail to cite any. Indeed, Mr. Spencer's recent settlement demand was made privately to Defendants via email and entitled "CONFIDENTIAL." The only publicity it has incurred results from *Defendants* filing that private email into the docket, ECF No. 118 (Exhibit A), in violation of the Court's Order of December 11, 2023, which clearly provides that, "My ruling in this instance does not prevent either side from seeking sanctions if there are further public disclosures of private correspondence." ECF No. 105, p. 2.

Defendants then present a series of seven numbered paragraphs, setting forth purported reasons why the "4AC was… unsupported by any reasonable inquiry." ECF No. 117, p. 12. Without re-litigating matters of pleading sufficiency, in light of Rule 11 and the "substantial" violation requirement of 15 U.S.C. § 78u-4(c)(3)(A)(ii), Plaintiffs now address each of Defendants' seven arguments in turn.

### 1. Plaintiffs Pleaded Domestic Transactions per *Morrison* in Conformity with Rule 11

Defendants contend that, "Plaintiffs did not plead any domestic transaction in Dogecoin under the U.S. Supreme Court's decision in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010)." ECF No. 117, p. 12. That is simply untrue. Defendants are of course free to argue in the 12(b)(5) context that Plaintiffs' domestic transactions allegations were insufficient. But to say that those allegations run afoul of Rule 11(b) is just not serious. Per *Morrison*, Plaintiffs' domestic transactions allegations are clear, robust, and more than sufficient to meet the pleading standard under Rule 8. The Court can see for itself. ECF No. 77, ¶¶ 40-59 *and* ECF No. 108, ¶¶ 41-50. There is no need to belabor this argument and Defendants should not have raised this issue now.

2. **Plaintiffs Pleaded Specific Allegations Against Tesla in Conformity with Rule 11**

Defendants next contend that, "Plaintiffs' 4AC contained *no* specific allegations against Tesla." ECF No. 117, p. 12. Defendants are again conflating Rule 12(b)(5) with Rule 11. Plaintiffs have repeatedly and particularly alleged that in his capacity as Tesla CEO, Musk made false public promises that Tesla would promote and utilize Dogecoin in a way that would increase its long-term value. ECF No. 9, ¶¶ 188-198, 253, 295, 348, 398-400, 418, 435, 442. 474, 478; *and* ECF No. 77, ¶¶ 130, 134-135; *and* ECF 108, ¶¶ 135, 137-139. These promises were made at times when Tesla was trading Dogecoin. ECF No. 77, ¶ 176n.23; *and* ECF No. 108, ¶¶ 180-183, 191-192. Clearly, Plaintiffs brought these allegations against Tesla after reasonable inquiry, regardless of pleading sufficiency.

3. **Plaintiffs Pleaded Market Manipulation in Conformity with Rule 11**

Defendants next contend that, "manipulative conduct and deceptive acts—which Plaintiffs failed to plead—must be *distinct* from alleged misstatements." ECF No. 117, p. 12. But Plaintiffs did not fail to plead manipulative conduct. "The gravamen of manipulation is deception of investors into believing that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand, not rigged by manipulators." *Sharette v. Credit Suisse Int'l*, 127 F. Supp. 3d 60, 77–78 (S.D.N.Y. 2015). Here, Plaintiffs alleged that Musk traded Dogecoin through a software system that made hundreds of thousands of tiny, automated trades, in a manner that concealed his trading activity from the market. ECF No. 108, ¶¶ 169-173. Plaintiffs also alleged that Tesla began accepting Dogecoin for purchases of a very limited handful of petty merchandise items as a marketing gimmick intended to lend false credence to Musk's misstatements about Dogecoin's supposed utility as currency. *Id*., ¶¶ 135, 137-139. Clearly, these are allegations of "conduct… distinct from alleged misstatements."

With regard to market manipulation, Defendants further contend that, "to the extent Plaintiffs purported to allege a 'pump and dump scheme,' they did not even allege either Defendant ever *sold* Dogecoin." ECF No. 117, p. 12. Again, that is flat-out untrue: Plaintiffs have repeatedly alleged, with particularly, that Musk was trading heavily through a specific Dogecoin wallet he publicly, if inadvertently, admitted to owning, ECF No. 77, ¶¶ 179-184; *and see* ECF No. 108, ¶¶ 165-173; and that Tesla was trading Dogecoin at times when Musk was making his public misstatements. ECF No. 77, ¶ 176n.23; *and* ECF No. 108, ¶¶ 180-183, 191-192. Again: whatever the pleading sufficiency of these allegations, it cannot be seriously argued that they run afoul of Rule 11(b).

