UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COLBY GOROG, JOSHUA FLINT, LOUIS ROBINSON, and MICHAEL LERRO, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　Plaintiffs,<br>　v.<br>ELON MUSK and TESLA, INC.,<br>　　　　　　　　　Defendants. | Civil Action No.: 1:22-cv-05037-AKH<br><br>**AFFIDAVIT OF PLAINTIFFS' ATTORNEY EVAN SPENCER IN SUPPORT OF PLAINTIFFS' CROSS-MOTION TO DISQUALIFY AND SANCTION DEFENSE COUNSEL AND IN RESPONSE TO DEFENDANTS' CROSS-MOTION TO STRIKE** |

　　　　I, Evan Spencer, swear under penalty of perjury that the following affidavit is true and accurate and is executed by me with personal knowledge of the facts contained herein:

1. I am Plaintiffs' attorney in the above-named case.

2. I also represent the original Plaintiff Keith Johnson and over 100 additional clients who lost money trading Dogecoin as a result of false statements, broken promises, and market manipulation by Elon Musk.

3. I write this affidavit to support and clarify my declaration underlying my cross-motion to disqualify and sanction ECF No. 125, and in response to Defendants' cross-motion to strike ECF No. 144.

4. To the extent that any of my declaration ECF No. 127 is stricken, let this affidavit serve as evidence in favor of granting the underlying cross-motion to disqualify and sanction defense counsel ECF No. 125 and in response to Defendants' motion to strike.

5. My clients have collectively lost millions of dollars trading Dogecoin, including American adult citizens of all ages, races, and genders.

6. All of them attribute their investments and losses with Dogecoin to Elon Musk.

1

7. One of my clients committed suicide after losing his life savings of $350,000 in Dogecoin and another client lost $450,000.

8. The four Lead Plaintiffs have lost between $17,000 and $150,000 each trading Dogecoin.

9. Numerous clients have lost between $17,000 and $90,000 trading Dogecoin.

10. I have retained an expert witness who estimates there is a class of approximately five million people with damages of approximately $7 billion.

11. I have been working on this case for nearly three years, spending hundreds of hours of my own time as well as hiring and consulting with numerous additional lawyers in a variety of fields, cryptocurrency experts, and economists.

12. I filed and pursued this case in part because the Securities and Exchange Commission ("SEC") fined famous people including boxer Floyd Mayweather Jr. (2018), actor Steven Seagal (2020), influencer Kim Kardashian (10/3/22), actress Lindsay Lohan, influencer Jake Paul (and others 3/22/23), and NBA star Paul Pierce for securities violations related to the manipulation of cryptocurrencies.

13. These official SEC actions confirmed to me that Elon Musk and Tesla were accountable under securities laws for their manipulation and profiteering from Dogecoin as their conduct far exceeded anything done by the aforementioned celebrities from 2018 to 2023.

14. In addition, other famous people were sued in private litigation for securities manipulation through cryptocurrencies since 2022, including Seinfeld producer Larry David, NFL star Tom Brady, and supermodel Gisel.

15. This Dogecoin case has been a part of my daily life for well over two years and it was filed and pursued in good faith at all times with the support of the smartest people I know.

16. I filed this case after years of research and investigation into cryptocurrency, and particularly Dogecoin and Defendants' manipulation of the Dogecoin market.

17. While I have acted in good faith and the Court has already ruled that this case is "non-frivolous," Defense counsel has engaged in at least six major FRCP Rule 11 violations and ethical violations of the New York Rules of Professional Conduct ("NYRPC") that warrant disqualification and monetary sanctions.

18. The first occurred on June 9, 2023, when defense counsel wrote a letter/email to me under FRCP Rule 11, ECF No. 83 #1, but rather than granting me the 21-day safe harbor period provided for in the FRCP, defense counsel demanded that I dismiss the case in three days with prejudice.

19. In addition, rather than giving me the opportunity to make necessary changes to the pleading, Defendants demanded that I dismiss the case in its entirety with prejudice.

20. This unethical letter by a Harvard lawyer representing the world's richest man would have caused most sole practitioners in my position to withdraw from the case, but I persevered and decided to vigorously litigate on behalf of my clients in spite of the fear and anxiety this letter caused.

21. When I didn't dismiss the case in three days, Defendants committed their second major ethical violation by sending this confidential, defamatory 3-page letter to Josh Kosman at the New York Post (bio ECF 85 #2), who published an article about the letter ECF 83 #2.

22. I know with 100% certainty that defense counsel did this because I was the only other person in possession of this email/letter and I did not share it with the media.

23. Also, Josh Kosman of the New York Post has reported on Elon Musk stories in the past ECF 85 #2, so it is obvious that Defendants have a working relationship with this media entity.