### 4. Plaintiffs Pleaded Scienter in Conformity with Rule 11

Defendants next contend that, "Each of Plaintiffs' securities fraud claims failed because Plaintiffs did not plead *any* inference of scienter, much less… the 'cogent and compelling' inference of intent required under *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 310 (2007)." ECF No. 117, pp. 12-13. But Defendants are simply ignoring and rewriting what Plaintiffs have pleaded. In *Tellabs*, the Supreme Court held that,

> To determine whether the plaintiff has alleged facts that give rise to the requisite strong inference of scienter, a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff. The inference that the defendant acted with scienter need not be irrefutable, *i.e.,* of the smoking-gun genre, or even the most plausible of competing inferences…" *Id*., 551 U.S. at 323–24.

Here, Plaintiffs' allegations indeed came close to "the smoking gun genre," with regard to Musk's public, if inadvertent, announcement that he owned one particular Dogecoin wallet that was trading at an exceptionally high volume at all times relevant. ECF No. 77, ¶¶ 179-184; *and see* ECF No. 108, ¶¶ 165-173. Plaintiffs further alleged that Musk targeted unsophisticated investors with promotional outreach, *id*., ¶¶ 157-164, then encouraged them to hold on the cusp

of a market downturn as institutional investors were offloading, *id.*, ¶¶ 106-109, and publicly lied about the depth of his ties to Dogecoin's institutional backing. *Id.*, ¶¶ 218-223. These allegations clearly raise "the 'cogent and compelling' inference of intent required under *Tellabs*." In any case, pleading sufficiency is not at issue, because the fee shifting provisions of the PSLRA are rooted in Rule 11(b), not Rule 12(b)(5). Viewed in that light, Defendants' assertion that Plaintiffs "failed [to] plead *any* inference of scienter" is quite simply false.

**5. Plaintiffs Pleaded Loss Causation in Conformity with Rule 11**

Defendants next contend that, "Plaintiffs did not plead loss causation because they failed to allege that *any* disclosure revealed to the market an otherwise concealed fact that corrected a prior misstatement or omission." ECF No. 117, p. 13. Here, as usual, Defendants are throwing sand in the Court's eyes and re-writing Plaintiffs' pleadings.

Plaintiffs' admittedly novel theory of loss causation was, first of all, that Musk downplayed Dogecoin's risks, ECF No. 108, ¶¶ 85-86, and held himself out as a disinterested champion of small-time investors, *id.*, ¶¶ 89-95, 128-133, while concealing his outsized interest in Dogecoin from the market. *Id.*, ¶¶ 165-173. Then, Musk's May 2021 appearance on *Saturday Night Live*, where he flippantly referred to Dogecoin as "a hustle," sufficiently put the lie to his motives that it spooked investors to the point of proximately—and *immediately*—causing a massive sell-off and market crash. *Id.*, ¶¶ 112-119.

Musk's power to leverage social media and sway investors by making questionable representations about cryptocurrency was an absolutely appropriate subject for the theory Plaintiffs tested in this case. "Our Court of Appeals has cautioned that an award of sanctions is permitted only if 'it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or

reverse the law as it stands.' As our Circuit instructed in *Eastway,* "[c]ourts must strive to avoid the wisdom of hindsight ... and any and all doubts must be resolved in favor of the signer.'" *Simpson v. Putnam Cnty. Nat. Bank of Carmel*, 112 F. Supp. 2d 284, 289 (S.D.N.Y. 2000) *quoting Eastway Constr. Corp.,* 762 F.2d at 254.

    This case arose at the intersection of the brave new world of social media, and the wild west of cryptocurrency. Accordingly, *there are no existing precedents* for the theory of loss causation Plaintiffs have advanced. But Rule 11 explicitly allows "a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," Fed. R. Civ. P. 11(b)(2), and "arguments for a change of law are not required to be specifically so identified." *Simon DeBartolo Grp*, supra, 186 F.3d at 166 (2d Cir. 1999). The Court should not sanction Plaintiffs for heeding this mandate, "lest [it] chill the creativity essential to the evolution of the law." *Greenberg v. Chrust*, supra, 297 F. Supp. 2d at 703 (S.D.N.Y. 2004).

### 6. Plaintiffs Pleaded Insider Trading in Conformity with Rule 11

    Defendants next contend that, "Plaintiffs endeavored to plead insider trading, but did not identify a single piece of material nonpublic information on which Defendants allegedly traded. Plaintiffs did not identify any fact that Mr. Musk purportedly knew about Dogecoin that was not known to the public." ECF No. 117, p. 13.