24. This made my clients lose respect for me and damaged the attorney client relationship between me and the lead Plaintiffs and other clients I represent in this case.

25. Then, after Defendants entered a stipulation allowing me to file a Third Amended Complaint ("TAC"), ECF No. 77, Defendants committed a third frivolous and unethical act by filing for sanctions against me.

26. Despite the fact that they had read, reviewed, and approved the TAC, they filed for sanctions after it was formally filed, when they could have objected to the draft of the TAC and given me the opportunity to make the changes they requested.

27. While this motion was denied, ECF No. 105, it put a lot of pressure and stress on me needlessly.

28. Though the motion was frivolous, for five long months I had to linger with the fear that sanctions might be imposed upon me.

29. After nearly two and half years of litigation, on August 29, 2024, the Court dismissed the Fourth Amended Complaint ("4AC") with a one-page decision, ECF No. 113, that my clients and I do not agree with.

30. On September 19, 2024, after consulting with my clients and a number of appellate attorneys who confirmed that we had grounds for an appeal, we decided to file a Notice of Appeal, ECF No. 115.

31. On September 25, 2024, I received an email from Defendants **(Exhibit "A")** sent by Ms. Concannon which states, "We'd like to discuss. Please let me know what times tomorrow or Friday work for you."

32. After discussing this with my clients we reached the conclusion that this email, the first of its kind in over two years of litigation, was a settlement overture.

33. That is why on September 25, 2024, we sent Defendants a settlement demand, ECF No. 118 #1, together with an expert narrative report and the curriculum vitae of Dr. Stan Smith, ECF No. 120 #1 and #2.

34. This wasn't some "cash grab" as Defendants call it but rather, a good faith settlement offer on behalf of 100+ clients after 2 ½ years of litigation so the parties and the Courts could avoid an appeal and potentially additional years of litigation and millions of dollars in litigation costs.

35. The fourth unethical act was the Zoom conference call between me, Sarah Concannon and an associate of Ms. Concannon's on the afternoon of Friday, September 27, 2024.

36. This Zoom call was held in the early afternoon and lasted approximately 15 minutes.

37. This conference was scheduled by Defendants **(Exhibit "B")** after the Notice of Appeal was filed but before the motion to amend was filed by Ms. Concannon.

38. It is clear based upon a number of factors that the purpose of this Zoom call was to scare the daylights out of me and cause me to withdraw the Notice of Appeal and to not perfect the appeal.

39. I attended the conference from my home and began the conversation cordially by saying, "it's nice to finally meet you," and that, "you are doing a great job so far."

40. Ms. Concannon then stated that, "the Judge's opinion was succinct, but he got it right."

5

41. I confirmed during the conference that Defendants had received my written settlement offer and Ms. Concannon stated words to the effect that they would not be making a settlement offer.
42. During this conference Ms. Concannon said she was "surprised" by my Notice of Appeal and made it clear that their motion to amend and sanction was in response to the Notice of Appeal.
43. Ms. Concannon asked, "what is the basis of the appeal?" and questioned if my intent was to "perfect an appeal."
44. During this conference call, neither Ms. Concannon nor her associate said the case was frivolous or non-meritorious.
45. They didn't deny that Mr. Musk owned the charity wallet that traded billions of dollars of Dogecoin since 2019, they did not deny that Dogecoin is a security, and they did not otherwise identify anyway that the case was frivolous or brought in bad faith.
46. Ms. Concannon concluded with saying that they were going to file a motion against "you and your firm" to obtain their legal fees which were in excess of $750,000 if I pursued the appeal.
47. I then asked Ms. Concannon if I could consult with my clients before she filed the motion, and she replied that "today" was the deadline for their motion and that she would be filing it later that afternoon, which they did on September 27, 2024, ECF No. 116.
48. This Zoom conference call was held for the improper purpose of scaring me and my clients into abandoning a legitimate appeal.

6

49. Then, defense counsel committed their fifth unethical act by filing a post-judgment motion for $750,000+ in sanctions ECF No. 116, when a nearly identical motion was denied in December 2023 ECF No. 105.

50. Defense counsel committed yet a sixth unethical act by violating an Order of this Court, ECF No. 105, when they published Plaintiffs' confidential settlement offer as a public exhibit with the Court, ECF No. 118 #1.

51. This settlement offer, on behalf of 100+ clients that I represent in this case was induced by Defendants' email and was made in good faith to make my clients whole.

52. This public filing by Defendants was reported by Reuter's in an October 15, 2024, news article **(Exhibit "C")** that damaged Plaintiffs' case and my reputation and discouraged prospective class members from joining the case.