    Again, in keeping with the untested set of facts in this case, Plaintiffs' theory was that Musk and Tesla traded on material nonpublic information known only to Musk—namely, the timing of his public communications about Dogecoin which invariably pumped its trading price and volume, and were the only real factor in Dogecoin's inflated trading price. ECF No. 77, ¶ 161, 176n.23, 177; *and* ECF No. 108, ¶¶ 153, 177-178, 180-183, 191-192.

Defendants further contend, regarding insider trading, that, "even if Plaintiffs pleaded some material nonpublic information in Mr. Musk's unique possession… Plaintiffs did not sufficiently plead the existence of a duty, and therefore there was no breach, whether under a corporate insider or corporate outsider theory." ECF No. 117, p. 13. Defendants are once again conflating the standard for legal insufficiency under Rule 12(b)(5) with the Rule 11(b) standard that is applicable here, under the PSLRA. Again, in keeping with the unprecedented and untested set of facts in this case, Plaintiffs pleaded that Musk incurred a fiduciary duty to Dogecoin investors in numerous ways. First, Musk oversaw the development of the blockchain and seated his agent on the board of the Dogecoin Foundation, Inc. ECF No. 108, ¶¶ 62 n.1, 122, 126, 210-213, 216-219. Second, Musk held himself out as "the Dogefather" and "Dogecoin CEO." *Id*., ¶¶ 59-60, 66. He took singular, unprecedented and highly visible actions to encourage investment. *Id*., ¶¶ 78-83, 97, 106-109, 111-112, 136, 152-156. He publicly urged a major crypto exchange to offer Dogecoin, *id*., ¶ 101, and publicly harangued the CEO of another major exchange on behalf of investors. *Id*., ¶¶ 128-134. He knew that investors were heavily relying on him, and on him alone, to safeguard the value of their investment. *Id*., ¶¶ 80-81, 92-94, 98-99, 106-109, 111, 163-164. Musk was not just a Dogecoin *insider*, but starting at least from February 2021, he *was* Dogecoin for all purposes of investor confidence and public relations. *Id*., ¶¶ 152-156.

Whether, under this set of facts, Musk incurred a duty to Dogecoin investors is a novel question of law that was not specifically addressed by the Court's dismissal Order. But one thing is certain: Rule 11 sanctions are only appropriate, "where it is patently clear that a claim has absolutely no chance of success under existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands...." *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985). Sanctioning Plaintiffs for pleading a novel

theory, "to extend, modify or reverse the law," *id.*, would, "chill the creativity essential to the evolution of the law." *Greenberg v. Chrust*, 297 F. Supp. 2d 699, 703 (S.D.N.Y. 2004)

### 7. Plaintiffs' State Law Claims Were Pleaded in Conformity with Rule 11

Finally, Defendants contend that, "Each of Plaintiffs' state law claims was legally and factually baseless." ECF No. 117, pp. 13-14. Defendants cite no authority as to why these state law claims "substantially" violated Rule 11(b) under the PSLRA. Because "[t]he elements of claims for federal securities fraud and New York common law fraud are nearly identical," *Newman v. Fam. Mgmt. Corp.*, 530 F. App'x 21, 24 (2d Cir. 2013), Plaintiffs' common law fraud claim is no more sanctionable than their Rule 10b-5 claims. Because constructive privity is adequately pleaded where, "the representations at issue had been made for the very purpose of inducing action on the part of the buyer," *Prudential Ins. Co. of Am. v. Dewey, Ballantine, Bushby, Palmer & Wood*, 80 N.Y.2d 377, 383 (1992), Plaintiffs' negligent misrepresentations claim is no more sanctionable than their claim for insider trading. And Defendants are mistaken where they assert that, "Defendants did not deal directly with Plaintiffs, a requisite element of" unjust enrichment. ECF No. 117, p. 14. This is because, under New York law, the requirement of a sufficient connection "is a modest one" that "requires no direct relationship between plaintiff and defendant." *Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018). All it requires is an allegation, "that would indicate… at least an awareness by defendant of plaintiff's existence." *Id*. The *Myun-Uk Choi* court also noted that in *Cox v. Microsoft Corp.*, "the Appellate Division sustained an unjust enrichment claim brought against Microsoft by indirect purchasers of Microsoft's software products, *i.e.*, plaintiffs who had no direct relationship with Microsoft." *Id.*, *citing* 778 N.Y.S.2d 147 (1st Dep't 2004).