53. Defendants knew it was confidential under FRCP Rule 408 as evidenced by the fact that they filed a letter motion, ECF No. 129, to seal this settlement offer on a holiday only four days after Plaintiffs' filed this cross-motion; Defendants' would not have filed a motion to seal if they did believe the email was confidential.

54. Defendants never wrote me an FRCP Rule 11 safe harbor notice after 4AC was filed, and allowed eight months to elapse before they claimed it was defective.

55. Defendants have seen my comprehensive 51-page legal memorandum in support of the 4AC and in opposition to their motion to dismiss.

56. Defendants have clearly acted in bad faith, as a nearly identical motion by them was denied by the Court in a ruling where the Judge declared there are "non-frivolous" and "good-faith" issues to litigate.

7

57. Defendants' act of filing for $750,000+ in sanctions, baseless at is, has caused my clients and I unwarranted mental and emotional distress that continues to this day.

58. Defendants and their attorneys clearly believe they are above the law and that the rules do not apply to them.

59. The Court should hold Mr. Musk and his attorneys accountable for their pattern of unethical behavior and direct violation of a Court Order.

60. On October 28, 2024, I sent Defendants an FRCP Rule 11 21-day safe harbor notice by email **(Exhibit "D" and "E")**.

61. I requested that they withdraw their frivolous post-judgment motion to amend.

62. The reason I did not send it sooner is that defense counsel previously sent a confidential Rule 11 notice to the media and filed a settlement offer with the Court so I did not want this letter publicized, but since Defendants motion to strike requested this notice, it was filed 3 days after Defendants' motion to strike.

63. In addition, Plaintiffs filed several documents with the Court on October 10, 2024, ECF No. 119-127, which made it clear that Plaintiffs case was meritorious and Defendants' motion frivolous.

64. The Defendants have an opportunity to withdraw their post-judgment motions before replying to their cross-motion to strike, before oral argument for their motion to amend, and before the Court rules on the post-judgment motions.

65. The 21-day safe harbor period ends on November 18, 2024, only three days after their reply is due, before any oral argument can be scheduled and before the Court will have the opportunity to rule on their motion.

66. Having committed at least six major violations of FRCP Rule 11 and the NYRPC, and having a history of overbilling and misconduct, Quinn Emanuel should be disqualified and sanctioned monetarily to compensate Plaintiffs and deter such conduct in the future.

67. The amount and kind of pressure Defendants are putting on my clients and I is unethical, illegal, defamatory, and constitutes intentional infliction of emotional distress.

68. Defendants have a combined worth in excess of $1 trillion and their law firm has thousands of the world's best lawyers, if they are not bound by the rules, then there can be no justice in this case or any other lawsuit against Defendants.

69. The Defendants have damaged the reputation of my clients and myself so much that we have no option but to pursue an appeal to conclusion to vindicate our reputation.

70. I have consulted with several appellate attorneys who all agree that there are grounds for appeal and that I have an excellent chance of prevailing on an appeal.

71. I have retained an attorney admitted in the Second Circuit to serve as co-counsel and attorney of record until I am admitted with the Court.

72. Other attorneys have offered to assist with the appeal on a contract basis anonymously due to fear of offending the world's richest man.

73. Class action firms throughout the United States are interested in serving as co-counsel if and when I prevail on the appeal.

74. My clients and I have a legal and ethical right to pursue an appeal, and we should not be bullied out of Court by Defendants and their unethical lawyers.

75. On March 21, 2022, three months before this case was filed, Corporate Counsel and several other news entities reported that Defendant Elon Musk said that he is ***"hiring hardcore streetfighters"*** for his Tesla litigation team and that, ***"there will be blood."*** **(Exhibit "F")**

76. While these statements might appear to be hyperbole, Musk's lawyers Quinn Emanuel have taken these marching orders to heart and they are doing so by violating the FRCP and NYRPC and bullying, threatening, intimidating, and defaming me and my clients.

77. I therefore, respectfully request that Quinn Emanuel be disqualified from this case, that they be sanctioned for all of Plaintiffs' costs arising from the post-judgment motions initiated by Defendants, and that their post-judgment motions be denied in their entirety.

FURTHER AFFIANT SAYETH NOT.

STATE OF NEBRASKA   )
                    ) ss.
COUNTY OF DOUGLAS   )

_____
(AFFIANT)

Subscribed and sworn to before me this 8th day of November, 2024 by Evan Spencer

_____
Notary Public

GENERAL NOTARY-State of Nebraska
RICHARD L JACOBS
My Comm. Exp. December 11, 2027

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 8th Day of November, 2024, a true and correct copy of the above and foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, giving notice to all parties in this action.

*/s/Evan Spencer*
Evan Spencer, Esq.