For PSLRA purposes, clearly, Defendants' state law claims did not "substantially" violate Rule 11(b).

### IV.    ANY VIOLATION OF RULE 11(b) WAS DE MINIMIS AND THE PSLRA DOES NOT PERMIT SANCTIONS FOR NON-FRIVOLOUS CLAIMS

Even where a "substantial" violation of Rule 11(b) has occurred, meritorious claims in the same complaint are not sanctionable. "We doubt that the [PSLRA] meant for the district court to presume that when a *single claim* in an action is frivolous, the proper sanction is reasonable attorneys' fees and other expenses incurred in the *entire action*." *Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 178 (2d Cir. 1999), *citing* 15 U.S.C. § 78u–4(c)(3)(A)(ii) (emphasis in the original). Thus, to the extent that any claim asserted by Plaintiffs could have been researched more thoroughly, this does not merit an award of, "fees and other expenses incurred in the *entire action*." *Id*.

Furthermore, "the presumption in favor of sanctions may be rebutted… upon proof that 'the violation of Rule 11(b) was de minimis…'" *Gurary*, supra, 303 F.3d at 215, *quoting* 15 U.S.C. § 78u–4(c)(3)(B). Plaintiffs' previous amendment is substantially similar to the one that was dismissed, and yet the Court declined to sanction it, stating that, "Plaintiffs have presented non-frivolous and good-faith issues to litigate, which are appropriate for dispositive motions and at trial." ECF No. 105. Accordingly, any Rule 11(b) violation was "de minimis," not "substantial."

### V.    SANCTIONS SHOULD NOT BE AWARDED FOR PROCEEDINGS OCCURRING PRIOR TO DEFENDANTS' APPEARANCE

Under the PSLRA, a defendant may only be awarded "reasonable" attorney's fees. 15 U.S.C. § 78u–4(c)(3)(A)(ii). Defendants entered their initial appearance on January 18, 2023, ECF No. 48, more than seven months after this action commenced. Yet they repeatedly posit arguments about proceedings that occurred prior to their appearance. *See*, *e.g.*, ECF No. 117, p. 3

("After filing the first complaint in this action on June 12, 2022, Plaintiffs amended *four* times"). Just as the Court should decline to entertain Defendants' arguments about proceedings pre-dating its Order of December 2023, ECF No. 105, the Court should also view with skepticism Defendants' demand for fees going all the way back to July 2022, ECF no. 118, p. 1, ¶ 3, more than six months before their entries of appearance.

This action was commenced in June 2022. In September 2022, Plaintiffs amended as a matter of course under Rule 15(a)(1)(B). Then, on December 13, 2022, with leave of the Court, Plaintiffs filed their Second Amended Complaint ("SAC"), for the sole purpose of submitting lead plaintiff certifications required by the PSLRA. ECF No. 38. Only in January 2023, seven months after this action was commenced, did attorneys for Defendants enter their appearances. ECF No. 48. Ultimately, Defendants responded to only three complaints—the SAC, and two subsequent amendments. Two amended complaints is hardly a wild or abnormal number of amendments in a federal securities action. Defendants never responded to the initial complaint, or the FAC. Clearly, Defendants cannot argue that they are entitled to fees over pleadings they never responded to.

## VI.   FOR EIGHT MONTHS DEFENDANTS FAILED TO PROVIDE SAFE-HARBOR NOTICE REGARDING THE FOURTH AMENDED COMPLAINT

Defendants have shown no hesitation to utilize Rule 11 as a tool to seek dismissal of this entire case. Indeed, dismissal of the TAC was the primary relief sought by their earlier motion for sanctions in July 2023. ECF Nos. 86 and 87. Yet although the TAC did not differ fundamentally from the 4AC, Defendants never sought Rule 11 sanctions based on the 4AC at any time throughout the eight months that the 4AC was operative.

"Nothing in the PSLRA prevents an adversary from filing a Rule 11 motion at an earlier point in the litigation, before heavy costs have accrued. Even in the context of the PSLRA, a

Rule 11 letter from an opposing counsel may bring new facts to light, or prompt a challenged attorney to reconsider. Thus, in determining whether a party's fees are 'reasonable' under 15 U.S.C. § 78u–4(c)(3), a district court should consider whether the opposing party's failure to move for Rule 11 sanctions more promptly may have unnecessarily increased the costs, and thereby unnecessarily increased the sanctions. If so, a 'reasonable' award might be only the amount of fees that would likely have been incurred if a Rule 11 motion had been promptly made." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 154–55 (2d Cir. 2009).

The 4AC was filed on January 22, 2024, and dismissed only on August 29, 2024. During the eight months that the 4AC was operative, there was nothing stopping Defendants from serving Mr. Spencer a 21-day safe harbor notice in accordance with Rule 11(c)(2), exactly as they did while the TAC was pending. Having moved for sanctions against Plaintiffs over the filing of the TAC, Defendants now bring a duplicative motion seeking sanctions over the filing of the 4AC after declining to seek sanctions, or provide safe harbor, during the eight months that the 4AC was operative. Accordingly, the Court should view Defendants' current arguments with skepticism.

## VII.   DEFENDANTS' FEE REQUEST IS GROSSLY EXCESSIVE AND UNATTESTED BY NECESSARY EVIDENCE

Defendants are demanding $750,000 in attorneys' fees. Supposing an astronomical rate of $1,500 per hour, that would mean Defense Counsel expended 500 hours drafting three substantially similar 12(b)(5) motions and a totally baseless (and elective) motion for sanctions that is effectively duplicated in the form of their now-pending motion. *Compare* ECF No. 87 *and* ECF No. 117.

Defendants have also failed to provide even the slightest indication that there is any basis for their fee demand. The only attestation Defendants provided the Court for their sky-high

estimate of fees is an unsworn declaration which fails to set forth their hourly rates nor even the number of hours expended, despite the declarant's averment that there are invoices attesting to such matter, which she claims to have reviewed. ECF No. 118. Mr. Spencer has no way of responding to Defendants' arbitrary fee demand without notice of its basis. Thus, imposing the requested sanction would violate due process.

## VIII.    DEFENDANTS' AD HOMINEM ATTACK ON PLAINTIFFS' COUNSEL IS FRIVOLOUS AND EXCESSIVE

Defendants now-pending motion describes a mundane settlement demand as "extortionate tactics," and puts forth a broad *ad hominem* attack on Mr. Spencer's alleged conduct of earlier cases. This is not the first time that Defendants have personally and gratuitously attacked Mr. Spencer. *See* ECF No. 87, pp. 4-5 ("Spencer has a history of repeatedly seeking leave to amend…"). Defendants made these exact same personal allegations once before, almost verbatim, the last time they moved for sanctions. *Compare* ECF No. 87, pp. 4-5; *and* ECF No. 117, pp. 8-9. The Court declined to entertain those attacks and dismissed Defendants' motion for sanctions. ECF No. 105. Defendants' cherry-picked quotes from three judicial decisions adverse to Mr. Spencer, and their *ad hominem* attacks on his character, are frivolous, excessive, and cannot show that any "substantial" violation of Rule 11(b) occurred in *this* case.

Over the course of his 27-year career, Mr. Spencer has never been sanctioned, disciplined or suspended by the New York Committee on Character & Fitness, nor by any New York State or federal court. In ten years of solo practice, he has won or settled most of his cases while having the courage to take on powerful defendants that other attorneys fear. Mr. Spencer has successfully litigated numerous federal civil rights cases and performed substantial pro bono work for indignant clients. He also defeated billionaire George Lucas creator of *Star Wars* in a

First Amendment Free Speech case in California. *Lucasfilm, Ltd. v. MMG*, 182 F. Supp.

2d 897 (2002)

Although Mr. Spencer has litigated over 1,000 cases in 27 years, Defendants cherry-picked quotes from decisions in three of Mr. Spencer's earlier cases, to support their contention that his litigation behavior in *this* case is sanctionable. However, ***Mr. Spencer has never been sanctioned and in those three cases the Defendants never even filed for sanctions.*** Despite being dismissed, *Dimond v. Darden Restaurants, Inc.*, had the very favorable effect of stopping New York City restaurants from charging illegal automatic gratuities in violation of consumer protection laws. 2014 WL 3377105 (S.D.N.Y. July 9, 2014). The case of *Avalos v. IAC* arose from the multi-billion dollar "romance scams" perpetuated on Match.com and other dating sites. While the case was dismissed, it was brought in good faith on behalf of the people whose photographs are used without their consent in these romance scams.

Similarly, *Suero v. NFL*, Mr. Spencer's recent case against the NFL and MetLife Stadium, was dismissed voluntarily for jurisdictional reasons, but could have been refiled and pursued in State court. 2022 WL 17985657. In any event, the case was a success because the defendants rewrote their entire website to change all the false advertising that the *Suero* plaintiffs had alleged. Media coverage of the case focused on the New York Giants and Jets playing their home games in New Jersey, but the lawsuit identified numerous false statements of fact, including the length of time it takes to commute to MetLife Stadium from New York, and other misrepresentations, all of which were removed due to Mr. Spencer's advocacy.

Defendants' characterization of Mr. Spencer's recent settlement demand as "extortionate tactics," is likewise jaundiced and over-the-top. While Mr. Spencer respects this Court, upon consultation with other attorneys, it is Mr. Spencer's professional opinion that there is a

reasonable chance of this case being overturned on appeal. While he would of course prefer to make a recovery of damages for a nationwide class, Mr. Spencer is retained by over 100 financially damaged plaintiffs, and a prompt settlement at this juncture would serve their best interests. Accordingly, on September 25, 2024, after consultation with lead plaintiffs, Mr. Spencer for the first time provided Defense Counsel a copy of Dr. Smith's expert report, and a settlement demand of $5 million, which represents his clients' aggregate losses. Given that Defendants claim their pleading-stage litigation in the District Court cost them $750,000, an initial settlement demand of $5 million to avoid the appeals process is not unreasonable. This settlement demand was not unethical or inappropriate in any manner, but it *was* confidential, and Defendants' public filing of it violates the Court's Order of December 11, 2023, which clearly provides that, "My ruling in this instance does not prevent either side from seeking sanctions if there are further public disclosures of private correspondence." ECF No. 105, p. 2.

## IX. SANCTIONS WILL IMPOSE AN UNREASONABLE BURDEN ON PLAINTIFFS AND FAILURE TO MAKE SUCH AN AWARD WILL NOT IMPOSE A GREATER BURDEN ON DEFENDANTS

Plaintiffs are working class Americans who have sustained financial loss trading Dogecoin. Defendant Elon Musk is the richest man in the world, and Defendant Tesla, Inc., is one of the most highly-valued corporations in the world. Their combined net worth is in excess of $1 trillion. Plaintiffs have plausibly alleged that these Defendants profited from trading an investment instrument that Plaintiffs simultaneously lost money on. *See* ECF No. 77, ¶ 176n.23, 179-184; *and* ECF No. 108, ¶¶ 165-173, 180-192.

Mr. Spencer has over 100 clients who have lost between $50 to $450,000 each, and the four Lead Plaintiffs have lost between $17,000 and $150,000 each. Mr. Spencer is a solo practitioner who agreed to represent these Plaintiffs when no other attorney would do so. He and

his legal team have expended over 1,000 hours and incurred close to $100,000 in fees and costs

pursuing this litigation on behalf of a proposed class believed by an expert economist to

comprise some seven million persons who have sustained $5 billion dollars in aggregate losses.

For Defendants to spend $750,000 defending this litigation amounts to less than 0.06% of

these losses and less than 75 cents per million dollars of their net worth, whereas an award of

sanctions would force Mr. Spencer into bankruptcy at a time when many clients in other cases

are depending on him. Again—whatever the pleading sufficiency of the complaints—Plaintiffs

have plausibly alleged that Defendants profited from trading an investment instrument that

Plaintiffs simultaneously lost money on. *See* ECF No. 77, ¶ 176n.23, 179-184; *and* ECF No. 108,

¶¶ 165-173, 180-192. Clearly, sanctions, "will impose an unreasonable burden on [Plaintiffs] and

would be unjust, and the failure to make such an award would not impose a greater burden on"

the Defendants. *Gurary*, supra, 303 F.3d at 215, *quoting* 15 U.S.C. § 78u–4(c)(3)(B). Plaintiffs

therefore respectfully ask that Defendants' motion be denied.

## **CONCLUSION**

No substantial violation of Rule 11(b) has been committed by Plaintiffs' Counsel. Any

violation of the Rule was de minimis, and an award of sanctions would impose an unreasonable

burden on Plaintiffs, while failure to make such an award would not impose a greater burden on

Defendants. For these and the further reasons set forth herein, Defendants' motion to amend

should be denied.

DATED: October 10, 2024

Respectfully submitted,

By: *s/ Evan Spencer*
Evan Spencer, Esq.
EVAN SPENCER LAW PLLC
305 Broadway, 7th Floor
New York, NY 10007
(917) 547-4665
Evan@EvanSpencerLaw.com
EvanSpencerLaw.com

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 10th Day of October, 2024, a true and correct copy of the above and foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, giving notice to all parties in this action.

*/s/ Evan Spencer*
Evan Spencer